# EXHIBIT G





**Angela R. Ford**
Executive Director
Sponsored Projects Office
1608 Fourth Street. Suite 220
Berkeley, CA 94710-1749
arford@berkeley.edu
https://spo.berkeley.edu/

April 30, 2025

*Submitted via email*

Senior Deputy Chairman
National Endowment for the Humanities
400 7th Street, SW
Washington, DC 20506

### RE:  Appeal of Termination of Award No. RQ-300297-25

Dear Senior Deputy Chairman:

I write on behalf of the Regents of the University of California, Berkeley ("UC"), in regards to the termination of Award No. RQ-300297-25 (the "Award").  UC greatly values its partnership and decades long strong working relationship with the National Endowment for the Humanities ("NEH") but in this instance has no choice but to appeal the termination, which is not justified and should be reversed.  The amount under dispute represents funds that the University has not yet received from the government under this Award.  This includes amounts not yet expended by the University and amounts properly incurred before the Award termination date but which have not yet been reimbursed in accordance with 2 C.F.R. § 200.343.  The amount in dispute for this Award is $450,000.

We are grateful for our opportunities to support NEH priorities to examine the human condition, promote civics education, and understand our cultural heritage.  As you know, UC researchers have led and contributed to NEH-supported work for decades.  We hope to continue this longstanding partnership.

**Background**

On April 2, 2025, UC received a letter from Michael McDonald, Acting Chairman of NEH, announcing the termination of this Award (the "Letter").  The Letter stated:

Your grant no longer effectuates the agency's needs and priorities and conditions of the Grant Agreement and is subject to termination due to several reasonable causes, as outlined in *2 CFR § 200.340.* NEH has reasonable cause to terminate your grant in light of the fact that the NEH is repurposing its funding allocations in a new direction in furtherance of the President's agenda. The President's February 19, 2025 executive order mandates that the NEH eliminate all non-statutorily required activities and functions. *See Commencing the Reduction of the Federal Bureaucracy,* E.O. 14217 (Feb. 19, 2025). Your grant's immediate termination is necessary to safeguard the interests of the federal government, including its fiscal priorities. . . . [D]ue to exceptional circumstances,

Senior Deputy Chairman
Appeal of Termination of Award No. RQ-300297-25
April 30, 2025
Page 2 of 6

adherence to the traditional notification process is not possible. Therefore, the NEH hereby terminates your grant in its entirety effective April 1, 2025.

The Letter was signed by Mr. McDonald but sent from an email account unaffiliated with NEH and believed to be associated with the Department of Government Efficiency ("DOGE").[1]

As described below, the termination of this Award is unjustified.[2]

**Argument**

### I.  Section 200.340 Does Not Permit Termination of the Award

Although the letter cites 2 C.F.R. § 200.340 as authority for termination of this Award, that provision does not permit a termination of this nature under the rationale offered. Thus, the termination is unlawful and violates the Administrative Procedure Act. 5 U.S.C. § 706(2)(A) (authorizing courts to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"); *see International Dark-Sky Ass'n, Inc. v. FCC*, 106 F.4th 1206, 1220 (D.C. Cir. 2024) (An agency action based on a flawed interpretation of a statute or regulation is "contrary to law.").

We assume NEH relies specifically on 2 C.F.R. § 200.340(a)(4), providing an award may be terminated by an awarding agency if it "no longer effectuates the program goals or agency priorities." That reliance is misplaced.

First, that provision is not designed for the sort of sweeping funding terminations NEH has imposed on UC (and other universities across the country). The preamble to the final rule adopting the language at issue offers two scenarios in which termination pursuant to "agency priorities" might be appropriate: First, where "following the issuance of a Federal award, . . . additional evidence reveals that a *specific* award objective is ineffective at achieving program goals"; and second, where "additional evidence . . . cause[s] the Federal awarding agency to significantly question the feasibility of the intended objective of the award, such that it may be in the interest of the government to terminate." Guidance for Grants and Agreements, 85 Fed. Reg. 49,506, 49,507-

---

[1] The Letter was sent via email from Grant_Notifications@nehemail.onmicrosoft.com. The Letter also instructs recipients to send "only urgent questions" to this email address. Email addresses of NEH personnel, on the other hand, generally end with "@neh.gov." *See* https://www.neh.gov/about/staff (linking to contact information for staff members, each of whom has an "@neh.gov" address).

[2] Although no statute or regulation requires UC to exhaust any administrative appeal process, the University is filing this appeal in accordance with Section XIII of the General Terms and Conditions for Awards to Organizations. *See* https://www.neh.gov/sites/default/files/General%20Terms%20and%20Conditions%20for%20AwAwar%20to%20Organizations_FFRMS%20removed_3.13.25.pdf (for awards issued October 1, 2024, or later); https://www.neh.gov/sites/default/files/Gen%20T%26C%20Awards%20Issued%20between%20Jan%201%2C%202022%2C%20and%20Sept%2030%2C%202024.pdf (for awards issued between January 1, 2022, and September 30, 2024).

Senior Deputy Chairman
Appeal of Termination of Award No. RQ-300297-25
April 30, 2025
Page 3 of 6

49,508 (Aug. 13, 2020) (emphasis added). Both examples plainly contemplate an award-level assessment of alignment with evolving agency priorities.

No such analysis was done here. Nor was a single agency priority or program goal identified. The Letter speaks only in generalities, stating the Award "no longer effectuates the agency's needs and priorities and conditions of the Grant Agreement and is subject to termination due to several reasonable causes" but identifies none of the foregoing. It further states "NEH is repurposing its funding allocations in a new direction" but fails to define any such direction. This obviously boiler-plate discussion does not explain why the feasibility of *this* project's objective is now questionable, or what specific aspects of *this* project are misaligned with agency priorities. *See FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021) (agency action must be both "reasonable and reasonably explained"); *see also* 2 C.F.R. § 200.341 (requiring a notice of termination to "include the reasons for termination").

Perhaps realizing it failed to identify such priorities in its termination notices, NEH published a post hoc explanation of its new priorities in a press release on April 24, 2025, stating "NEH is especially interested in projects on the nation's semiquincentennial and U.S. history more generally."[3] The press release also explained NEH "cancelled awards that are at variance with agency priorities, including but not limited to those on diversity, equity, and inclusion (or DEI) and environmental justice, as well as awards that may not inspire public confidence in the use of taxpayer funds" and that "NEH-supported projects must not promote a particular political, religious, or ideological point of view and must not engage in political or social advocacy." However, such attempt at an explanation has no bearing on the inadequate and unlawful termination of this Award. The press release was not incorporated into the Letter, nor could it have been, as it was published over three weeks after NEH terminated the Award. Moreover, NEH still has not articulated how this Award is inconsistent with its newly identified priorities. Accordingly, the press release cannot retroactively save the agency's deficient termination.

Second, § 200.340(a) clearly states an award may be terminated only "[b]y *the* Federal agency"—*i.e.*, the agency responsible for the award. Here, that means NEH alone. That this Letter was sent by an email account unaffiliated with NEH (to which all further inquiries are also directed) indicates the termination was not issued by NEH and any implication that NEH itself decided to terminate this Award is pretextual.

## II. The General Terms and Conditions Do Not Permit Termination of the Award

The Letter plainly cites § 200.340 as the purported authority for the termination, stating the Award "no longer effectuates the agency's needs and priorities and conditions of the Grant Agreement and is subject to termination due to several reasonable causes, *as outlined in 2 CFR § 200.340*."

---

[3] *See* https://www.neh.gov/news/update-neh-funding-priorities-and-agencys-recent-implementation-trump-administration-executive.

The Letter does not cite the General Terms and Conditions, which are incorporated in the Award, as a basis for the termination.

However, even if the Letter could be read to rely on the General Terms and Conditions for authority to terminate this Award, such reliance is also misplaced. Section XIII provides, in relevant part, that NEH may suspend or terminate an award if "an award no longer effectuates the agency's needs and priorities" or NEH "has other reasonable cause." As described above, NEH failed to conduct the award-level analysis required by the regulation underpinning this provision, nor did it articulate any agency need or priority this Award "no longer effectuates." Nor could it, as it does not appear NEH even made this termination decision.

The Letter also fails to point to any reasonable cause. The Letter contends that "NEH has reasonable cause to terminate [the Award] in light of the fact that the NEH is repurposing its funding allocations in a new direction in furtherance of the President's agenda[,]" and more specifically states: "The President's February 19, 2025 executive order mandates that the NEH eliminate all non-statutorily required activities and functions. *See Commencing the Reduction of the Federal Bureaucracy*, E.O. 14217 (Feb. 19, 2025)." But that is wrong.[4] Although the Order states that "non-statutory components and functions . . . shall be eliminated" for the Presidio Trust, Inter-American Foundation, United States African Development Foundation, and United States Institute of Peace, NEH is noticeably absent from that list. In sum, the sole, potentially articulable basis for the termination provided in the Letter—the Executive Order purportedly mandating elimination of this Award—is flatly wrong.

### III. This Award Is Not Inconsistent with Agency Priorities

Even if NEH could, in theory, terminate this Award based on misalignment with unspecified agency priorities or reasonable causes, it was mistaken—and acted arbitrarily and capriciously—in drawing that conclusion here. This project is directly aligned with the fundamental purpose of the NEH, which is directed by statute to "initiate and support research and programs to strengthen the research and teaching potential of the United States in the humanities," "foster the interchange of information in the humanities," and "foster programs and projects that provide access to, and preserve materials important to research, education, and public understanding of, the humanities." 20 U.S.C. § 956.

Consistent with that directive, this Award supports the Mark Twain Project (the "Project"), a long-standing scholarly initiative dedicated to preserving, editing, and making accessible the works and life of one of America's greatest writers, Mark Twain. Since 1967, with support from the NEH, the Project has produced accurate, annotated editions of Twain's writings, both in print and online, and assembled an unparalleled archive of his manuscripts, letters, and related materials. The Project plays a vital role in American and global literary scholarship by ensuring free and widespread access to Twain's works through *Mark Twain Project Online*, an open-access digital platform launched in 2007. The terminated Award would have supported the publication of major

---

[4] See Exec. Order No. 14217, https://www.federalregister.gov/documents/2025/02/25/2025-03133/commencing-the-reduction-of-the-federal-bureaucracy.

Senior Deputy Chairman
Appeal of Termination of Award No. RQ-300297-25
April 30, 2025
Page 5 of 6

works like *The Innocents Abroad* and *Following the Equator*, a digital edition of his notebooks, and more of his correspondence, while also ensuring the continued technical and editorial development of the website.

Internationally recognized for its rigorous standards and comprehensive resources, the Project not only preserves Twain's legacy but also deepens our understanding of American literature, culture, and history, making it an invaluable asset to scholars, students, and general readers worldwide. For example, renowned biographer Ron Chernow recently published a major biography of Mark Twain, made possible in large part by the Project, which provided him with extensive documentation and support.

This Award embodies the statutory purpose of NEH, funding critical efforts to preserve, edit, and make accessible the works and life of Mark Twain, widely regarded as a quintessential American writer whose contributions hold a central place in the American literary canon and American history and culture more generally. Indeed, Mark Twain holds a singular place in American and world literature as one of the most widely read, studied, and beloved authors. His work captures the complexities, contradictions, and spirit of the American experience with unmatched humor, insight, and humanity. Moreover, the Award is consistent with and effectuates NEH's newly declared priority to promote "U.S. history more generally." NEH also recognized in its press release that, while the agency may now be "especially interested in projects with a focus on American history and the nation's founding[,] . . . NEH continues to accept (and fund) applications in all areas of the humanities as defined by NEH's statute." Thus, by its own declaration, NEH is not constrained to awarding funds to projects that focus solely on America's founding and intends to continue funding projects in all areas of the humanities, which include the study and preservation of literature and history. *See* 20 U.S.C. § 952(a).

The Award also does not focus on DEI, gender ideology, environmental justice, or any other topic this Administration (or NEH in its recent press release) has identified as a non-priority. Therefore, to the extent this Award was terminated by NEH on the assumption it focuses on DEI or another such topic, or that it does not enrich American history, that is deeply mistaken. Termination of this Award is simply perplexing.

NEH never gave UC the opportunity to explain all the above before immediately terminating the Award, despite that being the usual practice. *See* General Terms and Conditions (2024) § XIII ("Generally, NEH will terminate an award only after notifying the recipient of the deficiency and giving the recipient sufficient time to correct it; however, this does not preclude immediate suspension or termination when such action is required to protect the interests of the federal government."); General Terms and Conditions (2022) § XIII (functionally the same). Instead, NEH concluded the Award's "immediate termination is necessary to safeguard [unarticulated] interests of the federal government." Hence NEH failed to both "reasonably consider[] the relevant

issues and reasonably explain[] the decision." *Prometheus Radio Project*, 592 U.S. at 423. For that reason alone, the termination was arbitrary and capricious and should be reversed. *Id.*

### IV. Request for Relief

For the reasons stated above, UC respectfully requests that the decision to terminate the Award be reversed and that funding be reinstated; or in the alternative, to allow UC to modify the project's objectives to more closely align with NEH's new priorities.

We appreciate the consideration of this appeal and look forward to a timely and favorable response.

Sincerely,

*Angela Ford*

Angela R. Ford
Executive Director, Sponsored Projects Office
Research Administration and Compliance
University of California, Berkeley
arford@berkeley.edu
510-642-8117

cc: Michael McDonald, Acting Chairman, National Endowment for the Humanities (mmcdonald@neh.gov)
Robert Hirst, Principal Investigator, Head, and Curator, Mark Twain Papers
Kairi Williams, Assistant Vice Chancellor, Research Administration and Compliance

Encls.
Termination Notice
Funding Notification

---------- Forwarded message ---------
From: **Grant Notification** <Grant_Notifications@nehemail.onmicrosoft.com>
Date: Wed, Apr 2, 2025 at 8:36 PM
Subject: Notice of Grant Termination – Effective April 2, 2025
To: sabina_g@berkeley.edu <sabina_g@berkeley.edu>


 Ms. Sabina Gafarova,

We regret to inform you that your NEH grant has been terminated. Please see the attached grant termination notice.

With Regards,
Michael McDonald
Acting Chairman, National Endowment for the Humanities



# NATIONAL ENDOWMENT FOR THE HUMANITIES
# NOTICE OF GRANT TERMINATION

April 2, 2025

Ms. Sabina Gafarova

Regents of the University of California, Berkeley


Dear NEH Grantee,

    This letter provides notice that the National Endowment for the Humanities (NEH) is terminating your federal grant (Grant Application No. RQ30029725) effective April 2, 2025, in accordance with the termination clause in your Grant Agreement.

    Your grant no longer effectuates the agency's needs and priorities and conditions of the Grant Agreement and is subject to termination due to several reasonable causes, as outlined in *2CFR§200.340*. NEH has reasonable cause to terminate your grant in light of the fact that the NEH is repurposing its funding allocations in a new direction in furtherance of the President's agenda. The President's February 19, 2025 executive order mandates that the NEH eliminate all non-statutorily required activities and functions. *See Commencing the Reduction of the Federal Bureaucracy*, E.O. 14217 (Feb. 19, 2025). Your grant's immediate termination is necessary to safeguard the interests of the federal government, including its fiscal priorities. The termination of your grant represents an urgent priority for the administration, and due to exceptional circumstances, adherence to the traditional notification process is not possible. Therefore, the NEH hereby terminates your grant in its entirety effective April 1, 2025.

    Please remember that your obligations under the Grant Agreement continue to apply. Additionally, an audit may be conducted by the NEH after the termination of your grant.

    Please contact [Grant_Notifications@nehemail.onmicrosoft.com](mailto:Grant_Notifications@nehemail.onmicrosoft.com) with only urgent questions.

Sincerely,

/s/ *Michael McDonald*

Michael McDonald
Acting Chairman, National Endowment for the Humanities
400 7th Street S.W., Washington, DC 20506



August 28, 2024

Jessie Brown
Contract and Grant Officer
Sponsored Projects Office
University of California, Berkeley
1608 Fourth Street, Suite 220
Berkeley, CA 94710-1749

Application Number: RQ-300297

Dear Ms. Brown:

Congratulations! I am pleased to inform you that application RQ-300297 entitled "Mark Twain Project" under the direction of Robert H. Hirst has been approved to receive an offer for funding. The National Endowment for the Humanities (NEH) offers the University of California, Berkeley support for this project in an amount not to exceed $450,000.00 in federal matching funds, subject to the following condition:

NEH offers to provide federal matching funds of up to $450,000 on condition that (a) an equal amount of eligible non-federal, third-party gifts is raised and either certified or forwarded to NEH by June 30, 2027, and (b) sufficient funds allocated for matching purposes are available in the Division of Research Programs. It should be noted that this offer may be withdrawn at any time by the chair of NEH. Please see the Federal Matching Fund Guidelines (available at https://www.neh.gov/grants/manage/federal-matching-funds-guidelines) for details on the eligibility of gifts and their certification.

We anticipate that the federal matching funds for this project will be provided incrementally during the period of performance. Recipients are nevertheless encouraged to certify all eligible gifts as soon as possible so that NEH will be able to amend the award as soon as matching funds become available for this project.

If you wish to accept this offer of support, your response to the above condition(s) and the Gift Certification Form must be submitted via eGMS Reach, NEH's online electronic grant management system no later than June 30, 2027. Instructions for accessing eGMS Reach can be found below. Please note that the Endowment's review of the material requested and the preparation of the award documents require approximately four weeks.

NEH is making available to you our online electronic grant management system, eGMS Reach. You will be able to view offer and award letters, view and submit reports, receive alerts and notifications regarding the grants you manage, and send messages to NEH staff to raise questions and concerns.

When accessing eGMS Reach for the first time, go to https://reach.neh.gov/, click the Sign In Help link, and follow the on screen instructions. An e-mail message will be sent to you with a link to select a password.

This "offer" letter does not constitute an award. It formally communicates the level of funding recommended for the project and the conditions that must be met before an award will be issued by NEH. Should you have any questions concerning this offer of support, please feel free to contact Peter Scott at pscott@neh.gov, or Jason Boffetti at jboffetti@neh.gov.

NEH staff look forward to working with you.

Sincerely,

Shelly C. Lowe (Navajo)
Chair