Erwin Chemerinsky (*pro hac vice* forthcoming)
echemerinsky@law.berkeley.edu
Claudia Polsky (CA Bar No. 185505)
cpolsky@law.berkeley.edu
U.C. BERKELEY SCHOOL OF LAW
Law Building
Berkeley, CA 94720-7200
Telephone: 510.642.6483

Elizabeth J. Cabraser (CA Bar No. 83151)
ecabraser@lchb.com
Richard M. Heimann (CA Bar No. 63607)
rheimann@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000

Anthony P. Schoenberg (CA Bar No. 203714)
tschoenberg@fbm.com
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, CA 94104
Telephone: 415. 954.4400

*Attorneys for Plaintiffs and the Proposed Class*
[Additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEETA THAKUR, KEN ALEX, NELL GREEN NYLEN, ROBERT HIRST, CHRISTINE PHILLIOU, and JEDDA FOREMAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; DEPARTMENT OF GOVERNMENT EFFICIENCY ("DOGE"); AMY GLEASON, in her official capacity as Acting Administrator of the Department of Government Efficiency; NATIONAL SCIENCE FOUNDATION; BRIAN STONE, in his official capacity as Acting Director of the National Science | Case No. 3:25-cv-4737<br><br>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:   To be set<br>Time:   To be set<br>Judge:   Hon. Rita F. Lin |

| | |
|---|---|
| 1 | Foundation;<br>NATIONAL ENDOWMENT FOR THE |
| 2 | HUMANITIES;<br>MICHAEL MCDONALD, in his official |
| 3 | capacity as Acting Chairman of the National<br>Endowment for the Humanities; |
| 4 | UNITED STATES ENVIRONMENTAL<br>PROTECTION AGENCY; |
| 5 | LEE ZELDIN, in his official capacity as<br>Administrator of the U.S. Environmental |
| 6 | Protection Agency;<br>UNITED STATES DEPARTMENT OF |
| 7 | AGRICULTURE;<br>BROOKE ROLLINS, in her official capacity as |
| 8 | Secretary of the U.S. Department of Agriculture;<br>AMERICORPS (a.k.a. the CORPORATION |
| 9 | FOR NATIONAL AND COMMUNITY<br>SERVICE); |
| 10 | JENNIFER BASTRESS TAHMASEBI, in her<br>official capacity as Interim Agency Head of |
| 11 | AmeriCorps;<br>UNITED STATES DEPARTMENT OF |
| 12 | DEFENSE;<br>PETE HEGSETH, in his official capacity as |
| 13 | Secretary of the U.S. Department of Defense;<br>UNITED STATES DEPARTMENT OF |
| 14 | EDUCATION;<br>LINDA MCMAHON, in her official capacity as |
| 15 | Secretary of the U.S. Department of Education;<br>UNITED STATES DEPARTMENT OF |
| 16 | ENERGY;<br>CHRIS WRIGHT, in his official capacity as |
| 17 | Secretary of Energy;<br>UNITED STATES DEPARTMENT OF |
| 18 | HEALTH AND HUMAN SERVICES;<br>ROBERT F. KENNEDY, JR., in his official |
| 19 | capacity as Secretary of the U.S. Department of<br>Health and Human Services; |
| 20 | UNITED STATES CENTERS FOR DISEASE<br>CONTROL; |
| 21 | MATTHEW BUZZELLI, in his official capacity<br>as Acting Director of the Centers for Disease |
| 22 | Control;<br>UNITED STATES FOOD AND DRUG |
| 23 | ADMINISTRATION;<br>MARTIN A. MAKARY, in his official capacity |
| 24 | as Commissioner of the Food and Drug<br>Administration; |
| 25 | UNITED STATES NATIONAL INSTITUTES<br>OF HEALTH; |
| 26 | JAYANTA BHATTACHARYA, in his official<br>capacity as Director of the National Institutes of |
| 27 | Health;<br>INSTITUTE OF MUSEUM AND LIBRARY |
| 28 | SERVICES; |

- 2 -

KEITH SONDERLING, in his official capacity
as Acting Director of the Institute of Museum
and Library Services;
UNITED STATES DEPARTMENT OF THE
INTERIOR;
DOUG BURGUM, in his official capacity as
Secretary of the Interior;
UNITED STATES DEPARTMENT OF STATE;
MARCO RUBIO, in his official capacity as
Secretary of the U.S. Department of State;
DEPARTMENT OF TRANSPORTATION;
SEAN DUFFY, in his official capacity as
Secretary for the U.S. Department of
Transportation,

Defendants.

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................ 1

II.     THE PROPOSED UC RESEARCHERS CLASS DEFINITION ................................. 3

III.    FACTUAL BACKGROUND ..................................................................................... 4

IV.     ARGUMENT ............................................................................................................. 5

     A.      Plaintiffs Have Standing to Bring This Action For Themselves and the Class .................................................................................................................. 5

     B.      The Class May and Should Be Certified Now ...................................................... 7

     C.      Plaintiffs Satisfy Rule All 23(a) Factors ............................................................ 8

          1.     The Proposed Class Is Sufficiently Numerous ......................................... 8

          2.     There Are Common Questions of Law and Fact. ..................................... 8

          3.     Plaintiffs' Claims Are Typical of Those of the Class. ............................ 10

          4.     Plaintiffs and Proposed Class Counsel Will Adequately Represent the Class. .......................................................................................... 11

     D.      Plaintiffs Satisfy Rule 23(b)(2) ........................................................................ 13

V.      Class Counsel Should Be Appointed Under Rule 23(g) .............................................. 14

VI.     CONCLUSION ....................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

**Cases**

*A.A.R.P. v. Trump*,
145 S. Ct. 1364 (2025) ................................................................................................ 7, 8

*Al Otro Lado v. Wolf*,
952 F.3d 999 (9th Cir. 2020)............................................................................................ 7

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ....................................................................................................... 11

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ......................................................................................................... 1

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001)......................................................................................... 10

*Arnold v. United Artists Theater Cir., Inc.*,
158 F.R.D. 439 (N.D. Cal. 1994) ..................................................................................... 8

*Chang v. County of Siskiyou*,
No. 22-cv-01378-KJM-AC, 2024 WL 4581687 (E.D. Cal. Oct. 25, 2024)..........................7

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ............................................................................................................ 6

*Coreas v.Bounds*,
2020 WL 5593338 (D. Md. 2020) ............................................................................. 11, 14

*D.V.D. v. U.S. Dep't of Homeland Sec.*,
No. CV 25-10676-BEM, 2025 WL 1142968 (D. Mass. Apr. 18, 2025) ............................... 13

*Deiter v. Microsoft Corp.*,
436 F.3d 461 (4th Cir. 2006)......................................................................................... 11

*Doe v. Noem*,
No. 1:25-cv-10495-IT, 2025 WL 1099602 (D. Mass. Apr. 14, 2025).................................... 7

*Easter v. Am. West Fin.*,
381 F.3d 948 (9th Cir. 2004)........................................................................................... 5

*Foon v. Centene Mgmt. Co., LLC*,
2023 WL 1447922 (E.D. Cal. Feb. 1, 2023) ..................................................................... 8

*Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc.*,
528 U.S. 167 (2000) .......................................................................................................... 6

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) ..................................................................................... 10

4

*Goodlaxson v. Mayor & City Council of Baltimore*,
Civil No. JKB-21-1454, 2025 WL 90034 (D. Md. Jan. 13, 2025) ........................................ 13

5

6

*Hanlon v. Chrysler Corp.*,
150 F. 3d. 1010 (9th Cir. 1998) .............................................................. 11, 12

7

8

*Hanlon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ..................................................................... 11

9

*Hansberry v. Lee*,
311 U.S. 32 (1940) ......................................................................................... 11

10

11

*Healthy Futures of Tex. v. Dep't of Health & Human Servs.*,
326 F.R.D. 1 (D.D.C. 2018) ........................................................................ 13

12

13

*Human Life of Wash. Inc. v. Brumsickle*,
624 F.3d 990 (9th Cir. 2010) ........................................................................ 6

14

*Kim v. Allison*,
87 F.4th 994 (9th Cir. 2023) ....................................................................... 12

15

16

*LaDuke v. Nelson*,
762 F.2d 1318 (9th Cir. 1985) ...................................................................... 5

17

18

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
350 F.3d 1018 (9th Cir. 2003) ...................................................................... 6

19

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ....................................................................................... 6

20

21

*Lyon v. U.S. Immigr. & Customs Enf't*,
308 F.R.D. 203 (N.D. Cal. 2015) ............................................................... 13

22

23

*Mazza v. American Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ...................................................................... 10

24

*Meyer v. Portfolio Recovery Assocs., LLC*,
708 F.3d 1036 (9th Cir. 2012) ...................................................................... 7

25

26

*Mitchell-Tracey v. United Gen. Title Ins. Co.*,
237 F.R.D. 551 (D. Md. 2006) .................................................................... 10

27

28

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) ........................................................................ 10

**TABLE OF AUTHORITIES**
(continued)

Page

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014)....................................................................... 10

*Perry v. Village of Arlington Heights*,
186 F.3d 826 (7th Cir. 1999)........................................................................ 6

*Planned Parenthood of Md., Inc. v. Azar*,
Civ. No. CCB-20-00361, 2020 WL 3893241 (D. Md. July 10, 2020) ................................. 13

*Rannis v. Recchia*,
380 Fed. Appx. 646 (9th Cir. 2010) ................................................................. 8

*Scholl v. Mnuchin*,
489 F. Supp. 3d 1008 (N.D. Cal. 2020) ............................................................. 13

*Shakhnes ex rel. Shakhnes v. Eggleston*,
740 F. Supp. 2d 602 (S.D.N.Y. 2010), *aff'd in part, vacated in part on other
grounds sub nom. Shakhnes v. Berlin*, 689 F.3d 244 (2d Cir. 2012) .................................. 13

*Skaff v. Meridien N Am. Beverly Hills, LLC*,
506 F.3d 832 (2007)................................................................................ 6

*Torres v. Mercer Canyons Inc.*,
835 F.3d 1125 (9th Cir. 2016)...................................................................... 11

*Trump v. J. G. G.*,
145 S. Ct. 1003 (2025) .............................................................................. 8

*United Farmworkers v. Noem*,
No. 1:25-cv-00246 JLT CDB, 2025 WL 1235525 (E.D. Cal. Apr. 29, 2025)............................. 7

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ...................................................................... 3, 9, 10, 13

*Xiufang Situ v. Leavitt*,
240 F.R.D. 551 (N.D. Cal. 2007) ..................................................................... 9

*Yates v. NewRez LLC*,
686 F. Supp.3d 397 (D. Md. 2023) ................................................................ 9, 12

**Statutes**

Administrative Procedure Act ("APA").............................................................. 4, 5, 9

CARES Act ........................................................................................ 13

Constitution and the Administrative Procedure Act .................................................... 2

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

Impoundment Control Act of 1974 ......................................................................... 4, 9

4

**Court Rules**

5

Fed. R. Civ. P. 1 ......................................................................................................... 1

6

Fed. R. Civ. P. 23(a) ............................................................................................ *passim*

7

Fed. R. Civ. P. 23(b) ....................................................................................... 1, 3, 5, 13

8

Fed. R. Civ. P. 23(b)(2) .......................................................................................... 5, 13

9

Fed. R. Civ. P. 23(c) ................................................................................................... 7

10

Fed. R. Civ. P. 23(g) ............................................................................................. 1, 14

11

**Treatises**

12

1 Newberg on Class Actions § 3:12 (5th ed. 2021) ................................................ 8, 12

13

**Other Authorities**

14

2 W. Rubenstein, Newberg & Rubenstein on Class Actions §4:30 ............................... 8

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TO ALL DEFENDANTS: PLEASE TAKE NOTICE** that, as soon as counsel may be heard in the Courtroom of the Hon. Rita F. Lin, Courtroom 15, United States District Court, Northern District of California, 450 Golden Gate Avenue, 18th Floor, San Francisco, California, Plaintiffs will and hereby do move the Court for an Order certifying the proposed UC Researchers Class and appointing Plaintiffs and their counsel to represent the Class, pursuant to Fed. R. Civ. P. 23(a)(1)-(4), (b)(2), and (g). Plaintiffs respectfully request that this Motion be briefed and heard in conjunction with their accompanying Motion for Temporary Restraining Order.

## I.    **INTRODUCTION**

Plaintiffs Neeta Thakur, Ken Alex, Nell Green Nylen, Robert Hirst, Christine Philliou, and Jedda Foreman (the "Plaintiffs" or "the Plaintiff Class Representatives") bring this action as a class action for declaratory and injunctive relief pursuant to Federal Rule of Civil Procedure 23(a)(1)-(4) and 23(b)(2) and hereby move for its certification. Plaintiffs bring this suit on behalf of themselves, and all similarly situated University of California researchers, whose federally-funded grants have been or will be imminently terminated or suspended by Defendants. Absent a declaratory judgment that such Executive Orders and directives are illegal and absent injunctive relief enjoining further terminations and restoring the terminated grants to enable class members to complete their interrupted work, irreparable injury will be suffered by the class members, their research, and ultimately by the public itself

Class certification is a procedural tool to enable the court to "select the method best suited to adjudication of the controversy fairly and efficiently." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) (cleaned up); Fed. R. Civ. P. 1 (the Federal Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"). Here, there can be no question that class certification is the most fair and efficient way to adjudicate the UC researchers' injunctive and declaratory relief claims, and to provide a protective and enforceable equitable remedy.

The lockstep conduct of Defendants Trump, the Department of Government Efficiency ("DOGE"), and the named federal agencies (the "Federal Agency Defendants"), in bypassing Congress to terminate hundreds of UC researchers' previously awarded federal grants, without

fair notice or due process, pursuant to an interrelated flurry of Executive Orders and other Trump Administration directives, as more fully detailed in the Class Action Complaint and Motion for a Temporary Restraining Order in this action, has created a class suffering a common injury and requiring common relief. Defendants' uniform course of conduct since January 20, 2025, has ignored congressional authority and statutory objectives, is expressly motivated to advance the Trump administration's political objectives, and has bypassed Congress in so doing, thus violating the Federal Agency Defendants' animating statutes, and the Constitution's separation of powers, as well as the due process and free speech protection afforded by the Constitution and the Administrative Procedure Act. It is difficult to imagine another governmental campaign that has violated more Constitutional and statutory provisions and principles, in such a short time frame. This "everything, everywhere, all at once" blitz generates an abundance of legal issues, but they are all common ones that turn on the Defendants' decisions and actions, not those of the Plaintiffs or the Class.

Defendants' common course of conduct threatens to destroy decades, and in some cases generations, of the research that has made the UC System the world's preeminent research institution, and on which Plaintiffs and the UC researcher class members have invested their efforts and staked their careers and reputations. This conduct further frustrates the express statutory objectives of this interrupted research: the advancement of knowledge and public health and safety.

Defendant DOGE boasts, as a trophy on its "Wall of Receipts"[1] that terminating research grants nationwide has "saved" billions of dollars. This boast is of questionable accuracy in terms of "savings," but the injury is real, immediate, and—if not stopped—irreparable; and the research lost is priceless.

Up until January 20, 2025, Defendant Trump's Inauguration Day, Plaintiffs and the members of the UC researchers class were engaged in their own diverse projects, in a wide array

---

[1] Dep't of Gov. Efficiency, *Wall of Receipts*, DOGE.gov, https://doge.gov/savings (last visited June 4, 2025).

of disciplines, funded by many agencies, each of which was operating under its own congressional mandate, authorizing statutes, and prescribed purposes and objectives.

All of that changed on January 20, 2025, when these previously independent processes were upended by a series of Executive Orders and the agencies' invasion by DOGE. Grants were terminated abruptly, categorically, *en masse*, and without due process. This conduct catalyzed a class of researchers across the UC System, with a common injury, a common interest in protecting their research and their institution, and a common cause: pursuing a declaratory and injunctive remedy that restores the previously-approved, recently terminated grants and the lawful grant-making, review, and termination processes that prevailed prior to January 20, 2025.

Plaintiffs seek to represent a clearly and objectively defined class. Plaintiffs' constitutional and statutory claims—and all relevant facts relating to Defendants' conduct—are necessarily common to all members of the proposed Class, and Defendants "acted or refused to act on grounds that generally apply to the class," such that final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole under Fed. R. Civ. P. 23(b)(2). Plaintiffs' claims involve binary questions, the determination of which will "generate common answers" that are not only "apt to drive the resolution of the litigation," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (cleaned up), but will actually resolve the litigation in full. Accordingly, not only will all members of the proposed Class benefit from a successful outcome, Defendants will avoid the cost and risk of defending duplicative litigation and facing potentially inconsistent rulings, and the federal courts will avoid a multiplicity of cases all litigating the same issues, arising from the post January 20, 2025 termination of hundreds of UC researchers' previously-approved grants.

## II.    THE PROPOSED UC RESEARCHERS CLASS DEFINITION

Plaintiffs seek certification of a class (the "Plaintiff Class"), sometimes referred to collectively for convenience as "UC researchers", and defined as and consisting of:

> All University of California researchers, including faculty, staff, academic appointees, and employees across the University of California system ("UC researchers") whose research grants have been or will be terminated, denied, suspended, or reduced by any of the Defendants pursuant to Executive Orders

14151, 14154, 14158, 14168, 14173, 14217, 14238, and/or 14222, and/or other directives of the Trump administration or DOGE, from and after January 20, 2025.

Compl. ¶ 67.

## III.    FACTUAL BACKGROUND

Each year, researchers in the UC System receive hundreds of millions of dollars in grants from the full spectrum of federal agencies, ranging from the Environmental Protection Agency, to the National Science Foundation, to the National Endowment for the Humanities. These grants fund the production of new knowledge and fuel the development and deployment of discoveries that greatly benefit society at large. The grants have also been key to the innovation that has consistently earned the UC System pride of place among research institutions, including first place in the list of universities with the most utility patents, and made the UC Berkeley campus the number one ranked public research in institution in the world for nine of the past ten years.

Before Defendant Trump took office, federal agency grant making proceeded under the authority of Congress, which appropriated taxpayer funds for specific public purposes and objectives. For decades, agencies carried out these statutory directives and observed due process in making, renewing, and (only seldom) terminating grants. They each adhered to their own grant regulations and followed Administrative Procedure Act ("APA") procedures when modifying such regulations. On the rare occasions when agencies terminated grants, they did so pursuant to predictable, regularized processes; based terminations on individualized review and evaluation of grantees' activity pursuant to a grant award; and terminated grants only for reasons stated in applicable regulations. All of this changed abruptly on January 20, 2025.

After January 20, 2025, Defendants Trump and DOGE, through a flurry of Executive Orders and other directives, commanded the Federal Agency Defendants to terminate scores of previously awarded research grants. As the Complaint notes, the "[a]brupt, wholesale, and unilateral termination of these grants has violated the Constitution's core principle of separation of powers and its guarantees of freedom of speech and due process; flouted the Impoundment Control Act limits on the Executive's ability to withhold or redirect congressionally appropriated money; ignored statutory requirements that agencies fulfill their substantive missions and fund

1    congressionally specified activities; contravened agency-specific grantmaking regulations that

2    cannot by law be revised on an abrupt, unexplained, chaotic basis, and violated the APA through

3    this arbitrary, capricious, and *ultra vires* conduct." Compl. ¶ 11.

4           This Motion incorporates the factual allegations of Plaintiffs' Class Action Complaint,

5    which describes in detail the unprecedented, unauthorized, and unconstitutional conduct of

6    Defendants Trump, DOGE, and the Federal Agency Defendants in terminating research grants

7    previously approved by agencies created by, and answerable to, Congress. *See generally* Compl.

8    ¶¶ 99-430. It likewise incorporates the facts set forth in the accompanying Motion for a

9    Temporary Restraining Order, and the documents submitted in support thereof, including the

10    Declarations of the Plaintiffs and other members of the proposed Class (collectively, the "TRO

11    motion").

12    **IV.**    **ARGUMENT**

13           Plaintiffs' proposed Class is comprised of thousands of research faculty, staff, academic

14    appointees, and employees throughout the ten-campus University of California system, who have

15    all similarly suffered as a result of Defendants' unconstitutional and extralegal course of conduct,

16    thus satisfying the Rule 23(a) requirements of numerosity, commonality, typicality, and

17    adequacy. The Complaint's allegations and TRO motion demonstrate that the proposed Class also

18    satisfies Rule 23(b)(2)'s requirement that Defendants have "acted or refused to act on grounds"

19    that apply to the proposed Class "as a whole." Fed. R. Civ. P. 23(b)(2). Finally, to the extent that

20    "ascertainability," or the ability to administratively identify class members in order to accord

21    effective relief, is a factor in the Court's analysis, it is satisfied here, as all class members are

22    identifiable through the Federal Agency Defendants' grant records. Plaintiffs therefore

23    respectfully request the Court now certify the proposed Class.

24         **A.**    **Plaintiffs Have Standing to Bring This Action For Themselves and the Class**

25           In evaluating Plaintiffs' proposed class under Rule 23, a court must determine whether

26    Plaintiffs have standing to assert their claims. As the Ninth Circuit explained, standing "is a

27    jurisdictional element that must be satisfied prior to class certification." *LaDuke v. Nelson*, 762

28    F.2d 1318, 1325 (9th Cir. 1985); *Easter v. Am. West Fin.*, 381 F.3d 948, 962 (9th Cir. 2004).

As is well established, "those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). To satisfy the "case or controversy" requirement, a plaintiff must establish standing under Article III to bring suit. *Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010); *see also Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 837 (2007) ("[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." (citation omitted)). In a proposed class action, "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003). To establish standing, a plaintiff "must demonstrate (1) an injury-in-fact, (2) causation, and (3) a likelihood that the injury will be redressed by a decision in the plaintiff's favor." *Human Life*, 624 F.3d at 1000 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

"[J]urisdiction is to be assessed under the facts existing when the complaint is filed." *Lujan*, 504 U.S. at 569 n.4. Consequently, the requisite personal interest must exist at the commencement of the litigation. *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 214 (2000); *Skaff*, 506 F.3d at 850 (Duffy, J., dissenting) ("Standing is determined at the time of the lawsuit's commencement, and we must consider the facts as they existed at that time the complaint was filed . . . ."); *see also Perry v. Village of Arlington Heights*, 186 F.3d 826, 830 (7th Cir. 1999) ("Because standing goes to the jurisdiction of a federal court to hear a particular case, it must exist at the commencement of the suit").

Each of the named Plaintiffs satisfies all standing requirements. As alleged in the Complaint and factually supported in the TRO motion papers, each of them had their previously approved federal grants terminated by or at the behest of the Defendants pursuant to the Executive Orders and DOGE actions at issue in this case. Each have suffered the resulting harms, to their research, their livelihood, their careers, and their reputational standing. *See* Compl.

¶¶ 163-82 (Thakur); ¶¶ 183-96 (Alex); ¶¶ 197-219 (Green Nylen); ¶¶ 267-89 (Hirst); ¶¶ 290-301 (Philliou); ¶¶ 334-55 (Foreman).

### B. The Class May and Should Be Certified Now

Rule 23(c)(1)(A) calls for the initial class certification decision to be made at "an early practicable time."[2] In this case, that time is now. Class certification of the declaratory and/or injunctive relief claims that are sought in connection with initial injunctive relief is sometimes called "provisional class certification." *Chang v. County of Siskiyou*, No. 22-cv-01378-KJM-AC, 2024 WL 4581687, at *9 (E.D. Cal. Oct. 25, 2024). The Ninth Circuit has approved the use of provisional class certification to grant class certification while considering a preliminary injunction in *Meyer v. Portfolio Recovery Assocs., LLC*, 708 F.3d 1036, 1041 (9th Cir. 2012) and *Al Otro Lado v. Wolf*, 952 F.3d 999, 1005 n.4 (9th Cir. 2020) ("We have approved provisional class certification for purposes of preliminary injunction proceedings."). Such class certification orders have issued recently in class suits brought to enjoin some of the same Defendants named in this case from carrying out post-January 20, 2025 Executive Orders and Trump administration initiatives. For example, on April 25, 2025, the court in *United Farmworkers v. Noem*, No. 1:25-cv-00246 JLT CDB, 2025 WL 1235525 (E.D. Cal. Apr. 29, 2025) simultaneously granted plaintiffs' motions for preliminary injunction and provisional class certification. On April 14, 2025, the court in *Doe v. Noem*, similarly certified a plaintiff class at the time it issued a temporary restraining order No. 1:25-cv-10495-IT, 2025 WL 1099602 (D. Mass. Apr. 14, 2025).

Recently, on May 16, 2025, the Supreme Court itself effectively certified a provisional class of those at imminent risk of classification as alien enemies and removal from the United States, concluding that such plaintiffs "are entitled to constitutionally adequate notice prior to any removal, in order to pursue appropriate relief," and holding that "this Court may properly issue temporary injunctive relief to the putative class in order to preserve our jurisdiction pending appeal." *A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1369 (2025). As the *per curiam* opinion stated:

> Although the putative class members may ultimately take different steps to protect their own interests in response to such notice, the notice to which they are entitled

---

[2] To account for ongoing case developments, Rule 23(c)(1)(C) also provides that an order "that grants or denies class certification may be altered or amended before final judgement."

is the same. And because courts may issue temporary relief to a putative class, *see* 2 W. Rubenstein, Newberg & Rubenstein on Class Actions §4:30 (6th ed. 2022 and Supp. 2024), we need not decide whether a class should be certified as to the detainees' due process claims in order to temporarily enjoin the Government from removing putative class members while the question of what notice is due is adjudicated.

We recognize that the Government "has agreed to forgo removing the named petitioners pursuant to the AEA while their habeas proceedings are pending." Opposition to Emergency Application 11. But we reject the proposition that a class-action defendant may defeat class treatment, if it is otherwise proper, by promising as a matter of grace to treat named plaintiffs differently. *Cf. FBI v. Fikre*, 601 U.S. 234, 241 (2024) (explaining that voluntary cessation of challenged conduct does not moot a claim). And we are skeptical of the self-defeating notion that the right to the notice necessary to "actually seek habeas relief," [*Trump v. J. G. G.*, 145 S. Ct. 1003, 1006 (2025)], must *itself* be vindicated through individual habeas petitions, somehow by plaintiffs who have not received notice. 145 S. Ct. at 1369-70.

## C.    Plaintiffs Satisfy Rule All 23(a) Factors

### 1.    The Proposed Class Is Sufficiently Numerous.

Plaintiffs must demonstrate that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although numbers alone are not controlling, "a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." 1 Newberg on Class Actions § 3:12 (5th ed. 2021); *see also Rannis v. Recchia*, 380 Fed. Appx. 646, 651-652 (9th Cir. 2010). "Plaintiffs 'need not state the exact number of potential members nor identify all the members of the class so long as the putative class is not amorphous.'" *Foon v. Centene Mgmt. Co.*,, No. 2:19-cv-01420 AC, 2023 WL 1447922, at *4 (E.D. Cal. Feb. 1, 2023) (quoting *Arnold v. United Artists Theatre Cir., Inc.*, 158 F.R.D. 439, 449 (N.D. Cal. 1994)). As the Complaint alleges, lists compiled by the UC campuses and news media, lists published by Federal Agency Defendants, and the DOGE website itself, demonstrate that the UC research grant terminations number in the hundreds. *See, e.g.*, Compl. ¶¶ 68, 112 n.34. Thus, the proposed Class easily satisfies the numerosity requirement.

### 2.    There Are Common Questions of Law and Fact.

The proposed Class satisfies Rule 23's commonality requirement because its members have suffered the same legal wrongs based on the same allegedly unlawful and unconstitutional course of conduct by Defendants. Class certification is appropriate where there are "'questions of

law or fact common to the class' which are capable of classwide resolution, such that the determination of the truth or falsity of the common issue will 'resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Yates v. NewRez LLC*, 686 F. Supp.3d 397, 404 (D. Md. 2023) (quoting Fed. R. Civ. P. 23(a)(2) and *Dukes*, 564 U.S. at 350). The Rule requires that class members' claims "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution." *Dukes*, 564 U.S. at 350. "What matters to class certification" is "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (citation omitted). Even where there may be factual differences among class members, that does not preclude certification where the class members share the same legal theory. *See, e.g.*, *Xiufang Situ v. Leavitt*, 240 F.R.D. 551, 560 (N.D. Cal. 2007) ("[I]t is sufficient for class members to have shared legal issues but divergent facts.").

Here, Plaintiffs' claims focus *entirely* on Defendants' course of conduct that caused the common, class-wide injuries. As alleged in the complaint, all of the Defendants have terminated grants in similar, categorical, lockstep fashion. *See, e.g.*, Compl. ¶¶ 139-219 (EPA), 245-301 (NEH), 320-55 (NSF), 360-65 (USDA), 366-72 (AmeriCorps), 373-79 (DOD), 380-84 (Education), 385-92 (DOE), 393-407 (HHS), 408-13 (IMLS), 414-18 (DOI), 419-22 (DOS), 423-29 (DOT).

The claims of the Plaintiff Class members share important and indeed pivotal common questions of law and fact, including but not limited to:

> whether the Defendants' actions pursuant to the Executive Orders and directives described in the Complaint are unconstitutional and unlawful exercises of executive power, because they usurp Congress' spending authority and violate the Impoundment Control Act of 1974;

> whether Defendants' actions are unconstitutional because they violate Plaintiff Class members' First Amendment right to free speech and Fifth Amendment right to due process;

> whether Defendants' actions are unlawful because they violate statutes through which Congress has created the defendant agencies and determined their respective functions, purposes, and goals, and statutes through which Congress gives agencies substantive instruction, usurping Congress' legislative authority; and

> whether Defendants' actions are arbitrary and capricious, an abuse of discretion, or otherwise unlawful, in violation of the APA.

Compl. ¶ 69.

To satisfy the commonality requirement, plaintiffs must "demonstrate that the class members have suffered the same injury." *Dukes*, 564 U.S. at 350 (citation omitted). Thus, "commonality requires that the class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke," and the "plaintiff must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (citations omitted), *overruled on other grounds*, *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022). As the Ninth Circuit found in *Parsons v. Ryan*, 754 F.3d 657, 684 (9th Cir. 2014), commonality is satisfied where "[t]he factual and legal questions that [plaintiffs] present can be answered 'yes' or 'no' in one stroke as to the entire class, dissimilarities among class members do not impede the generation of common answers to those questions, and the capacity of classwide proceedings to drive the resolution of this litigation cannot be doubted." In the Ninth Circuit, commonality is satisfied where, as here, Plaintiffs are "challeng[ing] a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001).

Because this "class-wide proceeding [will] generate common answers" to the core conduct questions set forth above, which are "apt to drive the resolution of the litigation," class certification is appropriate. *Dukes*, 564 U.S. at 350 (cleaned up). Plaintiffs allege, and the record supports, that Defendant Trump ordered, authorized DOGE, and commanded the Federal Agency Defendants to implement the mass grant termination action that has injured, and imminently threatens to injure, the Plaintiffs and Class members: their claims all arise from the Defendants' orchestrated course of conduct since January 20, 2025.

### 3.   Plaintiffs' Claims Are Typical of Those of the Class.

Plaintiffs satisfy the Fed. R. Civ. P. 23(a)(3) typicality requirement for the same reasons that they satisfy commonality. "The considerations involved in determining whether plaintiffs meet the commonality, typicality and adequacy of representation prongs. . . are similar and

overlapping." *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 557 (D. Md. 2006) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). To satisfy typicality, "the class representative's claim and defenses must be 'typical of the claims or defenses of the class' in that prosecution of the claim will 'simultaneously tend to advance the interests of the absent class members.'" *Coreas v. Bounds*, Civ. A. Nos. TDC-20-0780, TDC-20-1304, 2020 WL 5593338, at *13 (D. Md. Sept. 18, 2020) (quoting Fed. R. Civ. P. 23(a)(3) and *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006)).

Typicality ensures "the interest[s] of the names representative align [] with the interests of the class." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016) (citation omitted). A claim or defense is not required to be identical, but rather "reasonably co-extensive" with those of absent class members. *Hanlon v. Chrysler Corp.*, 150 F.3d. 1011, 1020 (9th Cir. 1998). "The test of typicality is whether other class members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanlon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted); *see also Ruiz Torres*, 835 F.3d at 1141 (identifying the same as "[m]easures of typicality").

Typicality, like the other Rule 23(a) factors, is not a close call here. As the Declarations of the Plaintiffs and other members of the UC researchers class accompanying the TRO Motion demonstrate, the same course of conduct that injured the Plaintiffs injured all members of the proposed class. The common (and devastating) impact of the "abrupt and unexpected termination of numerous grants" is movingly described in the Declaration of Rena Dorph, Director of the Lawrence Hall of Science at UC Berkeley, filed in support of the TRO motion; and in the Complaint itself.

### 4.    Plaintiffs and Proposed Class Counsel Will Adequately Represent the Class.

Absentee class members must be adequately represented for judgment to be binding upon them. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940). This prerequisite is satisfied if the representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P.

23(a)(4). As the Supreme Court has explained, "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997). Resolution of the adequacy issue requires the Court to address two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023) (quoting *Hanlon*, 150 F.3d at 1020).

Courts engage in two inquiries when evaluating whether the adequacy requirement of Rule 23(a)(4) is satisfied: (1) whether the named plaintiffs "'fairly and adequately protect the interests of the class' without a conflict of interest with the absent class members," *Yates*, 686 F. Supp.3d at 405, and (2) whether class counsel is "qualified, experienced, and capable." Newberg on Class Actions § 3:12.

*First*, the named Plaintiffs have no conflicts of interests with absent Class members because their interests are not antagonistic to one another. Indeed, as discussed above, Plaintiffs' and absent class members' claims rise and fall on the same questions of law and fact. Plaintiffs are committed to the vigorous prosecution of this action, as demonstrated by the accompanying TRO Motion and Plaintiffs' Declarations attached thereto.

*Second*, Plaintiffs have retained highly qualified counsel with extensive experience litigating constitutional claims and complex class actions.

The proposed Class Representatives will fairly and adequately protect the interests of the Plaintiff Class, satisfying Rule 23(a)(4). Their words, and actions, speak to their adequacy. Plaintiffs' Declarations each demonstrate awareness of the role and duties of class representatives, and a willingness—indeed, a dedication—to protect the rights of all UC researcher class members. None of them seek only their own grants' restoration. All of them have devoted substantial time and effort to developing and bringing this action, and have no interest that is now or may be potentially antagonistic to the interests of the UC researchers class they have devoted themselves to represent.

As set forth in Section V below, the attorneys representing the proposed UC researchers Class include civil rights, constitutional, and class action attorneys with decades of experience in their respective fields, scores of court appointments as class counsel in federal litigation in courts across the nation, and extensive experience in prosecuting and trying complex cases. These attorneys may and should be appointed as class counsel in this action.

### D.    Plaintiffs Satisfy Rule 23(b)(2)

Rule 23(b)(2) authorizes class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The fundamental focus of a Rule 23(b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted." *Dukes*, 564 U.S. at 360 (citation omitted). And actions "alleging systemic administrative failures of government entities," as here, "are frequently granted class action status under Rule 23(b)(2)." *Shakhnes ex rel. Shakhnes v Eggleston*, 740 F. Supp. 2d 602, 628 (S.D.N.Y. 2010) (collecting cases), *aff'd in part, vacated in part on other grounds sub nom. Shakhnes v. Berlin*, 689 F.3d 244 (2d Cir. 2012); *see also Goodlaxson v. Mayor & City Council of Baltimore*, Civil No. JKB-21-1454, 2025 WL 90034, at *5 (D. Md. Jan. 13, 2025); *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-BEM, 2025 WL 1142968, at *19 (D. Mass. Apr. 18, 2025) ("In sum, Plaintiffs challenge a policy or practice that impacts all putative class members . . . . In doing so, Plaintiffs seek injunctive and declaratory relief that applies to the class as a whole, satisfying Rule 23(b)(2)."); *see also Scholl v. Mnuchin*, 489 F. Supp. 3d 1008, 1046 (N.D. Cal. 2020) ("Plaintiffs assert that Rule 23(b)(2) is met [ ] because defendants implemented a generally applicable policy of denying CARES Act payments to incarcerated persons. . . . The court agrees with plaintiffs that defendants' policy is generally applicable to the class as a whole.").

Here, Defendants' misconduct injured the Class as a whole and gives rise to the constitutional and other claims brought in this lawsuit. Plaintiffs' requested remedies, in turn, are wholly focused on declaratory and injunctive relief, and aimed at stopping and reversing the unconstitutional actions by Defendants. Thus, "declaring the [Defendants' actions] invalid and

1   preventing the defendants from requiring [ ] implementation" of their unconstitutional decisions

2   will "'provide the same relief to all class members.'" *Planned Parenthood of Md., Inc. v. Azar*,

3   Civ. No. CCB-20-00361, 2020 WL 3893241, at *7 (D. Md. July 10, 2020) (quoting *Healthy*

4   *Futures of Tex. v. Dep't of Health & Human Servs.*, 326 F.R.D. 1, 8 (D.D.C. 2018)); *see also*

5   *Lyon v. U.S. Immigr. & Customs Enf't*, 308 F.R.D. 203, 214 (N.D. Cal. 2015) (certifying a Rule

6   23(b)(2) class where "Plaintiffs do not seek individualized relief for each class member, but rather

7   ask for systemic changes consistent with a single overarching constitutional standard that will be

8   applicable to all class members"); *Coreas*, 2020 WL 5593338, at *15 (rejecting the defendants'

9   argument against certification that "different subsets of putative class members may be entitled to

10  relief where others would not" because "there is available relief that would benefit the entire class

11  or an entire subclass") (citation omitted).

12  **V.      Class Counsel Should Be Appointed Under Rule 23(g)**

13       Rule 23(g) requires the Court to appoint class counsel at the time of class certification. In

14  doing so, the Court must consider the work done by counsel in identifying or investigating

15  potential claims in the action; counsel's class action, complex litigation, and subject matter

16  experience, counsel's knowledge of the applicable law, and the resources counsel will commit to

17  represent the class. *See* Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

18       Here, the undersigned counsel spent several months in investigating this case and

19  identifying the claims, as evidenced by the level of detail in the accompanying Class Action

20  Complaint, and the papers (including the evidentiary declarations by the Plaintiffs and class

21  members) submitted in connection with the TRO Motion.

22       The undersigned proposed class counsel include Claudia Polsky, a Berkeley Law faculty

23  member with extensive APA experience; Erwin Chemerinsky, the Dean of Berkeley Law and

24  preeminent Constitutional scholar, teacher, and advocate; named partners Elizabeth J. Cabraser

25  and Richard M. Heimann of Lieff Cabraser Heimann & Bernstein LLP, each with approximately

26  50 years of class action experience and success in this court, and in federal courts around the

27  county; Lieff Cabraser partner Kevin R. Budner, an accomplished and well respected litigator in

28  this District and around the country; and Anthony P. Schoenberg of Farella Braun + Martel LLP,

1    a highly regarded complex litigator in the federal courts. The qualifications and experience of

2    these counsel are summarized in the accompanying Declaration of Elizabeth J. Cabraser. These

3    counsel have made this case a priority matter; they have and will continue to devote their

4    collective efforts and resources to its prosecution, in the interests of the UC researchers

5    themselves, and to preserve a cherished public university system that produces research from

6    which all Californians, the Nation, and indeed the world, benefit immeasurably. Counsel will

7    continue to diligently prosecute this case to protect the UC researchers and to secure and sustain

8    the rule of law.

9    **VI.    <u>CONCLUSION</u>**

10         For all of these reasons, Plaintiffs respectfully request that the Court grant their motion,

11   certify the UC Researchers Class, appoint the named Plaintiffs as Class Representatives, and

12   appoint Class Counsel as requested above.

13

14   Dated: June 5, 2025                    By:    */s/ Elizabeth J. Cabraser*

15

16                                         Erwin Chemerinsky (*pro hac vice* forthcoming*)*
                                           echemerinsky@law.berkeley.edu
17                                         Claudia Polsky (CA Bar No. 185505)
                                           cpolsky@law.berkeley.edu
18                                         U.C. BERKELEY SCHOOL OF LAW
                                           Law Building
19                                         Berkeley, CA 94720-7200
                                           Telephone: 510.642.6483

20                                         Elizabeth J. Cabraser (CA Bar No. 83151)
                                           ecabraser@lchb.com
21                                         Richard M. Heimann (CA Bar No. 63607)
                                           rheimann@lchb.com
22                                         Kevin R. Budner (CA Bar No. 287271)
                                           kbudner@lchb.com
23                                         Annie M. Wanless
                                           awanless@lchb.com (CA Bar No. 339635)
24                                         LIEFF CABRASER HEIMANN &
                                           BERNSTEIN, LLP
25                                         275 Battery Street, 29th Floor
                                           San Francisco, CA 94111
26                                         Telephone: 415.956.1000

27                                         [*con't next page*]

28

3246031.6                    - 15 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Anthony P. Schoenberg (CA Bar No. 203714)
tschoenberg@fbm.com
John J. Darin (CA Bar No. 323730)
jdarin@fmb.com
Katherine T. Balkoski (CA Bar No. 353366)
kbalkoski@fbm.com
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, CA 94104
Telephone: 415. 954.4400

*Attorneys for Plaintiffs and the Proposed Class*

1

**CERTIFICATE OF SERVICE**

2      I hereby certify under penalty of perjury that on June 5, 2025, I authorized the

3 electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which

4 will send notification of such filing to registered parties.

5      Executed June 5, 2025, at San Francisco, California.

6

7                                          */s/ ELIZABETH J. CABRASER*
ELIZABETH J. CABRASER

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
AND MPA IN SUPPORT
Case No. 3:25-CV-4737