**Pages 1 - 18**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Rita F. Lin, Judge

```
NEETA THAKUR, on behalf of     )
themselves and all others      )
similarly situated,            )
                               )
          Plaintiffs,          )
                               )
   VS.                         )   NO. 3:25-cv-04737-RFL
                               )
DONALD J. TRUMP, in his        )
official capacity as President )
of the United States, et al., )
                               )
          Defendants.          )
_____)
```

San Francisco, California
Monday, June 9, 2025

**TRANSCRIPT OF REMOTE VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES**: (Appearances via Zoom.)

For Plaintiffs:
                      LIEFF, CABRASER, HEIMANN
                         & BERNSTEIN LLP
                      275 Battery Street - 29th Floor
                      San Francisco, California 94111
              BY: **ELIZABETH J. CABRASER, ATTORNEY AT LAW**
                   **RICHARD M. HEIMANN, ATTORNEY AT LAW**
                   **KEVIN R. BUDNER, ATTORNEY AT LAW**

                      FARELLA, BRAUN & MARTEL LLP
                      One Bush Street - Suite 900
                      San Francisco, California 94104
              BY: **ANTHONY P. SCHOENBERG, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported Remotely By: Ruth Levine Ekhaus, RMR, RDR, FCRR, CCG
                      Official Reporter, CSR No. 12219

**APPEARANCES:  (CONTINUED)**

For Plaintiffs:
>UC BERKELEY SCHOOL OF LAW
>ENVIRONMENTAL LAW CLINIC
>434 Boalt Hall (North Addition)
>Berkeley, California 94720
>BY:  **CLAUDIA POLSKY, ATTORNEY AT LAW**

For Defendants:
>DEPARTMENT OF JUSTICE
>Civil Division
>950 Pennsylvania Avenue NW
>Washington, D.C. 20530
>BY:  **JASON K. ALTABET, TRIAL ATTORNEY**

|    |                                                                      |
|----|----------------------------------------------------------------------|
| 1  | <u>Monday - June 9, 2025</u>                          11:09 a.m.     |
| 2  |       <u>P R O C E E D I N G S</u>     |
| 3  |        ---o0o---                  |

1  <u>Monday - June 9, 2025</u>                                    11:09 a.m.

2                              P R O C E E D I N G S

3                                    ---o0o---

4          **MR. ALTABET:** The United States District Court for the

5  Northern District of California is now in session. The

6  Honorable Rita F. Lin presiding.

7          Just a reminder to everyone before we get started,

8  these proceedings are being reported and recorded by this

9  Court, any other recording of this proceeding either by video,

10 audio, including screen shots, or other copying of the hearing,

11 is strictly prohibited.

12         Calling Civil Case 25-4737, Thakur, et al., versus

13 Trump, et al.

14         Counsel, please state your appearances for the record,

15 beginning with the plaintiffs.

16         **MS. CABRASER:** Good morning, Your Honor. Elizabeth

17 Cabraser of Lieff Cabraser Heimann & Bernstein for the Thakur

18 plaintiffs.

19         **MR. HEIMANN:** Good morning, Your Honor. Richard

20 Heimann, also from Lieff Cabraser.

21         **MR. BUDNER:** Good morning, Your Honor. Kevin Budner

22 also from Lieff Cabraser.

23         **MR. SCHOENBERG:** Good morning, Your Honor. Tony

24 Schoenberg from Farella, Braun & Martell for the plaintiffs.

25         **MS. POLSKY:** Good morning, Your Honor. Claudia Polsky

1  from U.C. Berkeley School of Law also for the plaintiffs.
2  **MR. ALTABET:**  Good morning, Your Honor.  Jason Altabet
3  on behalf of the United States.
4  **THE COURT:**  Good morning to all of you.  And thank you
5  for your submission earlier this morning of the stipulation and
6  proposed order which addresses one of the main scheduling
7  concerns that I wanted to discuss today.  I appreciate that you
8  all are already working hard and working together to make this
9  run smoothly; so thank you for that.
10         Before we get too far down the road, I did have a
11 disclosure I wanted to make.  I do have a relative who teaches
12 in the University of California system who might potentially be
13 a member of a proposed class.
14         Prior to class certification, the rules are very clear
15 that this would obviously not be a basis for recusal.
16 Obviously, this comes up frequently in the class action context
17 that members of the judge's family may be members of a proposed
18 class, and so I am not recusing on that basis.
19         In the event that I do certify a class, I would
20 exclude that person from the scope of the class which, again
21 should obviate the issue.  But I -- out of an abundance of
22 caution, I just wanted to disclose it to the parties so you
23 know about it.
24         **MS. CABRASER:**  Your Honor -- I'm sorry.  Go ahead.
25         **THE COURT:**  Please, go ahead.

1        **MS. CABRASER:**  Apologies for interrupting the Court.

2        We certainly recognize that situation.  It does come
3   up not infrequently, and typically the solution is to exclude
4   interested persons or relatives from the class; and always, of
5   course, to exclude judicial officers and their staff members
6   from the class.

7        **THE COURT:**  Exactly.  My point is to just follow that
8   standard practice.

9        So just moving to the next topic I wanted to cover, I
10  intend to grant the stipulation that you all submitted with
11  respect to the case schedule.  I'm also granting the
12  plaintiffs' request for 50 pages for the TRO motion that you
13  filed.  That's fine.  I'm going to set the opposition page
14  limit at 50 pages also for the response, and the reply at
15  30 pages.  Obviously, there's a lot of complex issues in this
16  case, and I want to make sure you all get a full and fair
17  hearing on those.  And otherwise, I'll set the schedule that
18  you all proposed.

19       The next topic I wanted to discuss was the question of
20  fact development and whether it would make sense for the Court
21  to order some kind of expedited production of a limited portion
22  of the administrative record, whether there's other fact
23  development on the non-APA claims that the parties believe
24  should be expedited in some way.  So I'm open to hearing from
25  the parties on the proposal on that.

1        I'll start with plaintiffs, and then I can hear from
2  the Government.
3        **MS. CABRASER:**  Thank you, Your Honor.  Mr. Heimann
4  will address that issue.
5        **MR. HEIMANN:**  Thank you, Elizabeth.
6        Your Honor, we actually have not had any in-depth
7  discussion as yet with the Government over the question of
8  early discovery.  The issue was raised -- and I think the way
9  you framed it in your initial order was whether or not the
10 parties believed that discovery is necessary to a resolution of
11 the injunction issues.
12       And I think our position was that it's probably not
13 necessary, but might very well be helpful to the Court.  And
14 with that in mind, we tried, on the plaintiffs' side, to
15 fashion a limited form of discovery that might be useful; and I
16 can outline the contours of that if that would be helpful.
17       **THE COURT:**  Yes, please.
18       **MR. HEIMANN:**  Good.
19       So -- and first off, we would contemplate limiting our
20 discovery to four agencies, rather than the some 15 or so that
21 are in play in the complaint.  And those four would be the
22 three that are identified and discussed in some detail in the
23 complaint, and also the FDA which is discussed in the motion
24 for preliminary injunction -- or TRO as it was.  So that would
25 be the first limitation.

1    The second limitation is that -- a matter of time.
2 We're talking about a period of roughly three to three and a
3 half months that are critical, beginning with the obvious
4 inauguration date of January 20, if I've got that correct in
5 mind.  So that would be a second limitation on the scope of the
6 discovery.
7    And then what we would be focusing on in terms of
8 document discovery would be the obvious; that is to say, the
9 documents within each agency that reflect the process that was
10 engaged in selecting grants for review, and then the process
11 that was engaged in for the decision-making about cancelling of
12 the grants.
13    In addition to those two areas, we would also be
14 looking to discover the communications, if any, between each of
15 the agencies and DOGE, with respect to the subject matter in
16 question, and also communications between the each of the
17 agencies and the White House, if there were any, with respect
18 to the executive orders and with respect to the subject matter
19 of the cancellation.
20    Beyond that, we had contemplated the possibility of a
21 30(b)(6) deposition for each of the agencies, but I'm thinking
22 that it might be wiser to hold off on our requesting that until
23 we see what the documents show with respect to the
24 decision-making process, and how detailed the documentation is,
25 to allow us to understand exactly what happened with respect to

each of the agencies and the cancellation of the grants.

So that's -- that's an outline, if you will, of the scope of discovery that we were thinking about. Since we haven't talked with the Government about it, we have no idea, although I can anticipate what their reaction will be, but I would be hopeful, given the limitations on the discovery that we're talking about, that if Your Honor were to grant it, it would be on a very short time frame; that is to say, we're talking about documents that we imagine are very limited in terms of numbers and scope.

We anticipate that the personnel at each of the agencies that was involved in this matter is going to be limited as well, and so one would hope that the documents we're talking about could be promptly produced if Your Honor were to order them to produce the documents.

**THE COURT:** Let me hear from the Government and your thoughts.

**MR. ALTABET:** So, Your Honor, I guess, just to start, I think the point that plaintiffs were not originally necessarily contemplating discovery when they filed the motion, I think, is a helpful frame here when we think about, you know, opposition is due on Thursday and hearing is a week from Friday. It's a long complaint with a lot of documents and a very long motion for TRO and motion for class certification.

I don't think the issues that are in play for the

1  emergency motion require any of this discovery.  So Your Honor
2  pointed out two topics:  A procedure for termination and the
3  effect of the executive orders.
4     The Government, in the emergency motion context, is
5  not planning to contest the idea that policy priorities are
6  setting termination decisions.  And so I think that's -- this
7  case is being litigated on the basis that agency funding
8  priorities have changed in part based on executive orders; and
9  some of the documents they've submitted reference the executive
10 order specifically, and that the Government is generally
11 terminating grants pursuant to the termination regulations and
12 the terms and conditions of contracts or for government
13 convenience.
14     So I don't know that any of the discovery discussed
15 would actually affect the legal history here, especially the
16 threshold legal issues like whether plaintiffs lack standing,
17 whether the Court of Federal Claims is the proper venue for
18 this, and the other generalized legal arguments there.
19     So I think, just to start, that -- the emergency
20 motions itself in the complaint don't seem to necessarily
21 contemplate the need for discovery on this timeline.
22     I'll also add that given that this is generally
23 understood as an administrative record case, I think, if there
24 were to be any discovery, it would be for a very limited
25 portion of the administrative record.  And I think it really

1  should just be based on how this case is being litigated right
2  now just as to the named plaintiffs.
3          I think, at this juncture, what we can wrap our heads
4  around and what we can wrap our hands around is the grant
5  decisions as to the six named plaintiffs who plaintiffs have
6  alleged are common and typical to a larger class.  And so I
7  don't think, generally looking at three to three and a half
8  months of documents within an agency on sort of generalized
9  grounds is going to be particularly helpful here.
10         And I'll just conclude that I don't think that
11 communications from folks in the White House are part of
12 plaintiffs' claims in a way where such discovery would make
13 sense.  As I sort of previously discussed, I think the idea
14 that policy priorities are setting terminations is uncontested
15 at this juncture, and so I don't see how that would actually
16 affect at least any of the relief plaintiffs are asking for
17 which is for certain grant agreements to be sort of
18 specifically enforced against the Government.
19         **THE COURT:**  One question I have for Mr. Altabet is:  I
20 hear you saying that the Government doesn't intend to contest
21 that grant priorities are what drove the termination decisions
22 in this case; but, of course, some of the claims are based on
23 the concept that there were specific priorities that were
24 driving the termination decisions as to specific grants
25 involving the named plaintiffs, for example First Amendment

1   claim alleging that there was viewpoint discrimination in the
2   selection of certain grants for termination.
3          At the same time, the termination letters don't
4   necessarily specify what the reason was specifically other than
5   to say, just in general, that the grant was not found to match
6   agency priorities.
7          So in assessing that claim, it seems to me, both from
8   a preliminary injunction perspective and a class certification
9   perspective, useful to understand what the process is for the
10  Government to make these decisions about which grants were
11  terminated and why.
12         So maybe that is part of the administrative record;
13  that is, the Government's record of its decision-making as to
14  whether it terminated particular individual grants, whether
15  there was a memo or some other mechanism for tracking who was
16  terminated for what reason.  That seems to me like something
17  that it should be -- unless you don't plan to contest that;
18  unless you plan to agree that these were terminated based on --
19  or stipulate that certain grants were terminated based on
20  particular executive orders.  Then that would obviate the
21  discovery in that instance.
22         But if you're not planning to stipulate on that, it
23  seems that it would be useful at least to have the
24  administrative record that ties the particular terminations for
25  the named plaintiffs, at the very least, to the reasons for

1  those terminations, and to the particular executive orders at
2  issue, and what the general process was so I could see if
3  that's a classwide issue or not.
4       So I'm curious to hear what your response to that is,
5  and if the Government is indeed intending to contest those
6  sorts of questions.
7       **MR. ALTABET:** So at the emergency motion context, my
8  understanding -- I'm in the middle of writing the brief and
9  there's only been one business day since the TRO was sent to in
10 the agencies, so I'm still collecting responses.
11      But as of now, our plan is to argue, as we have in the
12 lot of grant-funded cases where there has not been discovery at
13 the PI phase, is that the Government is permitted to select
14 grants based on what the Government wants to promote and not
15 promote.  So I don't think our legal argument is based on
16 saying any particular grant -- you know:  Oh, well, this one
17 over here wasn't for viewpoint, it was for this, versus that.
18      I think we're saying that the Government is permitted
19 to say it wants to promote something that is in one executive
20 order; and maybe an executive order says we don't want to
21 promote something else.  And I think at least one or more of
22 the named plaintiffs' grant termination notices references
23 executive orders for purposes of that.
24      So I don't think on the way this is being litigated,
25 at this juncture, it's necessary.  Our argument is we're

1    allowed to decide on promotion.
2         **THE COURT:**  And if I were to disagree with that
3    argument, you're not intending to, then, present an argument
4    that there's a question as to whether -- or that plaintiffs
5    have somehow failed their burden to show that these particular
6    grant terminations were based on the executive orders that are
7    listed in the complaint.
8         **MR. ALTABET:**  Our plan is to note that these executive
9    orders are setting policy priorities for the Executive Branch
10   and that the Federal Government has the right to rely on those
11   policy priorities when terminating.
12        So I think that answers Your Honor's question, which
13   is -- I think, later on, outside of this context, maybe, if
14   there is, in fact, a class certified or we're discussing
15   commonality or typicality, maybe at that point we're discussing
16   how many were due to one thing versus another thing.
17        And that, in part, I think, will depend on
18   Your Honor's view over whether -- which claims could survive in
19   this context at all.  If, for example, only the First Amendment
20   claim were to survive, or Your Honor thinks that's the only one
21   likely to succeed, then probably we need to discuss:  Okay.
22   Well, let's look at the process and see which ones were
23   terminated based on that -- a method that Your Honor has
24   concluded is likely to succeed on the method -- on the merits,
25   if that makes sense.

1     **THE COURT:** So I just want to make sure I understand
2 the Government's position.
3     So at the preliminary injunction phase, it is not the
4 Government's intention to argue that the plaintiffs are
5 unlikely to succeed because they haven't shown that these
6 particular terminations are the result of the agency priority
7 changes described in the executive order cited in the
8 complaint.
9     Is that accurate?
10     **MR. ALTABET:** Yes. We are planning to agree that
11 certain -- that some -- one or more grants from plaintiffs or
12 the plaintiffs' class were based on these policy priorities,
13 including what's set up in the executive orders; and, in fact,
14 we'll cite the executive orders noting the policy priorities.
15     **THE COURT:** Thank you. That helps clarify and, maybe,
16 take a little bit of the time pressure off in terms of early
17 fact development.
18     Let me give Mr. Heimann an opportunity to respond if
19 there's anything else you think I should know or whether you
20 think I should set a date for the parties to make a proposal
21 for early fact development. And maybe it's not fact
22 development that has to happen at the preliminary injunction
23 stage, but rather that the Court should put the case on a --
24 more of an accelerated timeline as we head into the regular
25 merits stage of the case.

1  **MR. HEIMANN:** I don't know that I have anything more
2  to add other than the suggestion that it might be useful, now
3  that we've finalized or prioritized what we think use useful
4  discovery to be, to have a conversation with the Government
5  over what that would mean if, in fact, Your Honor where were to
6  direct them to respond to what we're talking about in terms of
7  discovery. And I'm hopeful that we could have that
8  conversation today or tomorrow, and maybe make some progress
9  and report back to the Court then.
10  **THE COURT:** That sound great.
11  What does the Government think about that timeline?
12  **MR. ALTABET:** I think it would be helpful to discuss
13  with plaintiffs today and tomorrow what sort of -- yeah -- any
14  discovery would look like.
15  I think, the one request I would have, if Your Honor
16  could provide guidance on whether you agree with the view that
17  three or four agencies would be the focus of any early
18  discovery, whether in the preliminary injunction phase or
19  otherwise, the ones that we have sort of fully developed claims
20  for, that is EPA, NEH, NSF, and then the one declaration
21  related to FDA.
22  I do think, to the extent that's early discovery,
23  keeping it manageable in that way would be, I think, of a great
24  help in helping to frame the legal issues here.
25  **THE COURT:** I think that that's makes sense in

1   limiting it in the way that plaintiffs have proposed,
2   especially if the plan is to get the discovery done prior to
3   the June 20th hearing date.  So we'd be looking at producing
4   the discovery June 16th or maybe 17th at the latest.  So it's a
5   quick turnaround in order for you all to be able to look at it
6   and provide it to the Court.
7           But maybe there's a way to do it that's more limited,
8   more like a limited administrative record-type of discovery or
9   a little bit beyond that.  But I'll let you all meet and confer
10  about that.
11          Why don't you submit a stipulation and proposed order
12  to me about discovery by Wednesday, June 11th.  And then, I can
13  order it, but be prepared that it will be on a short timeline.
14  We'll try and look at it as soon as we get it.
15          **MR. ALTABET:**  And, Your Honor, can I ask one more
16  question?
17          Based on the discussion so far, I -- what would be the
18  topic of the discovery?
19          So assuming that the Government does not contest that
20  policy priorities are being set for the purpose of the
21  viewpoint portion, I'm not sure what else that plaintiffs have
22  discussed would be worth doing discovery for before the
23  preliminary injunction.
24          So I know there's a stipulation -- the Government
25  might oppose discovery, that is to say, and not have a

1  stipulation.
2      **THE COURT:**  Part of the question I have is whether I
3  have enough to assess class certification as to the non-APA
4  claims.  I understand the argument about class certification as
5  to arbitrary and capricious, that these are all sort of similar
6  in that the termination form letter seemed quite similar.  But
7  I have a question as to the decision-making process and to
8  determining who is in and out of the class as to the non-APA
9  claims, for example, the First Amendment claim.
10         So I am curious to see what the parties have to
11 provide the Court about the -- the way in which we would know
12 which plaintiffs are in or -- which putative class members are
13 in or out of the class on the First Amendment claim, or what
14 the processes were for determining who in the -- in the group
15 of folks who had grants were and weren't terminated for reasons
16 that were associated with the executive priorities.
17         I think that might be helpful, but I'm not sure it's
18 necessary for the reasons that you all have identified.
19         I will say that if you don't have a stipulation and
20 proposed order on Wednesday you can also submit a joint
21 statement with each of your proposals for the Court, and I'll
22 just rule on the papers in terms of what discovery is
23 appropriate.
24         Anything else I can address for the parties before we
25 conclude today?  I'll start with the plaintiffs and then I'll

1  give the Government an opportunity.
2  **MR. HEIMANN:**  Just a quick question on procedure.
3  What time on Wednesday should we be submitting?  I have your
4  standing order.  I think, it's 5:00.
5  **THE COURT:**  5:00 is my normal deadline standing order.
6  **MR. HEIMANN:**  All right.  Fine.  Thanks.
7  **MS. CABRASER:**  And I think that's it on behalf of
8  plaintiffs, Your Honor, other than to note that service of
9  process has gone out pursuant to the summons as soon as the
10  summons was issued.  That was -- was set in motion and all
11  documents have been -- are out for service on all of the
12  defendants.
13  **THE COURT:**  I did see that.  Thank you for the update.
14  **MR. ALTABET:**  Nothing else from the Government,
15  Your Honor.
16  **THE COURT:**  Great.  Thank you.  Be well.
17  **MR. ALTABET:**  Court is in recess.
18          (Proceedings adjourned at 11:31 a.m.)
19                  ---o0o---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:    Monday, June 9, 2025

_____
Ruth Levine Ekhaus, RMR, RDR, FCRR, CCG, CSR No. 12219
Official Reporter, U.S. District Court