1  Erwin Chemerinsky (*pro hac vice*)
   echemerinsky@law.berkeley.edu
2  Claudia Polsky (CA Bar No. 185505)
   cpolsky@law.berkeley.edu
3  U.C. BERKELEY SCHOOL OF LAW
   Law Building
4  Berkeley, CA 94720-7200
   Telephone: 510.642.6483
5
   Elizabeth J. Cabraser (CA Bar No. 83151)
6  ecabraser@lchb.com
   Richard M. Heimann (CA Bar No. 63607)
7  rheimann@lchb.com
   LIEFF CABRASER HEIMANN &
8  BERNSTEIN, LLP
   275 Battery Street, 29th Floor
9  San Francisco, CA 94111
   Telephone: 415.956.1000
10
   Anthony P. Schoenberg (CA Bar No. 203714)
11 tschoenberg@fbm.com
   FARELLA BRAUN + MARTEL LLP
12 One Bush Street, Suite 900
   San Francisco, CA 94104
13 Telephone: 415. 954.4400

14 *Attorneys for Plaintiffs and the Proposed Class*
   [Additional counsel listed on signature page]
15

16                    **UNITED STATES DISTRICT COURT**

17                    **NORTHERN DISTRICT OF CALIFORNIA**

18

19 | NEETA THAKUR, KEN ALEX, NELL GREEN NYLEN, ROBERT HIRST, CHRISTINE PHILLIOU, and JEDDA FOREMAN, on behalf of themselves and all others similarly situated, | Case No. 3:25-cv-4737 |
|---|---|
| Plaintiffs, | **JOINT STATEMENT REGARDING INITIAL EXPEDITED DISCOVERY** |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States; DEPARTMENT OF GOVERNMENT EFFICIENCY ("DOGE"); AMY GLEASON, in her official capacity as Acting Administrator of the Department of Government Efficiency; NATIONAL SCIENCE FOUNDATION; | |
| [*caption cont'd next page*] | |

| | |
|---|---|
| 1 | |
| 2 | BRIAN STONE, in his official capacity as Acting Director of the National Science Foundation; |
| 3 | NATIONAL ENDOWMENT FOR THE HUMANITIES; |
| 4 | MICHAEL MCDONALD, in his official capacity as Acting Chairman of the National |
| 5 | Endowment for the Humanities; |
| 6 | UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; |
| 7 | LEE ZELDIN, in his official capacity as Administrator of the U.S. Environmental Protection Agency; |
| 8 | UNITED STATES DEPARTMENT OF AGRICULTURE; |
| 9 | BROOKE ROLLINS, in her official capacity as Secretary of the U.S. Department of Agriculture; |
| 10 | AMERICORPS (a.k.a. the CORPORATION FOR NATIONAL AND COMMUNITY |
| 11 | SERVICE); |
| 12 | JENNIFER BASTRESS TAHMASEBI, in her official capacity as Interim Agency Head of AmeriCorps; |
| 13 | UNITED STATES DEPARTMENT OF DEFENSE; |
| 14 | PETE HEGSETH, in his official capacity as Secretary of the U.S. Department of Defense; |
| 15 | UNITED STATES DEPARTMENT OF EDUCATION; |
| 16 | LINDA MCMAHON, in her official capacity as Secretary of the U.S. Department of Education; |
| 17 | UNITED STATES DEPARTMENT OF ENERGY; |
| 18 | CHRIS WRIGHT, in his official capacity as Secretary of Energy; |
| 19 | UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; |
| 20 | ROBERT F. KENNEDY, JR., in his official capacity as Secretary of the U.S. Department of |
| 21 | Health and Human Services; |
| 22 | UNITED STATES CENTERS FOR DISEASE CONTROL; |
| 23 | MATTHEW BUZZELLI, in his official capacity as Acting Director of the Centers for Disease Control; |
| 24 | UNITED STATES FOOD AND DRUG ADMINISTRATION; |
| 25 | MARTIN A. MAKARY, in his official capacity as Commissioner of the Food and Drug |
| 26 | Administration; |
| 27 | UNITED STATES NATIONAL INSTITUTES OF HEALTH; |
| 28 | JAYANTA BHATTACHARYA, in his official capacity as Director of the National Institutes of |

| | |
|---|---|
| 1 | Health;<br>INSTITUTE OF MUSEUM AND LIBRARY |
| 2 | SERVICES;<br>KEITH SONDERLING, in his official capacity |
| 3 | as Acting Director of the Institute of Museum<br>and Library Services; |
| 4 | UNITED STATES DEPARTMENT OF THE<br>INTERIOR; |
| 5 | DOUG BURGUM, in his official capacity as<br>Secretary of the Interior; |
| 6 | UNITED STATES DEPARTMENT OF STATE;<br>MARCO RUBIO, in his official capacity as |
| 7 | Secretary of the U.S. Department of State;<br>DEPARTMENT OF TRANSPORTATION; |
| 8 | SEAN DUFFY, in his official capacity as<br>Secretary for the U.S. Department of |
| 9 | Transportation, |
| 10 | Defendants. |

# JOINT STATEMENT REGARDING INITIAL EXPEDITED DISCOVERY

Pursuant to the Court's request at the June 9, 2025 status conference, the Parties hereby submit this Joint Statement Regarding Initial Discovery.

The Parties met and conferred on June 10 and June 11, 2025. As described in Section I below, the Parties were unable to agree as to whether limited discovery should be ordered at this stage of the litigation. However, if the Court concludes limited initial discovery would aid review of the case, the Parties have agreed to a process for production or disclosure of relevant information by June 17, 2025. This process is described in Section II.

## I.   Whether to Allow Discovery

**Plaintiffs' Position:**

Plaintiffs maintain that the moving papers and evidence therein are sufficient to grant emergency relief on all claims. Plaintiffs understand and agree with the Court, however, that additional immediate factual development could be valuable, particularly for class certification. As just one example, in the most recent meet-and-confer, Defendants explained they intend to challenge commonality and typicality under Rule 23(a) based on the argument that different grants were terminated pursuant to different policies and different executive priorities. In this context, limited discovery targeting the "the process . . . for the Government to make the[] decisions about which grants were terminated and why" (June 9 Hr'g Tr. at 11:9-11) will likely be informative.

It is also easy to get. As detailed in section II, below, the Government agrees that the targeted discovery plan that the Parties have negotiated (assuming any discovery is authorized) "is feasible and will allow for production of materials by June 17, 2025." In other words, the discovery is relevant, and the burden is minimal.

Notwithstanding this agreement, the Government asserts below the standard objections it makes in all such cases. This litany misses the mark and ignores the circumstances of this case. As Defendants acknowledge, the Court has broad discretion to manage discovery, including authority to expedite discovery. *See* Fed. R. Civ. P. 26(d)(1). While expedited discovery requires a showing of good cause, *see Citibank, N.A. v. Mitchell*, 2024 WL 4906076, at *6 (N.D. Cal.

Nov. 26, 2024), that standard is easily met here. Indeed, though not automatic, "[g]ood cause for expedited discovery is frequently found in cases where the plaintiff seeks a preliminary injunction." *Najafi v. Pompeo*, 2019 WL 5423467, at *2 (N.D. Cal. Oct. 23 2019) (cleaned up, citation omitted). This is particularly true considering "the breadth of the requested discovery, the purpose for the requested discovery, [and] the burden on the defendants." *Citibank*, 2024 WL 4906076 at *6. Here, Plaintiffs have agreed to very targeted "sufficient to show" discovery regarding the grant termination decision-making process for a subset of agencies that the Government agrees it can readily produce in less than a week.

With this in mind, the Court can and should order the limited, expedited discovery to advance this case as quickly and fairly as possible given the important interests at stake.

**Defendants' Position:**

The standard operating procedure in a challenge to decisions made by administrative agencies is well established. After the defendants are served, and after they have had an opportunity to litigate threshold issues such as standing and reviewability, the defendants lodge an administrative record justifying their decision, and the Court evaluates whether those decisions comply with relevant law and process. On occasion, plaintiffs seek preliminary, emergency relief, but that consideration must still mirror the rules and standards that govern Plaintiffs' merits claims. Discovery is not permitted at all in such cases unless narrow, circumscribed exceptions apply. And *expedited* discovery, which is exceedingly rare even in civil litigation contexts where discovery more generally is the norm, is almost unheard of.

Defendants object that no discovery should be permitted and expedited discovery particularly so.

*First* there should be no discovery here. A "court reviewing agency action under the APA must limit its review to the administrative record." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014). Judicial review based on the administrative record remains the rule even if a plaintiff brings ultra vires constitutional claims. *See FCC v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 469 (1984) (appellate court may "fairly [] evaluate" a claim of *ultra vires* agency action on direct review under the APA); *see also, e.g., Bellion Spirits, LLC v.*

1  *United States*, 335 F. Supp. 3d 32, 43 (D.D.C. 2018), *aff'd*, 7 F.4th 1201 (D.C. Cir. 2021); *Arnott
2  v. U.S. Citizenship & Immigr. Servs.*, No. 10-cv-1423, 2012 WL 8609607, at *1 (C.D. Cal. Oct.
3  10, 2012); *Air Brake Sys., Inc. v. Mineta*, 202 F. Supp. 2d 705, 710 (E.D. Mich. 2002), *aff'd*, 357
4  F.3d 632 (6th Cir. 2004).

5  When a plaintiff invokes both the APA and ultra vires causes of action, a court should first
6  consider the plaintiff's APA claim, *see Chamber of Com. v. Reich*, 74 F.3d 1322, 1326–27 (D.C.
7  Cir. 1996), and reach the constitutional question only if necessary, *see, e.g., Regents of U. of Cal.
8  v. Bakke*, 438 U.S. 265, 380 (1978). Even then, the court's review should be confined to the
9  administrative record, otherwise "[t]he APA's restriction of judicial review to the administrative
10 record would be meaningless if any party seeking review based on . . . constitutional deficiencies
11 was entitled to broad-ranging discovery." *Harvard Pilgrim Health Care v. Thompson*, 318 F.
12 Supp. 2d 1, 10 (D.R.I. 2004).

13 The Ninth Circuit has expressly held that a district court may look beyond the
14 administrative record and consider extra-record evidence on review of several factors: "(1) if
15 admission of additional evidence is necessary to determine whether the agency has considered all
16 relevant factors and has explained its decision," "(2) if the agency has relied on documents not in
17 the record," "(3) when supplementing the record is necessary to explain technical terms or
18 complex subject matter," and "(4) when plaintiffs make a showing of agency bad faith." *Lands
19 Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (cleaned up). "These exceptions apply
20 only under extraordinary circumstances, and are not to be casually invoked unless the party
21 seeking to depart from the record can make a strong showing that the specific extra-record
22 material falls within one of the limited exceptions." *Voyageurs Nat. Park Ass'n v. Norton*, 381
23 F.3d 759, 766 (8th Cir. 2004). As a result, judicial review of extra-record evidence is permitted
24 only where a court "require[s] supplementation of the administrative record if it is incomplete"
25 and where "necessary to plug holes in the administrative record." *Wilson v. Comm'r of Internal
26 Revenue*, 705 F.3d 980, 991 (9th Cir. 2013) (cleaned up); *see also Lands Council*, 395 F.3d at
27 1030 ("Though widely accepted, these exceptions are narrowly construed and applied."). The
28 party seeking to admit extra-record evidence bears the burden of demonstrating that a relevant

1  exception applies. *See San Luis*, 776 F.3d at 993. Plaintiffs did not attempt to make any of these
2  showings in their initial motions.

3  Relatedly, the class certification motion does not justify discovery. Plaintiffs seek a rough
4  estimate on the number of grants terminated EPA, NEH, NSF, and FDA, where the recipient was
5  the Regents of the University of California. The parties agree that Defendants can provide those
6  estimates by representation of counsel. Plaintiffs also seek exemplar termination notices and
7  information as to the procedure for termination at the four agencies. But the latter two are not
8  necessary for class certification. They instead appear to be class searching mechanisms—aimed at
9  determining who would qualify for their class based on what claims survive the Court's
10 assessment of the merits of their claims. For example, if the First Amendment claim survives,
11 then such information may help to identify grant awards related to Executive Orders that
12 Plaintiffs allege deal with viewpoint. Compl. ¶ 444 (citing several such orders). But whether or
13 not the proposed class complies with Federal Rule of Civil Procedure 23(a) and (b)(2) does not
14 require such discovery.

15 *Second*, expedited discovery is particularly improper. The Federal Rules of Civil
16 Procedure provide that, absent unusual circumstances, discovery should not proceed before the
17 parties have conferred as required by Federal Rule of Civil Procedure 26(f). Specifically, "[a]
18 party may not seek discovery from any source before the parties have conferred as required by
19 Rule 26(f)." Fed. R. Civ. P. 26(d)(1) (emphasis added). Similarly, this Court's Local Rules
20 provide the Federal Government 90 days from service of the complaint to produce an
21 administrative record. Local Civ. R. 16-5. As such, the administrative record should be compiled
22 in the normal course.

23 Plaintiffs' request for expedited discovery thus "arrives before this Court has held an
24 initial scheduling conference with the parties pursuant to Federal Rule of Civil Procedure 16(b)
25 and discussed the parameters of discovery." *Dunlap v. Presidential Advisory Comm'n on Election*
26 *Integrity*, 319 F. Supp. 3d 70, 101 (D.D.C. 2018). "Generally such expedited discovery is not
27 permissible, though the Court may grant an exception." *Id.*
28 This Court should not grant such an exception and order expedited discovery here. To the

1   extent any is ordered, Plaintiffs' interest appears to be resolving class certification questions. But
2   that motion does not justify expedited discovery. Per the Court's standing order, the Court's
3   preference is to litigate the merits of the named plaintiffs' claims before moving to the issue of
4   class certification. Standing Order at 7. As the Government will demonstrate in its forthcoming
5   filing, numerous threshold and merits issues bar the named plaintiffs' claims and litigating those
6   issues first "will[] save a great deal of time and money." *Id.* Discovery now as to class
7   certification therefore threatens expending substantial resources when ultimately no claim may
8   move forward.

9   Indeed, the Supreme Court recently stayed a lower court order for expedited discovery.
10  *U.S Doge Serv. v. CREW,* --- S. Ct. ---, 2025 WL 1602338, at *1 (U.S. June 6, 2025) (Mem.). The
11  Court emphasized that "special considerations control when the Executive Branch's interests in
12  maintaining the autonomy of its office and safeguarding the confidentiality of its communications
13  is implicated." *Id.* (cleaned up) (quoting *Cheney v. United States Dist. Court for D.C.*, 542 U.S.
14  367, 385 (2004)). The Executive Branch is entitled to special solicitude in discovery matters, and
15  expedited discovery here would contravene that solicitude. *Cheney*, 542 U.S. at 385.

16  In sum, Defendants' object to any discovery, especially on an expedited basis. If the
17  Court, however, disagrees, Defendants' agree with the joint proposal below. Defendants also
18  maintain, that any such discovery is improper and, if the Court were to order discovery, requests
19  that it be as limited as possible, including narrowing any of the categories. However, Defendants
20  agree that, if the Court were to order discovery into any of the categories below, in the manner
21  described, the following would be feasible by June 17.

22  **II.     Joint statement regarding scope of proposed expedited discovery (if ordered)**

23  If the Court orders discovery, Plaintiffs and the Government agree the approach outlined
24  below is feasible and will allow for production of materials by June 17, 2025. Plaintiffs and the
25  Government reserve their rights with respect to additional discovery at a later stage, including
26  discovery as to any of the below categories. Defendants similarly reserve objections and the right
27  to invoke privileges.

28

### A. Category 1: Agency Decision-making Process

To address the Court's request for factual development on "the process … for the government to make the[] decisions about which grants were terminated and why" (June 9 Tr. at 11:9-11) the Parties propose that, for the four agencies detailed in the complaint and TRO brief (EPA, NEH, NSF, FDA), the Government produce non-privileged documents or declarations sufficient to show:

1. The policy for selecting grants for termination at the four agencies;
2. The overarching Executive Order(s) or directive(s) animating the termination policy at each of the four agencies;
3. The way in which the policy or overarching priority was communicated to each agency and by whom; and
4. The way in which the termination policy was implemented at each agency (e.g., keyword searches, AI tools, etc.).

Given the expedited nature of this discovery, the Parties agree the productions will be focused on documents sufficient to explain the topics above, and that such discovery may include "a memo or [documents evincing] some other mechanism for tracking who was terminated for what reason" (June 9 Tr. at 11:15-16) or declarations from knowledgeable agency personnel sufficient to show one or more of the four areas listed above if ordered by the Court.[1]

Plaintiffs' agreement to limit discovery to the four agencies listed above is based on the understanding that Defendants will not challenge the applicability of the evidence regarding those four agencies to the remaining agency defendants. Defendants reserve their objections to use of evidence for impermissible purposes. For example, if the Court orders discovery for the purpose of class action certification, Defendants maintain their right to object to its use for APA claims that Defendants contend must be decided on the administrative record.

### B. Category 2: Number of Terminated Grants

Defendants agree they can readily provide an estimate of the number of grants issued to

---

[1] Plaintiffs understand that in this expedited posture, declarations may be necessary to fill in certain gaps but maintain that declarations should not substitute for otherwise readily available, non-privileged documents pertaining to the topics listed in this section.

1  the University of California Regents or specific UC campuses that were terminated between
2  January 20 and the present. The Parties understand that this number may be under-inclusive of the
3  total corpus of grants encompassed by the complaint, at least because: (1) it will include only
4  grants for which the UC Regents is listed the primary grantee and will not include, for example,
5  grants issued to other institutions but which include researchers affiliated with the University of
6  California (*see, e.g.*, Compl. ¶¶ 207-11); and (2) it will only include awards classified as "grants"
7  in Defendants' system (as opposed to awards classified as "contracts"). The Parties will address
8  these presumably minor discrepancies at a later date. Defendants agree to produce the information
9  by a filing or summary document.

        C.      **Category 3: Exemplar Termination Notices**

It is Plaintiffs' understanding that grant termination notices sent to researchers by each agency were the same or substantially the same on an intra-agency basis. Defendants understand that, at least at some agencies, a sample or exemplar termination letter may be representative of many such letters. Plaintiffs thus requested exemplar letters from each of the fifteen Federal Agency Defendants. Defendants agreed to provide exemplar letters from roughly five additional agencies.

## **CONCLUSION**

If the Court determines discovery is appropriate, the Parties request the Court order discovery pursuant to the process described in Section II above.

| | | |
|---|---|---|
| 1 | Dated: June 11, 2025 | By:  /s/ *Kevin R. Budner* |
| 2 | | Erwin Chemerinsky (*pro hac vice*) |
| | | echemerinsky@law.berkeley.edu |
| 3 | | Claudia Polsky (CA Bar No. 185505) |
| | | cpolsky@law.berkeley.edu |
| 4 | | U.C. BERKELEY SCHOOL OF LAW |
| | | Law Building |
| 5 | | Berkeley, CA 94720-7200 |
| | | Telephone: 510.642.6483 |

Elizabeth J. Cabraser (CA Bar No. 83151)
ecabraser@lchb.com
Richard M. Heimann (CA Bar No. 63607)
rheimann@lchb.com
Kevin R. Budner (CA Bar No. 287271)
kbudner@lchb.com
Annie M. Wanless
awanless@lchb.com (CA Bar No. 339635)
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000

Anthony P. Schoenberg (CA Bar No. 203714)
tschoenberg@fbm.com
John J. Darin (CA Bar No. 323730)
jdarin@fmb.com
Katherine T. Balkoski (CA Bar No. 353366)
kbalkoski@fbm.com
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, CA 94104
Telephone: 415. 954.4400

*Attorneys for Plaintiffs and the Proposed Class*

| | | |
|---|---|---|
| Date: June 11, 2025 | By: | /s/ *Jason Altabet* |

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

JOSEPH E. BORSON
Assistant Branch Director

*/s/ Jason Altabet*
JASON ALTABET (Md. Bar No. 2211280012)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 305-0727
Email: jason.k.altabet2@usdoj.gov

*Attorneys for United States*

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on June 11, 2025, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to registered parties.

Executed June 11, 2025, at San Francisco, California.

/s/ *Kevin R. Budner*

Kevin R. Budner