BRETT A. SHUMATE
Assistant Attorney General
Civil Division
ERIC J. HAMILTON
Deputy Assistant Attorney General
JOSEPH E. BORSON
Assistant Branch Director
JASON ALTABET (Md. Bar No. 2211280012)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 305-0727
Email: Jason.k.altabet2@usdoj.gov

*Attorneys for United States*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| NEETA THAKUR, *et al.*, | Case No. 25-cv-4737-RFL |
| Plaintiffs, | DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, | Hearing Date: June 20, 2025 |
| Defendants. | Time: 10:00 AM |
| | Judge:  Hon. Rita F. Lin |
| | Place: San Francisco Courthouse |
| | Courtroom 15 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

STATEMENT OF THE ISSUES TO BE DECIDED ......................................................... 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ....................................................................................................................... 5

I.    Class Certification Should Be Denied ..................................................................... 6

    A.    Plaintiffs' Class Action Fails To Serve the Purposes of the Class Action ......................... 6

    B.    Plaintiffs' Class Definition is Decidedly Improper ............................................ 7

    C.    Plaintiffs Lack Commonality and Typicality ...................................................... 9

    D.    Plaintiffs Cannot Invoke Rule 23(b)(2) Because Class-Wide Relief is Unavailable ........ 12

    E.    Plaintiffs and Class Members Lack Standing So Certification Fails .............................. 13

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Abdullah v. U.S. Sec. Assocs., Inc.*,
    731 F.3d 952 (9th Cir. 2013) ........................................................................................... 9

*Al Otro Lado v. Wolf*,
    952 F.3d 999 (9th Cir. 2020) ........................................................................................... 6

*Bates v. United Parcel Serv., Inc.*,
    511 F.3d 974 (9th Cir. 2007) ......................................................................................... 15

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) ..................................................................................... 5, 7

*Califano v. Yamasaki*,
    442 U.S. 682 (1979) .................................................................................................. 5, 10

*Castaneda v. Burger King Corp.*,
    264 F.R.D. 557 (N.D. Cal. 2009) ................................................................................. 12

*Clapper v. Amnesty Intern. USA*,
    568 U.S. 398 (2013) ....................................................................................................... 14

*Day v. GEICO Cas. Co.*,
    No. 21-CV-02103-BLF, 2022 WL 16556802 (N.D. Cal. Oct. 31, 2022) ........................... 8

*Domino's Pizza, Inc. v. McDonald*,
    546 U.S. 470 (2006) ....................................................................................................... 14

*Edwards v. Aurora Loan Servs.*,
    791 F. Supp. 2d 144 (D.D.C. 2011) ............................................................................. 13

*Edwards v. First Am. Corp.*
    798 F.3d 1172 (9th Cir. 2015) ......................................................................................... 6

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ........................................................................................... 6

*Faculty Senate of Fla. Int'l Univ. v. Winn*,
    477 F. Supp. 2d 1198 (S.D. Fla. 2007) ........................................................................... 6

*General Telephone Co. of Southwest v. Falcon*,
    457 U.S. 147 (1982) ......................................................................................................... 5

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ....................................................................................... 10

*Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat. Ass'n*,

747 F.3d 44 (2d Cir. 2014) ................................................................................. 13, 14

*Holmes v. Cont'l Can Co.*,
706 F.2d 1144 (11th Cir. 1983) ........................................................................... 13

*J.B. ex rel. Hart v. Valdez*,
186 F.3d 1280 (10th Cir. 1999) ........................................................................... 12

*J.L. v. Cissna*,
No. 18-CV-04914-NC, 2019 WL 415579 (N.D. Cal. Feb. 1, 2019) ...................... 8, 9

*Klamath Water Users Protective Ass'n v. Patterson*,
204 F.3d 1206 (9th Cir. 1999), *opinion amended on denial of reh'g*, 203 F.3d 1175 (9th Cir.
2000) ............................................................................................................... 3, 5, 14

*Kowalski v. Tesmer*,
543 U.S. 125 (2004) ........................................................................................... 14

*LaDuke v. Nelson*,
762 F.2d 1318 (9th Cir. 1985) ............................................................................. 13

*Lemon v. Int'l Union of Operating Eng'rs, Local No. 139, AFL-CIO*,
216 F.3d 577 (7th Cir. 2000) ............................................................................... 13

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
350 F.3d 1018 (9th Cir. 2003) ............................................................................. 15

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........................................................................................... 14

*Maher v. United States*,
314 F.3d 600 (Fed. Cir. 2002) ............................................................................. 14

*Morrisey v. Brewer*,
408 U.S. 471 (1972) ........................................................................................... 11

*Murthy v. Missouri*,
603 U.S. 43 (2024) ......................................................................................... 14, 15

*O'Connor v. Boeing N. Am., Inc.*,
184 F.R.D. 311 (C.D. Cal. 1998) .......................................................................... 8

*Padilla v. ICE*,
354 F. Supp. 3d 1218 (W.D. Wash. 2018) ............................................................ 12

*Palantir USG, Inc. v. United States*,
129 Fed. Cl. 218 (Fed. Cl. 2016) ......................................................................... 12

*Plaintiffs. Simon v. E. Kentucky Welfare Rts. Org.*,
426 U.S. 26 (1976) ............................................................................................. 14

*Probe v. State Teachers' Ret. Sys.*
    780 F.2d 776 (9th Cir. 1986) ............................................................................... 7

*Rutledge v. Elec. Hose & Rubber Co.,*
    511 F.2d 668 (9th Cir. 1975) ............................................................................... 6

*Sampson v. Murray,*
    415 U.S. 61 (1974) ............................................................................................. 6

*Sardarian v. Fed. Emergency Mgmt. Agency,*
    No. 3:19-CV-00910 (OAW), 2022 WL 4080325 (D. Conn. Apr. 1, 2022) ...................... 14

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
    559 U.S. 393 (2010) ........................................................................................... 6

*Taylor v. Sturgell,*
    553 U.S. 880 (2008) ........................................................................................... 6

*Town of Castle Rock v. Gonzalez,*
    545 U.S. 748 (2005) ........................................................................................... 11

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021) ....................................................................................... 15

*Van v. LLR, Inc.,*
    No. 3:18-CV-00197-JMK, 2023 WL 8434456 (D. Alaska Dec. 5, 2023) ........................ 15

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ................................................................................... *passim*

*Wisc. Pub. Power, Inc. v. FERC,*
    493 F.3d 239 (D.C. Cir. 2007) (per curiam) ............................................................ 12

*Wolin v. Jaguar Land Rover N. Am., LLC,*
    617 F.3d 1168 (9th Cir. 2010) ............................................................................. 10

**Rules**

Fed. Cl. 2016 ........................................................................................................ 12

Federal Rule of Civil Procedure 23 ..................................................................... *passim*

**Regulations**

2 C.F.R. Part 200 .................................................................................................. 2

42 C.F.R. § 52.2 ................................................................................................ 2, 3

48 C.F.R. § 52.249-5 ............................................................................................ 9

**Other Authorities**

FED. DEFS.' OPP'N TO PLS.' MOT. FOR CLASS CERTIFICATION
CASE NO. 25-CV-4737

NSF, 2023 NSF-Specific Requirements,
https://nsf-gov-resources.nsf.gov/files/nsf-0123-r.pdf?VersionId=TduAHRwo0NmnyThR_Xan
UmL1butNHo7Z (Jan. 30, 2023) ....................................................................................... 4

NSF, 2020 Research Terms and Conditions,
https://nsf-gov-resources.nsf.gov/files/rtcoverlay-nov20-r.pdf?VersionId=wYsBc0e34TZnYUG
7TK0PSH0L0oZkog7G (Nov. 12, 2020) ........................................................................... 4

EPA, 2021 EPA General Terms and Conditions,
https://www.epa.gov/system/files/documents/2021-
09/fy_2022_epa_general_terms_and_conditions_effective_october_1_2021.pdf ....................... 3, 4

EPA, 2022 EPA General Terms and Conditions,
https://www.epa.gov/system/files/documents/2022-09/fy_2022_epa_general_terms_and_
conditions_effective_october_1_2022_or_later.pdf (Oct. 1, 2022) .............................................. 3, 4

NEH, 2022 NEH General Terms and Condition at XIII,
https://www.neh.gov/general-terms-and-conditions-awards-organizations-grants-and-cooperative-
agreements-issued-january-2022 (Jan. 11. 2022) ................................................................. 4

NEH, 2024 NEH General Terms and Condition at XIII,
https://www.neh.gov/general-terms-and-conditions-grants-after-oct-2024 (Dec. 18, 2024). The earlier
general terms and conditions include the same authority ...................................................... 4

## INTRODUCTION

Six researchers at University of California ("UC") affiliated institutions (collectively "Plaintiffs") seek class certification on behalf of themselves and a purportedly similar group of UC-affiliated individuals with respect to the termination of grants and contracts to which they are not parties. Notably, they do *not* seek class certification on behalf of the actual parties to their contract, their employers. *See* Motion for Class Certification ("Class Cert. Mot."). ECF No. 18. This Court should deny class certification because: (1) class certification without the nonparty counterparties is improper; (2) the proposed class definition is impermissibly ill-defined; (3) the proposed class lacks commonality and typicality due to different factual circumstances that overcome any potentially broader common issues, namely differences in the agreements and terminations; (4) Plaintiffs fail to establish that a Rule 23(b)(2) injunctive action is proper, because any reading of Plaintiffs' class definition would involve multiple subsets; and (5) Plaintiffs and many or all class members lack standing. In short, Plaintiffs seek to represent some unknown subset of UC-affiliated individuals, none of whom appear to be legal parties to contracts, to challenge the present and future termination of awards based upon different authorities and factual situations, and with legal claims that are necessarily individualized to specific contexts of specific terminations. Class certification is accordingly improper.

## STATEMENT OF THE ISSUES TO BE DECIDED

1. Can Plaintiffs maintain a class action, premised on nonparties' contracts with the United States, without including those nonparties?

2. Is Plaintiffs' proposed class too vaguely defined to support certification?

3. Did Plaintiffs meet their burden on commonality and typicality when they only cite grants with three defendant agencies and their claims would variously apply to only some class members?

4. Is a Rule 23(b)(2) class action appropriate when Plaintiffs' case necessarily creates subsets of class members?

5. Do Plaintiffs lack standing, or sufficient class members lack standing, such that class certification is foreclosed?

**BACKGROUND**

Plaintiffs assert that they are "University of California researchers" who fear present and future termination of grant awards. Compl. ¶ 1, ECF No. 1. Plaintiffs seek to certify a class, named "UC Researchers," meaning "All University of California researchers, including faculty, staff, academic appointees, and employees across the University of California system[] whose research grants have been or will be terminated, denied, suspended, or reduced by any of the Defendants pursuant to [various] Executive Orders" or alternatively pursuant to "other directives of the Trump administration or DOGE, from and after January 20, 2025." Class Cert. Mot. at 3-4.

On January 20, 2025, President Trump assumed the office of President of the United States. On that day, and in the weeks after, he issued a variety of Executive Orders setting new policy priorities for his administration.[1] The President having set new policy priorities, agencies with grantmaking authority began reviewing existing grants and considering next steps consistent with the law. The Federal Government, through various agencies, provides funding to institutions of higher learning, using contracts and grants that are subject to specified terms and conditions. As a default matter, Office of Management and Budget ("OMB") regulations generally govern a variety of terms for federal grants and contracts. *See generally* 2 C.F.R. Part 200 (titled "Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards"). Usually, an agency will start with a notice of funding opportunity with eligibility information and details of what the agency wishes to fund. *See Id.* App. I to Part 200. In this context, many agencies award grants to grantee institutions, which include the designation of a principal investigator to lead the scientific and technical direction of research projects funded under the grant. *See id.* (b)(2)(C); *see, e.g.*, 42 C.F.R. § 52.2 (discussing the role of principal investigators for grant awards at the National Institute for Health ("NIH")). Principal investigators and project managers are not themselves parties to the grant agreements, as illustrated by the grant agreements Plaintiffs rely on here, all of which are between nonparty educational institutions and the United States.

*Plaintiffs' Specific Allegations*

---

[1] Plaintiffs reference seven Executive Orders and include copies of them in their filings. All can be found at ECF No. 17 and its attachments.

Six Plaintiffs are named as putative class representatives in this lawsuit. They each allege one or more grant terminations for grants from the Environmental Protection Agency ("EPA"), National Endowment for the Humanities ("NEH"), and National Science Foundation ("NSF"). *See* Compl. ¶ 119 ("This Complaint examines the errant grant practices at the three Agencies that terminated Named Plaintiffs' grants—EPA, NEH, and NSF."). Relevant to the present motions are several elements of these grants and terminations—summarized here and detailed below.

First, and most notably, no Plaintiff has alleged termination of an award or other contract between themselves and the Federal Government. Thakur Agreement, ECF No. 10-4 at 1 (recipient listed as "The Regents of the University of CA – SF"); Alex Agreement, ECF No. 9-4 at 1 (recipient and payee listed as "The Regents of the University of CA – Berkeley"); First Nylen Agreement, ECF No. 11-4 (recipient listed as "The Regents of the University of CA – Berkeley" with "Director" listed as payee); Second Nylen Agreement ECF No. 11-10 at 1 (recipient listed as "Iowa State University" with payee "Fiscal and Operational Officer"); *accord* Philliou Award at 1, ECF No. 8-3; Hirst Award at 1-2, ECF No. 13-3; Foreman Awards ECF Nos. 12-2 at 1, 12-4 at 1, 12-6 at 1. 12-7 at 1. Each grant award identified by Plaintiffs was between a federal agency and a nonparty educational institution. Plaintiffs may have been involved in the process by which the nonparty entities applied for the grants, and some were designated as principal investigators or project managers, but none are parties to any contract. While Plaintiffs refer to themselves as "California researchers whose federally funded grants have been or will be imminently terminated or suspended," they in fact have not alleged that any terminated awards were between themselves and the federal government. *See id.* ¶ 67. In short, as a matter of law, these grants are not *theirs*. *See Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999) (discussing the federal common law of contract that governs when the United States is a party), *opinion amended on denial of reh'g*, 203 F.3d 1175 (9th Cir. 2000). Indeed, the grants cited by Plaintiffs were terminated by communication with the nonparty institution, not with Plaintiffs themselves.

Additionally, each award contained an explicit term or condition stating that it was subject to termination for no longer effectuating program goals, agency priorities, funding objectives, or related

FED. DEFS.' OPP'N TO PLS.' MOT. FOR CLASS CERTIFICATION
CASE NO. 25-CV-4737

discretionary rationale. *See, e.g.*, EPA, 2022 EPA General Terms and Conditions[2]; NEH, 2024 NEH General Terms and Condition at XIII(a)[3];  NSF, 2023 NSF-Specific Requirements ¶ 41(b)(2)[4]; NSF, 2020 Research Terms and Conditions at 18.[5] And the specific articulation for why those terminations did not satisfy those rationales differs. For example, EPA stated that "[t]his EPA Assistance Agreement is terminated in its entirety effective immediately on the grounds that the award no longer effectuates the program goals or agency priorities. The objectives of the award are no longer consistent with EPA funding priorities." ECF Nos. 10-7, 10-8; ECF Nos. 9-7, 9-8; ECF Nos. 11-6, 11-7; ECF Nos. 11-12, 11-13. In those same communications, the nonparty educational institutions were given 30 days to appeal. Meanwhile, NEH terminations cited the "fiscal priorities" of the Federal Government and a specific Executive Order. ECF No. 8-5; ECF No. 13-6. And Plaintiffs include in their emergency motion a declaration from a non-plaintiff citing an FDA contract. Pimentel Decl., ECF No. 15. Pimentel cites a termination by the Food and Drug Administration ("FDA") for "the Government's convenience." Notice of Termination at 1, ECF No. 15-8.

*This Suit*

On June 5, 2025, Plaintiffs filed this suit, moved for a temporary restraining order, and sought to certify a class. Compl.; Pls.' Mot. TRO, ECF No. 7; Class Cert. Mot.

Plaintiffs' complaint brings several claims for relief. First, ultra vires review alleging that

---

[2] https://www.epa.gov/system/files/documents/2022-09/fy_2022_epa_general_terms_and_conditions_effective_october_1_2022_or_later.pdf (Oct. 1, 2022). The 2021 version has the same termination provision. https://www.epa.gov/system/files/documents/2021-09/fy_2022_epa_general_terms_and_conditions_effective_october_1_2021.pdf

[3] https://www.neh.gov/general-terms-and-conditions-grants-after-oct-2024 (Dec. 18, 2024). The earlier general terms and conditions include the same authority: https://www.neh.gov/general-terms-and-conditions-awards-organizations-grants-and-cooperative-agreements-issued-january-2022 (Jan. 11. 2022).

[4] https://nsf-gov-resources.nsf.gov/files/nsf-0123-r.pdf?VersionId=TduAHRwo0NmnyThR_XanUmL1butNHo7Z (Jan. 30, 2023).

[5] https://nsf-gov-resources.nsf.gov/files/rtcoverlay-nov20-r.pdf?VersionId=wYsBc0e34TZnYUG7TK0PSH0L0oZkog7G (Nov. 12, 2020).

Defendants have violated the Take Care Clause and Appropriations Clause of the Constitution and thereby the separation of powers. Compl. Count I. Second, ultra vires review alleging a violation of the First Amendment's bar on viewpoint discrimination. *Id.* Count II. Third, ultra vires review alleging a violation of both procedural due process and the "void for vagueness" doctrine. *Id.* Count III. Fourth, Administrative Procedure Act ("APA") review alleging violations of the Impoundment Control Act, agencies' governing statutes, and unspecified regulations. *Id.* Count IV. Fifth, APA review of arbitrary and capricious decisionmaking. *Id.* Count V. For relief, Plaintiffs ask to void "Termination Notices that terminated grants previously awarded to Plaintiffs and members of the UC Researchers Class"; "declare that "Defendants' decisions and implementation of the mass termination of grants to Plaintiffs and the UC Researchers Class" was without authority; and to order by preliminary or permanent injunction the restoration of grant funding, bar future terminations, and a "return to the lawful and orderly grant procedures they employed prior to January 20, 2025." *Id.* at Request for Relief A-C. That final request appears to be a reference to Plaintiffs' procedural due process claim. *See* Compl. Count III. The Court subsequently set briefing on both motions with a hearing set for June 20. ECF No. 29.

## ARGUMENT

"Federal Rule of Civil Procedure 23 governs the maintenance of class actions in federal court." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017). "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).

Rule 23(a) sets out four prerequisites—numerosity, commonality, typicality, and adequate representation—that must be satisfied before a certified class can proceed in federal court. *See* Fed. R. Civ. P. 23; *Dukes*, 564 U.S. at 349; *Briseno*, 844 F.3d at 1124. These prerequisites "effectively 'limit the class claims to those fairly encompassed by the named plaintiff's claims.'" *Dukes*, 564 U.S. at 349 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982)). A court should grant certification only "after a rigorous analysis . . . [determining] that the prerequisites of Rule 23(a) have been satisfied." *Id.*, at 350-51 (citation omitted).

In addition to meeting the requirements set forth in Rule 23(a), the proposed class must also qualify under one of the three subsections of Rule 23(b). *Id.* at 345. Plaintiffs assert that they meet the requirements of Rule 23(b)(2). Class Cert. Mot. at 13-14. Rule 23(b)(2) requires that plaintiffs pursuing injunctive or declaratory relief show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986–89 (9th Cir. 2011)).

"The party seeking class certification bears the burden of establishing that the proposed class meets the requirements of Rule 23." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1177 (9th Cir. 2015). The failure to meet "any one of Rule 23's requirements destroys the alleged class action." *Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975).

## I.    CLASS CERTIFICATION SHOULD BE DENIED[6]

### A.    Plaintiffs' Class Action Fails To Serve the Purposes of the Class Action

At the outset—and infecting all the doctrinal arguments below—Plaintiffs' motion suffers from a fatal flaw: it fails to serve the purposes of a class action, *i.e.* efficient and preclusive resolution of disputes. "In a class action . . . a person not named as a party may be bound by a judgment on the merits of the action, if she was adequately represented by a party who actively participated in the litigation." *Taylor v. Sturgell*, 553 U.S. 880, 884 (2008). Accordingly, Rule 23 is "designed to further procedural fairness and efficiency," *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 402 (2010), including

---

[6] Defendants generally object to class certification on this expedited timeline. It is true that the Ninth Circuit has permitted provisional class certification for preliminary injunctions. *Al Otro Lado v. Wolf*, 952 F.3d 999, 1005 n.4 (9th Cir. 2020). But this extraordinary procedure should be saved for only the most extraordinary of situations. Here, Plaintiffs allege, at most, monetary harms flowing from contract terminations directed at third parties. That is insufficient for irreparable harm and should similarly bar this kind of emergency provisional class certification. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974); *see also Faculty Senate of Fla. Int'l Univ. v. Winn*, 477 F. Supp. 2d 1198, 1208 (S.D. Fla. 2007) ("There is no irreparable harm here because the plaintiffs can fund the desired travel themselves and then, if they prevail in this suit, obtain reimbursement. In other words, the harm is financial.").

"by preventing inconsistent adjudications," 1 Newberg and Rubenstein on Class Actions § 1:9 (6th ed. 2025). This suit does not serve those interests.

As discussed in more detail below and in Defendants' opposition to Plaintiffs' motion for preliminary injunction, Plaintiffs are not parties to the challenged contract and grant agreements. As a result, this proposed class action does not—cannot—further the goals of Rule 23. Because the proposed class does not exclusively cover all parties with legal interests in the challenged contracts (indeed, it does not cover *any* parties with legal interests in the challenged agreements), this class action cannot prevent inconsistent adjudications. Even assuming that Plaintiffs can challenge specific grant or contract agreements in this court (and they cannot), the proposed class would not include the institutions that actually hold the contracts. The risk of inconsistent adjudication is obvious: the purported class members could receive a judgment related to a contract and the actual contracting institution could receive a judgment related to the same contract—and those judgments could be completely opposed. That does not serve the interests of justice. This fact dooms Plaintiffs' class definition, because it does not sweep in all the relevant parties and thus cannot prevent inconsistent adjudication. It also renders Plaintiffs unable to satisfy commonality and typicality. And it illustrates Plaintiffs' lack of standing here. For this reason alone, class certification is inappropriate.

### B. Plaintiffs' Class Definition is Decidedly Improper

Plaintiffs' class definition is flawed for the same reason that their related emergency motion fails. They refer to their "UC Researchers" class as having "research grants [that] have been or will be terminated, denied, suspended, or reduced by any of the Defendants." Class Cert. Mot. at 3. The fundamental issue is Plaintiffs have not alleged that any research grant of theirs has been terminated, denied, suspended, or reduced. Instead, each Plaintiff has identified awards between the Federal Government and various UC-affiliated, and non-UC-affiliated, educational institutions. So Plaintiffs' class hinges on a definition of having a "research grant" that is impermissibly vague.

That Plaintiffs have set forth a "vaguely defined" class is sufficient to deny their motion. *Briseno*, 844 F.3d at 1124 n.3, n.4. As a rule, a class must be "sufficiently definite to conform to Rule 23." *Probe*

*v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986). This requires that "the class is defined with objective criteria and [] is administratively feasible to determine whether a particular individual is a member of the class." *Day v. GEICO Cas. Co.*, No. 21-CV-02103-BLF, 2022 WL 16556802, at *8 (N.D. Cal. Oct. 31, 2022). A class definition should be "precise, objective, and presently ascertainable." *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) (citation omitted). In sum, "a proposed class must be ascertainable in the sense that the proposed class must be sufficiently defined and not vague." *J.L. v. Cissna*, No. 18-CV-04914-NC, 2019 WL 415579, at *7 (N.D. Cal. Feb. 1, 2019).

As set forth by Plaintiffs, however, the class definition fails this test. Plaintiffs are listed as project managers or principal investigators on certain grants between a range of educational institutions and agencies of the Federal Government. *Supra* Background. A straightforward reading of Plaintiffs' class definition would exclude them because not one has identified a research grant of his or her own that has been modified or terminated. *Contra* Class Cert. Mot. at 3 ("UC researchers[] whose research grants have been or will be terminated, denied, suspended, or reduced.").

Plaintiffs presumably do not mean to exclude themselves. Which means their definition of being a UC researcher "whose research grants" have been affected must be something more than having an award agreement with the government. The question of what that could mean, however, is terribly opaque. For example, does being "co-principal investigator" suffice? ECF No. 12-4 at 4 (specifying two such investigators in an NSF grant award). Does being on the "advisory board" for a project count? ECF No. 8-2 at 23 (listing 7-member project team, 23-member international working group, and 14-member advisory board on an NEH grant application). Or is a research assistant, unnamed in the grant agreement, who eventually works on a project funded by a grant award part of the class? ECF No. 11-9 at 54 (discussing unnamed graduate and undergraduate research assistants on an EPA grant application). Lastly, does every "Contracts and Grants Officer" working for a UC-affiliated institution become part of this suit, because they are the point of contact and manage an educational institution's grant portfolio? ECF No. 10-2 at 1 (listing such an individual for an EPA application). These are foundational challenges illustrating the vagueness of Plaintiffs' definition.

Moreover, recall that Plaintiffs included a non-plaintiff citing an FDA "agreement." *See* Pimentel Decl. Pimentel cites a termination by the FDA for "the Government's convenience." Notice of Termination at 1. That agreement was between an educational institution, Columbia, and the Federal Government. Pimentel Application at 2, ECF No. 15-4 ("The Trustees of Columbia University."). Indeed, the University of California Berkley, where Pimentel works, is listed merely as a subcontractor. *Id.* at 1. That suggests that even working for a subcontractor might satisfy Plaintiffs' class definition—adding an additional level of both attenuation and confusion.

Add to that an additional issue. Pimentel's cited application and agreement *is no grant at all*. It is a contract for the completion of a "study" for which the FDA sought a contractor. Award/Contract at 3, ECF No. 15-5; *id.* at 4 ("This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text."); *id.* (specifying deliverables); *id.* at 5-7 (specifying task and subtasks for Columbia University as "contractor"). The contract accordingly referenced the Federal Acquisition Regulation ("FAR") stating that "[t]he Government may terminate performance of work under this contract in whole or, from time to time, in part if the Contracting Officer determines that a termination is in the Government's interest." 48 C.F.R. § 52.249-5(a); Award/Contract at 28. Plaintiffs cite "research grants" but appear to contemplate even non-grant contracts as falling within their definition. *See* Class Cert. Mot. at 3.

Altogether, Plaintiffs' definition fails the most important test—appropriately defining a class. Plaintiffs are not "UC researchers[] whose research grants have been [affected]." *See id.* And any reading of that sentence which would ultimately include them is so vague as to fail. Consequently, class certification on Plaintiffs' proposed definition should be denied.

### C. Plaintiffs Lack Commonality and Typicality

Plaintiffs have failed to demonstrate that "a single significant question of law or fact," *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (citation omitted), common to the class suffices to render class action treatment appropriate. "What matters to class certification is not the raising of common 'questions' – even in droves – but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (cleaned up).

"Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* (citation omitted).

The commonality requirement is especially rigorous where, as here, Plaintiffs seek class certification under Rule 23(b)(2), which requires that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). For certification under Rule 23(b)(2), plaintiffs must show that the challenged conduct is "such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360 (citation omitted).

The commonality and typicality requirements of Rule 23(a) are interrelated and, in some instances, merge. *Id.* at 349 n.5. Commonality requires that "claims must depend upon a common contention . . . of such a nature that it is capable of classwide resolution." *Dukes*, 564 U.S. at 349. Typicality focuses on how the named plaintiffs' claims relate to those of the potential class members. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). In sum, "[b]oth [requirements] serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 564 U.S. at 349 n.5.

First, typicality necessarily fails here. Plaintiffs have grants with only three of the 16 defendant agencies alleged to do grantmaking. And "the test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted). But, necessarily, having as class representatives only individuals citing grants from a limited sliver of agencies, each of which provided specific terms and conditions and terminations, all citing different reasons, cannot suffice. At the very least, typicality requires cleaving off those class members citing grants from the other 13 agencies. This is demonstrated by the lone non-EPA, NEH, or NSF agreement cited, an FDA contract for a study, which cites for "the Government's convenience" as its rationale. Notice of Termination at 1.

Various commonality roadblocks also bar Plaintiffs' one-size-fits-all class action suit. That is

because "differences in the factual background of each claim will affect the outcome of the legal issue." *Califano*, 442 U.S. at 701. Indeed, Plaintiffs' claims for relief necessarily act in a scattershot manner. For example, their ultra vires First Amendment claim only applies to terminations based on those Executive Orders that Plaintiffs allege consider or target viewpoint. *See* Compl. ¶ 444 (citing several such orders). But their proposed class is wider, not just including those Executive Orders, but also any "other directives of the Trump administration or DOGE." Class Cert Mot. at 4. Thus, class members citing grants terminated or modified based on a cost-cutting rationale, or other potential bases, including those adopted by agencies on their own, could not rely on such a theory. Resolution of that claim would not sufficiently resolve a universal question. *Dukes*, 564 U.S. at 349.

The same is true for all of Plaintiffs' claims. Their procedural due process claims necessarily depend on (1) whether a class member has a property interest in continued funding given the member's individual relationship to the identified agreement; and (2) what process was ultimately provided in that particular termination or modification. *Town of Castle Rock v. Gonzalez*, 545 U.S. 748, 756 (2005); *Morrisey v. Brewer*, 408 U.S. 471, 481 (1972). The "void for vagueness" inquiry depends, as alleged in Plaintiffs' pleading, on "the language of Defendant Trump's Orders and the Federal Agency Defendants' chaotic efforts to give effect to those Order." Compl. ¶ 451. That means the details of an order, or the actions of the individual terminating agency in the context of a specific action, matter under Plaintiffs' own theory. *See Dukes*, 564 U.S. at 350.

Plaintiffs' claim, under the APA, of departure from statutory and regulatory standards is similarly fact-bound. Compl. Count IV. The statutory portion requires looking at whether "agencies' enabling statutes and other laws passed by Congress" forecloses terminations of the type alleged, or "appropriations statutes underlying each agency's funding scheme."[7] *Id.* ¶¶ 455, 458. These agency-specific inquiries necessarily split the class and foreclose commonality and typicality. After all, Plaintiffs only cite grants at three agencies, but seek certification as to over a dozen. For the regulatory portion, relief also depends on "agency-specific rules." *Id.* ¶ 459. It also requires looking to whether the termination was authorized by

---

[7] Plaintiffs' separation of powers claim, which merely alleges statutory violations, necessarily depends on the same specifics. *See* Compl. Count I.

regulation or the terms and conditions of an agreement—something that varies from agency to agency. *See, e.g.*, EPA, 2022 EPA General Terms and Conditions; NEH, 2024 NEH General Terms and Condition at XIII(a); NEH, 2024 NEH General Terms and Condition at XIII(a).

Finally, the arbitrary and capricious APA claim is akin to a rational basis or reasonableness inquiry in this context. *Wisc. Pub. Power, Inc. v. FERC*, 493 F.3d 239, 266 (D.C. Cir. 2007) (per curiam); *Palantir USG, Inc. v. United States*, 129 Fed. Cl. 218, 261 (Fed. Cl. 2016). That kind of review is inappropriate at a class-wide level, rather, it is particularized. *See Padilla v. ICE*, 354 F. Supp. 3d 1218, 1229-30 (W.D. Wash. 2018) (questioning "whether the issue of 'unreasonable delay' is amenable to resolution by class action lawsuit, as, absent a statutory deadline," the court's analysis "will require individualized factual inquiries to determine . . . 'reasonableness.'") (citation omitted).

All told, for each claim, class members' individual factual circumstances must be ascertained to determine if the claim succeeds. Because that fails to "generate *common answers* apt to drive the resolution of the litigation," certification should be denied. *See Dukes*, 564 U.S. at 350 (emphasis added); *see also id.* at 352 ("Without some glue holding the alleged reasons for all those [results] together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question."); *cf. J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1289 (10th Cir. 1999) (affirming denial of class certification because "plaintiffs merely attempt to broadly conflate a variety of claims [under the IDEA and other statutes] to establish commonality via an allegation of 'systemic failures'"); *Castaneda v. Burger King Corp.*, 264 F.R.D. 557, 568-69 (N.D. Cal. 2009) (denying class certification in part because defendants' liability depended on individualized proof).

Plaintiffs have attempted to craft their complaint, and frame their arguments, in a manner that makes disparate circumstances seem common. But "any competently crafted class complaint literally raises common 'questions.'" *Dukes*, 564 U.S. at 349 (cleaned up). The question is whether, on further investigation, those purportedly common questions fall to the disparate individual circumstances. The differences flowing through the class here ultimately overcome any otherwise common questions and therefore certification should be denied.

### D.  Plaintiffs Cannot Invoke Rule 23(b)(2) Because Class-Wide Relief is Unavailable

For much the same reasons set out above, Rule 23(b)(2) relief is particularly inappropriate. That provision "applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360. Class relief must be "indivisible," premised on "conduct . . . that . . . can be enjoined or declared unlawful only as to all of the class members or as to none." *Id.* "[T]he (b)(2) class is distinguished . . . by class cohesiveness . . . [i]njuries remedied through (b)(2) actions are really group, as opposed to individual injuries." *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1155 n.8 (11th Cir. 1983).

Here, for the foregoing reasons, there cannot be a single adjudication for purposes of Rule 23(b)(2). At best, class members belong to various subset groups for which a universal question may be answered, or an injunction may suffice. But "Rule 23(b)(2) operates under the presumption that . . . the case will not depend on adjudication of facts particular to any subset of the class nor require [distinct remedies]." *Lemon v. Int'l Union of Operating Eng'rs, Local No. 139, AFL-CIO*, 216 F.3d 577, 580 (7th Cir. 2000). That is precisely what would be required here. Class members citing different relationships with institutions that themselves have grant agreements with over a dozen different agencies would all be in radically different positions, making various subset groups within the larger class definition that Plaintiffs offer. Because this invariably conflicts with the premise of a Rule 23(b)(2) action, certification is improper.

### E.  Plaintiffs and Class Members Lack Standing So Certification Fails

As Plaintiffs acknowledge, standing "is a jurisdictional element that must be satisfied prior to class certification." *LaDuke v. Nelson*, 762 F.2d 1318, 1325 (9th Cir. 1985). Here, for the reasons set out in Defendants' opposition to Plaintiffs' emergency motion, none of the plaintiffs named in the complaint have standing.

In short, Plaintiffs lack standing to enforce the rights of nonparties to recover funding on grants and contracts. "In order to establish standing to enforce" payment of a government contract, or any other terms, a plaintiff must show that they are party to the contract or an intended third-party beneficiary. *Edwards v. Aurora Loan Servs.*, 791 F. Supp. 2d 144, 150 (D.D.C. 2011); *see also Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat. Ass'n*, 747 F.3d 44, 49 (2d Cir. 2014) (holding that plaintiff lacked

prudential standing because it could not "enforce the terms of" an agreement "as to which it is neither a party nor a third-party beneficiary"); *Maher v. United States*, 314 F.3d 600, 605 (Fed. Cir. 2002) ("The remaining shareholders [who were nonparties to the contract] did not have standing to sue and were not intended third-party beneficiaries."); *cf. Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479–80 (2006) ("[W]e hold that a plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.'").

Plaintiffs are not parties to the agreements they cite. And they are not intended beneficiaries. Plaintiffs lack rights under these contracts—they are neither parties nor intended third-party beneficiaries. *See Klamath Water Users Protective Ass'n*, 204 F.3d at 1210. They do not have "a legally protected interest" as project managers or principal investigators working for a nonparty who has received a Federal award. *See Sardarian v. Fed. Emergency Mgmt. Agency*, No. 3:19-CV-00910 (OAW), 2022 WL 4080325, at *1–2 (D. Conn. Apr. 1, 2022). Nor have they even attempted to meet their burden to demonstrate "a 'close' relationship with the person who possesses the right" and "a 'hindrance' to the possessor's ability to protect his own interests." *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004) (citation omitted).

They also lack standing because a "federal court cannot redress 'injury that results from the independent action of some third party not before the court." *See Murthy v. Missouri*, 603 U.S. 43, 57 (2024). And the Court has forbidden standing based merely on speculation of how a Governmental action may encourage a harm to Plaintiffs. *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 41-43 (1976) (holding that causation was not met where plaintiffs asserted that the challenged federal regulations "encouraged" the actions of private entities that resulted in the injury complained of). Because an attenuated chain links Plaintiffs' purported injuries to the termination of nonparty contracts, they lack standing.

Finally, to the extent that Plaintiffs attempt to allege that they will suffer harm in the future due to federal funding cuts, those allegations are too speculative to satisfy Article III standing. *See Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013) (explaining that any allegation of "threatened injury must be *certainly impending*" (citation omitted)). The mere fact that Plaintiffs' employing institutions receive

federal funding is not nearly "concrete and particularized" enough to challenge *specific* future funding decisions, nor the announcement of specific funding priorities. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

Because Plaintiffs lack standing, certification must fail. *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003). At the very least, if the Court determines that Plaintiffs lack standing as to a claim or form of relief requested, then no class can recover on that claim or relief. *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (explaining, in the class action context, that "[s]tanding must be shown with respect to each form of relief sought"); *accord*, *Murthy*, 603 U.S. at 61.

Even if the Court concludes that Plaintiffs, or at least one of them, has standing, the class includes far too many people that would not. As already discussed, Plaintiffs have failed to specify a sufficiently definite and ascertainable definition. *See supra* Part I.B. So it is entirely unclear who would be in the class if one were certified. If the Court were to construe the class to include any employee who has any involvement in any project at a UC-affiliated institution funded by a government grant, as Plaintiffs imply by their declarations and individual circumstances, then an extraordinary number of class members would lack standing. They would not be parties to any agreement, lack intended beneficiary status, fail to meet their burden to invoke third-party standing, and be asserting even further attenuated harm than Plaintiffs. Moreover, if the class covers all grant awards from over a dozen agencies, even those that have not been terminated, the class members who could at least cite a termination would be vastly outnumbered by those individuals simply speculating that a grant award could be terminated in the future. The Court should deny certification on that basis *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) (leaving the question open). At the very least, the distinct subsets of class members that would result defeats certification. *Van v. LLR, Inc.*, No. 3:18-CV-00197-JMK, 2023 WL 8434456, at *9 (D. Alaska Dec. 5, 2023).

## CONCLUSION

For these reasons, this Court should deny Plaintiffs' Motion for Class Certification.

FED. DEFS.' OPP'N TO PLS.' MOT. FOR CLASS CERTIFICATION
CASE NO. 25-CV-4737

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

JOSEPH E. BORSON
Assistant Branch Director

*/s/ Jason Altabet*
JASON ALTABET (Md. Bar No. 2211280012)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 305-0727
Email: jason.k.altabet2@usdoj.gov

*Attorneys for United States*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2025, I electronically filed this document with the Court by using the CM/ECF system, and that this document was distributed via the Court's CM/ECF system.

*/s/ Jason Altabet*