Erwin Chemerinsky (admitted *pro hac vice*)
echemerinsky@law.berkeley.edu
Claudia Polsky (CA Bar No. 185505)
cpolsky@law.berkeley.edu
U.C. BERKELEY SCHOOL OF LAW
Law Building
Berkeley, CA 94720-7200
Telephone: 510.642.6483

Elizabeth J. Cabraser (CA Bar No. 83151)
ecabraser@lchb.com
Richard M. Heimann (CA Bar No. 63607)
rheimann@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000

Anthony P. Schoenberg (State Bar No. 203714)
tschoenberg@fbm.com
Linda S. Gilleran (CA Bar No. 307107)
lgilleran@fbm.com
Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

*Attorneys for Plaintiffs and the Proposed Class*
[Additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NEETA THAKUR, KEN ALEX, NELL GREEN NYLEN, ROBERT HIRST, CHRISTINE PHILLIOU, and JEDDA FOREMAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; DEPARTMENT OF GOVERNMENT EFFICIENCY ("DOGE"); AMY GLEASON, in her official capacity as Acting Administrator of the Department of Government Efficiency; NATIONAL SCIENCE FOUNDATION;<br><br>[*caption cont'd next page*] | Case No. 3:25-cv-04737-RL<br><br>**SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AND MOTION FOR CLASS CERTIFICATION**<br><br>Judge:  The Honorable Rita F. Lin<br><br>Hearing Date:  June 20, 2025<br>Time:  10:00 A.M.<br>Courtroom:  15 |

BRIAN STONE, in his official capacity as
Acting Director of the National Science
Foundation;
NATIONAL ENDOWMENT FOR THE
HUMANITIES;
MICHAEL MCDONALD, in his official
capacity as Acting Chairman of the National
Endowment for the Humanities;
UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY;
LEE ZELDIN, in his official capacity as
Administrator of the U.S. Environmental
Protection Agency;
UNITED STATES DEPARTMENT OF
AGRICULTURE;
BROOKE ROLLINS, in her official capacity
as Secretary of the U.S. Department of
Agriculture;
AMERICORPS (a.k.a. the CORPORATION
FOR NATIONAL AND COMMUNITY
SERVICE);
JENNIFER BASTRESS TAHMASEBI, in her
official capacity as Interim Agency Head of
AmeriCorps;
UNITED STATES DEPARTMENT OF
DEFENSE;
PETE HEGSETH, in his official capacity as
Secretary of the U.S. Department of Defense;
UNITED STATES DEPARTMENT OF
EDUCATION;
LINDA MCMAHON, in her official capacity
as Secretary of the U.S. Department of
Education;
UNITED STATES DEPARTMENT OF
ENERGY;
CHRIS WRIGHT, in his official capacity as
Secretary of Energy;
UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES;
ROBERT F. KENNEDY, JR., in his official
capacity as Secretary of the U.S. Department
of Health and Human Services;
UNITED STATES CENTERS FOR DISEASE
CONTROL;
MATTHEW BUZZELLI, in his official
capacity as Acting Director of the Centers for
Disease Control;
UNITED STATES FOOD AND DRUG
ADMINISTRATION;
MARTIN A. MAKARY, in his official
capacity as Commissioner of the Food and
Drug Administration;
UNITED STATES NATIONAL
INSTITUTES OF HEALTH;

1  JAYANTA BHATTACHARYA, in his
   official capacity as Director of the National
2  Institutes of Health;
   INSTITUTE OF MUSEUM AND LIBRARY
3  SERVICES;
   KEITH SONDERLING, in his official
4  capacity as Acting Director of the Institute of
   Museum and Library Services;
5  UNITED STATES DEPARTMENT OF THE
   INTERIOR;
6  DOUG BURGUM, in his official capacity as
   Secretary of the Interior;
7  UNITED STATES DEPARTMENT OF
   STATE;
8  MARCO RUBIO, in his official capacity as
   Secretary of the U.S. Department of State;
9  DEPARTMENT OF TRANSPORTATION;
   SEAN DUFFY, in his official capacity as
10 Secretary for the U.S. Department of
   Transportation,
11
                    Defendants.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

**Page**

2

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND ............................................................................... 1

ARGUMENT ...................................................................................................... 2

I.      DEFENDANTS DID NOT COMPLY WITH THE COURT'S ORDER. ............................ 2

II.     DEFENDANTS' PRODUCTION DEMONSTRATES THAT A PRELIMINARY
        INJUNCTION IS WARRANTED ................................................................ 3

        A.      Defendants Admit Grants Are Not Contracts. ......................................... 3

        B.      The Production Demonstrates That Plaintiffs Have Standing. ................................. 3

        C.      Plaintiffs Are Likely to Succeed on the Merits. ........................................ 3

                1.      The Production Shows That Defendants' Actions Violate Separation
                        of Powers. ................................................................................. 3

                2.      Even Absent the Court-Ordered Search Terms, Defendants' Limited
                        Production Shows Viewpoint Discrimination. ............................................ 4

                3.      The Production Shows That Defendants Denied Plaintiffs Due
                        Process. ..................................................................................... 5

                4.      The Production Shows That Defendants' Actions Are *Ultra Vires*
                        under the Administrative Procedure Act. ................................................. 7

                5.      The Production Shows That Defendants' Actions Are Arbitrary and
                        Capricious under the APA ................................................................ 7

III.    DEFENDANTS' DOCUMENTS SUPPORT CLASS CERTIFICATION ......................... 8

CONCLUSION .................................................................................................. 10

i

**INTRODUCTION**

Plaintiffs submit this supplemental brief to address Defendants' June 17, 2025 document production, pursuant to the Court's June 12, 2025 Discovery Order ("Order," Dkt. 32). Defendants' production is sparse and fails to comply with the Order in a number of ways. Nevertheless, the production strengthens both of Plaintiffs' Motions. Dkt. 7, 18.

**FACTUAL BACKGROUND**

The Agency Defendants are supposed to carry out their congressional mandates by funding research at institutions such as the UC system. *See* Dkt. 7 at 1-10 ("TRO Mot."). But since January 20, 2025, the Agency Defendants have adopted a series of policies blacklisting categories of research and terminating thousands of previously awarded grants, including Plaintiffs', because they relate to now-prohibited research topics. *See id.* at 12-33. As Defendants' production confirms, the Agency Defendants undertook this grant purge in accordance with "administration priorities"[1] and for the express purpose of implementing President Trump's various Executive Orders ("EOs"), which directed the agencies to terminate funding for projects related to disfavored topics.[2] The production also shows that the Agency Defendants acted at the direction of the Department of Government Efficiency ("DOGE").[3]

Defendants' document production further establishes that the agencies identified grants for termination through keyword and similar search processes, rather than through reasoned evaluation.[4] And while Defendants failed to produce the actual search terms, despite the Court's Order requiring them to do so (Dkt. 32), the most logical inference is that those search terms are probative as to Plaintiffs' First Amendment claims. Grants were also selected for mass termination through spreadsheets, which categorized all open grants as consistent or inconsistent with

---

[1] *See* Ex. B. ¶¶ 4, 20 (Stone Decl.); Ex. C ¶¶ 6-8 (McDonald Decl.); Ex. A. ¶ 5 (Coogan Decl.); Ex. E at DEFSDOD_00007. Exhibit citations refer to those attached to the Cabraser Decl., filed herewith.
[2] *See* Ex. C ¶¶ 6-8, 20 (McDonald Decl.); Ex. E at DEFSNSF_00010.
[3] Ex. C ¶¶ 12, 18, 21 (McDonald Decl.); *see also* Ex. C at 7-10.
[4] Ex. D ¶ 10 (Pendleton Decl.); Ex. B ¶¶ 6, 8 (Stone Decl.).

*administration* (not agency) priorities. Ex. C ¶ 9 (McDonald Decl.). Some grants were identified for termination by DOGE staffers. Ex. B ¶ 6 (Stone Decl.).

Once Defendants identified the grants for termination, notice was given through thousands of boilerplate termination letters. Exs. H-J. None of the termination letters produced includes an individualized discussion of the relevant project. Defendants' production also shows that agencies acted with haste, and their opaque process was error prone. *See* Ex. C ¶ 19 (McDonald Decl). Defendants' production does not reveal what reasoning or criteria were used to identify grants for termination, including how or why any specific grant was deemed to relate to a blacklisted topic.

## ARGUMENT

## I.    DEFENDANTS DID NOT COMPLY WITH THE COURT'S ORDER.

To begin, it bears mention that Defendants did not comply with the Court's instructions to produce agency-specific discovery for EPA, NSF, and NEH.[5] Despite conceding that the requested material would impose only a "minimal" burden, Defendants have withheld documents responsive to Category 1(a) (policies governing grant terminations) for EPA and NSF and to Category 1(d) (how those policies were implemented) for all three agencies. *See* Dkt. 32. The Court expressly barred the substitution of declarations for "otherwise readily available, non-privileged documents," yet Defendants did precisely that. *Id.* at 2 n.1. EPA furnished nothing more than a two-page declaration asserting that agency leadership conducted an "individualized, grant-by-grant review" based on generic considerations of "merit, fairness, and excellence." Ex. A at DEFSEPA_00001- 00002. NSF likewise offered only broad statements about its new priorities against DEI and "misinformation/disinformation" and a quick mention to an internal panel that used unspecified keyword searches and "analytics," without producing any underlying records or revealing the actual keywords employed. *See* Ex. B at DEFSNSF_00001, 00008. NEH produced a short declaration and a handful of pages that hint at, but do not include, the spreadsheet used by NEH and DOGE to implement the agency's termination policy, offering no meaningful details on

---

[5] Plaintiffs do not press FDA deficiencies in light of FDA's representation that it has not terminated, and does not plan to terminate, grants to UC researchers. Ex. D ¶ 8 (Pendleton Decl.).

the tools or criteria applied. Ex. C at 5-7. These deficiencies should be viewed in Plaintiffs' favor.

## II.     DEFENDANTS' PRODUCTION DEMONSTRATES THAT A PRELIMINARY INJUNCTION IS WARRANTED

### A.     Defendants Admit Grants Are Not Contracts.

Plaintiffs' Reply explains why Defendants' Tucker Act defense fails. But if more were needed, the Declaration of FDA grant director, Kimberly Pendleton, deals the fatal blow. Despite arguing repeatedly that Plaintiffs' claims are contractual, the Pendleton Declaration stresses "*the difference between a grant and a contract, which are distinct funding mechanisms.*" Ex. D ¶ 6 (Pendleton Decl.) (emphasis added). Plaintiffs agree: grants are not contracts. The Tucker Act therefore does not apply.

### B.     The Production Demonstrates That Plaintiffs Have Standing.

The production also supports a finding that Plaintiffs have standing. First, Defendants' documents demonstrate they were fully aware that Plaintiffs would be harmed because Plaintiffs prepared the grants, were responsible for conducting the research, and were responsible for appropriately using the funds. Ex. B at DEFSNSF_00001-3. As an example, Defendants' grant termination FAQs are directed specifically to the Principal Investigators responsible for each grant (*i.e.*, Plaintiffs), and treat the terminated grants as belonging to Principal Investigators, not their institutions.[6] Defendants were well aware of Plaintiffs' roles in their research and that they would be harmed by terminating that funding. Finally, in terms of redressability, Defendants' Notice of Terminated Grants refers to various grants that have been reinstated by Court Order. *See* Dkt. 38. Thus, the relief Plaintiffs seek would redress their harms.

### C.     Plaintiffs Are Likely to Succeed on the Merits.

#### 1.     The Production Shows That Defendants' Actions Violate Separation of Powers.

The grants at issue are funded by Congressional appropriation and, therefore, not subject to

---

[6] https://www.nsf.gov/updates-on-priorities#frequently-asked-questions-731 (June 19, 2025) ("**How will we find out if our grants are terminated?** Your Sponsored Research Office or equivalent will receive an email with the notice of termination.").

1   unilateral termination by the executive branch or its agencies without violating the Separation of

2   Powers. *See* TRO Mot. at 35-38; Dkt. 40 at 11-12 ("PI Reply Br."); *see also Green & Healthy*

3   *Home Initiatives, Inc. v. EPA*, 2025 WL 1697463 (D. Md. June 17, 2025). Yet the production

4   demonstrates that Defendants have done exactly that, admitting that the agencies terminated grants

5   in response to newly established "*administration* priorities"[7] as set forth in Defendant Trump's

6   various EOs, which directed those agencies to terminate the funding for projects and research that

7   the President dislikes.[8] The President has no such authority; only Congress does.

8          The President, DOGE, and the Agency Defendants interfered with duly-authorized

9   congressional appropriations, without authority and in violation of the Constitution. To be clear,

10  Defendants' documents demonstrate that when the Agency Defendants were not taking direction

11  from the President, they were taking direction from DOGE staffers, and coordinating with those

12  staffers (as well as OMB) to determine and finalize the blacklisted grant projects.[9] The NEH

13  Chairperson, for example, admits he is unaware of any law or regulation giving him authority to

14  terminate grants, but nevertheless declares he may do so in his "sole discretion." *See* Ex. C ¶ 22.

### 2.    Even Absent the Court-Ordered Search Terms, Defendants' Limited Production Shows Viewpoint Discrimination.

17         As noted above, the production confirms that Defendants selected grants for termination

using search terms, but Defendants did not provide the terms as the Court ordered. Without them,

Plaintiffs cannot determine how thoroughly discriminatory and censorious Defendants'

termination regime was. But Defendants' limited production is a revealing start.

21         Take for example, the McDonald Declaration, in which NEH admits that its policy for

grant termination "focused first on [] identifying open grants that focused or promoted (in whole

or in part) "environmental justice," "diversity, equity, and inclusion" or "diversity, equity

inclusion and accessibility," and "gender ideology." Ex. C ¶ 20 (McDonald Decl.). Likewise,

---

[7] *See* Ex. B ¶¶ 4, 20 (Stone Decl.); Ex. C ¶¶ 6-8 (McDonald Decl.); Ex. A ¶ 5 (Coogan Decl.); Ex. E at DEFSDOD_00007.

[8] *See* Ex. C ¶¶ 6-8, 20 (McDonald Decl.); Ex. B at DEFSNSF_00010.

[9] Ex. C ¶¶ 12, 18, 21 (McDonald Decl.); Ex. C at 7-10.

NSF's FAQs are explicit that the agency is terminating awards with a connection to "diversity, equity, inclusion (DEI) and misinformation/disinformation." Ex. B at DEFSNSF_00001.[10] FDA's new guidelines now require grant recipients to certify that they do not  "operate any programs that advance or promote DEI, DEIA, or discriminatory equity ideology." DEFSFDA_00022. Or consider this email to NEH Program directors regarding review of grants pursuant to Defendant Trump's EO:

> "…please identify any funded projects that "*advance Marxist equity, transgenderism, or green new deal social engineering policies.*" More specifically, following the descriptions provided in the Administration's recent Executive Orders, you should identify grants that focus on *or promote* (in whole or in part): *(i) "environmental justice"; (ii) "diversity, equity, and inclusion " or "diversity, equity, inclusion, and accessibility" (even if these exact terms are not used); and (iii) "gender ideology,"* which, according to the Executive order, replaces sex with *"an internal, fluid, and subjective sense of self unmoored from biological facts" or with "an ever-shifting concept of self-assessed gender identity.*"

Ex. C at 5 (emphasis added).

These limited documents show that this grant termination regime was "invidious viewpoint discrimination" in plain text. *See* PI Reply Br. at 12-14. The record in *Massachusetts v. Robert F. Kennedy, Jr.*, involving NIH grant terminations, in which a preliminary injunction decision is forthcoming, provides further corroboration. *Massachusetts v. Robert F. Kennedy, Jr.*, No: 1:25-cv-10814, Dkt. 127 (June 9, 2025) (proposed order attaching the certified administrative record in that case); *see also Trump's Cuts to N.I.H. Grants Focused on Minority Groups Are Illegal, Judge Rules*, N.Y. Times (June 16, 2025), https://www.nytimes.com/2025/06/16/us/politics/trump-nih-grants-cut.html.

### 3.    The Production Shows That Defendants Denied Plaintiffs Due Process.

In their Opposition, Defendants contend that Plaintiffs have no property interest in their grants and are therefore not entitled to due process. Dkt. 35 at 36:12 ("PI Opp'n"). Defendants' production undermines that position. As described above, Defendants' own FAQs refer to the

---

[10] *See also* Ex. B at DEFSNSF_00003 ("NSF will not support research with the goal of combating 'misinformation,' 'disinformation,' and 'malinformation' … *in a manner that advances a preferred narrative about significant matters of public debate*." (emphasis added)).

terminated grants as "*your* awards," with "your" referring to Principal Investigators, rather than their institutions. The questions in Defendants' FAQS are also framed from the perspective of "investigators," rather than "institutions."[11] Plaintiffs clearly have a property interest in grant projects they prepared, are named in, and for which they executed the contemplated research. *Id.* Further, despite contending that Plaintiffs can have no interest in "routine government contracts," PI Opp'n at 36-37, Defendants admit that grants, unlike contracts, primarily serve the interests of their recipients and of the broader public, rather than of the federal government.[12]

Defendants' documents also show Plaintiffs received inadequate process, including through Defendants' failure to provide pre-termination notice or opportunity to cure. Even termination for noncompliance requires minimal process. *See* Ex. D at DEFSFDA_00061-62. Moreover, Defendants utterly failed to provide Plaintiffs with individualized process. These terminations were conducted through mass keyword searches,[13] and grants were labeled as compliant or noncompliant with the executive priorities on vast spreadsheets populated with all "Biden-era" awards.[14] Defendants' process was also rushed and riddled with errors. Ex. C ¶ 19 (McDonald Decl.) (referencing incorrect EO in grant termination emails).

Further, Defendants' vague and inconsistent pronouncements are void for vagueness because they gave Plaintiffs no opportunity to conform their conduct to the law. TRO Mot. at 39-41. Defendants' production shows that their blacklisted topics included such broad and undefined terms as "environmental justice," "diversity, equity, and inclusion," "gender ideology," "misinformation," "disinformation," and "malinformation."[15] Tellingly, although Defendants' declarations refer repeatedly to the keyword searches they performed to identify grants for

---

[11] Ex. B at DEFSNSF_00001-3 ("**Can I still propose broadening participation activities . . . ?** Investigators should prioritize the first six broader impacts goals. . . "); https://www.nsf.gov/updates-on-priorities#frequently-asked-questions-731.
[12] Ex. D ¶ 6 (Pendleton Decl.) ("the primary beneficiary under a grant is the recipient, as a proxy for the public," whereas "the primary beneficiary under a contract is the Federal government").
[13] Ex. D ¶ 10 (Pendleton Decl.); Ex. B. ¶¶ 6, 8 (Stone Decl).
[14] Ex. C ¶ 9 (McDonald Decl.).
[15] Ex. B at DEFSNSF_00001-3, Ex. C ¶ 20 (McDonald Decl.).

terminations,[16] their FAQs declined to provide grant recipients with a "word list" which would permit them to submit research proposals without triggering the Administration's censure.[17]

### 4. The Production Shows That Defendants' Actions Are *Ultra Vires* under the Administrative Procedure Act.

Defendants' limited production reveals the extent to which Defendants have exceeded their own constitutional, statutory, and regulatory authority in terminating grants. As an initial matter, contrary to Defendants' position, the documents show these terminations are final agency actions by explicitly saying so. *See* Ex. H at DEFSAMERI_00001-00002; Ex. B at DEFSNSF_00001-3.

More significantly, Defendants contend that they acted within the scope of their regulatory authority because 2 C.F.R. 200.340 grants them the "authority to terminate [grants] for inconsistency with agency priorities." PI Opp'n at 30:23-24. But Defendants' production demonstrates that these purported new agency priorities were often inconsistent with still-existing agency mandates.[18] Moreover, Defendants' production reveals that the agencies acted in response to changes in *presidential* priorities.[19] *See* Ex. C ¶¶ 21-22 (McDonald Decl.).

### 5. The Production Shows That Defendants' Actions Are Arbitrary and Capricious under the APA.

Defendants' production shows the extent to which their actions were arbitrary and capricious, as they failed to engage in any "reasoned decisionmaking." *See Michigan v. EPA*, 576 U.S. 743, 750 (2015). Indeed, it reveals that the Agency Defendants failed to conduct any individualized review of grants,[20] nor did they provide Plaintiffs with an adequate explanation for

---

[16] Ex. D ¶ 10 (Pendleton Decl.); Ex. B. ¶¶ 6, 8 (Stone Decl).

[17] Ex. B at DEFSNSF_00003 ("**Is there a list of words I should be avoiding?** There is not a list of words. Investigators should focus on Intellectual Merit and Broader Impacts for proposals in a way that is consistent with NSF priorities.").

[18] For example, FDA's guidelines purport to both mandate and forbid activities related to "equity." Compare Ex. D at DEFSFDA_00083 ("**Equity in Representation**  For HHS-supported meetings, ensure diverse participation.") and *id.* at 00071 (Centers for Medicare & Medicaid Services (CMS) supports grants which advance "minority health equity") with *id.* at 00022 (grant recipients must certify that they do not "operate any programs that advance . . . discriminatory equity ideology"). .

[19] *See* Ex. B ¶¶ 4, 20 (Stone Decl.); Ex. C ¶¶ 6-8, 20 (McDonald Decl.); Ex. A ¶ 5 (Coogan Decl.); Ex. E at DEFSDOD_00007; Ex. B at DEFSNSF_00010.

[20] *See* Ex. D ¶ 10 (Pendleton Decl.); Ex. B. ¶¶ 6, 8 (Stone Decl).

1  the terminations, only boilerplate notices with plugged-in scripted language. Exs. H-J.

2  **III.    DEFENDANTS' DOCUMENTS SUPPORT CLASS CERTIFICATION**

3      Defendants' limited production demonstrates that Defendants acted and refused to act in

4  ways generally applicable to the UC researchers class. *See* Fed. R. Civ. P. 23(b)(2). There is a

5  clear and direct line from Defendant Trump's Executive Orders, through Defendant DOGE, to the

6  Agency Defendants' grant termination actions. In response to Defendant Trump's directives, *all*

7  Agency Defendants adopted new operating procedures and began the review of previously

8  awarded grants with an eye toward termination. Not a single Agency Defendant resisted the

9  Executive directives, eagerly replacing Congress's mandates with those of Defendant Trump's.

10      All Agency Defendants terminated grants at the direction of Defendant Trump. NEH, for

11  example, identified "projects funded under the Biden Administration that might be implicated by

12  President Trump's Executive Orders." Ex. C ¶ 8 (McDonald Decl.). The "review criteria" for

13  grants instructed staff to "follow[] the descriptions provided in the Administration's recent

14  Executive Orders." Ex. C at 5. NSF "memorialize[d] a shift in NSF priorities" based on how "the

15  President has directed agencies." *See* Ex. B DEFSNSF_00010. EPA reviewed grants "based on

16  [the] Administration priorit[ies]." Ex. A ¶ 5 (Coogan Decl.). The additional Agency Defendants'

17  exemplar letters demonstrate that they were also acting on Defendant Trump's orders. Each

18  contains references to the subject matter of the EOs or cites them explicitly. *See, e.g.*, Ex. J at

19  DEFSIMLS_00002 ("IMLS is repurposing its funding allocations in a new direction in

20  furtherance of the President's agenda." (citing EO 14238)); Ex. E at DEFSDOD_00007 (partially

21  terminating award to "remove…DEI-related terms and efforts, in accordance with the Executive

22  Order titled 'Ending Radical and Wasteful Government DEI Programs.'"); Ex. F at

23  DEFSNIH_00001-2 (citing "so called diversity, equity, and inclusion ('DEI') studies" as basis of

24  termination); Ex. G at DEFSED_00001-2 (same); Ex. I at DEFSUSDA_00001 (termination based

25  on "climate change or environmental justice initiatives"); Ex. I at DEFSUSDA_00003

26  (termination based on "DEI initiatives").

27      The documents also demonstrate that Defendant DOGE, the previously non-existent entity

28

expressly created by Defendant Trump to implement agency cuts, was a critical conduit between Defendant Trump and the Agency Defendants. The NEH Chairman McDonald, explained that two DOGE representatives "contacted NEH to discuss and advise [him] on implementing the President's priorities as stated in the Executive Orders, including terminating grants." Ex. C ¶ 12 (McDonald Decl.). And after NEH reviewed the grants, Mr. McDonald sent the DOGE employees "the final results." *Id.* at ¶ 17. He terminated the grants "in consultation with DOGE." *Id.* at ¶¶ 18, 21. The Acting Director of NSF, Brian Stone, testified that NSF grants selected for termination were identified by NSF employees, DOGE employees who were detailed to NSF, and even DOGE employees *who were not detailed to NSF*. Ex. B ¶ 6 (Stone Decl.). Finally, while the EPA declarant testified that he "did not receive communications from outside the Agency" regarding grant terminations, Ex. A ¶ 7 (Coogan Decl.), this assertion blatantly contradicts the EPA's own public statements, including several EPA press releases touting "EPA-DOGE partnered cancellations." *See* Compl. ¶¶ 144-46.

Moreover, as discussed in the First Amendment section above, each Agency Defendant terminated grants using similar, keyword-based procedures. NSF explained that terminated "[a]wards were identified through keyword searches and analytics." Ex. B ¶ 6 (Stone Decl.). NEH identified grants focusing on certain keywords like "environmental justice" or "diversity, equity, and inclusion." Ex. C ¶ 20 (McDonald Decl.). EPA terminated grants by "looking at grant titles and project descriptions," indicating the use of keywords. Ex. A ¶ 8 (Coogan Decl.).[21]

Finally, the exemplar letters from Agency Defendants besides NSF, EPA, and NEH support Plaintiffs' allegations that all grants—across *all* federal agencies—were terminated under the same Presidential orders, in the shadow (or under the direct supervision) of DOGE. The grant termination letters were essentially standardized forms, which all listed immediate effective dates. Indeed, some of the exemplar letters are literal "fill-in-the-blanks" documents. *See, e.g.*, Ex. I (red

---

[21] The FDA also implemented Defendant Trump's orders by "querying the relevant databases using keywords to identify the relevant grants and entities and initiating the appropriate next-steps." Ex. D ¶ 10 (Pendleton Decl.).

text with instructions such as "insert date of letter"); Ex. H (form letter stating the grants "included in the attached spreadsheet is/are being terminated"); Ex. J (blanks for federal award number and dates). Moreover, *every single letter* states that the reason for termination is a failure to "effectuate Agency priorities." *See* Ex. E at DEFSDOD_00001; Ex. F at DEFSNIH_00001; Ex. G at DEFSED_00001; Ex. H at DEFSAMERI_00001; Ex. I at DEFSUSDA_00001; Ex. J at DEFSIMLS_00002.

In short, all the grants were terminated in the same way for the same reasons.[22] Whether this way and these reasons are lawful or unlawful, constitutional or unconstitutional, as to each of the claims, are the common legal questions that unite the class and will decide the case. Defendants claim their terminations are too individualized for class treatment, a mere aggregation of unrelated determinations by different agencies. But the evidence is otherwise: a newly-created grant termination system is at work, directed from the top and cutting across agencies to search and terminate grants that offend, in word or idea, the overriding Presidential policies.[23] The systematic application of violative policies and practices manifests in numerous instances of individual harm and calls for adjudication and classwide relief. *Parsons v. Ryan*, 754 F.3d 657, 687-88 (9th Cir. 2014) (affirming Rule 23(b)(2) certification of statewide inmate class); *United Farmworkers v. Noem*, 2025 WL 1235525, at *53 (E.D. Cal. 2025) (applying Ninth Circuit's requirements and granting provisional class certification and preliminary injunctive relief); *D.B.U. v. Trump*, 2025 WL 1304198 , **5-6 ( D. Colo. May 6, 2025) (noncitizen detainee 23(b)(2)class certified).

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction (Dkt. 7) and Motion for Class Certification (Dkt. 18) should be granted.

---

[22] The produced exemplar letters are very similar to those that Plaintiffs received. *See* Dkt. 8-5 (NEH); Dkt. 9-8 (EPA); Dkt. 12-8 (NSF).

[23] Grant Watch collects data on ongoing NSF and NIH terminations from grant submissions, government websites and databases, matched to search terms described above, and reports over 200 UC grants terminated thus far totaling over $222 million. *See* https://grant-watch.us/.

1    Dated: June 19, 2025

2                                          By:  /s/  *Elizabeth J. Cabraser*

3                                          Anthony P. Schoenberg (CA Bar No. 203714)
                                            tschoenberg@fbm.com
4                                          Linda S. Gilleran (CA Bar No. 307107)
                                            lgilleran@fbm.com
5                                          Kyle A. McLorg (CA Bar No. 332136)
                                            kmclorg@fbm.com
6                                          Katherine T. Balkoski (CA Bar No. 353366)
                                            kbalkoski@fbm.com
7                                          FARELLA BRAUN + MARTEL LLP
                                            One Bush Street, Suite 900
8                                          San Francisco, CA 94104
                                            Telephone: 415. 954.4400

9                                          Erwin Chemerinsky (Admitted *pro hac vice*)
10                                         echemerinsky@law.berkeley.edu
                                            Claudia Polsky (CA Bar No. 185505)
11                                         cpolsky@law.berkeley.edu
                                            U.C. BERKELEY SCHOOL OF LAW
12                                         Law Building
                                            Berkeley, CA 94720-7200
13                                         Telephone: 510.642.6483

14                                         Elizabeth J. Cabraser (CA Bar No.  83151)
                                            ecabraser@lchb.com
15                                         Richard M. Heimann (CA Bar No. 63607)
                                            rheimann@lchb.com
16                                         Kevin R. Budner (CA Bar No. 287271)
                                            kbudner@lchb.com
17                                         Annie M. Wanless (CA Bar No. 339635)
                                            awanless@lchb.com
18                                         Nabila M. Abdallah (CA Bar No. 347764)
                                            nabdallah@lchb.com
19                                         LIEFF CABRASER HEIMANN &
                                            BERNSTEIN, LLP
20                                         275 Battery Street, 29th Floor
                                            San Francisco, CA  94111
21                                         Telephone:  415.956.1000

22                                         *Attorneys for Plaintiffs and the Proposed Class*
23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on June 19, 2025, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to registered parties.

Executed June 19, 2025, in San Francisco, California.


*/s/ ELIZABETH J. CABRASER*
ELIZABETH J. CABRASER