```
 1                 UNITED STATES DISTRICT COURT
 2                NORTHERN DISTRICT OF CALIFORNIA
 3        Before The Honorable Rita F. Lin, District Judge
 4
 5  THAKUR, et al.,              )
                                 )
 6         Plaintiffs,            )
                                 )
 7  vs.                          )   Case No. C 25-04737-RFL
                                 )
 8  TRUMP, et al.,               )
                                 )
 9         Defendants.            )
    _____)
10
                                     San Francisco, California
11                                   Wednesday, July 2, 2025
12
     TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
13           RECORDING 11:02 - 11:23 = 21 MINUTES
14  APPEARANCES:
15  For Plaintiffs:
                                     Farella Braun Martel, LLP
16                                   One Bush Street, Suite 900
                                     San Francisco, California
17                                      94104
                               BY:   KATHERINE BALKOSKI, ESQ.
18
                                     Lieff Cabraser Heimann &
19                                      Bernstein, LLP
                                     Embarcadero Center West
20                                   275 Battery Street
                                     29th Floor
21                                   San Francisco, California
                                        94111
22                             BY:   ELIZABETH J. CABRASER, ESQ.
23
24
25            (APPEARANCES CONTINUED ON NEXT PAGE)
```

```
                                                                    2
 1  For Defendants:
                                   Department of Justice
 2                                 1100 L Street NW
                                   Suite Office 11308
 3                                 Washington, D.C. 20005
                              BY:  JASON ALTABET, ESQ.
 4
    Transcribed by:                Echo Reporting, Inc.
 5                                 Contracted Court Reporter/
                                   Transcriber
 6                                 echoreporting@yahoo.com
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

3

1 Wednesday, July 2, 2025                                    11:02 a.m.
2                       P-R-O-C-E-E-D-I-N-G-S
3                              --oOo--
4         THE CLERK: Calling Civil Case 25-4737, Thakur, et
5 al. versus Trump, et al.
6    Counsel, please state your appearances for the record,
7 beginning with the Plaintiffs.
8         MS. CABRASER (via Zoom): Good morning, your
9 Honor. Elizabeth Cabraser, Lief, Cabraser, Heimann and
10 Bernstein, for Plaintiffs.
11        MS. BALKOSKI (via Zoom): Good morning, your
12 Honor. Kat Balkoski, Farella Braun and Martel, for
13 Plaintiffs.
14        MR. ALTABET (via Zoom): Jason Altabet on behalf
15 of the United States, your Honor.
16        THE COURT: Good morning to all of you. Thank you
17 for the case management statement. I just wanted to run
18 through a few things that I saw in there. I appreciate how
19 much the parties are working together on these issues. I
20 did see some of the discovery issues, which I'm not sure if
21 they're ripe yet for the Court to need to weigh in on or
22 whether you all are still meeting and conferring, but I
23 thought it would be helpful for you to hear some thoughts in
24 terms of what I think is the fair scope. But, before I do
25 that, let me just check in with Plaintiffs.

4

1  I understood from the case management statement that
2 it's Plaintiff's plan to add some additional Plaintiff --
3 named Plaintiffs to the complaint and, therefore, seek to
4 expand the preliminary injunction that the Court issued to
5 cover those additional agencies from which those named
6 Plaintiffs obtained their grants.  And, when Plaintiffs are
7 doing that, is the expectation that the request will be to
8 certify classes along -- or to certify classes along the
9 same lines that the Court has already provisionally
10 certified?  In other words, that I would just change the
11 definition of the Form Termination Class and the Executive
12 Order Classes here that the Defendant agencies included, the
13 Defendant agencies from which the new named Plaintiffs had
14 obtained their grants.
15      Let me just check in with Plaintiffs to make sure I'm
16 understanding correctly.
17           MS. CABRASER:  Yes, your Honor.  Elizabeth
18 Cabraser for Plaintiffs.  That is correct.  We don't propose
19 to request amendment of the Court's class definition other
20 than to include additional agencies for whom new proposed
21 class representatives are stepping forward.
22           THE COURT:  Thank you.  That's helpful.  So, then
23 just taking a look at the categories to which the parties
24 originally agreed to provide -- in terms of expedited
25 discovery for the first round of the -- of the motions

practice in the case, originally you all had a category one for agency decision making process.  It seems to me that this same information is still pertinent as to the additional agencies for whom the additional Plaintiffs will be added, at least as to grant terminations having to do with the existing -- or the two DEI orders that were the subject of the provisional certification.

So, I don't know that there needs to be information about all the other executive orders since there isn't a certified class as to that, but as to the policy and the practice for selecting grants for termination of these additional agencies either for a form letter termination or for the two DEI executive orders, it is still relevant for class certification to understand how that was carried out and if it was carried out in a sort of uniform way across the agencies.

So, I would be -- it would seem to me appropriate to order discovery on that on an expedited basis for the same reasons that the Court did before.

And then category two through three would be moot. That's the number of terminated grants.  That information was already provided before, and I don't -- it doesn't sound like anybody needs that to be re-provided.

Then the third category was the form termination letters, exemplars of those, and it seems appropriate to

1 require the same exemplars here again.
2      So, that seems to me in line with what Plaintiffs are
3 requesting and also more or less in line with what
4 Defendants are proposing, but I wanted to check in with the
5 parties if you all had any objections or things I should
6 consider in terms of ordering that additional discovery.
7      I'll check in first with Plaintiff, and then I can hear
8 from Defendant.
9           MS. CABRASER:  Elizabeth Cabraser for the
10 Plaintiffs.  Yes -- yes, your Honor.  And we could have and
11 should have made that clear with respect to categories one
12 and three.  We think those are still highly relevant and
13 appropriate.
14      With respect to identifying the grants, we -- we have
15 been conferring with the United States on that, in part
16 because it -- it is not as easy as -- as we thought to get a
17 complete picture of terminated grants.  Most of them get
18 (Zoom glitch), but there are a few that are disbursed among
19 multiple universities.  And, also, as noted in the -- in the
20 statement, we are looking at the National Institutes of
21 Health's grant terminations.  Some but not all of those are
22 covered by another injunction in another case.  We don't
23 want to overlap or interfere with that in any way, of
24 course, but some are not because that injunction applied to
25 a specific list, and we've been contacted by other NIH

grantees who don't (Zoom glitch) covered.  So, that is another thing that we'll look into, and it is possible that we may be asking to expand the scope of the class to cover those otherwise non-enjoined terminated NIH grants.

So, to that extent, identifying the terminated grants is -- is still relevant.

THE COURT:  That makes sense.

Let me hear from Defendant as to Ms. Cabraser's point and then as to the -- the Court's initial thoughts on discovery.

MR. ALTABET:  So, on the NIH point, we are looking into both the overlap and just generally ensuring that our NIH estimate is correct.  So far we think -- and -- and the reason that is is because there was like around 350 grants listed in that Mass v. Kennedy spreadsheet, but 119 identified in this matter for our estimate.  And I only just shortly, though, received a communication from NIH.  So, I'm still working through it, but right now our understanding is that other lists included grants that were not -- that didn't qualify for what we were looking for here.  So, for example, where the University of California was maybe a subgrantee or where it wasn't a termination but, rather, like a non-renewal or a request for information or anything like that.  So, we're still digesting that, but as to the number of grants, we are working with Plaintiffs identifying

1  the overlap with NIH and making sure that all of our
2  estimates are correct.
3        When it comes to the discovery, our -- our general view
4  was that the Court's preliminary injunction was based on a
5  few things.  One of them was the content of termination
6  letters, and the other was whether a grant was terminated
7  pursuant to the two DEIA executive orders.
8        So, just to us it seemed like discovery could be more
9  limited to the actual content of the termination letters
10 where we agree on what those termination letters look like
11 for every agency, and then we would just apply the Court's
12 ruling to that or if there's any agency specific briefing
13 that needs to happen, like say we think that this agency
14 really is committed to agency discretion by law in a way
15 that didn't apply to other ones.  And then for DEIA orders,
16 it would just -- I think the Court's general ruling would
17 apply and the question just be how many grants were
18 terminated pursuant to that DEIA order.  But if the Court
19 thinks the processed discovery of the same kind is
20 appropriate, then the Court thinks that that's appropriate.
21 That's just our view is it could potentially be more limited
22 just because of the way the preliminary injunction is more
23 limited than the overall briefing was previously.
24             THE COURT:  All right.  I think the only change
25 would be to category one is that the Government would need

9

to show that the policy for selecting grants for termination by form letter or by virtue of the DEIA executive orders and that each of these categories, the overarching executive order and directives animating the termination policy at each of the four agencies, could be all of the executive orders at issue in the complaint to the extent that they motivated the form termination letters or the DEIA-based terminations.

And then the third thing on the list was the way in which the policy or overarching priority was communicated to each agency and by whom.  That's still the same scope as before, and the way in which the termination policy was implemented at each agency is -- is the same scope as before.

So, I hope that's clear.  And -- and, just so everyone's clear, I -- I am ordering expedited discovery on those topics to allow provisional certification to be addressed by the Court as to the additional agencies.

I do think the timeline that you all proposed looked great.  I'm going to enter the timelines exactly as you suggested in your case management statement, and for now I'll set a hearing on the motion to extend the scope of preliminary injunction and provisionally certified class on August 26th at 10:00 a.m., and then I'll set the hearing on the summary judgment motions and class certification and, if

1  appropriate, then trial on the remaining issues, I'll just
2  set that for now as December 16 at 10:00 a.m.  It may be
3  that I will take -- I think there's a high likelihood that I
4  would take the first -- the August 26th hearing off calendar
5  once I have all the papers, and I will make sure to do that
6  at least the week before so that those of you who have to
7  travel can make arrangements appropriately.  And then I
8  think it's likely that I will need a hearing on -- on the
9  summary judgment and request for a final permanent
10 injunction, and I will plan to have that on December 16th.
11       So, I think that date will stick unless there is
12 something unusual that happens.
13          MS. CABRASER:  Elizabeth Cabraser for Plaintiffs.
14 Thank you very much for that, your Honor.  And on the
15 discovery, it may be that as we are working through the
16 discovery and as we are reviewing the termination letters
17 and documentation that our additional proposed class
18 representatives have received, if there's something that we
19 can't work out with the United States, we will come to the
20 Court promptly and -- and request a resolution on that.  I'm
21 not anticipating anything at this time, but we haven't seen
22 all of the documentation, and we may need some clarification
23 on the margins if we can't agree.
24          THE COURT:  Just use the joint discovery letter
25 process that's in my standing order.  I'll keep discovery

for this because I think it makes sense for me to not refer to a magistrate given the small volume of discovery that's at issue.

        MS. CABRASER:  Thank you, your Honor.

        THE COURT:  The last item I had on my agenda was compliance with the preliminary injunction.  Mr. Altabet, could you give an update on where things are on that following up on your case management statement?

        MR. ALTABET:  Yes, your Honor.  So, starting with NEH, we have identified 46 grants and we expect to be finished with reinstatement by July 11th.  NEH had the ability to search by the institutional affiliation of -- of I guess the recorded institutional affiliation they had a place in their fields that allowed for saying let's say a principal investigator was associated with the University of California.  So, they had that ability to search.  So, in the joint status report -- and I'll get to in a second -- we had various methods for trying to comply with the Court's order.  Here it was fairly easy because there was the ability to search.

    Similarly, NSF, we identified 114 grants to be reinstated, and those letters have already gone out, and we're finishing notifying program officers about that there as well.  They had the ability to search and identify principal investigators and co -- co-principal investigators

1 who were affiliated with the University of California.  So,
2 they were able to not just look at grants to the University
3 of California but broader through their grant system and
4 through the terminations.
5     And then, lastly, EPA did not have the ability to
6 search through institutional affiliation.  They just didn't
7 collect it in that way.  So, they looked at grants and
8 subgrants to University of California with the caveat
9 discussing the staff support that there's a problem with
10 reporting of under $30,000, and we think that's going to be
11 a fairly global issue for those agencies that have to use
12 the grant and subgrant method of finding institutional
13 affiliation.  EPA identified 25 grants to be restored, and
14 last time, when they had a similar sort of restoration, the
15 schedule took them about a week.  They started on June 27th.
16 So, we expect it should be done around this Friday, which
17 would be one week afterwards.
18     And we haven't identified any other, for these
19 agencies, problems with finding grants that qualify for the
20 Court's order.  I've started collecting from other agencies
21 questions about their technical ability.  So, we may in the
22 future have discussions depending on whether the Court
23 extends the preliminary injunction.  But for now, for these
24 three, that's the status of the compliance.
25         THE COURT:  Let me give Plaintiffs an opportunity

1  to comment on that.
2           MS. CABRASER:  Thank you, your Honor.  Elizabeth
3  Cabraser for Plaintiffs.  We are encouraged by the report on
4  compliance.  We've had reports in from our class members
5  that their grants have been restored.  So, that's good news
6  on -- we're hopeful that the reinstatement process continues
7  apace.
8       We would suggest that the Court set another date or
9  deadline for a further report from -- from Defendants on the
10 compliance.  And, of course, we're -- we always stand ready
11 to try to help to work through any issues in the
12 identification and reinstatement process.
13          THE COURT:  Well, I did wonder when I saw that
14 Defendants were saying that they had an issue with
15 identifying situations in which the grant was below a
16 certain amount of money, $30,000, if there was some way that
17 -- that Plaintiffs -- or third party discovery from the
18 University of California would be helpful to -- to ensure
19 prompt reinstatement of the grants.  I'm open to hearing
20 from the parties about that or if -- if it's premature to
21 talk about that, you know how to find me if you need help
22 with a discovery dispute along those lines.
23          MS. CABRASER:  Elizabeth Cabraser again.  Thank
24 you, your Honor.  We've been in touch with UC general
25 counsel's office, and they have a copy of this statement.

1 So, it may be that they can be of assistance in identifying
2 the sub $30,000 grants.  We haven't heard back on -- on
3 that.
4         THE COURT:  Right.  Thank you.
5    So, I'll set status report deadline on -- let's set it
6 on July 11th, and that way we can just see what the progress
7 is on all of this.  Thank you for the update, Mr. Altabet.
8 I appreciate it.
9    Is there anything else the parties would like the Court
10 to address this morning?  I'll start with Plaintiff, and
11 then I can hear from the Government.
12        MS. CABRASER:  The only thing, your Honor, that I
13 can think of -- Elizabeth Cabraser again -- is with respect
14 to the expedited discovery that the Court ordered which we
15 appreciate.  Last time around what we did not get was actual
16 keywords, search words, et cetera, from the Defendant, and
17 we are hoping and requesting that this time around that be
18 included in the discovery that's produced.
19        THE COURT:  Let me hear from the Government on
20 that point.
21        MR. ALTABET:  Yeah, I think this is just a -- a
22 misunderstanding on our part.  We thought that the methods
23 portion of the order was literally -- in the parentheses
24 were the examples of what we would identify, like that we
25 used keywords that we used analytics.  We didn't know we

1 were supposed to specifically identify the keywords.  So, if
2 -- if the Court so orders, then we'll be sure to include
3 that.  We just thought it was method, literal identification
4 of method.
5          THE COURT:  Thank you for that clarification.
6 And, yes, I do think that's part of the analysis in order to
7 see if there's consistency in the way that the Government
8 has implemented this across the agency.  Understanding how
9 it was done is -- is important.
10     So, I will order as part of the expedited discovery the
11 actual keywords used in any keyword search.
12          MR. ALTABET:  Thank you, your Honor.
13          THE COURT:  Anything else from the Government that
14 you'd like the Court to address this morning?
15          MR. ALTABET:  I think the only other piece is, so,
16 to the extent that we have failed through technical reasons
17 or otherwise to identify a grant that's relevant to the
18 Court's order, if Plaintiffs do have -- do know of such
19 grants, we're happy to reinstate them upon notice, but
20 obviously there will be probably hiccups where there -- just
21 the form wasn't filled out that says someone was
22 institutionally identified with the University of California
23 or something like that.
24          THE COURT:  That sounds good.  I -- I can see that
25 you all are working together well, and I appreciate it.

```
                                                              16
 1  Thank you. Thank you all.
 2           ALL:  Thank you, your Honor.
 3           THE CLERK:  Court is in recess.
 4      (Proceedings adjourned at 11:23 a.m.)
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

17

1                    CERTIFICATE OF TRANSCRIBER
2
3       I certify that the foregoing is a true and correct
4  transcript, to the best of my ability, of the above pages of
5  the official electronic sound recording provided to me by
6  the U.S. District Court, Northern District of California, of
7  the proceedings taken on the date and time previously stated
8  in the above matter.
9       I further certify that I am neither counsel for,
10 related to, nor employed by any of the parties to the action
11 in which this hearing was taken; and, further, that I am not
12 financially nor otherwise interested in the outcome of the
13 action.



16            Echo Reporting, Inc., Transcriber
17                  Monday, July 7, 2025