Erwin Chemerinsky (*pro hac vice*)
echemerinsky@law.berkeley.edu
Claudia Polsky (CA Bar No. 185505)
cpolsky@law.berkeley.edu
U.C. BERKELEY SCHOOL OF LAW
Law Building
Berkeley, CA 94720-7200
Telephone: 510.642.6483

Elizabeth J. Cabraser (CA Bar No. 83151)
ecabraser@lchb.com
Richard M. Heimann (CA Bar No. 63607)
rheimann@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000

Anthony P. Schoenberg (CA Bar No. 203714)
tschoenberg@fbm.com
Linda S. Gilleran (CA Bar No. 307107)
lgilleran@fbm.com
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, CA 94104
Telephone: 415.954.4400

*Attorneys for Plaintiffs and the Proposed Class*
[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEETA THAKUR, *et al.*, | Case No. 3:25-cv-4737 |
| Plaintiffs, | |
| v. | **MOTION FOR PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION AS TO ADDITIONAL AGENCY DEFENDANTS** |
| DONALD J. TRUMP, *et al.*, | |
| Defendants. | |

1

## TABLE OF CONTENTS

2

**Page**

3   INTRODUCTION ............................................................................................................... 1

4   BACKGROUND ................................................................................................................. 2

    I.    Background on Federal Agency Grantmaking.......................................................... 2

5         A.    Department of Defense .................................................................................. 2

6         B.    Department of Transportation ....................................................................... 3

7   II.   The Trump Administration Directed Federal Agencies to Terminate Grants.................. 5

          A.    DOD Grant Terminations............................................................................... 5

8               1.    Dr. Eli Berman's Grant Termination ................................................. 6

9         B.    DOT Grant Terminations ............................................................................... 6

10              1.    Dr. Susan Handy's Grant Terminations ............................................ 7

    ARGUMENT ...................................................................................................................... 9

11  I.    Drs. Berman and Handy Have Standing. ................................................................. 9

12  II.   The Court Should Provisionally Certify Form Termination and Equity Termination
          Classes for UC Researchers Whose Grants were Terminated by DOD and DOT............ 9

13        A.    The Class Definitions for DOD and DOT. ................................................... 9

14        B.    The DOD/DOT Classes Satisfy The Requirements of Class Certification.......... 10

15              1.    The Proposed Classes are Sufficiently Numerous. ................................ 10

16              2.    There Are Common Questions of Law and Fact and the Proposed
                      Classes Satisfy Rule 23(b)(2)............................................................ 12

17              3.    Plaintiffs' Claims Are Typical of Those of the Proposed Classes. ........... 13

18              4.    Plaintiffs and Class Counsel Will Adequately Represent the
                      Proposed Classes................................................................................ 14

19  III.  The Court Should Issue a Preliminary Injunction as to the Additional Agency
          Defendants for All the Reasons in the Court's Prior Order. ..................................... 15

20        A.    Plaintiffs Are Likely to Succeed on the Merits of Their Claims that the
                DOD and DOT Grant Terminations are Unlawful........................................ 16

21              1.    Defendants' Grant Terminations Violate the First Amendment. ............. 16

22              2.    Defendants' Grant Terminations Are Contrary to Law Under the
                      APA.................................................................................................... 17

23              3.    Defendants' Grant Terminations Are Arbitrary and Capricious
                      Under the APA. ................................................................................. 19

24        B.    The Harms Caused by DOD's and DOT's Unlawful Conduct Will Become
25              Irreparable Absent The Court's Intervention. ............................................... 21

          C.    The Balance of Equities Weigh in Plaintiffs' Favor, and An Expanded
26              Preliminary Injunction Is in the Public Interest. .......................................... 21

27  CONCLUSION................................................................................................................. 22

28

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Armstrong v. Davis,*
275 F.3d 849 (9th Cir. 2001), *overruled on other grounds by Johnson v.
California*, 543 U.S. 499 (2005) ........................................................................................ 12

*Baltimore Gas & Electric Co. v. Natural Res. Def. Council, Inc.,*
462 U.S. 87 (1983) ............................................................................................................. 19

*Bame v. Dillard,*
No. 05-1833, 2008 WL 2168393 (D.D.C. May 22, 2008) ....................................................... 10

*Barbara v. Trump,*
No. 2025 DNH 079P, 2025 WL 1904338 (D.N.H. July 10, 2025) ......................................... 10

*Brown & Williamson Tobacco Corp. v. FDA,*
153 F.3d 155 (4th Cir. 1998), *aff'd, FDA v. Brown & Williamson Tobacco
Corp.*, 529 U.S. 120 (2000) ................................................................................................ 18

*Chinitz v. Intero Real Est. Servs.,*
No. 18-CV-05623-BLF, 2020 WL 7391299 (N.D. Cal. July 22, 2020) .......................... 10, 11

*City & Cnty of S.F. v. USCIS,*
408 F. Supp. 3d 1057 (N.D. Cal. 2019) ............................................................................. 21

*Civil Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr.,*
317 F.R.D. 91 (N.D. Cal. 2016), *aff'd*, 867 F.3d 1093 (9th Cir. 2017) ................................ 11

*Clarke v. Off. of Fed. Housing Enter. Oversight,*
355 F. Supp. 2d 56 (D.D.C. 2004) ..................................................................................... 21

*Coreas v. Bounds,*
No. TDC-20-0780, 2020 WL 5593338 (D. Md. Sept. 18, 2020)......................................... 14

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,*
591 U.S. 1 (2020) ............................................................................................................... 18

*Diamond Alternative Energy, LLC v. Env't Prot. Agency,*
145 S. Ct. 2121 (2025) ......................................................................................................... 9

*Drs. for Am. v. Off. of Pers. Mgmt.,*
766 F. Supp. 3d 39 (D.D.C. 2025) ........................................................................... 9, 19, 20

*FCC v. Fox Television Stations, Inc.,*
556 U.S. 502 (2009) ........................................................................................................... 19

**TABLE OF AUTHORITIES**
(continued)

Page

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................. 14

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ................................................................... 12

*Hansberry v. Lee*,
    311 U.S. 32 (1940) .................................................................................. 14

*Health Ins. Ass'n of Am., Inc. v. Shalala*,
    23 F.3d 412 (D.C. Cir. 1994) .................................................................. 18

*Jackson v. Danbury*,
    240 F.R.D. 145 ( D. Del. 2007) .............................................................. 11

*Kalispel Tribe of Indians v. U.S. Dep't of the Interior*,
    999 F.3d 683 (9th Cir. 2021) ................................................................... 18

*Kaweah Delta Health Care Dist. v. Becerra*,
    123 F.4th 939 (9th Cir. 2024) ........................................................... 17, 18

*Kim v. Allison*,
    87 F.4th 994 (9th Cir. 2023) ................................................................... 14

*Lyon v. U.S. Immigr. & Customs Enf't*,
    308 F.R.D. 203 (N.D. Cal. 2015) ...................................................... 10, 14

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ................................................................... 11

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) ................................................................... 21

*Meyer v. Portfolio Recovery Assocs., LLC*,
    707 F.3d 1035 ( 9th Cir. 2012) ............................................................... 10

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) .................................................................................. 19

*Nat'l Endowment for the Arts v. Finley*,
    524 U.S. 569 (1998) .......................................................................... 16, 17

*Nat'l Treasury Emps. Union v. U.S. Dept. of Treasury*,
    838 F. Supp. 631 (D.D.C. 1993) ............................................................ 21

*Nw. Env't Advocates v. U.S. EPA*,
    537 F.3d 1006 (9th Cir. 2008) ................................................................. 17

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*R.I.L-R v. Johnson*,
    80 F. Supp. 3d 164 (D.D.C. 2015) ....................................................................... 10

4

5

*Regan v. Taxation with Representation of Wash.*,
    461 U.S. 540 (1983)............................................................................................. 16

6

*Rhode Island Latino Arts v. Nat'l Endowment for the Arts*,
    No.25-cv-79-WES, 2025 WL 1009026 (D.R.I. Apr. 3, 2025)........................ 16, 17

7

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
    515 U.S. 819 (1995)............................................................................................. 16

8

9

*Scholl v. Mnuchin*,
    489 F. Supp. 3d 1008 (N.D. Cal. 2020) ............................................................... 14

10

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ............................................................................................... 9

11

12

*Tennessee v. Dep't of Educ.*,
    104 F.4th 577 (6th Cir. 2024) .............................................................................. 21

13

14

*Trump v. CASA, Inc.*,
    145 S. Ct. 2540 (2025) (Kavanaugh, J. concurring) ............................................ 10

15

16

*Wedra v. Cree, Inc.*,
    No. 19-cv-3162 (VB), 2022 WL 2116760 (S.D.N.Y. June 13, 2022) ................... 11

17

18

*Widakuswara v. Lake*,
    No. 1:25-cv-1015, 2025 WL 1166400 (D.D.C. Apr. 22, 2025)............................ 21

19

20

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ........................................................................................... 15, 20

21

22

*Wolford v. Lopez*,
    116 F.4th 959 (9th Cir. 2024) .............................................................................. 21

**Statutes**

23

24

5 U.S.C. §706(2)(A)......................................................................................... 17, 18

25

5 U.S.C. §706(2)(C)......................................................................................... 17, 18

26

49 U.S.C. § 5505(b)(4)(B)(v)(II) ............................................................................ 5

27

49 U.S.C. § 6503(c)(1)................................................................................... 4, 5, 18

28

50 U.S.C. § 1901 et seq.......................................................................................... 18

- iv -

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Bipartisan Infrastructure Law* ........................................................................ 4

CARES Act ...................................................................................................... 14

David L. Boren National Security Education Act of 1991, Pub. Law. No. 102-183,
    105 Stat. 1271 (codified at 50 U.S.C. §1901 et seq.) ...................................... 3, 17, 18

Department of Defense Reorganization Act of 1958, Pub. L. No. 85-599, 72 Stat.
    514 ............................................................................................................ 2

Impoundment Control Act of 1974 .................................................................. 17

Infrastructure Investment and Jobs Act ("IIJA") ............................................. 4, 7, 18

National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283,
    134 Stat. 3388 ............................................................................................ 3

National Defense Authorization Act for Fiscal Year 2024, Pub. L. No. 118-31, 137
    Stat. 136 .................................................................................................... 3

National Military Establishment through the National Security Act of 1947 ............ 2

National Security Act of 1947, Pub. L. No. 80-253, 61 Stat. 495 ...................... 2

National Security Education Act of 1991 ........................................................ 3

Pub. L. No. 97-449 (codified at 49 U.S.C. § 101(a)) ...................................... 4

Pub L. No. 117-85, 135 Stat. 429 (codified at 23 U.S.C § 101) ...................... 4

Transportation Act ........................................................................................ 3

**Court Rules**

Fed. R. Civ. P. 23 ........................................................................................ 10

Fed. R. Civ. P. 23(a) ................................................................................... 10, 15

Fed. R. Civ. P. 23(a)(1) ............................................................................... 10

Fed. R. Civ. P. 23(a)(2) ............................................................................... 12

Fed R. Civ. P. 23(a)(3) ............................................................................... 12

Fed. R. Civ. P. 23(a)(4) ............................................................................... 14

Fed. R. Civ. P. 23(b)(2) ............................................................................... *passim*

**TABLE OF AUTHORITIES**
(continued)

Page

**Other Authorities**

*A Brief History of the DOT*, U.S. Dep't of Trans.,
   https://transportation.libguides.com/c.php?g=1154894&p=8441208 ...................................... 3

*The Bipartisan Infrastructure Law and Innovation*, U.S. Dep't of Trans.,
   https://www.transportation.gov/priorities/innovation/bipartisan-infrastructure-
   law-and-innovation ......................................................................................................................... 4

C. Todd Lopez, *Initial DOGE Findings Reveal $80 Million in Wasteful Spending
   at* ............................................................................................................................................. 5, 16

C. Todd Lopez, *Initial DOGE Findings Reveal $80 Million in Wasteful Spending
   at DOD*, U.S. Dep't of Def. (Mar. 4, 2025),
   https://www.defense.gov/News/News-Stories/Article/Article/ 4096431/initial-
   doge-findings-reveal-80-million-in-wasteful-spending-atdod/ ......................................... 5, 16

*Continuing Elimination of Wasteful Spending at the Department of Defense*, U.S.
   Dep't of Def. (Mar. 20, 2025),
   https://media.defense.gov/2025/Mar/20/2003673531/-1/-1/0/continuing-
   elimination-of-wasteful-spending-at-the-department-of-defense.pdf ................................... 5

Grants.Gov, *View Grant Opportunity* (Mar. 15, 2024), https://grants.gov/search-
   results-detail/351388 ..................................................................................................................... 3

Harry S. Truman Library Museum, *Special Message to the Congress
   Recommending the Establishment of a Department of National Defense* (Dec.
   19, 1945) https://www.trumanlibrary.gov/library/public-papers/218/special-
   message-congress-recommending-establishment-department-national ................................ 2

*The Minerva Initiative*,
   https://web.archive.org/web/20090211034051/http://minerva.dtic.mil/ .............................. 3

*Overview of Funding and Financing at USDOT*, U.S. Dep't of Trans.,
   https://www.transportation.gov/grants/dot-navigator/overview-funding-and-
   financing-usdot ............................................................................................................................... 4

*Pentagon Culls Social Science Research, Prioritizes Fiscal Responsibility and
   Technologies for Future Battlefield*, U.S. Dep't of Def. (Mar. 7, 2025),
   https://www.defense.gov/News/Releases/Release/Article/4113076/pentagon-
   culls-social-science-research-prioritizes-fiscal-responsibility-and-te/ ................................... 5

President Lyndon B. Johnson, *Special Message to Congress on Transportation*
   (March 2, 1966), https://www.presidency.ucsb.edu/documents/special-
   message-the-congress-transportation-0 ...................................................................................... 3

**TABLE OF AUTHORITIES**
(continued)

Page

*Trump's Transportation Secretary Sean P. Duffy: Follow The Law*, U.S. Dep't of
    Trans. (April 24, 2025), https://www.transportation.gov/briefing-room/trumps-
    transportation-secretary-sean-p-duffy-follow-law ....................................................... 7

*U.S. Transportation Secretary Duffy Takes Action to Rescind "Woke" DEI
    Policies and Advance President Trump's Economic Agenda*, U.S. Dep't of
    Trans. (January 29. 2025), https://www.transportation.gov/briefing-room/us-
    transportation-secretary-sean-duffy-takes-action-rescind-woke-dei-policies-and ............... 6, 7

*U.S. Transportation Secretary Sean P. Duffy Defunds Woke University Grants*,
    U.S. Dep't of Trans. (May 2, 2025), https://www.transportation.gov/briefing-
    room/us-transportation-secretary-sean-p-duffy-defunds-woke-university-grants ............. 8, 16

**Regulations**

2 CFR 200.340(a)(4) .................................................................................................... 13

2 CFR § 200.340(a)(2) .................................................................................................... 8

**Constitutions**

First Amendment ................................................................................................. *passim*

1

**INTRODUCTION**

2    Plaintiffs filed suit on behalf of themselves, and all similarly situated University of

3  California researchers, whose federally funded grants have been or will be imminently terminated

4  by Defendants. In a prior order (Dkt. 54), the Court granted Plaintiffs preliminary injunctive relief

5  and provisional class certification against the three agencies—EPA, NEH, and NSF—that

6  terminated grants held by the Plaintiffs named in the initial complaint. Specifically, the Court

7  held that Plaintiffs were "likely to succeed on their claims that the termination of grants for

8  research involving blacklisted topics like 'diversity' and 'equity' violates the First Amendment

9  and runs contrary to Congress's specific directives to support research concerning—and foster

10  greater involvement in the sciences of—underrepresented groups." Order at 2. It also held that

11  Plaintiffs were "likely to succeed on their claims that the *en masse* terminations via form letter

12  were arbitrary and capricious." *Id.* The Court therefore certified two classes of UC researchers

13  whose grants were terminated by the initial three agencies (the Equity Termination and Form

14  Termination Classes) and preliminarily enjoined the termination of the class members' grants. *Id.*

15  at 51-52, 60.

16    Pursuant to the Court's subsequent scheduling order (Dkt. 60), Plaintiffs now bring this

17  motion for an additional preliminary injunction and provisional class certification order

18  encompassing two additional Agency Defendants—U.S. Department of Defense ("DOD") and

19  U.S. Department of Transportation ("DOT")—that unlawfully terminated grants held by Plaintiffs

20  and proposed class representatives added in the Amended Complaint, Dr. Eli Berman and Dr.

21  Susan Handy. Plaintiffs Berman and Handy allege the same claims as those of the other class

22  representatives. DOD's and DOT's grant terminations are likewise similar to the grant

23  terminations by EPA, NEH, and NSF. Plaintiffs therefore respectfully request that the Court (1)

24  certify two new Equity and Form Termination Classes that include grant recipients affected by

25  DOD and DOT grant terminations, and (2) issue a new preliminary injunction as to DOD and

26  DOT mirroring the one already issued.[1]

27

28

---

[1] Plaintiffs do not at this time seek amendment of the earlier order, now on appeal, and recognize that the Court may ultimately consolidate the classes before final adjudication.

PL'S MOTION FOR PRELIM. INJUNCTION & CLASS
CERTIFICATION AS TO ADDITIONAL DEFS
CASE NO. 3:25-CV-4737

1

## BACKGROUND

2

### I.    Background on Federal Agency Grantmaking

3

For purposes of this Motion, Plaintiffs discuss the mission and grantmaking functions of

4

only those Agency Defendants that terminated grants held by the new Plaintiffs to this action:

5

DOD and DOT.[2]

6

#### A.    Department of Defense

7

DOD is a federal agency that was established to promote national security. Shortly after

8

the end of World War II, President Truman urged Congress to combine the War and Navy

9

Departments under one single Department of National Defense.[3] In his address to Congress,

10

President Truman stated that creating the Department of National Defense was an "essential

11

step . . . in the development of a comprehensive and continuous program for our future safety and

12

for the peace and security of the world."[4] After months of deliberations regarding the role of the

13

military in society and the possible threat of granting too much military power to the executive,

14

Congress created the National Military Establishment through the National Security Act of 1947.[5]

15

In 1949, the National Military Establishment was renamed DOD.

16

The National Security Act also established a Research and Development Board to advise

17

the Secretary of Defense on scientific research relevant to national security and to assist the

18

Secretary of Defense in assuring adequate funding for research on scientific problems relating to

19

national security.[6] The Department of Defense Reorganization Act of 1958 amended the National

20

Security Act and created a Director of Defense Research and Engineering, who would supervise

21

all research activities in DOD. The law further contemplated that DOD would contract with

22

"educational or research institutions" to carry out its research mission.[7] Since 1961, Congress has

23

---

[2] For an exhaustive description of the grantmaking authority and activities of all Agency

24

Defendants, *see* Memo. in Support of Mot. for Temporary Restraining Order (Dkt. 7-1) at 4–9.

[3] Harry S. Truman Library Museum, *Special Message to the Congress Recommending the*

25

*Establishment of a Department of National Defense*, (Dec. 19, 1945)
https://www.trumanlibrary.gov/library/public-papers/218/special-message-congress-

26

recommending-establishment-department-national.

[4] *Id.*

27

[5] National Security Act of 1947, Pub. L. No. 80-253, 61 Stat. 495.

[6] *Id.*

28

[7] Department of Defense Reorganization Act of 1958, Pub. L. No. 85-599, 72 Stat. 514.

updated the specific duties of DOD through the National Defense Authorization Act, which, among other things, annually authorizes DOD to make grant awards and fund research activities.[8] Congress has also passed legislation specifically instructing DOD to award grants to institutions of higher education, including the National Security Education Act of 1991, which instructed the Secretary of Defense to award research grants to universities.[9]

One way DOD has implemented these Congressional mandates and directives is through the Minerva Research Institute ("MRI"). Created in 2008, MRI was designed to address challenges such as ethnic strife; failing or failed states; the rise of new powers; the rise of violent extremism, disease, poverty, and climate change; and other unprecedented social changes.[10] In DOD's own words, MRI "brings together universities and other research institutions around the world" and "emphasizes questions of strategic importance to U.S. national security policy."[11] UC researchers with MRI grants are among those whose funding has been unlawfully terminated by Defendants' actions.

## B.    Department of Transportation

DOT is a federal agency established to protect and enhance the safety, adequacy, and efficiency of the nation's transportation system and services. Congress established DOT in 1966 with The Department of Transportation Act after President Johnson called for a more efficient, centralized transportation system.[12,13] This Act provided that "the national objectives of general welfare, economic growth and stability, and security of the United States require the development of transportation policies and programs that contribute to providing fast, safe, efficient, and

---

[8] *See, e.g.,* National Defense Authorization Act for Fiscal Year 2024, Pub. L. No. 118-31, 137 Stat. 136; National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, 134 Stat. 3388.

[9] David L. Boren National Security Education Act of 1991, Pub. Law. No. 102-183, 105 Stat. 1271 (codified at 50 U.S.C. §1901 et seq.).

[10] *The Minerva Initiative*, https://web.archive.org/web/20090211034051/http://minerva.dtic.mil/.

[11] Grants.Gov, *View Grant Opportunity* (Mar. 15, 2024), https://grants.gov/search-results-detail/351388.

[12] President Lyndon B. Johnson, *Special Message to Congress on Transportation* (March 2, 1966), https://www.presidency.ucsb.edu/documents/special-message-the-congress-transportation-0.

[13] *A Brief History of the DOT*, U.S. Dep't of Trans., https://transportation.libguides.com/c.php?g=1154894&p=8441208.

convenient transportation at the lowest cost consistent with those and other national objectives, including the efficient use and conservation of the resources of the United States." Pub. L. No. 97-449 (codified at 49 U.S.C. § 101(a)).

One way DOT effectuates this mission is through grantmaking. Using funds appropriated by Congress, DOT finances projects that invest in "transportation infrastructure, safety, and innovation across the country," including through competitive grant funding programs.[14] DOT administers competitive grant programs through its operating administrations ("OAs") and the Office of the Secretary of Transportation.[15] Each OA solicits applications through a Notice of Funding Opportunity and selects projects based on program eligibility, evaluation criteria, and Departmental or program priorities. In 2021 alone, Congress provided billions of dollars for DOT to distribute through competitive grant programs.[16]

Since DOT's creation in 1966, Congress has continually provided funding for DOT to carry out its mission and directed DOT to improve the nation's transportation system for all Americans. For example, in 2021, Congress passed the Infrastructure Investment and Jobs Act ("IIJA"). Pub L. No. 117-85, 135 Stat. 429 (codified at 23 U.S.C § 101). Much of the IIJA requires DOT to consider and prioritize projects that target disadvantaged communities and prioritize equitable outcomes, goals the Trump Administration have labeled illegal "DEI." For example, the IIJA amended the University Transportation Centers ("UTC") Program by requiring the Secretary of Transportation to award grants to proposals that address six research priorities: improving mobility of people and goods; reducing congestion; promoting safety; improving the durability and extending the life of transportation infrastructure; preserving the environment; preserving the existing transportation system; and reducing transportation cybersecurity risks. 49 U.S.C. § 6503(c)(1). The Secretary is required to select grants based in part on the recipient's "demonstrated commitment" to developing the transportation workforce through "outreach activities to attract new entrants into the transportation field, including women and

---

[14] *Overview of Funding and Financing at USDOT*, U.S. Dep't of Trans., https://www.transportation.gov/grants/dot-navigator/overview-funding-and-financing-usdot.
[15] *Id.*
[16] *The Bipartisan Infrastructure Law and Innovation*, U.S. Dep't of Trans., https://www.transportation.gov/priorities/innovation/bipartisan-infrastructure-law-and-innovation.

- 4 -

underrepresented populations." *Id.,* 49 U.S.C. § 5505(b)(4)(B)(v)(II). UC researchers with UTC grants are among those whose funding has been unlawfully terminated by Defendants' actions.

## II.      The Trump Administration Directed Federal Agencies to Terminate Grants.

Beginning on Inauguration Day, the Trump Administration explicitly and implicitly directed federal agencies to "terminate" previously awarded grant funds through a series of EOs to that effect. DOD and DOT quickly caved to President Trump's and DOGE's directives to eliminate grants relating to disfavored topics.

### A.      DOD Grant Terminations

On March 4, 2025, Chief Pentagon Spokesman Sean Parnell stated that DOD had been working "hand in hand with the DOGE team."[17] By March 7, DOD had terminated more than $30 million in grants that funded 91 studies. In a press release, DOD recognized "the value of academic research" but stated it was taking action "in response to President Trump's Executive Orders."[18] The press release noted that the terminated studies included research focused on "global migration patterns, climate change impacts, and social trends."[19] By March 20, Secretary of Defense Pete Hegseth had issued a memorandum directing the immediate termination of over $360 million in additional grants in order to "implement the President's orders."[20] This termination essentially gutted MRI. Many, if not all, grants previously awarded through MRI have been terminated. These terminations have caused and will continue to cause Plaintiffs and proposed Class members serious harm.

---

[17] C. Todd Lopez, *Initial DOGE Findings Reveal $80 Million in Wasteful Spending at DOD*, U.S. Dep't of Def. (Mar. 4, 2025), https://www.defense.gov/News/News-Stories/Article/Article/4096431/initial-doge-findings-reveal-80-million-in-wasteful-spending-atdod/.

[18] *Pentagon Culls Social Science Research, Prioritizes Fiscal Responsibility and Technologies for Future Battlefield*, U.S. Dep't of Def. (Mar. 7, 2025), https://www.defense.gov/News/Releases/Release/Article/4113076/pentagon-culls-social-science-research-prioritizes-fiscal-responsibility-and-te/.

[19] *Id.*

[20] *Continuing Elimination of Wasteful Spending at the Department of Defense*, U.S. Dep't of Def. (Mar. 20, 2025), https://media.defense.gov/2025/Mar/20/2003673531/-1/-1/0/continuing-elimination-of-wasteful-spending-at-the-department-of-defense.pdf.

1

### 1.    Dr. Eli Berman's Grant Termination

Dr. Eli Berman is a Professor of Economics at the University of California, San Diego, who studies economic development in fragile environments, with a focus on conflict. Berman Decl. ¶ 2. He also serves as the Research Director for International Securities Studies at the UC Institute on Global Conflict and Cooperation, a research network comprised of scholars from across the University of California and the Los Alamos and Lawrence Livermore National Laboratories, who produce and use research to help build a more peaceful, prosperous world. *Id.* ¶ 3. On February 16, 2023, Dr. Berman, together with his colleagues, submitted an application for funding to MRI titled "Integrated Deterrence: Episodic Analysis." *Id.* ¶ 19. The purpose of the research project was to expand on Dr. Berman's earlier MRI project research and develop a game theoretic model for analyzing patterns of combat in the Israel/Gaza conflict. *Id.* ¶¶ 21, 22. On August 28, 2023, Dr. Berman and his team received notice of Grant Award No. FA 9550-23-1-0437 that would provide $1,032,529 in funding over three years. *Id.* ¶ 23.

On February 28, 2025, DOD sent a 4-sentence group email to Minerva grant recipients, including Dr. Berman, informing them that their "grant award no longer effectuates Minerva program goals or DOD priorities." Berman Decl., Ex. D. A similar termination notice was sent to UC San Diego. Berman Decl., Ex. E. No explanation was provided for the termination decision. Due to the termination, Dr. Berman lost the third year of his grant funding, a total of $248,991. Berman Decl. ¶¶ 28–31. Dr. Berman and his team have suffered immediate harm as a result of this termination. *Id.* ¶ 33.

### B.    DOT Grant Terminations

In January 2025, Sean Duffy was appointed as the Secretary of Transportation. Secretary Duffy's first actions were to "advance[] President Donald Trump's agenda to rescind woke policies" and ensure that all DOT "policies align with the Administration's priorities."[21] He made no mention of the priorities set by Congress and immediately directed DOT officials to "identify

---

[21] *U.S. Transportation Secretary Duffy Takes Action to Rescind "Woke" DEI Policies and Advance President Trump's Economic Agenda*, U.S. Dep't of Trans., (January 29. 2025), https://www.transportation.gov/briefing-room/us-transportation-secretary-sean-duffy-takes-action-rescind-woke-dei-policies-and.

1   and eliminate all Biden-era programs, policies, activities, rules, and orders that promote climate

2   change activism, Diversity, Equity, and Inclusion (DEI) initiatives, racial equity, gender identity

3   policies, environmental justice, and other partisan objectives."[22] On April 24, 2025, Secretary

4   Duffy sent a letter to all DOT grant recipients instructing them to "Follow the Law," explicitly

5   forbidding grant recipients from engaging in "any policy, program, or activity that is premised on

6   a prohibited classification, including discriminatory policies or practices designed to achieve so-

7   called 'diversity, equity, and inclusion,' or 'DEI,' goals."[23] DOT terminations have caused and

8   will continue to cause serious harm to Plaintiffs and proposed Class members.

### 1.    Dr. Susan Handy's Grant Terminations

10      Dr. Susan Handy is a Distinguished Professor in the Department of Environmental

11  Science and Policy at the University of California, Davis, who studies the relationship between

12  transportation and land use, particularly the impact of land use on travel behavior and on

13  strategies for reducing automobile dependence. Handy Decl. ¶¶ 2, 5. Dr. Handy is also the

14  director of the National Center for Sustainable Transportation ("NCST"), which provides national

15  leadership in advancing environmentally sustainable transportation through cutting-edge research,

16  direct policy engagement, and education. *Id.* ¶ 3. The NCST was established in 2013 after being

17  selected in a national competition to serve as one of five national transportation centers as part of

18  the UTC program administered by DOT. *Id.* ¶ 11. In 2022, Dr. Handy and her colleagues at the

19  NCST submitted a grant proposal to DOT to fund the NCST's research activities in the DOT

20  Priority Area "Preserving the Environment," as set out by the IIJA. *Id.* ¶ 19. The application

21  explained that the NCST's research activities would relate to electrification, alternative fuels, air

22  quality, and environmental justice. *Id.* On June 1, 2023, Dr. Handy and her team received from

23  DOT notice of Grant Award Nos. 69A3552344814 and 69A3552348319 awarding a total of

24  $4,000,000 per funding year, for five annual allocations of funding. *Id.* ¶ 21. DOT also awarded

25  Dr. Handy Sub-award No. SCON-00005220 for a total of $485,734.55. *Id.* ¶ 29.

26  _____

27  [22] *Id.*

28  [23] *Trump's Transportation Secretary Sean P. Duffy: Follow The Law*, U.S. Dep't of Trans., (April 24, 2025), https://www.transportation.gov/briefing-room/trumps-transportation-secretary-sean-p-duffy-follow-law.

On May 2, 2025, Secretary Duffy announced that DOT terminated "seven woke university grants" that were used to "advance a radical DEI and green agenda that were both wasteful and ran counter to the transportation priorities of the American people."[24] Dr. Handy's grants were among them. She received the following form explanation for the termination of Award Nos. 69A3552344814 and 69A3552348319:

> At the time your grant was issued, the grant agreement and applicable regulations authorized termination by "the Federal awarding agency or pass-through entity, to the greatest extent authorized by law, if an award no longer effectuates the program goals or agency priorities." 2 CFR § 200.340(a)(2). DOT's priorities presently include:
>
> • promoting traditional forms of energy and natural resources to the greatest extent possible,
>
> • ensuring that taxpayer dollars are used efficiently in ways that maximally benefit the American people and improve their quality of life, and
>
> • ceasing to promote divisive diversity, equity, and inclusion initiatives that discriminate on the basis of race, national origin, or another protected characteristic.
>
> Having individually reviewed your grant in light of DOT's priorities, the Office of the Secretary has determined that your grant is inconsistent with the priorities listed above.

Handy Decl. ¶ 24. The letter also stated that the grants were being terminated because the NCST's environmental and DEI missions were "inconsistent with DOT priorities." Handy Decl. Ex. F. Dr. Handy then received notice that Sub-award No. SCON-00005220 was terminated. Handy Decl. ¶ 31. The subaward termination letter repeated much of the same language and was similarly vague, alluding to how the project was supposedly "inconsistent with the priorities" of DOT. *Id.* ¶ 32. Dr. Handy and her team have suffered immediate harm as a result of these terminations. *Id.* ¶ 34.

---

[24] *U.S. Transportation Secretary Sean P. Duffy Defunds Woke University Grants*, U.S. Dep't of Trans. (May 2, 2025), https://www.transportation.gov/briefing-room/us-transportation-secretary-sean-p-duffy-defunds-woke-university-grants.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ARGUMENT**

**I.**    **Drs. Berman and Handy Have Standing.**

To establish standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). This Court has already held that the original Plaintiffs have Article III standing. *See* Order at 47 (citing *Diamond Alternative Energy, LLC v. Env't Prot. Agency*, 145 S. Ct. 2121 (2025)). The same should be true for Drs. Berman and Handy, who are the principal investigators for their respective grants, Berman Decl. ¶ 19; Handy Decl. ¶¶ 20, 29. The wrongful termination of their grants has caused great harm to their careers and livelihood and can be redressed through the same injunctive and declaratory relief as the other Plaintiffs. Berman Decl. ¶ 33; Handy Decl. ¶ 34. In short, Drs. Berman and Handy "assert[] invasions of traditionally cognizable interests sufficient to confer standing" which "can be redressed by a reversal of the allegedly illegal grant terminations." Order at 42.

**II.**    **The Court Should Provisionally Certify Form Termination and Equity Termination Classes for UC Researchers Whose Grants were Terminated by DOD and DOT.**

**A.**    **The Class Definitions for DOD and DOT.**

The Court has provisionally certified two Classes: the Equity Termination Class and the Form Termination Class. Order at 51–52. In this Motion, Plaintiffs request that the Court certify two new provisional classes identical to those previously certified but for the substitution of the already enjoined Agency Defendants (EPA, NEH, NSF) with the newly added Agency Defendants (DOD and DOT):

> **DOD/DOT Equity Termination Class.** All University of California researchers, including faculty, staff, academic appointees, and employees across the University of California system who are named as principal researchers, investigators, or project leaders on the grant applications for previously awarded research grants by the DOD or DOT (or their sub-agencies) that are terminated pursuant to Executive Orders 14151 or 14173, from and after January 20, 2025.

> Excluded from the class are Defendants, the judicial officer(s) assigned to this case, and their respective employees, staffs, and family members.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DOD/DOT Form Termination Class.** All University of California researchers, including faculty, staff, academic appointees, and employees across the University of California system who are named as principal researchers, investigators, or project leaders on the grant applications for previously awarded research grants by the DOD or DOT (or their sub-agencies) that are terminated by means of a form termination notice that does not provide a grant-specific explanation for the termination that states the reason for the change to the original award decision and considers the reliance interests at stake, from and after January 20, 2025.

Excluded from the class are Defendants, the judicial officer(s) assigned to this case, and their respective employees, staffs, and family members.

B.    **The DOD/DOT Classes Satisfy The Requirements of Class Certification.**

In granting provisional certification, the Court must determine that the requirements of Rule 23 have been met, although "its analysis is tempered, [] by the understanding that 'such certifications may be altered or amended before the decision on the merits.'" *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 179–80 (D.D.C. 2015) (quoting *Bame v. Dillard*, No. 05-1833, 2008 WL 2168393, at *5 (D.D.C. May 22, 2008)). Plaintiffs' proposed classes satisfy all Rule 23(a) factors as well as the requirements of Rule 23(b)(2). *See Lyon v. U.S. Immigr. & Customs Enf't*, 308 F.R.D. 203, 210-11 (N.D. Cal. 2015). As recently noted in *Barbara v. Trump*, "[c]ourts routinely grant provisional class certification for purposes of entering injunctive relief." No. 2025 DNH 079P, 2025 WL 1904338, at *3 (D.N.H. July 10, 2025) (collecting grants of provisional class certification, including *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1035, 1041-43 ( 9th Cir. 2012)).[25]

1.    **The Proposed Classes are Sufficiently Numerous.**

Plaintiffs typically must demonstrate that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). However, when Plaintiff seek only to certify a Rule 23(b)(2) class, "the numerosity requirement is relaxed." *Chinitz v. Intero Real Est. Servs.*,

---

[25] Quoting *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2567 (2025) (Kavanaugh, J. concurring), the *Barbara* court noted that "plaintiffs who challenge the legality of a new federal statute or executive action and request preliminary injunctive relief may sometimes seek to proceed by class action under [R]ule 23(b)(2) and ask a court to award preliminary classwide relief that may, for example, be statewide, regionwide, or even nationwide." *Barbara*, 2025 WL 1904338, at *3. The court did just that, holding that it could "later modify or amend the order granting class certification." *Id.*

1   No. 18-CV-05623-BLF, 2020 WL 7391299, at *8 (N.D. Cal. July 22, 2020) (citing *Civil Rights*
2   *Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 317 F.R.D. 91, 100 (N.D. Cal. 2016), *aff'd*, 867 F.3d
3   1093 (9th Cir. 2017); *Jackson v. Danbury*, 240 F.R.D. 145, 148 ( D. Del. 2007) (numerosity met
4   by class of 16 members in injunctive relief action by death row inmates challenging lethal
5   injection under 28 U.S.C. Section 1983). The relaxed numerosity requirement for injunctive relief
6   classes recognizes that such classes contain unidentified future members, and the classwide
7   injunction protects them from the harm that would otherwise occur from defendant's continued
8   conduct.

9          This Court has already recognized that the "grant terminations will impact hundreds or
10  thousands of researchers across the UC System" and that "hundreds of grant terminations were . .
11  . issued through unreasoned form letters." Order at 54, 57. Defendants here have terminated at
12  least 16 DOD grants and at least 3 DOT grants to UC researchers. Dkt. 38 at 2-3[26];
13  DEFSDOT_00004-06; Zach Young Decl. at ¶ 7; Cabraser Decl., Ex. E. Defendants' expedited
14  production furthermore demonstrates additional UC grants are being assessed for termination on
15  an ongoing basis. *See e.g.*, Cabraser Decl., Ex. E at 5 (UC grants marked in June 2025 as "NOT
16  yet terminated. Awaiting DOGE mission-critical review."). In the context of a Rule 23(b)(2)
17  class, this is enough for purposes of numerosity. *Chinitz*, 2020 WL 7391299, at *8 ("under Rule
18  23(b)(2), 'the numerosity requirement is relaxed and plaintiffs may rely on reasonable inferences
19  arising from plaintiff['s] other evidence that the number of unknown and future members is
20  sufficient to make joinder impracticable.'"); *see also Wedra v. Cree, Inc*., No. 19-cv-3162 (VB),
21  2022 WL 2116760, at *2 (S.D.N.Y. June 13, 2022) ("[A] plaintiff need not establish the precise
22  number of class members so long as the plaintiff reasonably estimates that the number is
23  substantial, and relies on reasonable inferences drawn from the available facts."). This is
24  especially true given the likelihood that DOT/DOD classes will ultimately be consolidated with
25  the EPA/NEH/NSF classes before trial.
26
27
28

[26] Defendants' initial estimates are under-inclusive as they captured only those grants awarded directly to the UC and do not include grants in which a UC is a sub-awardee or in which a UC researcher may be named as a co-Principal Investigator.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 2.    There Are Common Questions of Law and Fact and the Proposed Classes Satisfy Rule 23(b)(2).

Plaintiffs must also demonstrate "the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks omitted). As the Court noted, commonality is satisfied where, like here, plaintiffs challenge "a system-wide practice or policy that affects all of the putative class members." Order at 54 (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *overruled on other grounds by Johnson v. California*, 543 U.S. 499 (2005)). By amending their complaint to allege unlawful DOD and DOT grant terminations alongside unlawful grant terminations by EPA, NEH, and NSF, Plaintiffs have asked the same "common questions" that the Court already recognized were sufficient to establish Rule 23(a)(2) commonality. For example: whether Agency Defendants followed Trump and DOGE directives in terminating grants to both Classes; whether grant terminations violated the First Amendment rights of both sets of class members; and whether the Agency Defendants' terminations to the Form Termination Class were arbitrary and capricious in violation of the APA. *See* Order at 54, 55, 58; AC ¶¶ 380–84 (alleging that DOD terminated grants at the behest of President Trump and DOGE), ¶¶ 438–53 (alleging that DOT terminated grants pursuant to President Trump's orders), ¶¶ 550–55 (alleging that Defendants, including DOD and DOT, violated the First Amendment in terminating grants), ¶ 573 (alleging that Defendants violated the APA by distributing generic form letters to class members).

The Rule 23(b)(2) requirement is satisfied for the same reasons. Plaintiffs must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). Plaintiffs have done so. The Amended Complaint focuses *entirely* on Defendants' general course of conduct that caused substantially similar class-wide injuries to all class members. *See, e.g.*, AC ¶¶ 141–221 (EPA), ¶¶ 247–303 (NEH), ¶¶ 322–57 (NSF), ¶¶ 380–414 (DOD), ¶¶ 438–84 (DOT). The proposed DOD/DOT Equity Termination and Form Termination Classes, then, satisfy Rule 23(b)(2) for identical reasons as the current Classes.

**3.**     **Plaintiffs' Claims Are Typical of Those of the Proposed Classes.**

To satisfy typicality, Plaintiffs must show that their claims are "typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). The Court has already ruled that the original Plaintiffs met the typicality requirement for both the Equity Termination and Form Termination Classes. Order at 56, 58-59. Drs. Berman and Handy, as proposed class representatives, also satisfy the typicality inquiry.

Dr. Berman's termination letter, like those issued to class representatives and class members of the DOD/DOT Form Termination Class, offered no reasoned explanation for the termination of his grant. *See* AC ¶¶ 403–05 (Berman termination letter stating only that "[t]he Government intends to terminate this Award under the authority of 2 CFR 200.340(a)(4)" without providing any reasoning). The same is true of Dr. Handy's termination letter. Although it includes slightly more content than other form letters, the fails to identify the reasoning behind the Agency Defendant's purportedly changed priorities and does not account for the Plaintiffs' reliance interests. *See* DEFSDOT_00004.[27] As such, both Plaintiffs' grants were terminated in a way typical of the other proposed members of the DOD/DOT Form Termination Class.

The same goes for the DOD/DOT Equity Termination Class. Dr. Handy's grant was terminated because it was "inconsistent" with DOT's "priorities," including "DOT's priority to cease promoting DEI initiatives that discriminate on the basis of race, national origin, or another protected characteristic." *Id.* ¶ 471. Dr. Handy's original grant application specified that its research activities would relate to environmental justice. *Id.* ¶ 466. Her second grant termination letter cited her project's "environmental justice themes" as "discriminatory consideration" that was "inconsistent with DOT's priorities." *Id.* ¶ 477. As the Court noted, "[t]his is precisely the

---

[27] Even more confusingly, the language cited in the termination letter that, according to the DOT, demonstrates "inconsisten[cy] with DOT's priorities" appears to be excerpted not from the specific grant materials but rather from other statements made by the grantee consortium outside of the grant materials. *Id.* This would further accentuate the First Amendment violation as well as the arbitrariness of the termination.

type of conduct other Equity Termination Class members will have been subject to and same injury other members will have suffered." Order at 56.

Although his form termination letter offers almost no explanation, Dr. Berman's grant termination appears to follow a similar pattern. The record confirms that DOD executed DEI-related grant terminations. *See* DEFSDOD_00015 (directing "termination" of grants "which represent wasteful spending on climate change, DEI, social science, and other activities where are not aligned DoD and DoN priorities"). And while the exact machinations of Defendants' termination criteria remain opaque (DOD did not produce DEI keywords), Berman's claims are, on their face, typical of DOD/DOT Equity Termination Class members.

### 4.    Plaintiffs and Class Counsel Will Adequately Represent the Proposed Classes.

Absent class members must be adequately represented for judgment to bind them. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940). This prerequisite is satisfied if the representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Resolution of the adequacy issue requires the Court to address two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). The Court has already ruled that class counsel and the original Plaintiffs are adequate. *See* Order at 57–60. That same logic applies here.

Berman and Handy are adequate class representatives for the same reasons as the original Plaintiffs. They have no conflicts of interest with absent class members. They are committed to the vigorous prosecution of this action, as evidenced in their Declarations. And their interests are aligned with those of the new Form Termination and Equity Termination class members. *See id.* at 57–59. Berman and Handy are adequate class representatives.

Even if Dr. Berman's grant (unlike Dr. Handy's) was terminated for reasons unrelated to DEI, Plaintiffs need not advance representatives that experienced every single variety of harm suffered by the class. *Lyon*, 308 F.R.D. at 214 (certifying a Rule 23(b)(2) class where "Plaintiffs

do not seek individualized relief for each class member, but rather ask for systemic changes

consistent with a single overarching constitutional standard that will be applicable to all class

members"); *Coreas v. Bounds*, No. TDC-20-0780, 2020 WL 5593338, at *15 (D. Md. Sept. 18,

2020) (rejecting the defendants' argument against certification that "different subsets of putative

class members may be entitled to relief where others would not" because "there is available relief

that would benefit the entire class or an entire subclass"). *Scholl v. Mnuchin*, 489 F. Supp. 3d

1008, 1046 (N.D. Cal. 2020) ("Plaintiffs assert that Rule 23(b)(2) is met [ ] because defendants

implemented a generally applicable policy of denying CARES Act payments to incarcerated

persons. . . . The court agrees with plaintiffs that defendants' policy is generally applicable to the

class as a whole."). Further, the DOD/DOT Equity Termination Class is, at a minimum,

adequately represented by Dr. Handy.

Plaintiffs have demonstrated that all Rule 23(a) requirements, as well as the Rule 23(b)(2)

requirement, are satisfied for the new proposed classes. As such, the Court should provisionally

certify the Equity Termination and Form Termination Classes as to DOD and DOT and appoint

Drs. Berman and Handy as class representatives.

### III.    The Court Should Issue a Preliminary Injunction as to the Additional Agency Defendants for All the Reasons in the Court's Prior Order.

The Court has already enjoined the EPA, NEH, and NSF from effectuating grant

terminations to members of the Form Termination and Equity Termination classes; vacated grant

terminations by those agencies; and ordered those agencies to reinstate terminated grants. Order

at 61. The Court should issue an additional preliminary injunction that extends its decision to

DOD and DOT for the same reasons.

A preliminary injunction is warranted where the moving party establishes that (1) it is

likely to succeed on the merits; (2) irreparable harm is likely in the absence of preliminary relief;

(3) the balance of equities tips in the movant's favor; and (4) an injunction is in the public

interest. Order at 17; *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). These factors

strongly favor Plaintiffs.

1

### A.    Plaintiffs Are Likely to Succeed on the Merits of Their Claims that the DOD and DOT Grant Terminations are Unlawful.

The Court already determined that Plaintiffs are likely to succeed on the merits of their claims that "grant terminations pursuant to the Equity Termination Orders violate the First Amendment and, in the case of NSF and NEH, were contrary to congressionally mandated directives to both agencies under the APA." Order at 17. The Court also found that Plaintiffs are "likely to succeed in showing that the mass grant terminations carried out via form letters were conducted in a manner that was arbitrary and capricious." *Id.* at 25. For nearly identical reasons, the Court should rule that Plaintiffs are likely to succeed on their claims against DOD and DOT.

### 1.    Defendants' Grant Terminations Violate the First Amendment.

The First Amendment prohibits the government from "regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829, 833 (1995). "Discrimination against speech because of its message is presumed to be unconstitutional." *Id.* at 828. "[E]ven in the provision of subsidies, the Government may not 'ai[m]at the suppression of dangerous ideas.'" *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 587 (1998) (quoting *Regan v. Taxation with Representation of Wash.*, 461 U.S. 540, 550 (1983) (alteration in original)). In the grantmaking context, the government may not reject "a whole class of projects" based on "viewpoint alone," or use Federal funding to "impose a disproportionate burden calculated to drive certain ideas or viewpoints from the marketplace." *Rhode Island Latino Arts v. Nat'l Endowment for the Arts*, No.25-cv-79-WES, 2025 WL 1009026, at *12 (D.R.I. Apr. 3, 2025) (quoting *Finley*, 524 U.S. at 587).

However, Defendants' limited—and deficient—production shows that DOD and DOT engaged in viewpoint discrimination when terminating grants at the Executive's behest. Senior officials at both agencies publicly stated they were working "hand in hand with the DOGE team" to terminate grants in accordance to the Executive Orders" [28] Dr. Berman's termination notice

---

[28] C. Todd Lopez, *Initial DOGE Findings Reveal $80 Million in Wasteful Spending at DOD*, U.S. Dep't of Def. (Mar. 4, 2025), https://www.defense.gov/News/News-Stories/Article/Article/4096431/initial-doge-findings-reveal-80-million-in-wasteful-spending-atdod/.

fails to provide any reasons for his grant termination, but DOD declarant Jason Day confirms that "topics [were] used to identify terminations."[29] Day Decl. at 9. DOT violations are more obvious. Plaintiff Handy's termination notices show that Defendants believe Plaintiffs' speech conflicts with the Administration's views and that they terminated the grants because they related to forbidden topics. *See* Handy Decl. ¶¶ 24, 32. DOT Secretary Duffy announced that DOT was terminating grants that "advance[d] a radical DEI and green agenda."[30] An internal DOT memorandum shows the Agency was directed "to identify and eliminate all orders, directives, rules, regulations, notices, guidance documents, *funding agreements*, programs, and policy statements, or portions thereof … that *reference or relate in any way* to climate change, greenhouse gas emissions, racial equity, gender identity, diversity, equity, and inclusion goals, environmental justice, or the Justice 40 Initiative." DEFSDOT_00008 (emphasis added). The goal of such action could not be clearer: "to drive certain ideas or viewpoints from the marketplace." *Rhode Island Latino Arts,* 2025 WL 1009026, at *12 (quoting *Finley*, 524 U.S. at 587). In short, the record shows that DOD and DOT terminated grants *en masse* purely to promote particular ideological viewpoints. The First Amendment does not tolerate such viewpoint discrimination. Accordingly, Defendants' actions are unconstitutional.

### 2.    Defendants' Grant Terminations Are Contrary to Law Under the APA.

The APA prohibits agency action that exceeds statutory or constitutional authority or is otherwise contrary to law. 5 U.S.C. §706(2)(A), (C); *Kaweah Delta Health Care Dist. v. Becerra*, 123 F.4th 939, 944 (9th Cir. 2024) ("[U]nder our system of separation of powers, neither good intentions nor pressing policy problems can substitute for an agency's lack of statutory authority to act."); *Nw. Env't Advocates v. U.S. EPA*, 537 F.3d 1006, 1025-27 (9th Cir. 2008). By refusing to spend money that Congress appropriated, Defendants are violating the Impoundment Control Act of 1974 and the appropriations statutes underlying DOD's and DOT's funding schemes.

---

[29] The DOD declarant notably fails to state what particular topics were banned and what methodology was used to identify grants relating to these topics, as the Court ordered.

[30] *U.S. Transportation Secretary Sean P. Duffy Defunds Woke University Grants*, U.S. Dep't of Trans. (May 2, 2025), https://www.transportation.gov/briefing-room/us-transportation-secretary-sean-p-duffy-defunds-woke-university-grants.

1        Similarly, Defendants are violating DOD's and DOT's enabling statutes and other laws

2   passed by Congress that include grantmaking as a directive. For example, Congress passed

3   legislation instructing DOD to award grants to institutions of higher education. The David L.

4   Boren National Security Education Act of 1991 instructed the Secretary of Defense to create the

5   National Security Education Program, which would award grants to institutions of higher

6   education in order enable such institutions to establish, operate, or improve programs in foreign

7   languages, area studies, counter proliferation studies, and other international fields that are critical

8   areas of those disciplines through research.[31] By terminating grants, Defendants are acting

9   contrary to that Congressional direction.

10        Defendants are also acting contrary to their enabling statutes by terminating funding of

11   particular research topics, "because those terminations were based on Plaintiffs' pursuit of the

12   very goals that Congress had mandated." Order at 22. For example, Dr. Handy's terminated grant

13   funded her research in a Congressionally mandated DOT priority research area. Through the 2021

14   IIJA, Congress specifically directed DOT to award grants to UTC program proposals that

15   addressed the research priority of "Preserving the Environment." 49 U.S.C. § 6503(c)(1). Dr.

16   Handy's grant proposal targeted this research priority. *See* Handy Decl. ¶ 19. By terminating that

17   grant, DOT acted contrary to Congress's direct mandate. The APA does not allow an agency to

18   flout Congress's clear directives in this way. *See, e.g.*, *Health Ins. Ass'n of Am., Inc. v. Shalala*,

19   23 F.3d 412, 416 (D.C. Cir. 1994) (explaining that a court may not accept "the agency's policy

20   judgments ... if they conflict with the policy judgments that undergird the statutory scheme");

21   *Brown & Williamson Tobacco Corp. v. FDA*, 153 F.3d 155, 176 (4th Cir. 1998), *aff'd*, *FDA v.*

22   *Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000) (explaining that "federal agencies"

23   cannot "substitute their policy judgments for those of Congress").

24        Defendants have exceeded their own statutory authority and have therefore violated 5

25   U.S.C. Section 706(2)(A) and (C). Accordingly, "the only appropriate remedy is vacatur."

26

27

---

28   [31] David L. Boren National Security Education Act of 1991, Pub. Law. No. 102-183, 105 Stat. 1271 (codified at 50 U.S.C. §1901 et seq.).

1    *Kaweah*, 123 F.4th at 944. Defendants' actions violate statutory commands and are otherwise

2    *ultra vires*.

3        **3.    Defendants' Grant Terminations Are Arbitrary and Capricious Under**
             **the APA.**

4        The APA prohibits arbitrary and capricious action. 5 U.S.C. §706(2)(A). *Kalispel Tribe of*

5    *Indians v. U.S. Dep't of the Interior*, 999 F.3d 683, 688 (9th Cir. 2021). It requires federal

6    agencies to engage in "reasoned decisionmaking" (*Dep't of Homeland Sec. v. Regents of the*

7    *Univ. of Cal.*, 591 U.S. 1, 16 (2020)), meaning an agency must "examine the relevant data and

8    articulate a satisfactory explanation for its action including a rational connection between the

9    facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,

10   463 U.S. 29, 43 (1983) (citation omitted) (quotations omitted). Therefore, agency action,

11   particularly action which represents a departure from prior agency policy, is lawful only if it rests

12   "on a consideration of the relevant factors." *Id.* at 42-43.

13       Further, an agency action is arbitrary and capricious if the agency has relied on factors

14   which Congress has not intended it to consider, entirely failed to consider an important aspect of

15   the problem, offered an explanation for its decision that runs counter to the evidence before the

16   agency, or is so implausible that it could not be ascribed to a difference in view or the product of

17   agency expertise. *Id.* An agency action is also arbitrary and capricious if, when departing from a

18   prior policy, an agency does not "display awareness that it *is* changing position" or does not

19   "show that there are good reasons for the new policy." *FCC v. Fox Television Stations, Inc.*, 556

20   U.S. 502, 515 (2009) (emphasis in original).

21       Defendants' mass termination of grants awarded to Plaintiffs and the Class was arbitrary

22   and capricious. Defendants do not provide reasoning for the grant terminations or the changes in

23   agency priorities. *See, e.g.*, Berman Decl. ¶ 30. The DOD and DOT terminations notices "provide

24   no indication that Defendants have 'considered the relevant factors' and do not 'articulate a

25   rational connection between the facts found and the choice made.'" Order at 27 (citing *Baltimore*

26   *Gas & Electric Co. v. Natural Res. Def. Council, Inc.*, 462 U.S. 87, 105 (1983)) (cleaned up). As

27   with the termination letters at issue in the prior Order, the DOD termination letters simply state

28

1   that the terminated grants "no longer effectuate[] the program goals or agency priorities" with

2   little to no reasoned explanation. *See, e.g.*, Berman Decl. ¶ 30; DEFSDOT_00004,

3   DEFSDOT_00006. Such conclusory statements cannot constitute reasoned explanations for

4   agency action. *See, e.g.*, *Drs. for Am. v. Off. of Pers. Mgmt.*, 766 F. Supp. 3d 39, 53 (D.D.C.

5   2025) ("[Plaintiff's] arbitrary and capricious argument is simple: the agencies' removal decisions

6   were 'completely unreasoned' and thus were not the product of reasoned decisionmaking. . . . The

7   Court agrees that [Plaintiff] has demonstrated a likelihood of success on the merits as to this

8   claim.").

9       The DOT termination letters are slightly more detailed but still fall well short of the mark.

10  They include, for example, specific quotes from the grants that the Agency claims demonstrate

11  inconsistency with its anti-DEI crusade. DEFSDOT_00004, DEFSDOT_00006. But they too lack

12  adequate explanation for Defendants' sudden change in priorities. *Id.*; Order at 29 ("Nothing in

13  the letters or any other source in the record provides the reasoned explanation that the APA

14  requires.").

15      Equally as important, both the DOD and the DOT termination letters show that the

16  agencies failed to consider the reliance interests of grantees (a fact the other Agency Defendants

17  conceded in a recent argument before the Ninth Circuit). *See* Order at 26-28. Instead, Plaintiffs

18  were left stranded, without funding, in the middle of multi-year research projects they were told

19  would be fully funded. Berman Decl. ¶ 33; Handy Decl. ¶ 34. Grantees who had received some,

20  but not all, of their awards had already spent significant time on their projects. Handy Decl. ¶

21  34(a) ("As of the terminations of the grants, 79 research projects were in progress and may not be

22  completed."). Grantees had been using their federal funds to pay for their salaries and those of

23  their staff and research assistants. Without those funds, they have had to lay off critical staff

24  members and research assistants. Berman Decl. ¶ 33(b)–(c); Handy Decl. ¶ 34(b)–(c). As the

25  Court noted, Defendants have failed to introduce any evidence that they considered the

26  consequences of prematurely terminating partially-funded research projects that would have

27  benefited grantees, affiliate institutions, and members of the public alike. *See* Order at 30.

28

Finally, as this Court previously concluded, Defendants' terminations of already-awarded grants constitute final agency action for APA purposes. Order at 31-33. As such, APA review is appropriate.

**B.    The Harms Caused by DOD's and DOT's Unlawful Conduct Will Become Irreparable Absent The Court's Intervention.**

Plaintiffs must demonstrate that they are "likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20. They are able to do so here, as DOD and DOT are causing the exact same irreparable harm as EPA, NEH, and NSF. *See* Order at 47–48. DOD and DOT have caused irreparable harm to Berman and Handy's First Amendment rights. *See id.* at 47 (the violation of First Amendment rights "unquestioningly" causes irreparable injury). The other irreparable harms DOD and DOT have caused include sizable monetary losses, layoffs, hiring and training disruptions, interruption of graduate research programs, injury to professional reputation, and potential cancellation of research altogether. Order at 47–48. DOD's and DOT's grant terminations have caused and will continue to cause concrete harm and create uncertainty (in many cases, to the point of operational chaos) for Dr. Berman, Dr. Handy, and the proposed class members. This Court and others have recognized these types of harms as warranting preliminary injunctive relief. *See* Order at 47–49; *City & Cnty of S.F. v. USCIS*, 408 F. Supp. 3d 1057, 1123 (N.D. Cal. 2019) (recognizing "burdens on . . . ongoing operations" for public entities, including administrative costs caused by changes in federal policy, as constituting irreparable harm); *Tennessee v. Dep't of Educ.*, 104 F.4th 577, 613 (6th Cir. 2024) (same).

**C.    The Balance of Equities Weigh in Plaintiffs' Favor, and An Expanded Preliminary Injunction Is in the Public Interest.**

The equities and public interest, which merge when the government is a party, tip sharply in favor of Plaintiffs. *Wolford v. Lopez*, 116 F.4th 959, 976 (9th Cir. 2024). The threatened and actual harm to Plaintiffs far outweighs the federal government's interests in immediately enforcing these grant terminations, and preserving Plaintiffs' constitutional and statutory rights is in the public interest. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights" (citation omitted)); *Nat'l Treasury Emps. Union v. U.S. Dept. of Treasury*, 838 F. Supp. 631, 640 (D.D.C. 1993)

1   ("The preservation of . . . the legality of the process by which government agencies function

2   certainly weighs heavily in the public interest."); *Clarke v. Off. of Fed. Housing Enter. Oversight*,

3   355 F. Supp. 2d 56, 66 (D.D.C. 2004) ("[T]here is a substantial public interest in ensuring that

4   [the agency] acts within the limits of its authority."); *Widakuswara v. Lake*, No. 1:25-cv-1015,

5   2025 WL 1166400, at *17 (D.D.C. Apr. 22, 2025) ("[T]here is a substantial public interest 'in

6   having governmental agencies abide by the federal laws that govern their existence and

7   operations.'") (citation omitted).

8          The government will suffer no harm from ceasing to terminate already authorized grants

9   for which Congress has already appropriated funds, nor from returning to the orderly and legally

10  compliant grant administration processes in place prior to Inauguration Day. The government will

11  certainly continue to function (and will indeed function better) if the status quo ante is restored.

12  *See* Order at 49 ("An agency is not harmed by an order prohibiting it from violating the law.").

13  The balance of equities therefore strongly supports a preliminary injunction. *See id.* at 48.

14                              <u>**CONCLUSION**</u>

15         For all of these reasons, Plaintiffs respectfully request that the Court grant their Motion to

16  provisionally certify the DOD/DOT Form Termination and Equity Termination Classes; appoint

17  Eli Berman and Susan Handy as Class Representatives; and issue an additional preliminary

18  injunction applicable to DOD and DOT.

19   Dated: August 1, 2025                By:      /s/ *Elizabeth J. Cabraser*

20                                            Elizabeth J. Cabraser (CA Bar No. 83151)
                                             ecabraser@lchb.com
21                                           Richard M. Heimann (CA Bar No. 63607)
                                             rheimann@lchb.com
22                                           Kevin R. Budner (CA Bar No. 287271)
                                             kbudner@lchb.com
23                                           Annie M. Wanless
                                             awanless@lchb.com (CA Bar No. 339635)
24                                           Nabila M. Abdallah
                                             nabdallah@lchb.com (CA Bar No. 347764)
25                                           LIEFF CABRASER HEIMANN &
                                             BERNSTEIN, LLP
26                                           275 Battery Street, 29th Floor
                                             San Francisco, CA 94111
27                                           Telephone: 415.956.1000

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Erwin Chemerinsky (*pro hac vice*)
echemerinsky@law.berkeley.edu
Claudia Polsky (CA Bar No. 185505)
cpolsky@law.berkeley.edu
U.C. BERKELEY SCHOOL OF LAW
Law Building
Berkeley, CA 94720-7200
Telephone: 510.642.6483

Anthony P. Schoenberg (CA Bar No. 203714)
tschoenberg@fbm.com
Linda S. Gilleran (CA Bar No. 307107)
lgilleran@fbm.com
Kyle A. McLorg (CA Bar No. 332136)
kmclorg@fbm.com
Katherine T. Balkoski (CA Bar No. 353366)
kbalkoski@fbm.com
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, CA 94104
Telephone: 415. 954.4400

*Attorneys for Plaintiffs and the Proposed Class*

1

### CERTIFICATE OF SERVICE

2      I hereby certify under penalty of perjury that August 1, 2025, I authorized the electronic

3   filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send

4   notification of such filing to registered parties.

5      Executed August 1, 2025 at San Francisco, California.

6

7                                  */s/ ELIZABETH J. CABRASER*
                                   ELIZABETH J. CABRASER

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28