

ANTHONY P. SCHOENBERG
tschoenberg@fbm.com
D 415.954.4963

August 4, 2025

*Via ECF*

Honorable Rita F. Lin
San Francisco Courthouse, Courtroom 15,
18th Floor
450 Golden Gate Ave., San Francisco, CA
94102

> Re:   *Thakur, et al. v. Trump, et al.*
> Civil Action No.: 3:25-cv-04737-RL
> <u>NSF's Violation of the Preliminary Injunction</u>

Dear Judge Lin:

This Letter Brief is submitted to notify the Court that the National Science Foundation ("NSF") has violated the Preliminary Injunction. Plaintiffs and NSF disagree as to whether NSF has violated the Preliminary Injunction. The Parties agreed to submit a letter or notice to the Court on Monday, August 4. *See* Attach. 1 (Decl. of Linda Gilleran ("Gilleran Decl.")) ¶ 2, Ex. 1 (Aug. 1, 2025 Email Exchange). Plaintiffs will file a formal motion to enforce the preliminary injunction should the Court so require.

## I.     <u>INTRODUCTION</u>

On June 23, 2025, this Court issued a preliminary injunction concerning the termination of grants by NSF, Environmental Protection Agency ("EPA"), and National Endowment for the Humanities ("NEH"), collectively "Agency Defendants." The Preliminary Injunction specifically enjoined the Agency Defendants, on a prospective basis, from "giving effect" to any grant that was terminated by form termination notices or pursuant to Executive Orders No. 14151 or 14173. Prelim. Injunction (June 23, 2025), Dkt. No. 55; *see also* Order Granting Prelim. Injunction (June 23, 2025), Dkt. No. 54 ("Order").

Yet, on August 1, 2025, Plaintiffs learned that the Administration, including specifically NSF, froze hundreds of grants to the University of California, Los Angeles ("UCLA"). Gilleran Decl. ¶ 3. This Court's Preliminary Injunction and Order protect researchers at UCLA and are directed at the NSF. Dkt. No. 55; Order.

Plaintiffs immediately contacted counsel for Agency Defendants, requesting the exemplar termination letters. Gilleran Decl. ¶ 3. Counsel for Agency Defendants sent two letters. The first



Honorable Rita F. Lin
August 4, 2025
Page 2

is a July 30, 2025 letter from Lisa Scott-Morring, Acting Division Director, Division of Grants and Agreements at NSF to Dr. Julio Frenk, Chancellor of UCLA. Gilleran Decl. ¶ 4, Ex. 2 (July 30 Letter). It notifies the Chancellor that certain NSF awards are being indefinitely suspended effective immediately, as such awards are not aligned with current NSF priorities and/or programmatic goals. *Id*. This is indistinguishable from the termination of grants enjoined by this Court, and this is exactly the language that was in the form letters that this Court deemed to be insufficient to meet the requirements of the Administrative Procedures Act ("APA"). *See* Order at 14 (Plaintiff Foreman's form termination emails from NSF stated: "[. . . T]he agency has determined that termination of certain awards is necessary because they are not in alignment with current NSF priorities."); *id*. at 26-27 (finding Plaintiffs likely to succeed on their arbitrary and capricious claim under the APA). The only difference is that instead of separate form letters to grant recipients, there were two letters to the Chancellor with a long list of grants that were being indefinitely suspended. There was no explanation for each grant; not even individual letters were sent to the grant recipients.

The second is an August 1, 2025 letter from Ms. Scott-Morring, supplementing the July 30 Letter. Gilleran Decl. ¶ 5, Ex. 3 (Aug. 1 Letter). It accuses UCLA of noncompliance with Federal statutes and regulations and the terms and conditions of Federal awards because UCLA has adhered to "illegal" "affirmative action" policies, failed to do enough to combat "antisemitism and bias" on campus, and "discriminat[ed]" against women by allowing the participation of transgender athletes. *Id.* The August 1 Letter recommends that UCLA identify corrective actions to NSF's satisfaction. *Id*. As for the impacted grant recipients, *i.e.*, class members, the letter separately adds that awards may be terminated under 2 C.F.R. Section 200.340 for noncompliance. *Id*. Again, NSF's August 1 Letter fails to provide "reasonable and reasonably explained" rationale for their *en masse* suspensions. *Ohio v. EPA*, 603 U.S. 279, 292 (2024) (citation omitted). It also violates the First Amendment "by withholding benefits for a censorious purpose." *Koala v. Khosla,* 931 F.3d 887, 898 (9th Cir. 2019).

NSF's conduct is egregious. Unlike EPA and NEH,[1] it did not seek a stay pending appeal at the Ninth Circuit. Mot. for Partial Stay at 6, n.1, No. 25-4249 ("Appeal") (9th Cir. July 11, 2025), Dkt. No. 7. Why? According to Agency Defendants, after "having been subject to an erroneous requirement to reinstate grants, NSF elected not to use its resources to terminate them again while the appeal unfolds."[2] Agency Defendants' Reply in Supp. of Partial Mot. to Stay

---

[1] According to counsel for Agency Defendants, "[w]e understand the only enjoined agency at issue to be NSF (that EPA and NEH have not suspended grants), and we do not understand DoD or DoT to have suspended any grants." Gilleran Decl. ¶ 2, Ex. 1 (Aug. 1 Email Exchange).

[2] At a hearing in the Ninth Circuit on July 31, 2025, on Agency Defendants' motion to stay this Court's Preliminary Injunction, the Ninth Circuit asked the Agency Defendants' attorney why NSF was not seeking a stay of this Court's Preliminary Injunction. The attorney said that NSF did not want to cut off grants, reinstate them, and then cut them off again. The attorney did not mention that NSF had already decided to effectively terminate a large number of grants to UCLA researchers, including via at least one letter that was dated July 30, 2025—the day before the hearing.



Pending Appeal at 11 (July 24, 2025), Dkt. No. 22.1. But now we know where NSF decided to use its resources: finding a workaround for the Preliminary Injunction so that it could suspend grants indefinitely.

NSF has violated the Preliminary Injunction and must immediately rescind the suspension of grants implicated in the July 30 and August 1 Letters. NSF's argument that it did nothing wrong is unavailing for the reasons discussed below.

## II.     NSF VIOLATED THE PRELIMINARY INJUNCTION.

In *Sea Shepherd*, the Ninth Circuit provided that "it is proper to observe the objects for which the relief was granted and to find a breach of the decree in a violation of the spirit of the injunction, even though its strict letter may not have been disregarded." *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 949 (9th Cir. 2014) (quoting *John B. Stetson Co. v. Stephen L. Stetson Co.,* 128 F.2d 981, 983 (2d Cir. 1942)). Here, the Preliminary Injunction's express language and clear objective were to prevent the actions that NSF has taken against the Form Termination Class and the Equity Termination Class. *Id.*; Dkt. No. 55.

### A.     NSF's Actions Against the Form Termination Class

Recognizing that it and other Agency Defendants could no longer blast out hundreds of form termination letters (Dkt. No. 38), NSF opted instead to terminate hundreds of grants, but in just two letters, which, in turn, attached a list of hundreds of suspended grants.[3] While the approach differed, different is not better. It is evasive and in plain violation of the Court's Preliminary Injunction.

#### 1.     NSF's Suspensions Are *De Facto* Terminations.

NSF argues that because it has indefinitely *suspended* the grants, as opposed to *terminated* them, then it has not violated the Preliminary Injunction. The distinction is purely semantic; a termination, which cuts off funding, and an indefinite suspension, which does the same, are functionally identical. Gilleran Decl. ¶ 4, Ex. 2 ("Effective immediately, the attached awards are suspended until further notice."); *id*. ¶ 5, Ex. 3 ("UCLA should immediately cease all activities on these award numbers."); *id.* at 2 ("UCLA must . . . immediately discontinue drawing down funds[.]")

---

[3] Jaweed Kaleem, *Trump freezes $300 million in UCLA science and medical research funding, citing antisemitism*, L.A. Times (July 31, 2025), https://www.latimes.com/california/story/2025-07-31/trump-freezes-nih-nsf-funding-ucla ("The Trump administration has frozen hundreds of science, medical and other federal grants to UCLA worth more than $300 million, citing the university's alleged 'discrimination' in admissions and failure to 'promote a research environment free of antisemitism.'").


Honorable Rita F. Lin
August 4, 2025
Page 4

Further, the suspensions are tied to variables beyond a class member's control, *e.g.*, UCLA's "willingness to discuss these corrective actions" and UCLA's ability to provide NSF with "reasonable assurance[s]" about its compliance. *Id.* at 2. With no direct way to have their grants reinstated, the class members' grants are effectively terminated.

Classifying these *de facto* terminations as suspensions is "not the product of a good faith or reasonable interpretation of the violated order." *See Facebook, Inc. v. Power Ventures, Inc.*, No. 08-CV-05780-LHK, 2017 WL 3394754, at *8 (N.D. Cal. Aug. 8, 2017) (finding parties in contempt of the court's permanent injunction). To the contrary, it is a brazen end-around the Court's mandate that imposes further harm on class members and wastes judicial resources for the sake of semantic gamesmanship.

### 2. NSF Has Not Reasonably Explained Their Suspensions or the Basis for the Change, nor Considered Reliance Interests.

Next, NSF argues that it has not violated the Preliminary Injunction because the letters purportedly provide a detailed, grant-specific explanation for the suspension, including the basis for the change to the original award decision and consideration of reliance interests. Gilleran Decl. ¶ 2, Ex. 1 (Aug. 1 Email Exchange). Even a cursory review of the letters reveals this is an obvious falsehood.

First, NSF's two-page July 30 and three-page August 1 Letters contain no details about the grants—not their titles, not the names of the Principal Investigators, and certainly nothing about why that specific grant was terminated. *See* Gilleran Decl. ¶¶ 4-5, Exs. 2 & 3. They provide nothing close to detailed, "grant-specific explanation[s]" that the Court specifically required. Order at 2 (enjoining NSF "from giving effect" to any grant termination, where the termination was communicated "by means of a form termination notice that does not provide a grant-specific explanation for the termination.").[4]

Second, the letters also fail to provide any reasoned explanation for the change to the original award decision. Order at 2. The July 30 Letter states that the grants are suspended because "the awards no longer effectuate program goals or agency priorities." Gilleran Decl. ¶ 4, Ex. 2 at 1. The August 1 Letter states that NSF is suspending the grants "[b]ased on UCLA's failure to comply with federal requirements, policies, and procedures." *Id.* ¶ 5, Ex. 3 at 2. Both letters entirely fail to explain "*why the specific project* was found to be incompatible with the Agency's priorities," (Order at 27 (emphasis added)) or in noncompliance with federal requirements, policies, and procedures. *See also* Order at 14 ("None of the submitted termination letters discuss any specific policy interest motivating the termination, nor does any letter mention any specific offending features of the terminated grant."). As this Court discussed in detail in its

---

[4] While both letters purportedly "attach[]" a list of grant awards that are implicated, Plaintiffs have not seen the list(s). Nevertheless, NSF does not argue that the list(s) provided any relevant details.


Order, and equally true here, "[n]othing in the letters or any other source in the record provides the reasoned explanation that the APA requires." *Id*. at 27-29.

Further, even if UCLA proceeds with corrective actions to NSF's satisfaction, the August 1 Letter states that NSF may terminate the grants pursuant to 2 C.F.R. Section 200.340 if the recipients, *i.e.*, the class members, are in non-compliance with the terms and conditions of an award. Gilleran Decl. ¶ 5, Ex. 3 at 3 ("Please note that under 2 CFR § 200.340, NSF may move to terminate an award for reasons including if the recipient has failed to comply with the terms and conditions of an award."). Although, of course, NSF may terminate a grant if a recipient is not in compliance with the terms of an award, the APA requires and this Court's Order demands that there be an individual determination with reasoned explanation of the basis for termination of the award.

It is important to note that Agency Defendants have repeatedly invoked Section 200.340 in this case to argue that an award can be terminated if it "no longer effectuates the program goals or agency priorities." *See*, *e.g.*, Agency Defs.' Opp'n to Mot. for Prelim. Injunction at 32 (June 12, 2025), Dkt. No. 35. And they have done so here: "NSF is issuing this suspension . . . on the basis that the awards *no longer effectuate program goals or agency priorities*." Gilleran Decl. ¶ 4, Ex. 2 (emphasis added). But as this Court found: "2 C.F.R. § 200.340, to the extent it applies, does not alter the requirement under the APA that Defendants must provide a reasoned decision for their termination." Order at 29, n.25 (citation omitted). Moreover, if NSF is suggesting that the issues described in the letters—antisemitism and gender-related sports participation—can substantiate a termination pursuant to Section 200.340, such issues are irrelevant to NSF's statutory mission, and NSF cannot rationally prioritize these domains.

Third, NSF was required to consider reliance interests. It did not. As an initial matter, the letters claim to have considered UCLA's reliance interests, thereby conceding that it did not consider the class members' interests. Gilleran Decl. ¶ 5, Ex. 3 at 2 ("NSF has considered *UCLA's* reliance interests in continued availability of funding under the attached list of grants, and they are outweighed by the concerns identified above" (emphasis added)). On this point, the Court's Order is clear that "the Agency Defendants have an obligation to consider *Plaintiffs'* reliance interests prior to terminating the grants." Order at 30 (emphasis added).

Finally, NSF's single sentence that it considered reliance interests is obviously not enough. As this Court explained, "Agency Defendants terminated grants for active programs, some of which have been receiving federal funding for decades. The terminated grants were being used to pay Plaintiffs' and their staff's salaries, and to fund graduate student programs, field research, and community outreach. These facts indicate significant reliance interests that cannot simply be ignored." *Id.* at 30. The Court found there was no evidence that NSF took any of these factors into consideration. *Id*. at 14-15 ("On the current record before the Court, it appears that terminations occurred without individualized consideration of the extent to which the projects continued to serve stated agency priorities, or the reliance interests of those whose careers and livelihoods were upended by the abrupt termination of previously issued grants."). NSF's letters do nothing to demonstrate that NSF has now given "individualized consideration"


Honorable Rita F. Lin
August 4, 2025
Page 6

to class members' "significant reliance interests," as required by the Order. *Id*. To the contrary, it indicates NSF's belief that it can defy the Court's mandate as long as it makes a single unsupported statement that it complied. The Order clearly requires more.

### B. NSF's Actions Against the Equity Termination Class

NSF argues that the Equity Termination Class is not impacted because the suspension is not based on the Executive Orders in question. Indeed, the July 30 and August 1 Letters do not explicitly reference Executive Orders Nos. 14151 or 14173 (or any Executive Order for that matter). But that does not mean that NSF has not violated the Preliminary Injunction.

Here, the Court's objective in issuing the injunction was to stop the Agency Defendants from leveraging their funding power to penalize disfavored viewpoints. *Sea Shepherd*, 774 F.3d at 949; Order 54 at 17-18. "[T]he government may not 'leverage its power to award subsidies on the basis of subjective criteria into a penalty on disfavored viewpoints' that might 'aim at the suppression of dangerous ideas.'" *Koala*, 931 F.3d at 898 (citation modified) (quoting *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 587 (1998)). As such, "the government can violate the First Amendment by withholding benefits for a censorious purpose." *Koala*, 931 F.3d at 898.

NSF has now suspended grant funding on the claim that UCLA "engages in racism, in the form of illegal race-based preferences in admissions practices;" "fails to promote a research environment free of antisemitism and bias;" and "discriminates against and endangers women by allowing men in women's sports and private women-only spaces." Gilleran Decl. ¶ 5, Ex. 3 at 1. It further threatens to terminate grants pursuant to Section 200.340. *Id.* at 3. The facial intent and blatant effect of NSF's actions is to halt current, and chill future, expression that the administration disfavors, in violation of the First Amendment. Put differently, Plaintiffs may find their grants terminated if their speech conflicts with the Administration's views. This is precisely what the Preliminary Injunction sought to prevent. *Sea Shepherd*, 774 F.3d at 949. NSF's suspensions must be enjoined to prevent further violations of class members' First Amendment rights.

### C. Additional Legal Concerns

NSF's actions also violate the separation of powers because the President lacks the authority to refuse to spend funds appropriated by Congress (Am. Compl. at 117 (July 18, 2025), Dkt. No. 68), the Impoundment Control Act (*id.* at 120), and due process because the terminations were done based on alleged conduct of UCLA, not Plaintiffs, and without notice, hearing, or findings of fact as required by the Constitution and federal law (*id.* at 119). Although this Court did not rule on these claims in granting its Preliminary Injunction, the letters terminating grants to UCLA researchers raise each of these issues that Plaintiffs have briefed and argued to this Court.



### III. CONCLUSION

NSF's actions violate the Preliminary Injunction. *Sea Shepherd*, 774 F.3d at 952. Plaintiffs respectfully request that the Court take appropriate action to enforce its Preliminary Injunction and ensure compliance by Agency Defendants.

Sincerely,

Anthony P. Schoenberg (State Bar No. 203714)
tschoenberg@fbm.com
Linda S. Gilleran (State Bar No. 307107)
lgilleran@fbm.com
Kyle A. McLorg (State Bar No. 332136)
kmclorg@fbm.com
Katherine T. Balkoski (State Bar No. 353366)
kbalkoski@fbm.com
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, CA 94104
Telephone: 415.954.4400

Erwin Chemerinsky (*pro hac vice*)
echemerinsky@law.berkeley.edu
Claudia Polsky (CA Bar No. 185505)
cpolsky@law.berkeley.edu
U.C. BERKELEY SCHOOL OF LAW
Law Building
Berkeley, CA 94720-7200
Telephone: 510.642.6483

[*Additional Counsel Continued*]



        Elizabeth J. Cabraser (CA Bar No. 83151)
        ecabraser@lchb.com
        Richard M. Heimann (CA Bar No. 63607)
        rheimann@lchb.com
        Kevin R. Budner (CA Bar No. 287271)
        kbudner@lchb.com
        Annie M. Wanless
        awanless@lchb.com (CA Bar No. 339635)
        LIEFF CABRASER HEIMANN &
        BERNSTEIN, LLP
        275 Battery Street, 29th Floor
        San Francisco, CA 94111
        Telephone: 415.956.1000

        *Attorneys for Plaintiffs and the Proposed Class*

APS
Attachments

cc:    All Counsel of Record (via ECF)

46686\20525817.4