BRETT A. SHUMATE
Assistant Attorney General
Civil Division
YAAKOV ROTH
Principal Deputy Assistant Attorney General
ERIC J. HAMILTON
Deputy Assistant Attorney General
JOSEPH E. BORSON
Assistant Branch Director
KATHRYN BARRAGAN (D.C. Bar No. 90026294)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 598-7696
Email: kathryn.e.barragan@usdoj.gov
JASON ALTABET (Md. Bar No. 2211280012)
Trial Attorney, U.S. Department of Justice
Tel.: (202) 305-0727
Email: Jason.k.altabet2@usdoj.gov

*Attorneys for United States*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| NEETA THAKUR, *et al.*, | Case No. 25-cv-4737-RFL |
| Plaintiffs, | **DEFENDANT NSF'S SUPPLEMENTAL BRIEF REGARDING SUSPENSION OF GRANTS TO UCLA** |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, | Hearing Date: August 12, 2025<br>Time: 2:00 pm<br>Judge: Hon. Rita F. Lin<br>Location: Zoom |
| Defendants. | |

**INTRODUCTION**

Defendant National Science Foundation ("NSF") respectfully submits this brief addressing why the Preliminary Injunction should not be extended to cover suspensions. *See* Order to Show Cause, ECF No. 81. This supplemental briefing incorporates by reference Defendant NSF's Submission Regarding Suspension of NSF Grants to University of California – Los Angeles ("UCLA"), which provides background information regarding the suspensions at issue here and explains that the prospective portion of the preliminary injunction does not apply to NSF's suspension action. *See* Submission Regarding Suspension of NSF Grants, ECF No. 79.

The Court should not extend the Preliminary Injunction, ECF No. 55, to cover the UCLA grant suspensions. The terminations subject to the Preliminary Injunction and the UCLA grant suspensions overlap only in that they involve the decisions related to grants to UC schools. In every other respect they vary.

The fact pattern that gave rise to the suspensions is fundamentally distinct than that related to the terminations at issue in this Court's previous order: NSF stated the decision was made following an investigation and a finding of discriminatory practices by UCLA. NSF sent a Suspension Letter, ECF No. 79-1 and a Supplemental Letter, ECF No. 79-2 to UCLA, explaining in detail UCLA's "specific examples of noncompliance," which included: (1) "illegal race-based preferences in admissions practices;" (2) "fail[ure] to promote a research environment free of antisemitism and bias;" and (3) "discriminat[ion] against and endanger[ing] women by allowing men in women's sports and private women-only spaces." Supplemental Letter at 1. The decision was made at the university-grantee level due to the university-grantee's conduct, and NSF provided a reasoned explanation for the decision that considered reliance interests. Moreover, the consequence of the suspensions is a temporary stop to grant activities or funding, not a permanent end to the grant. Indeed, NSF expressed willingness to work with UCLA to bring it into compliance and prevent termination of the grants.

The distinct facts of the suspensions have distinct legal consequences that would give rise to distinct claims, making the Court's finding of a likelihood of success on the merits as to the grant

DEFENDANT NSF'S SUPPLEMENTAL BRIEF REGARDING SUSPENSION OF GRANTS TO UCLA
CASE NO. 25-CV-4737

terminations inapplicable.

## ARGUMENT

Given the core differences between the grant terminations and the UCLA grant suspensions, there are three reasons why the Preliminary Injunction should not be extended. First, adding suspensions to the class definition does not satisfy standards of commonality, typicality, and adequacy. Second, the named plaintiffs lack standing to challenge the suspended grants because no named plaintiff purports to have a suspended grant based on a determination that an educational institution grantee engaged in discriminatory practices. Finally, the Court lacks jurisdiction to modify an injunction where its modification would materially alter the issues before the Ninth Circuit. For these reasons, NSF respectfully submits that the Court should not extend the Preliminary Injunction to include suspensions.

### A. The suspensions cannot be added to the class definition because commonality, typicality, and adequacy do not support their inclusion.

The Preliminary Injunction should not be expanded to cover suspensions because they do not meet the commonality, typicality, and adequacy requirements of either class identified in the Court's order. A class must have "questions of law or fact common to the class" and "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a). And a certification under Rule 23(b)(2) is proper if "the party opposing the class has acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). Rule 23's requirements are not met here because the suspensions do not involve the class principles identified in the Court's order. Therefore, the class definition should not be amended, and the preliminary injunction should not be extended.

*The Court's Equity Termination Class and Form Termination Class*

The Court preliminarily certified the Equity Termination Class, which applies to "[a]ll grants terminated by Agency Defendants pursuant to Executive Orders 14151 or 14173." Preliminary Injunction ¶ 4a. As the Court explained in its opinion, Executive Order 14151 directs "to the maximum extent allowed by law" termination of "*all* . . . equity-related grants or contracts." Order Granting Motion for Preliminary Injunction And Provisional Class Certification, ECF No. 54 ("Mem. Op.") at 18 (quoting 90 Fed. Reg.

1  8339, 8339 (Jan. 20, 2025)) (internal quotation marks omitted). And Executive Order 14173, as relevant, directs the termination of "all diversity, equity, . . . and like . . . programs[] or activities." *Id.* (quoting 90 Fed. Reg. 8633, 1634 (Jan. 21, 2025)) (internal quotation marks omitted).

The Court found commonality and typicality as to the Equity Termination Class because defendants "used similar, keyword-based procedures to terminate grants pursuant to [Executive Orders]" that involved looking for terms such as "diversity, equity, and inclusion." *Id.* at 54-55. The Court noted that the use of keyword searches and terminations are "precisely the type of conduct other Equity Termination Class members will have been subject to and the same injury other members will have suffered." *Id.* at 56.

The Court certified the "Form Termination Class," which covers terminations "communicated by means of a form termination notice that does not provide a grant-specific explanation for the termination that states the reason for the change to the original award decision and considers the reliance interests at stake." Preliminary Injunction ¶ 2b. The Court found commonality and typicality as to the Form Termination Class because the named plaintiffs were subject to "*en masse* unreasoned termination of grants" which raised the common question of whether terminations by "form letters without any reasoned explanation, are arbitrary and capricious in violation of the APA." Mem. Op. at 57-59.

*Commonality, Typicality, and Adequacy Analysis Does Not Permit Extension to Suspensions*

Commonality bars a class definition when "differences in the factual background of each claim will affect the outcome of the legal issue." *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979). Meanwhile, "the test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted). And adequacy requires named plaintiffs to "fairly and adequately protect the interests of the class without a conflict of interest with the absent class members." Mem. Op. at 56 (quoting *Yates v. NewRez LLC*, 686 F. Supp. 3d 397, 405 (D. Md. 2023)) (cleaned up). Taken together, these class principles bar modifying the Court's order to cover suspensions.

First, commonality bars adding suspensions. A suspension action, like the one at issue here, is of a materially different kind than anything before the Court when it granted the preliminary injunction, and is thus not common to those interests. The Suspension Letter and Supplemental Letter cited "concerns reported and observed in UCLA programs" as the basis for suspending grants. Supplemental Letter at 1; *accord* Suspension Letter at 1 (citing race discrimination in student life and admissions and antisemitism in the grantee's research environment). And the suspension decision did not rest on any viewpoints articulated in grant projects; the determination was made based on a finding of discriminatory conduct by UCLA. Supplemental Letter at 1; *accord* Suspension Letter at 1. That the factual and legal inquiry would be entirely distinct for both the Equity Termination Class and Form Termination Class defeats commonality. Indeed, where part of the agency's justification is barring federal funds for discrimination in education, the First Amendment analysis is notably different compared to the grant-content-funding inquiry litigated prior to the injunction. *See, e.g., Bob Jones Univ. v. United States*, 461 U.S. 574, 604 (1983) (holding that the government has a "fundamental, overriding interest in eradicating racial discrimination in education").

Typicality and adequacy are similarly lacking. The Court's opinion well explains why that would be true. As the Court recognized, a class cannot be certified using broad strokes disconnected from the situation of any named plaintiff. Mem. Op. 51-53, 59-60. The Court thus rejected "adequacy and typicality of the named plaintiffs" as to "absent class members whose grants were terminated" based on Executive Orders other than those Plaintiffs had established were responsible for their grant terminations. *Id.* at 52-53. The Court then conformed the class definition to the situation of named plaintiffs. The Court did the same by only including the three agencies where named plaintiffs had grants. *See id.* 59-60. And the Court removed those parts of the class definition involving situations other than terminations, including grants that were "denied, suspended, or reduced." *Id.* at 52 n.28.

No named plaintiff here has alleged a suspension of their grant. And to include suspensions in the class definition would run against both the typicality inquiry and the requirement that named plaintiffs be adequate representatives for absent class members. The Court should accordingly not modify the

DEFENDANT NSF'S SUPPLEMENTAL BRIEF REGARDING SUSPENSION OF GRANTS TO UCLA
CASE NO. 25-CV-4737

injunction to reach this entirely separate form of conduct.

**B.    Plaintiffs lack standing to challenge the suspensions.**

Extending the Preliminary Injunction is improper under Article III's standing doctrine as well. No named plaintiff purports to have a grant suspended by NSF following a determination by the Administration that UCLA engaged in discriminatory practices. Plaintiffs must establish standing as to each grant challenged, and a preliminary injunction must be tailored to the plaintiffs' injuries. *Trump v. CASA, Inc.*, 606 U.S. ___ , 2025 WL 1773631, at *15 (U.S. June 27, 2025) (holding that courts lack power to award injunctive relief "broader than necessary to provide complete relief to each plaintiff with standing to sue"). But Plaintiffs' alleged injuries stem from receiving form termination notices and terminations based on two Executive Orders. So standing principles also forbid representing absent class members as to grant suspensions, especially those based on different reasoning.

The Court recognized that a preliminary injunction must be tailored to the Plaintiffs' alleged injuries when it excluded certain types of grants in Plaintiffs' proposed class. *See* Mem. Op. at 52-53, 59-60. As discussed, Plaintiffs' proposed class aimed to include "denied, suspended, or reduced" grants, even though the named plaintiffs' grants were terminated and no named plaintiff had a grant that was denied, suspended, or reduced. *Id.* at 52 & n.28. The proposed class also aimed to include grants terminated based on additional Executive Orders, even though no named plaintiff established their grant was terminated based on these Executive Orders. *Id.* The Court rejected those attempts, concluding that Plaintiffs' proposed class was "overbroad" because it sought to include grants whose terminations are unrelated to Plaintiffs' APA and First Amendment claims. The Court noted that a researcher whose terminated grant "received adequate notice and a reasoned determination based on the appropriate factors" would not have suffered the alleged harm that formed the basis of Plaintiffs' APA claims. *Id.* at 52. Similarly, the Court noted that "none of the named plaintiffs suffered a grant termination based on viewpoint discrimination pursuant to [EO Nos. 14154 and 14168]." *Id.* For these reasons, the Court limited the preliminarily certified class to terminated grants that reflect the facts and issues raised in Plaintiffs' claims.

The Court also excluded certain agency defendants in Plaintiffs' proposed class. The named

plaintiffs—whose grants were terminated by agency defendants EPA, NEH, and NSF—sought to represent a class of plaintiffs asserting claims against additional agency defendants. The Court held that Plaintiffs failed to demonstrate the "juridical link" exception to standing's general rule that a plaintiff must be directly harmed by a defendant because Plaintiffs failed to show that the additional agency defendants' terminations had a legal nexus to Plaintiffs' APA and First Amendment claims. *Id.* at 59. For example, the Court noted that Plaintiffs could not show these agencies acted arbitrarily and capriciously, because each agency engaged in its own decision-making process.

The same logic should hold true here. The suspended grants do not reflect the Plaintiffs' alleged injuries, and Plaintiffs therefore lack standing to challenge them. No Plaintiffs purport to have a suspended grant, nor an action based on a determination that an educational institution engaged in discriminatory conduct in its research environment.

The named plaintiffs also lack standing to assert UCLA's rights. The suspension decision was directed at UCLA as the university-grantee. In finding that the Plaintiffs had standing to challenge their individual grant terminations, the Court noted that the grant termination decisions were "based on a review of the researchers' projects, not a review of the grantee universities." Mem. Op. at 45-46. The Court concluded that Plaintiffs had standing because "[t]hey are the ones who engaged in the protected speech, and their research is the target of the unreasoned arbitrary termination of funding." *Id.* at 44. But that reasoning does not extend to this suspension action premised on UCLA's activities.

### C. The Court lacks jurisdiction to modify an injunction pending appeal.

The filing of a notice of appeal generally divests the district court of jurisdiction over the matters appealed. *McClatchy Newspapers v. Cent. Valley Typographical Union No. 46, Int'l Typographical Union*, 686 F.2d 731, 734 (9th Cir. 1982), *amended sub nom.* (9th Cir. Sept. 22, 1982). There are narrow exceptions to this general rule, including an exception in Rule 62(c) of the Federal Rules of Civil Procedure. That exception provides that a district court "may . . . modify . . . an injunction during the pendency of an appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party." Fed.R.Civ.P. 62(c). Courts recognize that Rule 62(c) merely "codified the

DEFENDANT NSF'S SUPPLEMENTAL BRIEF REGARDING SUSPENSION OF GRANTS TO UCLA
CASE NO. 25-CV-4737

6

'long established' and narrowly limited right of a trial court 'to make orders appropriate to preserve the status quo while the case is pending in (an) appellate court.'" *McClatchy Newspapers*, 686 F.2d at 734 (quoting *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 79 (9th Cir. 1951)). The rule does not allow the district court to "materially alter the status of the case on appeal." *Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166-67 (9th Cir. 2001) (internal citation omitted).

Expanding the preliminary injunction to cover the suspensions would materially alter the core questions of the case on appeal. It would require the court to address a new class of plaintiffs with a distinct harm that would call for a new analysis of claims. Expanding the injunction to include the suspensions would add as a new material issue as to whether the suspension decision's reasoning—which is materially different from the reasoning for the terminations—violated the APA. The Court would also have to adjudicate a First Amendment claim based on the reasoning of the suspension action, which is not premised on viewpoints expressed in the researchers' grants. Because expanding the preliminary injunction would not merely "preserve the status quo" but would "materially alter the status of the case on appeal," the Court lacks jurisdiction to expand the injunction. *Sw. Marine, Inc.*, 242 F.3d at 1166-67.

## CONCLUSION

For the foregoing reasons, NSF respectfully requests that the Court does not expand the preliminary injunction to the suspension action encompassed in the Suspension Letter and Supplemental Letter.

DATED: August 7, 2025              Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV ROTH
Principal Deputy Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

DEFENDANT NSF'S SUPPLEMENTAL BRIEF REGARDING SUSPENSION OF GRANTS TO UCLA
CASE NO. 25-CV-4737

7

JOSEPH E. BORSON
Assistant Branch Director

*/s/ Kathryn Barragan*
KATHRYN BARRAGAN (D.C. Bar No. 90026294)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 598-7696
Email: kathryn.e.barragan@usdoj.gov

JASON ALTABET (Md. Bar No. 2211280012)
Trial Attorney, U.S. Department of Justice
Tel.: (202) 305-0727
Email: jason.k.altabet2@usdoj.gov

*Attorneys for the United States*

DEFENDANT NSF'S SUPPLEMENTAL BRIEF REGARDING SUSPENSION OF GRANTS TO UCLA
CASE NO. 25-CV-4737

8