Erwin Chemerinsky (*pro hac vice*)
echemerinsky@law.berkeley.edu
Claudia Polsky (State Bar No. 185505)
cpolsky@law.berkeley.edu
U.C. BERKELEY SCHOOL OF LAW
Law Building
Berkeley, CA 94720-7200
Telephone: 510.642.6483

Elizabeth J. Cabraser (State Bar No. 83151)
ecabraser@lchb.com
Richard M. Heimann (State Bar No. 63607)
rheimann@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000

Anthony P. Schoenberg (State Bar No. 203714)
tschoenberg@fbm.com
Donald E. Sobelman (State Bar No. 184028)
dsobelman@fbm.com
Dylan M. Silva (State Bar No. 306363)
dmsilva@fbm.com
Linda S. Gilleran (State Bar No. 307107)
lgilleran@fbm.com
Kyle A. McLorg (State Bar No. 332136)
kmclorg@fbm.com
Katherine T. Balkoski (State Bar No. 353366)
kbalkoski@fbm.com
Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

*Attorneys for Plaintiffs and the Proposed Class*
[Additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NEETA THAKUR, et al.,<br><br>    Plaintiffs,<br><br>  vs.<br><br>DONALD J. TRUMP, et al.,<br><br>    Defendants. | Case No. 3:25-cv-04737-RL<br><br>**PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE**<br><br>Judge:   The Honorable Rita F. Lin |

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE - Case No. 3:25-cv-04737-RL

46686\20529349.5

## I. INTRODUCTION

On June 23, this Court issued a preliminary injunction preventing the National Science Foundation (NSF) from cutting off funds to two classes of University of California researchers. NSF did not seek a stay of this Court's order in the United States Court of Appeals, although the other defendants did so. In two letters to the Chancellor of UCLA, dated July 30 and August 1, NSF indefinitely suspended hundreds of millions of dollars of grants to members of both classes of researchers at the University of California. It has done so without meeting the requirements of the Administrative Procedure Act (APA) or of the Constitution. An indefinitely suspended grant is indistinguishable from a terminated grant. The research must stop; labs must close; graduate students and post-doctoral researchers must find other jobs. Instead of providing individual letters with reasoned explanation for the basis for each decision—as the APA and this Court's order require—NSF sent just two letters and an attachment with a long list of suspended NSF grants. This *en masse* indefinite suspension of grants is a clear violation of this Court's preliminary injunction. Plaintiffs request that this Court enforce its preliminary injunction and order reinstatement of the grants to all members of both classes protected by its order.

## II. THE INDEFINITE SUSPENSION OF GRANTS TO UCLA RESEARCHERS VIOLATES THE COURT'S PRELIMINARY INJUNCTION.

This Court issued a preliminary injunction against NSF (as well as the National Endowment for the Humanities and the Environmental Protection Agency) to prevent termination of grants to two designated classes of researchers at the University of California. This Court explicitly said: "This relief applies on a prospective basis. While this matter remains pending any future grant terminations by Agency Defendants meeting the above criteria are vacated upon issuance, and the Agency Defendants are enjoined as to those terminations in the manner stated above." Preliminary Injunction at 2-3 (June 23, 2025), Dkt. No. 55.

Yet, in the July 30 and August 1 letters, NSF indefinitely froze hundreds of grants to researchers at UCLA. *See* Pls.' Letter Br. (Aug. 4, 2025), Dkt. No. 78 ("Letter Br."). In doing so, NSF claimed for the first time that the awards were not aligned with current NSF priorities and/or programmatic goals (*See id.* Ex. 2 ("July 30 Letter"), Dkt. No. 78-3), and accused UCLA of

1  noncompliance with federal statutes and regulations and the terms and conditions of federal
2  awards, all because UCLA allegedly adhered to "illegal" "affirmative action" policies, failed to do
3  enough to combat "antisemitism and bias" on campus, and "discriminat[ed]" against women by
4  allowing the participation of transgender athletes. *See id.* Ex. 3 at 2 ("August 1 Letter"), Dkt. No.
5  78-4. Hundreds of millions of dollars of grants were indefinitely suspended without a semblance
6  of due process and without any meaningful consideration of the reliance interests of the UCLA
7  researchers.

8       Defendants do not dispute that the grants were indefinitely suspended to researchers at
9  UCLA who are members of the classes certified by this Court. Nor do they deny that NSF was
10 enjoined by this Court from "any future grant terminations." Instead, the government argues that
11 the "Preliminary Injunction should not be extended to cover suspensions." NSF's Suppl. Br. at 1:3
12 (Aug. 7, 2025), Dkt. No. 82 ("NSF's Suppl. Br."). But Plaintiffs do not seek to extend this Court's
13 preliminary injunction. They just seek to enforce it.

14      The "indefinite suspensions" at issue are indistinguishable from the terminations enjoined
15 by this Court. *See* Pls.' Letter Br. at 2. Research must stop, with all of the accompanying
16 irreparable harms this Court identified in issuing its preliminary injunction. Order at 47-48 (June
17 23, 2025), Dkt. No. 54 (*Thakur v. Trump*, No. 25-cv-04737-RFL, 2025 WL 1734471 (N.D. Cal.
18 June 23, 2025) ("Order"). Consider, for example, the public statements of Dr. Terrence Tao, a
19 UCLA mathematician and Fields Medal recipient. *See* Decl. of D. Silva in Supp. of Resp., filed
20 herewith, at ¶ 2, Ex. 1 (Jonathan Cohn, *He's the "Mozart" of Math and Trump Killed His*
21 *Funding*, thebulwark.com (Aug. 8, 2025)). Dr. Tao's NSF-funded research has transformed MRIs,
22 by reducing the amount of time patients spend inside the machines, enabling physicians to
23 diagnose conditions more accurately, and allowing hospitals to run more efficiently. Dr. Tao has
24 relied on NSF grants to fund graduate student researchers in his lab and to fund UCLA's Institute
25 for Pure and Applied Mathematics. He explains that as a result of the grant suspensions, the
26 Institute "now only has enough emergency funding for a few months of further operation at best."
27 *Id.* As Dr. Tao explains, "[t]he damage on graduate students is more direct." *Id.*
28      Professor Karen McKinnon, whose grant was likewise indefinitely suspended, has had a

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

PLAINTIFFS' RESPONSE TO ORDER TO SHOW
CAUSE - Case No. 3:25-cv-04737-RL

2

46686\20529349.5

similar experience. Professor McKinnon's work focuses on large-scale climate variability and change, with a particular emphasis on connections to high-impact weather events. Decl. of K. McKinnon in Supp. of Resp., filed herewith, at ¶ 4 ("McKinnon Decl."). She received a prestigious five-year CAREER grant to study increases in global heat extremes. *Id.* ¶ 5. As a result of the grant's indefinite suspension, this important work—which, per NSF, "reflect[ed] NSF's statutory mission and has been deemed worthy of support through evaluation using the Foundation's intellectual merit and broader impacts review criteria"—cannot continue. *Id.* ¶ 8. One postdoctoral researcher previously funded by the grant has now been moved to a different project. *Id*. at ¶ 12. Another postdoctoral researcher expected to join the team was forced to abort her visa process as a result of the grant suspension and has now accepted work with a different employer. *Id.* A graduate student is continuing her grant-related research by diverting unrecoverable funds from another source, which comes at a considerable opportunity cost. *Id*. As Professor McKinnon explains: "In many ways, there is no meaningful difference between a termination and an indefinite suspension. Both result in significant disruption and lost opportunities." *Id*. ¶ 13.

Professor Aradhna Tripati's grants were also indefinitely suspended. Decl. of A. Tripati in Supp. of Resp., filed herewith, at ¶¶ 19-20, 25-26 ("Tripati Decl."). Professor Tripati has received numerous awards for her work, including NSF's CAREER award. *Id.* at ¶¶ 4, 7. In 2019, NSF issued her a notice of award for a project to develop solutions to environmental challenges in the Southwestern United States, including gathering data on the water issues facing Indigenous communities. *Id.* at ¶¶ 12-14. In June 2023, NSF also issued her a notice of award for a project to enhance veteran participation and leadership in STEM fields. *Id.* at ¶¶ 21-22. Both grants were suspended effective July 31, 2025. *Id.* at ¶¶ 20, 26. As a result, Professor Tripati's team has suffered immediate harm, including an inability to complete research and to support STEM research performed by veterans. *Id.* at ¶ 27. She has had to spend significant time seeking alternate funding, and she may need to lay off several members of her research team. *Id.* Further, these harms are in addition to the loss of value to the public from her research, such as creating opportunities for veterans in STEM research. *Id.*

The reality is that for UCLA researchers, there is no difference between a termination and

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE - Case No. 3:25-cv-04737-RL

3

46686\20529349.5

an indefinite suspension: both can last forever. If NSF's argument is accepted, the government can easily circumvent this Court's preliminary injunction by simply labelling any cutoff of funds as an "indefinite suspension" and not using the word "termination." Yet the effect on class members is essentially identical.

The indefinite suspension of grants by NSF to members of the certified class violates this Court's order. This Court explained why Plaintiffs are likely to succeed on the merits on their claim that "*en masse*" termination of grants violates the APA as being arbitrary, capricious, and an abuse of discretion: "The law requires administrative agencies to provide reasoned explanations for their decisions, particularly when changing a longstanding practice and abruptly ending years of planning and work. The form termination letters here appear to be in blatant violation of that requirement." Order at 2.

The two letters to the Chancellor at UCLA, with an appendix consisting of a large list of grants that are being indefinitely suspended, constitute an *en masse* action without even an attempt to offer a reasoned explanation for why a *specific* grant is being terminated. This Court explicitly pointed to the lack of "individualized review" in explaining that Defendants likely violated the APA. Order at 28. A letter to the Chancellor with a long list of grant numbers, as here, is the antithesis of individualized review, and conclusory statements about UCLA's actions are not sufficient to meet the requirements for reasoned explanations under the APA and this Court's Order. Nor does a bald assertion that reliance interests were "outweighed" by the government's interests demonstrate that reliance interests were actually taken into account as the law requires. It is clear that the Trump administration's action of indefinitely suspending hundreds of millions of dollars of grants is to punish UCLA.[1] The purported justifications in the letters are a mere pretext.

/ / /

/ / /

/ / /

---

[1] Dylan Decl. ¶ 3, Ex. 2 (*Trump Wants U.C.L.A. to Pay $1 Billion to Restore Its Research Funding*, New York Times (August 9, 2025), https://www.nytimes.com/2025/08/08/us/trump-ucla-research-funding-deal.html).

## III. THE GOVERNMENT'S ARGUMENTS ARE UNPERSUASIVE.

### A. UCLA Researchers Are Members of the Classes Protected by the Court's Preliminary Injunction.

This Court expressly found that the Plaintiff researchers "satisfy the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy, as well as the Rule 23(b) requirements." Order at 53. Defendants now argue that the "suspensions cannot be added to the class definition because commonality, typicality, and adequacy do not support their inclusion." NSF's Suppl. Br. at 2:11-12. But Plaintiffs do not seek to add anything to the class definition. Defendants point to nothing that has changed as to this Court's conclusions with regard to numerosity, commonality, typicality, and adequacy.

In fact, *how* NSF has indefinitely suspended the grants to UCLA researchers shows the fundamental flaw in the government's argument. NSF has used two generic letters to the UCLA Chancellor as the basis for terminating hundreds of grants. This, itself, shows that NSF sees commonality among these grants.

Moreover, if the government is correct in its argument that there are differences among the grant recipients, that is exactly why there must be individual letters to each grant recipient under the APA explaining the basis for termination—just as this Court held. The commonality is the lack of individualized reasoned explanation as the APA requires.

Plaintiffs are insisting on individualized treatment, as required by the APA and due process. The uniform and undifferentiated nature of Defendant's conduct toward the class is precisely the basis for the typicality of the claims and the commonality of the legal and factual questions to be answered in adjudicating them.

As to the Rule 23 commonality requirement, the Ninth Circuit explained in *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014), that "the text of the rule makes clear, this inquiry asks only whether 'the party opposing the class has acted or refused to act on grounds that apply generally to the class.'" (citation omitted). That, of course, is exactly the situation here: NSF has indefinitely suspended grants for all of the UCLA researchers who are part of the two classes certified by this Court. *See also Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013) (affirming

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE - Case No. 3:25-cv-04737-RL

5

46686\20529349.5

class certification and explaining that any differences among the plaintiffs justified individualized determinations, not dismissal of the classes or dissolving the injunction.)

### B. As This Court Previously Ruled, the Plaintiffs Have Standing.

This Court explicitly found that Plaintiffs have standing. Order at 41-47. The government, though, repeats its objection to standing and says, "[n]o named plaintiff purports to have a grant suspended by NSF following a determination by the Administration that UCLA engaged in discriminatory practices." NSF's Suppl. Br. at 5:3-5.

But this confuses the issue of standing with the question of class certification. The named Plaintiffs include individuals whose grants were terminated by NSF in violation of the APA and the First Amendment. The named Plaintiffs were found by this Court to have suffered an injury caused by Defendants and likely to be redressed by a favorable court decision. Order at 41-47. The Plaintiffs have been deemed class representatives for all University of California researchers who are in the two classes certified by this Court. That satisfied the requirements for Article III standing. There is not a requirement for standing that a named plaintiff be a UCLA researcher who has a grant terminated or indefinitely suspended by NSF. There are thousands of members of the classes; it cannot be that the NSF can terminate grants to those who are not named plaintiffs. That belies the whole purpose of a class action suit.

The government says that "named plaintiffs also lack standing to assert UCLA's rights." NSF's Suppl. Br. at 6:12. But Plaintiffs are not doing so. They are simply seeking to protect members of the two certified classes: researchers whose grants have been cut off in violation of the APA and the First Amendment.

### C. This Court Has Jurisdiction.

The government argues that the "filing of a notice of appeal generally divests the district court of jurisdiction over the matters appealed." NSF's Suppl. Br. at 6:20-21. It should be noted here that the government did not seek a stay of this Court's orders against the NSF. But more importantly, the government is simply wrong as to the law. A district court may enforce its preliminary injunction while an appeal is pending. In *A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098-99 (9th Cir. 2002), for example, the Ninth Circuit affirmed the terms and

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE - Case No. 3:25-cv-04737-RL

6

46686\20529349.5

enforcement of a modified preliminary injunction pending appeal, explaining that "Federal Rule of Civil Procedure 62(c) . . . authorizes a district court to continue supervising compliance with the injunction." *Id.* at 1099 (citations omitted) (citing Fed. R. Civ. P. 62(c): "When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the [district] court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal . . . as it considers proper for the security of the rights of the adverse party."); *see also id.* ("The district court properly exercised its power under Rule 62(c) to continue supervision of Napster's compliance with the injunction.").

## IV. EVEN IF NSF IS NOT TECHNICALLY IN VIOLATION OF THE INJUNCTION ORDER, THE PRELIMINARY INJUNCTION SHOULD BE MODIFIED TO ENJOIN THE INDEFINITE SUSPENSIONS OF GRANTS.

While Plaintiffs maintain that no modification of the injunction order is necessary, this Court has the inherent authority and discretion to modify or clarify the scope of its Preliminary Injunction. *See A&M Recs., Inc.*, 284 F.3d at 1098 ("A district court has inherent authority to modify a preliminary injunction in consideration of new facts."). To the extent the Court deems any modification necessary, the Court may do so in light of the significant public interests and irreparable harms caused by NSF's conduct. This is fully consistent with the Court's objectives to (1) prevent the Agency Defendants from ceasing funding by way of notices that neither provide *grant-specific* explanations, nor meaningfully consider the reliance interests at stake; and (2) stop the Agency Defendants from leveraging their funding power to penalize disfavored viewpoints. *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 949 (9th Cir. 2014) (holding it is proper to consider the objective of the preliminary injunction).

## V. CONCLUSION

NSF's indefinite grant suspensions are *de facto* terminations that violate the plain language and clear purpose of the Preliminary Injunction. Plaintiffs respectfully request that the Court enforce the Preliminary Injunction, order that NSF restore the grants to UCLA researchers, and enjoin NSF from suspending the UCLA grants at issue during the pendency of this litigation.

///

///

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE - Case No. 3:25-cv-04737-RL

7

46686\20529349.5

Dated: August 11, 2025

By: /s/ Anthony P. Schoenberg

Anthony P. Schoenberg (State Bar No. 203714)
tschoenberg@fbm.com
Donald E. Sobelman (State Bar No. 184028)
dsobelman@fbm.com
Dylan M. Silva (State Bar No. 306363)
dmsilva@fbm.com
Linda S. Gilleran (State Bar No. 307107)
Lgilleran@fbm.com
Kyle A. McLorg (State Bar No. 332136)
kmclorg@fbm.com
Katherine T. Balkoski (State Bar No. 353366)
kbalkoski@fbm.com
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, CA 94104
Telephone: 415.954.4400

Erwin Chemerinsky (*pro hac vice*)
echemerinsky@law.berkeley.edu
Claudia Polsky (CA Bar No. 185505)
cpolsky@law.berkeley.edu
U.C. BERKELEY SCHOOL OF LAW
Law Building
Berkeley, CA 94720-7200
Telephone: 510.642.6483

Elizabeth J. Cabraser (State Bar No. 83151)
ecabraser@lchb.com
Richard M. Heimann (State Bar No. 63607)
rheimann@lchb.com
Kevin R. Budner (State Bar No. 287271)
kbudner@lchb.com
Annie M. Wanless (State Bar No. 339635)
awanless@lchb.com
Nabila M. Abdallah (State Bar No. 347764)
nabdallah@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000

*Attorneys for Plaintiffs and the Proposed Class*

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE - Case No. 3:25-cv-04737-RL

8

46686\20529349.5