Erwin Chemerinsky (*pro hac vice*)
echemerinsky@law.berkeley.edu
Claudia Polsky (CA Bar No. 185505)
cpolsky@law.berkeley.edu
U.C. BERKELEY SCHOOL OF LAW
Law Building
Berkeley, CA 94720-7200
Telephone: 510.642.6483

Elizabeth J. Cabraser (CA Bar No. 83151)
ecabraser@lchb.com
Richard M. Heimann (CA Bar No. 63607)
rheimann@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000

Anthony P. Schoenberg (CA Bar No. 203714)
tschoenberg@fbm.com
Linda S. Gilleran (CA Bar No. 307107)
lgilleran@fbm.com
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, CA 94104
Telephone: 415.954.4400

*Attorneys for Plaintiffs and the Proposed Class*
[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEETA THAKUR, *et al.*, | Case No. 3:25-cv-4737 |
| Plaintiffs, | |
| v. | **REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION AS TO ADDITIONAL AGENCY DEFENDANTS** |
| DONALD J. TRUMP, *et al.*, | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

I.    The proposed DOD/DOT classes satisfy all applicable requirements of Rule 23. ............ 2

    A.    The proposed DOD/DOT classes are so numerous that joinder of all
        members is impracticable................................................................................................ 2

    B.    The proposed classes satisfy typicality and commonality ..................................... 4

    C.    The Court should preliminarily enjoin DOD's and DOT's grant
        terminations.................................................................................................................. 5

        1.    Form Termination Class: Defendants' grant terminations violate the
            APA.................................................................................................................... 5

            a.    The DOD/DOT terminations are reviewable. ............................... 5

            b.    The DOD/DOT terminations were arbitrary and capricious.......... 5

        2.    Equity Termination Class: the DOD/DOT terminations violate the
            First Amendment and are contrary to law................................................... 7

    D.    All remaining considerations favor a preliminary injunction. ............................... 7

CONCLUSION ......................................................................................................................... 7

**<u>INTRODUCTION</u>**

The holdings in the Court's Order Granting Motion for Preliminary Injunction and Provisional Class Certification ("Order," Dkt. 54), *Thakur v. Trump*, 2025 WL 1734471 (N.D. Cal. June 23, 2025), as to grants terminated by NSF, NEH, and EPA apply equally to grants terminated by DOD and DOT. Plaintiffs Berman and Handy, whose grants were terminated by those agencies, have therefore moved the Court to (1) certify Equity and Form Termination Classes, designed identically to those previously certified by the Court, for grant recipients affected by DOD and DOT terminations, and (2) issue a preliminary injunction as to DOD and DOT similarly mirroring the Court's June 23, 2025 preliminary injunction. Dkt. 76 ("Motion").

Defendants' opposition to the DOD/DOT certification and injunction is, for the most part, a reprise of arguments the Court has already rejected. *See, e.g.*, Defendants' Opposition ("Opp.," Dkt. 86) at 6-10. As to those issues, Plaintiffs refer to their prior briefing and the Court's well-reasoned order. No more need be said here.

The purportedly new arguments also fail. DOD and DOT terminated grants to UC researchers for effectively the same reasons and in the same manner as NSF, NEH, and EPA, and Defendants offer no good reason to deny these researchers the same relief. On class certification, Defendants complain the proposed classes are too small to justify class treatment. But that argument ignores the true size of the classes, and elides the "relaxed" numerosity standard for Rule 23(b)(2) classes. Furthermore, the additional paragraph in DOT's form termination letters does not change those plaintiffs' likelihood of success, and in no way undermines the commonality of issues or the typicality of the representatives' claims: it is an additional form statement that buttresses the commonality of defendants' action toward DOT class members, and the typicality of the claims arising from that common conduct. The DOD/DOT Form Termination and Equity classes should be certified.

Defendants' opposition to the proposed preliminary injunction fares no better. Neither DOD nor DOT explained how or why their priorities had allegedly changed, described how the grants themselves violated the agencies' purported new priorities, or considered Plaintiffs' reliance interests. None of these fatal flaws were cured by the marginal additional information in

1   the DOT termination letters. The DOD/DOT terminations were arbitrary and capricious for all the

2   same reasons the Court articulated regarding the common conduct applying to the

3   NSF/NEH/EPA Form Termination class.

4          The First Amendment claim is even simpler. Defendants admit that DOD and DOT, like

5   the previous agencies, terminated grants based on DEI-related Executive Orders. The fact that

6   DOT may have had some additional policy motivations is irrelevant, and presents additional

7   common questions.

8          Plaintiffs respectfully request that the Court provisionally certify the DOD/DOT Equity

9   and Form Termination classes under Rule 23(b)(2), and issue preliminary injunctions as to DOD

10  and DOT identical to those in the Court's prior order.

11                                  **ARGUMENT**

12  **I.    The proposed DOD/DOT classes satisfy all applicable requirements of Rule 23.**

13         Defendants challenge two elements of class certification: numerosity and, as to DOT only,

14  commonality and typicality. Neither challenge has merit.

15         **A.    The proposed DOD/DOT classes are so numerous that joinder of all members
               is impracticable.**

16
17         According to Defendants, the proposed classes cannot satisfy Rule 23(a)(1) because there

    are fewer than 20 class members. This argument fails a matter of fact and law.
18
19         On the facts, although the precise number of class members is not yet known, there are

20  likely 40 or more. To support their much narrower projection, Defendants rely on early estimates

21  that included only those grants awarded directly to the UC regents or a UC campus. *See* Dkt. 38

22  (identifying 16 such grants for DOD and 2 for DOT). As the government emphasized at the time,

23  however, those estimates did not include many other grants that would be covered by the class

24  definition, including grants awarded to other institutions where UC-affiliated individuals serve as

25  project directors and grants awarded directly to individual UC researchers. Including those grants

26  is likely to increase the total number by at least 50%, as it did for NSF, NEH, and EPA.[1]

27  _____

28  [1] The UC-only estimate provided for those agencies was 123 grants, including 77 for NSF, 29 for
    NEH, and 17 for EPA. Dkt. 38. A deeper dive after the injunction issued revealed a final tally of
    185 implicated grants (114 for NSF, 46 for NEH, and 25 for EPA).

Assuming a similar ratio for DOD and DOT, and the count would be close to 30 grants. What's more, the limited discovery produced thus far indicates that still more grants are being evaluated for termination. Dkt. 77, Cabraser Decl., Ex. E at 5 (UC grants marked in June 2025 as "NOT yet terminated. Awaiting DOGE mission-critical review").

And, of course, the relevant count is not the number of grants, but the number of class members. Most grants have multiple "principal researchers, investigators, or project leaders," meaning that the total number of class members will likely exceed the number of implicated grants by a healthy margin. With all this in mind, it is certainly reasonable to project a class size of at least 40, which would satisfy even the most aggressive interpretations of the "numerosity" requirement. In any case, this is little more than an academic exercise given the probability that the DOD/DOT classes will be consolidated with the NSF/NEH/EPA classes (and the hundreds of members of those classes) post-appeal.

Regardless, Plaintiffs satisfy Rule 23(a)(1) under even under the most conservative class member count. It is, after all, "an impracticability-of-joinder rule, not a strict numerosity rule." Introduction to Rule 23(a)(1)—Impracticability of joinder, 1 *Newberg and Rubenstein on Class Actions* § 3:11 (6th ed. 2025). And while courts often use a rule-of-thumb threshold—typically between 20 and 40 class members—there is no "clear formula" or "magic number" to establish impracticability. *Id.* In injunctive and declaratory relief cases, "the practical value of joining *each* of the [ ] class members as a formal party is slim to non-existent and is plainly outweighed by the substantial logistical burdens that would entail." *A. B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 837 (9th Cir. 2022). Moreover, "[f]ear of retaliation"—which plaintiffs understandably experience here—"is an additional factor that occasionally counsels in favor of relaxing the numerosity requirement generally . . ., as such a fear might deter potential plaintiffs from suing individually, making a representative action especially pertinent." 1 *Newberg and Rubenstein on Class Actions* § 3:12. Unsurprisingly, then, for Rule 23(b)(2) classes, "the numerosity requirement is relaxed." *Chinitz v. Intero Real Est. Servs.*, 2020 WL 7391299, at *8 (N.D. Cal. July 22, 2020) (citing *Civil Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 317 F.R.D. 91, 100

1    (N.D. Cal. 2016), *aff'd*, 867 F.3d 1093 (9th Cir. 2017); *Jackson v. Danbury*, 240 F.R.D. 145, 147-

2    48 (D. Del. 2007) (numerosity met by class of 16 members in injunctive relief action).[2]

3         Rule 23(b)(2), by design, protects those who would be at risk of harm from the ongoing

4    violative conduct that a classwide injunction halts; these are the "future" members of a Rule

5    23(b)(2) class who cannot be identified or enumerated, and the reason that for Rule 23(b)(2)

6    classes the Rule 23(a)(1) factor is not a counting game. *See, e.g.*, Fed. R. Civ. P. 23(b)(2)

7    advisory committee's note; *1 Newberg and Rubenstein on Class Actions* § 3:12 (6th ed.).

8    Defendants cite a handful of cases for the contrary proposition (Opp. at 11), but none of them

9    actually held—as Defendants suggest—that it would be inappropriate to certify a Rule 23(b)(2)

10   class with fewer than twenty-one members. The proposed DOD/DOT classes satisfy Rule

11   23(a)(1).

12        **B.    The proposed classes satisfy typicality and commonality**

13        Plaintiffs have asked the same "common questions" that the Court already recognized

14   were sufficient to establish Rule 23(a)(2) commonality. These include: whether Agency

15   Defendants followed Trump directives in terminating grants to both Classes; whether grant

16   terminations violated the First Amendment rights of both sets of class members; and whether the

17   Agency Defendants' terminations to the Form Termination Class were arbitrary and capricious in

18   violation of the APA. *See* Mot. at 12. Plaintiffs have clearly satisfied commonality. Likewise for

19   typicality, the purpose of which is simply to "assure that the interest of the named representative

20   aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.

21   1992). There is precise alignment of interests here.

22

23

24   [2] *See also, e.g.*, *Doe #1 v. Trump*, 335 F.R.D. 416, 431 (D. Or. 2020) (citing *Sueoka v. United States*, 101 F. App'x 649, 653 (9th Cir. 2004)) ("[W]hen plaintiffs seek injunctive or declaratory
25   relief, 'the numerosity requirement is relaxed and plaintiffs may rely on the reasonable inference arising from plaintiffs' other evidence that the number of unknown and future members [of the
26   proposed class] is sufficient to make joinder impracticable'"); *Nightingale v. U.S. Citizenship & Immigration Servs.*, 333 F. R. D. 449, 457 (N. D. Cal. 2019) (similar); *Lowell v. Lyft, Inc.*, 2022
27   WL 19406561, at *15 (S.D.N.Y. Dec. 22, 2022), *report and recommendation adopted as modified*, 2023 WL 2622925 (S.D.N.Y. Mar. 24, 2023) (numerosity requirement relaxed for Rule
28   23(b)(2) classes); *Westchester Indep. Living Ctr., Inc. v. State Univ. of New York, Purchase Coll.*, 331 F.R.D. 279, 288 (S.D.N.Y. 2019) (same); *Bublitz v. E.I. du Pont de Nemours & Co.*, 202 F.R.D. 251, 256 (S.D. Iowa 2001) (same).

1    Defendants' limited challenge to these prongs is based on the contention that DOT

2   engaged in more detailed review and provided more individualized explanation for its

3   terminations. This distinction is overblown. DOT's form termination letters are functionally

4   equivalent to the form letters sent by the other agencies. The only difference is one additional

5   form paragraph. This boilerplate language does not meaningfully describe what about any

6   individual grant that violates new agency priorities, nor does it explain why the agency changed

7   its priorities. As described in greater detail below, this marginal detail does not affect DOT

8   grantees' likelihood of success on the merits of their claims, nor does it undermine commonality

9   or typicality.

10   **C.    The Court should preliminarily enjoin DOD's and DOT's grant terminations.**

11        **1.    Form Termination Class: Defendants' grant terminations violate the APA.**

12            **a.    The DOD/DOT terminations are reviewable.**

13       The Court already concluded "Defendants are not likely to meet their burden of showing

14   that Congress intended these [termination] decisions to be nonreviewable under APA Section

15   701(a)(2)." Order at 35. The DOT/DOD enabling statutes do not counsel otherwise. As outlined

16   in Plaintiffs' motion, neither agency's statutes grant "unbounded discretion" (Order at 34) to

17   terminate grants at will. Mot. at 6-8. Regardless, just like NSF, EPA and NEH, DOD and DOT

18   are bound by 12 C.F.R. Section 200.340, which "create[s] 'meaningful standard[s] by which to

19   judge the [agency]'s action.'" Order at 34-35 (quoting *California v. Dep't of Educ.*, 132 F.4th 92,

20   97 (1st Cir. 2025), *stay granted on other grounds by* 145 S. Ct. 966 (2025)). These specific

21   agencies' terminations are not insulated from review.

22            **b.    The DOD/DOT terminations were arbitrary and capricious.**

23       Defendants concede DOT did not "explicitly consider reliance interests." Opp. at 19. Nor

24   did they "introduce[] any evidence indicating that they considered other important factors,

25   including the waste that would result from projects halted before completion, or the loss to the

26   public of critical research that will go unpublished." Order at 30 (citing *California*, 132 F.4th at

27

28

99). This concession, in itself, demonstrates Plaintiffs' likelihood of success on the merits of their arbitrary and capricious claim.

To make matters worse, DOT also failed to provide a reasoned explanation for the terminations. Like all the other agencies' termination letters, DOT told grantees that their grants "no longer effectuate[d] the program goals or agency priorities," and listed the new purported agency priorities, including ceasing promotion of DEI. DEFSDOT_00004-06. In one additional paragraph—one that is structurally identical between the two exemplar letters—DOT cites statements attributable to the "consortium named on the [grant] application" that, according to DOT, are inconsistent with new agency priorities. *Id.* This is hardly a fair "articulat[ion]" of a "rational connection between the facts found and the choice made[,]" particularly because the offensive statements appear to relate to the consortia's broader work, not the individual grants themselves. *See* Order at 27 (quoting *Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc.*, 462 U.S. 87, 105 (1983)). Nor does DOT make any effort to explain "*why* the agency changed its view of how the grant serves statutory priorities." *Id.* All of this spotlights the reality that, while DOT may not have used keyword searches (likely given the smaller volume of grants), it engaged in only "cursory review," resulting in precisely the "arbitrary-and-capricious agency decisionmaking" the APA "was meant to address." *Id.* at 28.

As to DOD, Defendants concede that the termination letters offer no more detail and evince no more reasoned decision making than those issued by NSF, EPA, and NEH. Defendants' only argument as to DOD, then, rests on the contention that "[a] more lenient standard" applies to "military and foreign affairs matters." Opp. at 20. This, of course, raises an additional common question as to the DOD terminations, and one that is most likely to be answered in plaintiffs' favor. The sole case Defendants cite for this proposition involved the blocking of assets to a Specially Designated Global Terrorist organization, an area of obvious military and foreign policy importance that bears no connection to the academic grant termination decisions at issue here. *See Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 730 (D.C. Cir. 2007). The APA requires DOD, like all other agencies, to "provide reasoned explanations for their decisions, particularly

- 6 -

when changing longstanding practice and abruptly upending years of planning and work." Order at 2. DOD's form termination letters did no such thing.

### 2.    Equity Termination Class: the DOD/DOT terminations violate the First Amendment and are contrary to law.

Defendants do not meaningfully dispute that DOD and DOT terminated grants to effectuate the Trump Administration's Equity Termination Orders and to "penalize existing grants across the board for promoting forbidden views." Order at 20. Nor could they. Instead, Defendants contend that DOT's grant terminations were motivated not only by "DEI-related Executive Orders" but also by "additional sources of policy priorities." Opp. at 23. It is not clear how or why this fact would alter the analysis, and Defendants offer no authority to show that it does. As for DOD, Defendants argue only that some terminations were based exclusively on non-DEI-related executive orders, and that those terminations would not be included in the Equity Termination Class. Plaintiffs agree; these still belong in the Form Termination class.

Finally, Defendants grant terminations are contrary to law under the APA for all the reasons set forth in Plaintiffs' Motion. Mot. at 17-19.

### D.    All remaining considerations favor a preliminary injunction.

Defendants raise no new arguments as to the irreparable harm Plaintiffs will suffer absent an injunction. Nor do they dispute that the balance of equities weigh in Plaintiffs' favor. For all the reasons set forth in the Court's prior Order and Plaintiffs' Motion, the harm to Plaintiffs and the public's interest in "preserv[ing] . . . the legality of process by which government agencies function" outweighs any potential harm to the government.

### CONCLUSION

For all of these reasons, Plaintiffs respectfully request that the Court grant their Motion to provisionally certify the DOD/DOT Form Termination and Equity Termination Classes; appoint Eli Berman and Susan Handy as Class Representatives; and issue an additional preliminary injunction applicable to DOD and DOT, identical to that the Court issued on June 23, 2025, which has already effectuated the reinstatement of scores of EPA, NEH, and NSF grants to UC researchers.

1

2

Dated: August 12, 2025                          By:      /s/ Elizabeth J. Cabraser

3                                                        Elizabeth J. Cabraser (CA Bar No. 83151)
                                                         ecabraser@lchb.com
                                                         Richard M. Heimann (CA Bar No. 63607)
4                                                        rheimann@lchb.com
                                                         Kevin R. Budner (CA Bar No. 287271)
5                                                        kbudner@lchb.com
                                                         Annie M. Wanless
6                                                        awanless@lchb.com (CA Bar No. 339635)
                                                         Nabila M. Abdallah
7                                                        nabdallah@lchb.com (CA Bar No. 347764)
                                                         LIEFF CABRASER HEIMANN &
8                                                        BERNSTEIN, LLP
                                                         275 Battery Street, 29th Floor
9                                                        San Francisco, CA 94111
                                                         Telephone: 415.956.1000
10

11                                                       Erwin Chemerinsky (*pro hac vice*)
                                                         echemerinsky@law.berkeley.edu
12                                                       Claudia Polsky (CA Bar No. 185505)
                                                         cpolsky@law.berkeley.edu
13                                                       U.C. BERKELEY SCHOOL OF LAW
                                                         Law Building
14                                                       Berkeley, CA 94720-7200
                                                         Telephone: 510.642.6483
15

16                                                       Anthony P. Schoenberg (CA Bar No. 203714)
                                                         tschoenberg@fbm.com
17                                                       Linda S. Gilleran (CA Bar No. 307107)
                                                         lgilleran@fbm.com
18                                                       Kyle A. McLorg (CA Bar No. 332136)
                                                         kmclorg@fbm.com
19                                                       Katherine T. Balkoski (CA Bar No. 353366)
                                                         kbalkoski@fbm.com
20                                                       FARELLA BRAUN + MARTEL LLP
                                                         One Bush Street, Suite 900
21                                                       San Francisco, CA 94104
                                                         Telephone: 415. 954.4400
22

23                                                       *Attorneys for Plaintiffs and the Proposed Class*

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### **CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that August 12, 2025, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to registered parties.

Executed August 12, 2025 at San Francisco, California.

*/s/ ELIZABETH J. CABRASER*
ELIZABETH J. CABRASER

- 9 -