Erwin Chemerinsky (*pro hac vice*)
echemerinsky@law.berkeley.edu
Claudia Polsky (State Bar No. 185505)
cpolsky@law.berkeley.edu
U.C. BERKELEY SCHOOL OF LAW
Law Building
Berkeley, CA 94720-7200
Telephone: (510) 642-6483

Elizabeth J. Cabraser (State Bar No. 83151)
ecabraser@lchwb.com
Richard M. Heimann (State Bar No. 63607)
rheimann@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

Anthony P. Schoenberg (State Bar No. 203714)
tschoenberg@fbm.com
Donald Sobelman (State Bar No. 184028)
dsobelman@fbm.com
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

*Attorneys for Plaintiffs and the Proposed Class*
[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEETA THAKUR, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>DONALD J. TRUMP, et al.,<br><br>Defendants. | Case No. 3:25-cv-04737-RL<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING SUPREME COURT AND NINTH CIRCUIT RULINGS**<br><br>Judge:   The Honorable Rita F. Lin |

**TABLE OF CONTENTS**

|  |  |  | Page |
|---|---|---|---|
| I. | The Ninth Circuit's Ruling | | 1 |
| II. | The Supreme Court's Ruling in *National Institutes of Health v. American Public Health Association* | | 2 |
| | A. | The *NIH* Decision Does Not Bar Jurisdiction in this Case | 2 |
| | | 1. The District Court Has Jurisdiction Over the First Amendment and Other Constitutional and Statutory Claims. | 2 |
| | | 2. Because the Court of Federal Claims Does Not Have Jurisdiction to Hear Plaintiffs' APA Claims, the Tucker Act Does Not Apply, and the District Court Has Jurisdiction. | 3 |
| | B. | The District Court Correctly Balanced the Equities in Issuing the Preliminary Injunction. | 5 |

**TABLE OF AUTHORITIES**

Page

**Cases**

*Cienega Gardens v. United States*,
  194 F.3d 1231 (Fed. Cir. 1998)...................................................................................................4

*Community Legal Services in East Palo Alto v. United States Department of Health and Human Services*,
  137 F.4th 932 (9th Cir. 2025) ................................................................................................4, 5

*Department of Education v. California*,
  145 S.Ct. 966 (2025).........................................................................................................*passim*

*Elrod v. Burns*,
  427 U.S. 347 (1976).....................................................................................................................5

*McNary v. Haitian Refugee Center, Inc.*,
  498 U.S. 479 (1991).....................................................................................................................5

*National Institutes of Health v. American Public Health Association*,
  No. 25A103, 2025 WL 2415669 (August 21, 2025) ....................................................... 1, 2, 5, 6

*President and Fellows of Harvard College v. United States Department of Health and Human Services*,
  Case 1:25-cv-11048-ADB, Dkt. 238 (D. Mass. Sept. 3, 2025) ...................................................3

*Ransom v. United States*,
  900 F.2d 242 (Fed. Cir.1990).......................................................................................................4

*Thakur v, Trump*,
  Case No. 25-cv-04737-RFL, 2025 WL 1734471 (N.D. Cal. Jun. 23, 2025)....................... 4, 5, 6

*Thakur v. Trump*,
  No. 25-4249, 2025 WL 2414835 (9th Cir. Aug. 21, 2025) ..............................................*passim*

*United Aeronautical Corp. v. United States Air Force*,
  80 F.4th 1017 (9th Cir. 2023) ......................................................................................................2

**Statutes**

20 U.S.C. § 1234a..................................................................................................................................6

20 U.S.C. § 1234b..................................................................................................................................6

The National Science Foundation Act of 1950, Pub. L. 81-507 § 3(a)(2), 64 Stat. 149, 150 (1950)..................................................................................................................................3

# TABLE OF AUTHORITIES
## (continued)

**Page**

**Other Authorities**

J. Shaffer & D. Ramish, *Federal Grant Practice* § 36:29 (2024 ed.) .......................................................... 6

**Regulations**

2 C.F.R. § 200.346 (2024) ......................................................................................................... 6

1   This Court has asked each side to submit a brief on the implications of the Ninth Circuit's ruling
2   denying a stay of the preliminary injunction and the Supreme Court's ruling in *National Institutes of Health*
3   *v. American Public Health Association*, No. 25A103, 2025 WL 2415669 (August 21, 2025) ("*NIH*").
4   The Ninth Circuit came to the same conclusions as this Court on every issue. *Thakur v. Trump*, No.
5   25-4249, 2025 WL 2414835 (9th Cir. Aug. 21, 2025). Thus, the Court of Appeal's ruling provides no basis
6   for reconsidering any aspect of this Court's decision granting the preliminary injunction, and it supports this
7   Court granting the pending request for a preliminary injunction against the termination of grants by the
8   National Institutes of Health, the Department of Defense, and the Department of Transportation.
9   The Supreme Court did not consider or discuss the issue presented in this case: does the Tucker Act
10  apply if the Court of Federal Claims would have no jurisdiction because Plaintiffs are not parties to the
11  grants? This issue was also not considered by the district court or the United States Court of Appeal in that
12  case, and it received little attention in the briefs, other than an occasional mention.

### I.   THE NINTH CIRCUIT'S RULING

This Court issued a preliminary injunction and certified two classes of Plaintiffs. Defendants filed a motion for a partial stay on behalf of two of the Defendants: Environmental Protection Agency ("EPA") and the National Endowment of the Humanities ("NEH"). Defendants did not seek a stay on behalf of National Science Foundation ("NSF"), though they later filed a Rule 28(j) letter seeking for NSF to join the EPA and NEH's arguments on the motion for partial stay.

After briefing and oral argument, the Ninth Circuit denied the Defendants' motion and agreed with this Court on every issue. As to the jurisdictional issues, the Ninth Circuit agreed with this Court that Plaintiffs have standing because of the great harms that they suffer from the termination of grants. *Thakur*, 2025 WL 2414835, at *4. The Ninth Circuit also agreed that the Tucker Act does not apply because, among other reasons, the Court of Federal Claims would not have jurisdiction over the Plaintiffs' claims because they were not parties to the grants. *Id* at *2-4.

On the merits, the Ninth Circuit agreed with this Court that the *en masse* termination of grants, without individualized consideration and without evaluation of reliance interests, violated the Administrative Procedure Act. *Id.* at *4-5. And the Ninth Circuit agreed that the government's termination of grants, based on the perceived viewpoint of the funded research, violated the First Amendment. *Id.* at *6-

7. Finally, the Ninth Circuit agreed with this Court that the balance of equities favored the issuance of the preliminary injunction. *Id*. at *8.

Simply put, the Ninth Circuit upheld every aspect of this Court's reasoning. The Ninth Circuit's decision thus affirms the existing preliminary injunction and also Plaintiffs' request for a preliminary injunction against the termination of funds by the National Institutes of Health ("NIH"), Department of Defense ("DOD"), and Department of Transportation ("DOT").

## II. THE SUPREME COURT'S RULING IN *NATIONAL INSTITUTES OF HEALTH V. AMERICAN PUBLIC HEALTH ASSOCIATION*

The Supreme Court stayed the District Court for the District of Massachusetts's preliminary injunction of NIH grant terminations as violating the APA. As Justice Barrett explained in a concurring opinion: "As today's order states, the District Court likely lacked jurisdiction to hear challenges to the grant terminations, which belong in the Court of Federal Claims." *NIH*, 2025 WL 2415669, at *2 (Barrett, J., concurring in part). Also, the Supreme Court expressed concern that the funds "cannot be recouped" and "are thus irrevocably expended." *Id.* at *1 (citation modified).

For reasons already explained by this Court and by the Ninth Circuit, this litigation is easily distinguishable from *NIH*.

### A. The *NIH* Decision Does Not Bar Jurisdiction in this Case

#### 1. The District Court Has Jurisdiction Over the First Amendment and Other Constitutional and Statutory Claims.

In *NIH* and its predecessor ruling, *Department of Education v. California*, 145 S.Ct. 966, 968 (2025), the Supreme Court focused only on whether the federal district courts had jurisdiction to hear claims under the APA challenging grant terminations. Nothing in the Supreme Court's rulings implies that district courts lack jurisdiction over claims under the Constitution or other federal statutes.

The Ninth Circuit has expressly held that the Tucker Act does not bar jurisdiction over such claims: "[I]f rights and remedies are *statutorily* or *constitutionally* based, then districts courts have jurisdiction[.]" *United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023) (emphasis in original). In fact, at oral argument in the Ninth Circuit in this case on July 31, 2025, the attorney for the United States explicitly stated that the government's jurisdictional argument based on the Tucker Act

applied only to the claims under the APA, not to the First Amendment claims and to the equity termination class. Nothing in *NIH* changes that.[1]

### 2. Because the Court of Federal Claims Does Not Have Jurisdiction to Hear Plaintiffs' APA Claims, the Tucker Act Does Not Apply, and the District Court Has Jurisdiction.

The premise of the government's argument – and the Supreme Court's rulings in *Department of Education* and *NIH* – is that the federal district courts lacked jurisdiction to hear the APA claims because there was exclusive jurisdiction in the Court of Federal Claims under the Tucker Act.[2] But unlike *Department of Education* and *NIH*, the Court of Federal Claims has no jurisdiction to hear Plaintiffs' claims in this case.

As the Defendants stress in their brief to the Ninth Circuit (and have argued throughout this litigation), Plaintiffs are not parties to the grant agreements with the United States that are at issue here. *Thakur v. Trump*, No. 25-4249, Dkt. No. 26 (9th Cir. Aug. 7, 2025) (Appellant's Br. at 38); *see also* Dkt. 35 at 17 (as Defendants state, arguing in Opposition to Motion for Preliminary Injunction that Plaintiffs are "**Not Parties to Any Terminated Contract**") (emphasis in original). The law is clear that only parties to contracts with the United States may bring a claim for breach of contract in the Court of Federal Claims. As the United States Court of Appeal for the Federal Circuit has stated: "[T]o maintain a cause of action pursuant to the Tucker Act that is based on a contract, the contract must be between the plaintiff and the

---

[1] On September 3, 2025, the United States District Court for the District of Massachusetts came to the same conclusion as this Court and held that the Tucker Act does not bar a federal district court from hearing a First Amendment challenge to the termination of grants. *President and Fellows of Harvard College v. United States Department of Health and Human Services*, Case 1:25-cv-11048-ADB, Dkt. 238 at 31 (D. Mass. Sept. 3, 2025) ("Given the nature of the First Amendment claims (purely constitutional) and the Title VI claims (statutory), these claims do not belong in the Court of Federal Claims, which in any event, cannot fully adjudicate either set of claims.") Unlike this case, the issue was not presented or decided as to whether the Tucker Act applies to bar federal court jurisdiction of claims of individual researchers who cannot sue in the Court of Federal Claims. The District Court also found that the termination of grants to Harvard violated the First Amendment, *id.* at 48-65, and was arbitrary and capricious in violation of the Administrative Procedures Act. *Id*. at 65-73. The Massachusetts District Court issued a permanent injunction against the termination of funds to Harvard University. *Id*. at 79.

[2] The Supreme Court in these cases assumed, but did not decide, that grants should be considered contracts. Actually, the law regards them differently. *See, e.g.,* The National Science Foundation Act of 1950, Pub. L. 81-507 Section 3(a)(2), 64 Stat. 149, 150 (1950) (authorizing NSF the ability to "mak[e] contracts *or other arrangements* (*including grants*, loans, and other forms of assistance).") (emphasis added).

government." *Cienega Gardens v. United States*, 194 F.3d 1231, 1239 (Fed. Cir. 1998) (quoting *Ransom v. United States,* 900 F.2d 242, 244 (Fed. Cir.1990)).

The law in this Circuit is clear that the Tucker Act does not apply in situations where the Court of Federal Claims would not have jurisdiction. In *Community Legal Services in East Palo Alto v. United States Department of Health and Human Services*, 137 F.4th 932, 939 (9th Cir. 2025) (citation modified), the Court declared: "But there cannot be exclusive jurisdiction under the Tucker Act if there is no jurisdiction under the Tucker Act. For this reason, the D.C. Circuit has categorically rejected the suggestion that a federal district court can be deprived of jurisdiction by the Tucker Act when no jurisdiction lies in the Court of Federal Claims." (citations omitted).

Indeed, that is exactly what this Court held in denying the Defendants' motion to stay the preliminary injunction:

> Plaintiffs do not have the right to sue under the Tucker Act because they are not parties to a government contract. If Plaintiffs' claims were sent to the Court of Federal Claims, binding precedent in that jurisdiction would require the suit to be dismissed for lack of jurisdiction and sent back to the district court. To "maintain a cause of action pursuant to the Tucker Act [in the Court of Federal Claims] that is based on a contract, the contract must be between the plaintiff and the government." . . . . It is nonsensical to send Plaintiffs on a pointless round trip to the Court of Federal Claims. [3]

Dkt. 54 (Order) at 36-37; *Thakur v, Trump*, Case No. 25-cv-04737-RFL, 2025 WL 1734471, at *19 (N.D. Cal. Jun. 23, 2025).

The government's position would mean that Plaintiffs – though personally injured and having standing – would have no forum in which they could sue. This would raise serious due process issues and would be inconsistent with the strong presumption in favor of judicial review of administrative action. As the Ninth Circuit explained in *Community Legal Services*: "The result requested by the Government would mean that no court has jurisdiction to hear plaintiffs' claims. Not only is this result contrary to common sense, but also conflicts with the 'strong presumption favoring judicial review of administrative action' that

---

[3] Nor can Defendants now claim that Plaintiffs are third party beneficiaries who can sue in the Court of Federal Claims. Defendants expressly have stated to this Court that Plaintiffs are not third-party beneficiaries. Defendants wrote in their Opposition to the Motion for a Preliminary Injunction: "Plaintiffs are not in privity with the government and lack rights under these contracts—*they are neither parties nor intended third-party beneficiaries*. . . . Plaintiffs do not argue that they are intended beneficiaries, nor could they. . . . None of that is sufficient to make Plaintiffs intended third-party beneficiaries. "Indeed, the Ninth Circuit has emphasized time and again just how rare it is for a third party to be an intended beneficiary under a Government contract." Dkt. 35 at 20-21 (emphasis added) (citations omitted).

is embodied in the APA." 137 F.4th at 939 (citation omitted); *see also McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 496 (1991) ("given [the] well-settled presumption favoring interpretations of statutes that allow judicial review of administrative action, . . . .it is most unlikely that Congress intended to foreclose all forms of meaningful judicial review.").

At the hearing on August 26, 2025, this Court asked counsel to focus on whether any of the courts or any of the briefs in *National Institutes of Health v. American Public Health Association* addressed the issue in this case: whether the Court of Federal Claims would have jurisdiction under the Tucker Act to hear the claims of researchers who are not parties to the grants. The answer is no: this issue was not addressed or alluded to in the decisions of the District Court, the United States Court of Appeal for the First Circuit, or the Supreme Court. Plaintiffs' counsel have read all of the briefs at each level of the litigation. It is a matter that received little attention in the briefs, other than an occasional mention. *See* APHA Plaintiffs' Stay Opposition at 28-29, *NIH*, No. 25A103, 2025 WL 2415669 (U.S. Aug. 21, 2025). But nothing in the Supreme Court's decision, explicitly or implicitly, suggests that the Court considered this issue or that the Tucker Act would apply to the *Thakur* Plaintiffs' claims.

### B. The District Court Correctly Balanced the Equities in Issuing the Preliminary Injunction.

The district court concluded that "both the balance of equities and the public interest strongly favor the entry of a preliminary injunction." *Thakur*, 2025 WL 1734471, at *24 (Order at 48). The Ninth Circuit came to the same conclusion in denying a stay of the preliminary injunction. *Thakur*, 2025 WL 2414835, at *8.

In both *Department of Education* and *NIH*, the Court looked at one side of the balance and expressed concern that if the federal government was forced to disburse funds, but this later was found to be in error, the government could not recoup the funds.

Of course, balancing the equities requires looking at the interests of both sides. On the one hand, the harms to the Plaintiffs from the termination of grants are enormous and irreparable. The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Additionally, as this Court concluded:

> [T]he record contains detailed and unrebutted evidence of the irreparable harm that Plaintiffs are already experiencing, including layoffs of team members, interruption of graduate programs, and the potential complete loss of projects, all of which will harm Plaintiffs' professional reputations. . . . Furthermore, when Plaintiffs' multi-year projects rely heavily on federal funding, '[a] total loss of federal funding would be catastrophic, and the [Plaintiffs'] need for certainty renders damages inadequate.'

Dkt. 54 (Order) at 47-48; *Thakur*, 2025 WL 1734471, at *24.

Nor can this harm be remedied by awarding damages or restoring grants at the end of the litigation. The labs will have closed; the studies will have been halted; the staff will be gone. The research that would have occurred in that time will not have happened. There will be no way to know what might have been discovered if only the research had gone forward, or to provide compensation for what was lost.

On the other side of the balance, the government claims that if it is ordered to restore grants, it cannot recoup the money if ultimately it prevails in the litigation. The Supreme Court pointed to this in its rulings in *Department of Education*, 145 S.Ct. at 969, and *NIH*, 2025 WL 2415669, at *1.

But there are legal mechanisms for the government to recoup funds if it ultimately prevails on the merits here. As Justice Jackson noted, "the Government has various legal mechanisms to recoup these kinds of funds. *See, e.g.,* 20 U.S.C. §§ 1234a, 1234b; 2 C.F.R. § 200.346 (2024); *see also* J. Shaffer & D. Ramish, *Federal Grant Practice* § 36:29 (2024 ed.) ('In the end, the Government usually gets its money')." *Department of Education,*, 145 S.Ct. at 974 (Jackson, J., dissenting).

In *NIH,* the Court said that the "plaintiffs' contention that they lack resources to continue their research projects without federal funding is inconsistent with the proposition that they have the resources to make the Government whole for money already spent." 2025 WL 2415669, at *1. But that is not so here. The *Thakur* Plaintiffs are researchers dependent on grant funding to conduct their research, and do not have the resources to continue their research if federal grants are terminated, and there is no indication that there is any source of funds to replace the federal money. If, however, ultimately the federal government prevails and seeks to recoup the money, it could bring an action, using the above-described mechanisms, to collect from the State of California and the University of California. The fact that there is no realistic chance that the State of California and the University of California will provide funds in the near term or foreseeable future to researchers to make up for lost federal money does not mean that a collection action could not be brought against them to recoup funds paid out on reinstated grants should Defendants prevail. The Ninth

Circuit noted, "unlike in *Department of Education*, Plaintiffs here contend—and the Government does not meaningfully contest—that there are 'existing mechanisms to recoup funds.'" *Thakur,* 2025 WL 2414835, at *8 n.8. Moreover, the Ninth Circuit observed: "Even if the government may be unable to recover at least some of the funds it disburses pursuant to the grants and may therefore suffer some degree of irreparable harm, the remaining equitable factors do not favor the government." *Id.* at *8.

Dated: September 5, 2025

By: */s/ Elizabeth J. Cabraser*

Elizabeth J. Cabraser (State Bar No. 83151)
ecabraser@lchb.com
Richard M. Heimann (State Bar No. 63607)
rheimann@lchb.com
Kevin R. Budner (State Bar No. 287271)
kbudner@lchb.com
Annie M. Wanless (State Bar No. 339635)
awanless@lchb.com
Nabila M. Abdallah (State Bar No. 347764)
nabdallah@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

Erwin Chemerinsky (*pro hac vice*)
echemerinsky@law.berkeley.edu
Claudia Polsky (State Bar No. 185505)
cpolsky@law.berkeley.edu
U.C. BERKELEY SCHOOL OF LAW
Law Building
Berkeley, CA 94720-7200
Telephone: (510) 642-6483

Anthony P. Schoenberg (State Bar No. 203714)
tschoenberg@fbm.com
Donald Sobelman (State Bar No. 184028)
dsobelman@fbm.com
Linda S. Gilleran (State Bar No. 307107)
lgilleran@fbm.com
Dylan M. Silva (State Bar No. 306363)
dmsilva@fbm.com
Kyle A. McLorg (State Bar No. 332136)
kmclorg@fbm.com
Katherine T. Balkoski (State Bar No. 353366)
kbalkoski@fbm.com
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 954-4400

*Attorneys for Plaintiffs and the Proposed Class*