BRETT A. SHUMATE
Assistant Attorney General
Civil Division
YAAKOV ROTH
Principal Deputy Assistant Attorney General
ERIC J. HAMILTON
Deputy Assistant Attorney General
JOSEPH E. BORSON
Assistant Branch Director
KATHRYN BARRAGAN (D.C. Bar No. 90026294)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 598-7696
Email: kathryn.e.barragan@usdoj.gov
JASON ALTABET (Md. Bar No. 2211280012)
Trial Attorney, U.S. Department of Justice
Tel.: (202) 305-0727
Email: Jason.k.altabet2@usdoj.gov

*Attorneys for United States*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| NEETA THAKUR, *et al.*, | Case No. 25-cv-4737-RFL |
| Plaintiffs, | **DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING THE SUPREME COURT DECISION AND NINTH CIRCUIT STAY ORDER** |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, | Hearing Date: September 18, 2025 |
| Defendants. | Time: 2:30 pm |
| | Judge: Hon. Rita F. Lin |
| | Location: Zoom |

**INTRODUCTION**

Two weeks ago, the Supreme Court held that "[t]he Administrative Procedure Act's 'limited waiver of [sovereign] immunity' does not provide the District Court with jurisdiction to adjudicate claims 'based on' the research-related grants." *NIH v. Am. Pub. Health Ass'n*, No. 25A103, 2025 WL 2415669, at *1 (U.S. Aug. 21, 2025) (quoting *Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025)). Plaintiffs previously described this matter as having "nearly identical facts" as the *NIH* case. Opp'n Stay Mot. at 8, *Thakur v. Trump*, No. 25-4249 (9th Cir. July 22, 2025), ECF Dkt. 11-1. *NIH*, and Plaintiffs' concession that this case is on all-fours with *NIH*, together definitively resolve Plaintiffs' proposed Form Termination Class, which is based on the Administrative Procedure Act's ("APA") limited waiver. *NIH* "squarely control[s]" this materially identical case. *See Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025) (per curiam).

The Ninth Circuit's stay order, issued hours prior to the Supreme Court's ruling, cannot save Plaintiffs' case. *Thakur v. Trump*, No. 25-4249, 2025 WL 2414835 (9th Cir. Aug. 21, 2025).[1] While the Ninth Circuit understood the *California* case to be inapplicable here, *NIH* in every material respect supersedes the Circuit's reasoning.

Nor does it matter that Plaintiffs are not parties to these grant agreements, as was true for several plaintiffs in *NIH*. *See* Letter Br. at 1, ECF No. 102 (arguing that nonparty status distinguishes *NIH*). Indeed, the *NIH* individual researchers unambiguously raised this exact issue in the First Circuit, stating "they are not parties to any NIH grant agreements." Opp'n Stay Mot. at 13-14, *Am. Pub. Health Ass'n v. NIH*, No. 25-1611 (1st Cir. July 8, 2025), ECF Doc. 00118310408. They argued that the result of this nonparty status was that, without district court review, they would have no court in which to seek relief. *Id.* They then generally raised the same issue to the Supreme Court, explaining "if Defendants prevail on their argument that the district court here lacked jurisdiction, *no* court will have jurisdiction to hear Plaintiffs' claims" because they are "without contracts to sue on." Opp'n Stay Mot., *NIH*, No. 25A103, 2025 WL 2244206, at *29. The Supreme Court issued a stay anyway, on the grounds the Tucker Act

---

[1] On September 4, 2025, Defendants moved for panel reconsideration or reconsideration *en banc* of the panel's stay order as it applies to Plaintiffs' proposed Form Termination class. Pet. for Panel Recons. or Pet. for Reh'g En Banc at 3 n.1, *Thakur,* No. 25-4249 (9th Cir. Sep. 4, 2025), ECF Dkt. 51-1.

DEFENDANTS' SUPPLEMENTAL BRIEF
CASE NO. 25-CV-4737

precluded relief.

Next, the Equity Termination Class is also foreclosed. *NIH*'s holding on the APA's waiver of sovereign immunity bars Plaintiffs' contrary to law claims. And it should also apply to the First Amendment claims.

Finally, no preliminary injunctive relief may issue given the Supreme Court's balancing of the equities in *NIH* and the Supreme Court's recent instructions that the Supreme Court's disposition of stay applications controls similar cases. Since Plaintiffs have not promised to pay back any money wrongfully disbursed, they are not entitled to an injunction.

All told, the Supreme Court has now twice admonished district courts that grant terminations must be adjudicated in the Court of Federal Claims. *California* and *NIH* control. This Court should at the very least not issue relief premised on the Form Termination Class. And if it fully embraces the principles in the Court's two opinions, it should foreclose the Equity Termination Class as well.

## ARGUMENT

### I. Sovereign Immunity Bars Claims Absent a Waiver

"The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). To sue a federal agency and its officials, a plaintiff must therefore identify a waiver of sovereign immunity and show that its claim falls within the waiver's scope. *See FAA v. Cooper*, 566 U.S. 284, 290 (2012). So "if one wishes to sue the United States for a wrong committed by one of its agents (and agencies), one must find an appropriate Act of Congress that waives the Government's immunity from suit for that particular wrong." *Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Hous. & Urb. Dev.*, 480 F.3d 1116, 1121 (Fed. Cir. 2007).

The APA provides "a limited waiver of sovereign immunity for claims against the United States" seeking non-monetary relief. *Crowley Gov't Servs., Inc. v. GSA*, 38 F.4th 1099, 1105 (D.C. Cir. 2022). "The APA's waiver of sovereign immunity does not apply," so long as "any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *California*, 145 S. Ct. at 968 (quoting 5 U.S.C. § 702). Meanwhile, in the Tucker Act, Congress provided consent to suit and granted "the Court

DEFENDANTS' SUPPLEMENTAL BRIEF
CASE NO. 25-CV-4737
2

of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *California*, 145 S. Ct. at 968 (citing 28 U.S.C. § 1491(a)(1)). Specifically, the "United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded" on "any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1).

## II. *NIH* Confirms that Sovereign Immunity Bars the Form Termination Class

### A. *NIH* Directly Forecloses the Form Termination Class

Shortly after the Ninth Circuit panel issued its stay ruling, the Supreme Court granted a stay that is on all fours with this case. In *NIH*, the plaintiffs brought APA claims alleging that the government's terminations of their DEI-related research grants were arbitrary and capricious, and the district court vacated the terminations on those grounds. *Am. Pub. Health Ass'n v. NIH*, 145 F.4th 39, 43-44, 47 (1st Cir. 2025). The First Circuit denied the government's request for a stay, concluding that the district court "likely had jurisdiction to enter the orders . . . to set aside an agency's actions as arbitrary and capricious," and that "the fact that the orders may result in the disbursement of funds did not divest the court of its jurisdiction." *Id.* at 52 (cleaned up).

The Supreme Court disagreed. It stayed the district court's judgment "vacating the Government's termination of various research-related grants." *NIH*, 2025 WL 2415669, at *1. The Court held that the APA's "limited waiver of sovereign immunity does not provide the District Court with jurisdiction to adjudicate claims based on the research-related grants or to order relief designed to enforce any obligation to pay money pursuant to those grants." *Id.* (cleaned up). And it further determined that the government faced irreparable harm given the "plaintiffs do not state that they will repay grant money if the Government ultimately prevails." *Id.*

The Supreme Court's reasoning stems from the nature of the APA's limited waiver of sovereign immunity. The "Tucker Act impliedly forbids" the bringing of "contract actions" against "the government in a federal district court" under the APA. *Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 67-68 (D.C. Cir. 2004) (quotation omitted); *see also* 5 U.S.C. § 702 (providing that APA's waiver of sovereign immunity does not "confer[] authority to grant relief if any other statute

DEFENDANTS' SUPPLEMENTAL BRIEF
CASE NO. 25-CV-4737

3

that grants consent to suit expressly or impliedly forbids the relief which is sought"). Congress has instead vested the Court of Federal Claims with exclusive jurisdiction over most contract claims against the United States. *See* 28 U.S.C. § 1491(a)(1). "[C]hallenges to the grant terminations, [thus] belong in the Court of Federal Claims." *NIH*, 2025 WL 2415669, at *2 (mem.) (Barrett, J., concurring).

*NIH* "squarely control[s]" this materially identical case. *See Boyle*, 145 S. Ct. at 2654. Like in *NIH*, the Form Termination Class's APA claims challenge grant terminations as arbitrary and capricious. And this Court's preliminary injunction vacates "[a]ll grant terminations" meeting the Court's requirements and orders the agencies to "**REINSTATE** the terminated grants." Prelim. Inj. at ¶¶ 2a, 2c, ECF No. 55. The claims are thus "based on the research-related grants" through which federal funds are obligated and disbursed. *NIH*, 2025 WL 2415669, at *1 (quotation omitted). And, like the district court in *NIH*, this Court vacated the government's termination of the grant agreements and reinstated the grants so that federal funding would continue—"relief designed to enforce [an] obligation to pay money pursuant to" the research-related grants. *Id.* (cleaned up). In sum, the Form Termination Class is based on forbidden claims and seeks forbidden relief. So *NIH* foreclosed that path to a preliminary injunction.

**B. The Ninth Circuit's Stay Order Conflicts with *NIH* and Therefore Does Not Control**

The Ninth Circuit denied Defendants a stay mere hours before the Supreme Court issued its *NIH* decision. The panel thus acted without the benefit of *NIH*. And the panel's reasoning has now been overtaken in relevant part. "[W]here intervening Supreme Court authority is clearly irreconcilable" with an opinion of the Circuit "district courts should consider themselves bound by the intervening higher authority" and must "reject the prior opinion." *Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003) (en banc). Further, "circuit precedent, authoritative at the time it was issued, can be effectively overruled by subsequent Supreme Court decisions that are closely on point, even though those decisions do not expressly overrule the prior circuit precedent." *Id.* at 899 (cleaned up).

The panel's reasoning is irreconcilable with the Supreme Court's *NIH* decision in at least three ways. First, the panel determined that Plaintiffs' claim supporting the Form Termination Class is statutory, not contractual because it is "not premised on any rights derived from their grants or any purported

DEFENDANTS' SUPPLEMENTAL BRIEF
CASE NO. 25-CV-4737
4

contract." *Thakur*, 2025 WL 2414835, at *3. In the panel's view, the claim stems from a "right to be free from arbitrary and capricious agency action" under the APA statutory scheme. *Id*.

But the Supreme Court concluded in *NIH* that the APA's waiver of sovereign immunity does not extend to claims challenging grant terminations as arbitrary and capricious because such claims are in fact "based on the research-related grants." *NIH*, 2025 WL 2415669, at *1 (quotation omitted). That is, the Supreme Court concluded the exact opposite of the stay panel—that an arbitrary and capricious claims for termination of a grant agreement is in fact contractual. As the D.C. Circuit recognized just this week, *NIH* thus holds that a general right to be free from arbitrary-and-capricious decisionmaking cannot be the source of the right upon which plaintiffs' claim is premised. *See Climate United Fund v. Citibank, N.A.*, No. 25-5122, 2025 WL 2502881, *8 (D.C. Cir. Sep. 2, 2025).

Next, the panel reasoned that the relief requested and ordered was "not contractual in nature." *Thakur*, 2025 WL 2414835, at *3. The panel acknowledged that the district court's order vacatur of the grant terminations and order of reinstatement "has the eventual effect of requiring the government to make payments pursuant to the grants," but it considered this "a mere by-product" of the order. *Id.* (quotation omitted). The *NIH* decision rejected that logic as well. An "order vacating the government's decision to terminate grants under the APA is in every meaningful sense an order requiring the government to pay those grants." *NIH*, 2025 WL 2415669, at *4 (Gorsuch, J., concurring in part and dissenting in part); *id.* at *1 (per curiam) (explaining relief designed to enforce any "'obligation to pay money' pursuant to those grants" is impliedly precluded). Plaintiffs have always acknowledged that the aim of their requested relief is to have the grant agreements reinstated so that they may continue to receive funds paid out by the government under those agreements. That is precisely what the Supreme Court has barred.

Finally, the panel's discounting of *California* has been overtaken by the Supreme Court's subsequent decision in *NIH*. The panel determined that the prior Supreme Court decision was distinguishable because it involved relief requiring "the Government to pay out past-due grant obligations and to continue paying obligations as they accrue[]," while relief vacating terminated grants supposedly does not, *Thakur*, 2025 WL 2414835, at *4 (quotation omitted). That reasoning echoes the First Circuit's

DEFENDANTS' SUPPLEMENTAL BRIEF
CASE NO. 25-CV-4737

5

since-rejected reasoning in *NIH*. *See American Pub. Health Ass'n*, 145 F.4th at 51 (purporting to distinguish *California* on the ground that "the Supreme Court construed the district court as having ordered the Government to pay out past-due grant obligations" (cleaned up)). In *NIH*, the Supreme Court made clear that *California* "cannot be so easily circumvented." 2025 WL 2415669, at *4 (Gorsuch, J., concurring in part and dissenting in part); *see also id.* at *1 (per curiam) (relying on *California* in granting a stay); *id.* at *2 n.1 (Barrett, J., concurring) (noting that the "objection . . . to sending the grant-termination claims to the [Court of Federal Claims]" was "already addressed" by *California*).

### C. That Plaintiffs are Not Parties to the Contract Does Not Meaningfully Distinguish *NIH*

That Plaintiffs are not themselves parties to the agreements makes no difference. "The core of plaintiffs' suit alleges that the Government unlawfully terminated the[] grants. That is a breach of contract claim. And under the Tucker Act, such claims must be brought in the Court of Federal Claims, not federal district court." *NIH*, 2025 WL 2415669, at *5 (Kavanaugh, J., concurring in part and dissenting in part). Despite having previously described *NIH* as "nearly identical" to this case, Opp'n Stay Mot. at 8, *Thakur*, Plaintiffs have since sought to distinguish it. They explain that they are not themselves parties to the grant agreements here. Letter Br. at 1. But that does not save them from the Supreme Court's mandates.

As an initial matter, several of the plaintiffs in *NIH* were themselves individual researchers who were nonparties to the grants. *Am. Pub. Health Ass'n*, 145 F.4th at 44 ("The plaintiffs in the first case are private research and advocacy organizations and individual researchers who receive NIH funding."). Indeed, the fact that the individual researchers were "not parties to any NIH grant agreements" was briefed in the First Circuit. Opp'n Stay Mot. at 13-14, *Am. Pub. Health Ass'n v. NIH*, No. 25-1611 (1st Cir. July 8, 2025), ECF Doc. 00118310408. The individual research plaintiffs argued that, without district court review, they would have no court in which to seek relief. *Id.* And the plaintiffs in *NIH* resisted a stay in the Supreme Court on the precise ground that "if Defendants prevail on their argument that the district court here lacked jurisdiction, *no* court will have jurisdiction to hear Plaintiffs' claims" because they are "without contracts to sue on." Opp'n Stay Mot., *NIH*, No. 25A103, 2025 WL 2244206, at *29.

While the Supreme Court briefing, as opposed to the First Circuit argument, was more generally

DEFENDANTS' SUPPLEMENTAL BRIEF
CASE NO. 25-CV-4737

6

framed, the distinction is immaterial. The individual researcher plaintiffs raised in both courts that they would be foreclosed from bringing suit in the Court of Federal Claims. The contention was the plaintiffs' means of avoiding Tucker Act preclusion. And the Supreme Court did not accept that argument. Instead, the Court held that the district court likely lacked jurisdiction over all the plaintiffs' APA claims, without regard to whether they were direct or indirect recipients of grant funding, because of the nature of the claims raised and the relief sought. "The [APA's] 'limited waiver of [sovereign] immunity' does not provide the District Court with jurisdiction to adjudicate claims 'based on' the research-related grants." *NIH*, 2025 WL 2415669, at *1 (quoting *California*, 145 S. Ct. at 968). Nor does it permit "relief designed to enforce any obligation to pay money pursuant to those grants." *Id.* (cleaned up).

This conclusion reflects that it would not be logical to allow indirect recipients of grant funding to bring APA claims challenging the government's grant terminations while barring direct recipients. *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (explaining that the APA's preemption-carveout provision "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes"). As the Supreme Court has long recognized, when Congress establishes a remedial scheme with limitations on the parties who can seek relief, the proper inference is not that other parties can seek relief without regard to the remedial scheme's limitations, but rather that other parties cannot seek relief at all. *See Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345-47, 349 (1984) (declining APA review over a challenge to the Agricultural Marketing Agreement Act of 1937 because by limiting challenges to the Act to a particular class, the Act "impliedly precluded" judicial review over similar challenges by those outside the class).

And in the Tucker Act context, that a party may be unable to receive relief in the Court of Federal Claims is not itself a basis to defeat implied preclusion of APA claims. When considering the APA's limited waiver of sovereign immunity, that a plaintiff "does not have an adequate remedy elsewhere does not end [the court's] discussion." *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 646 (9th Cir. 1998). Implied preclusion is centered on a "a cause of action" and whether it is "impliedly forbidden." *Id.* (cleaned up). To appeal to whether that same plaintiff has an adequate remedy in the Court of Federal

DEFENDANTS' SUPPLEMENTAL BRIEF
CASE NO. 25-CV-4737

7

Claims "conflates [the] two distinct concepts." *Id.* The focus is not on what may be brought in the Court of Federal Claims, but rather on the nature of the claims and relief.

That a set of potential plaintiffs may be impliedly precluded from bringing any claims is not unusual. Consider, by way of example, preclusion under the Civil Service Reform Act of 1978 ("CSRA"). It is commonplace that the "comprehensive [statutory] employment scheme preempts judicial review under the more general APA even when that scheme provides no judicial relief—that is, what you get under the CSRA is what you get." *Filebark v. DOT*, 555 F.3d 1009, 1010 (D.C. Cir. 2009) (cleaned up). As then-Judge Roberts explained for the D.C. Circuit, the CSRA in some circumstances will properly provide a set of plaintiffs "no relief and preclude[] other avenues of relief." *Graham v. Ashcroft*, 358 F.3d 931, 935 (D.C. Cir. 2004). "[W]e treat the CSRA and Congress's related employment statutes as covering the field of federal employee claims, and so our cases expressly teach that those left out of this scheme are left out on purpose." *Filebark*, 555 F.3d at 1014; *accord Am. Fed'n of Gov't Emps. v. Sec'y of Air Force* ("*Air Force*"), 716 F.3d 633, 638 (D.C. Cir. 2013) ("[T]he fact that [a union] may not pursue a claim through the CSRA does not mean that it has access to the courts[] . . . [it] may not raise the claim at all.").

The CSRA is not a precise analogue, but it illustrates the general principle. There, that employees must go through a specific scheme, the CSRA, prevents other affected parties, like federal unions, from bringing suit under the APA. See *Air Force*, 716 F.3d at 639. "Were [the Court] to hold otherwise, a union [employee] could circumvent the CSRA's strictures by requesting that a [federal] union file general APA claims outside the CSRA." *Id.* And the same is ultimately true in this context. Were the Court to reject both *California* and *NIH* and hold that it can "adjudicate claims 'based on' the research-related grants"—and ordering payment under those grants—it would be condoning a blatant circumvention of the Tucker Act's preclusive effect. *NIH*, 2025 WL 2415669, at *1 (quoting *California*, 145 S. Ct. at 968).

Lastly, it is not even clear that the Court of Federal Claims would lack jurisdiction. First, "federal grant agreements a[re] contracts when the standard conditions for a contract are satisfied, including that the federal entity agrees to be bound." *Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1338 (Fed. Cir. 2021). They "set the terms of and receive commitments from recipients" of federal grant programs.

DEFENDANTS' SUPPLEMENTAL BRIEF
CASE NO. 25-CV-4737

*Boaz Hous. Auth. v. United States*, 994 F.3d 1359, 1368 (Fed. Cir. 2021). Second, the Court of Federal Claims has jurisdiction over a breach of contract action so long as the plaintiff sets forth "a non-frivolous allegation of breach of a contract with the government." *Id.* at 1341. This "separate[s] the issue of subject-matter jurisdiction, a Rule 12(b)(1) inquiry, from the issue of whether a complainant's allegations state a viable claim for relief, a Rule 12(b)(6) inquiry." *Id.* So the Court of Federal Claims must consider whether a plaintiff's "contract-based claims are truly frivolous and, if not," exercises jurisdiction while moving to the merits. *Id.* at 1342.

Plaintiffs have a non-frivolous claim to third-party beneficiary status, even though Defendants contend that they should lose on the merits. Plaintiffs certainly think this is the case. As they previously argued, "[t]he Court . . . could find that Plaintiffs have third party beneficiary status as the intended beneficiaries of the grant agreements." Reply in Supp. of Pls.' Mot. Prelim. Inj. at 8, ECF No. 40. The Court of Federal Claims would then consider, on the merits, "whether the contract reflects the intent of the contracting parties to benefit a third party" and then whether there has indeed been a breach. *Columbus Reg'l Hosp*, 990 F.3d at 1345. And while Defendants take the position that such a claim would not succeed, that does not render the position so insubstantial as to defeat jurisdiction to even consider the issue in the Court of Federal Claims. That court therefore has jurisdiction to consider Plaintiffs' claims.

**III.    The Equity Termination Class is Also Foreclosed**

*NIH* also defeats the Equity Termination Class. First, the contrary to law claim under the APA naturally flows from the same limited waiver of sovereign immunity as the arbitrary and capricious claim. *NIH* therefore forecloses those APA claims as well. *NIH*, 2025 WL 2415669, at *1.

Second, the Court's reliance on the First Amendment does not overcome the Tucker Act's preclusion. The Court of Federal Claims is capable of adjudicating constitutional claims so long as the underlying entitlement to funds is a contract, and the purported unlawful breach is rooted in the Constitution. *See Holley v. United States*, 124 F.3d 1462, 1466 (Fed. Cir. 1997) ("The presence of a constitutional issue does not erase the jurisdiction of the Court of Federal Claims based on a properly brought claim under the Tucker Act, or bar the court from considering the constitutional issue in the course

of determining whether the [challenged action] was wrongful."). "All [Plaintiffs'] constitutional claims are premised on the notion that the United States has some contractual obligation . . . that it has failed to satisfy." *See Tucson Airport Auth.*, 136 F.3d at 647. They are thus impliedly precluded.

Nor is labeling a claim ultra vires sufficient. As the Supreme Court has recently explained, "[u]ltra vires review is . . . unavailable if, as is usually the case, a statutory review scheme provides aggrieved persons 'with a meaningful and adequate opportunity for judicial review,' or if a statutory review scheme forecloses all other forms of judicial review." *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025) (citing *Bd. of Governors, FRS v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991)); *see Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015).

Thus, for all the reasons that the Tucker Act precludes APA actions for claims that are in essence contractual, it also precludes ultra vires action. *See, e.g.*, *Sustainability Inst. v. Trump*, No. 25-1575, 2025 WL 1587100, at *2 (4th Cir. June 5, 2025) ("[I]t appears unlikely that Plaintiffs' ultra vires claims, which allege the Government violated the Constitution when it terminated or suspended Plaintiffs' grants, would provide a detour around the Tucker Act" (citing *Armstrong*, 575 U.S. at 327-28). That Plaintiffs' requested relief would operate against the government's public fisc is further evidence that the ultra vires vehicle is unavailable. *See Dugan v. Rank*, 372 U.S. 609, 620 (1963).

**IV.  Any Preliminary Injunctive Relief is Barred**

Lastly, the Supreme Court's *NIH* decision clarifies that preliminary injunctive relief cannot issue because Defendants succeed on the balance of the equities. A preliminary injunction risks irreparable harm to the government and to the public interest by requiring the payment of money that the government may never recover. "[W]hile the loss of money is not typically considered irreparable harm, that changes if the funds cannot be recouped and are thus irrevocably expended." *NIH*, 2025 WL 2415669, at *1 (quotation omitted). Thus, the Supreme Court held in *NIH* that the government faced irreparable harm because the "plaintiffs d[id] not state that they w[ould] repay grant money if the Government ultimately prevails." *Id.* Plaintiffs have not promised to return withdrawn funds, and the government is unlikely to be able to recover the funds disbursed. So any preliminary injunction should be denied.

DEFENDANTS' SUPPLEMENTAL BRIEF
CASE NO. 25-CV-4737

| | |
|---|---|
| DATED: September 5, 2025 | Respectfully submitted, |
| | BRETT A. SHUMATE<br>Assistant Attorney General<br>Civil Division |
| | YAAKOV ROTH<br>Principal Deputy Assistant Attorney General |
| | ERIC J. HAMILTON<br>Deputy Assistant Attorney General |
| | JOSEPH E. BORSON<br>Assistant Branch Director |
| | */s/ Jason Altabet*<br>JASON ALTABET (Md. Bar No. 2211280012)<br>Trial Attorney, U.S. Department of Justice<br>Civil Division, Federal Programs Branch<br>1100 L Street, N.W.<br>Washington, D.C. 20005<br>Tel.: (202) 305-0727<br>Email: jason.k.altabet2@usdoj.gov |
| | KATHRYN BARRAGAN (D.C. Bar No. 90026294)<br>Trial Attorney, U.S. Department of Justice<br>Tel.: (202) 598-7696<br>Email: kathryn.e.barragan@usdoj.gov |
| | *Attorneys for the United States* |

DEFENDANTS' SUPPLEMENTAL BRIEF
CASE NO. 25-CV-4737