1   Erwin Chemerinsky (*pro hac vice*)
    echemerinsky@law.berkeley.edu
2   Claudia Polsky (CA Bar No. 185505)
    cpolsky@law.berkeley.edu
3   U.C. BERKELEY SCHOOL OF LAW
    Law Building
4   Berkeley, CA 94720-7200
    Telephone: 510.642.6483
5
    Elizabeth J. Cabraser (CA Bar No. 83151)
6   ecabraser@lchb.com
    Richard M. Heimann (CA Bar No. 63607)
7   rheimann@lchb.com
    LIEFF CABRASER HEIMANN &
8   BERNSTEIN, LLP
    275 Battery Street, 29th Floor
9   San Francisco, CA 94111
    Telephone: 415.956.1000
10
    Anthony P. Schoenberg (CA Bar No. 203714)
11  tschoenberg@fbm.com
    Donald E. Sobelman (CA Bar No. 184028)
12  dsobelman@fbm.com
    Linda S. Gilleran (CA Bar No. 307107)
13  lgilleran@fbm.com
    FARELLA BRAUN + MARTEL LLP
14  One Bush Street, Suite 900
    San Francisco, CA 94104
15  Telephone: 415.954.4400

16  *Attorneys for Plaintiffs and the Proposed Classes*
    [Additional counsel listed on signature page]
17

18                      **UNITED STATES DISTRICT COURT**

19                     **NORTHERN DISTRICT OF CALIFORNIA**

20

21  NEETA THAKUR, *et al.*,                     | Case No. 3:25-cv-4737

22              Plaintiffs,                      | **PLAINTIFFS' REPLY IN
                                                 | SUPPORT OF MOTION FOR
23          v.                                   | LEAVE TO FILE THIRD
                                                 | AMENDED COMPLAINT**
24  DONALD J. TRUMP, *et al.*,

25              Defendants.

26

27

28

                                                          46686\20779096.1

## I.     INTRODUCTION

Plaintiffs' Motion for Leave to File Third Amended Complaint ("Motion for Leave") sets forth the good faith basis for their proposed amendment. It explains their investigation into the actions of Defendant Department of Energy ("DOE"), and why claims against DOE are being added *now*. Plaintiffs' filings (including the contemporaneously filed Motion for Preliminary Injunction and Provisional Class Certification) tell the story of the DOE grant terminations at issue.

In the early part of 2025, DOE pursued the new administration's assault on research along with the other Defendants in this action. But those actions, specifically against UC researchers, did not match those of other agencies in pace or magnitude. That all changed in October 2025: while appropriations lapsed and the federal government shut down, Defendants Trump and DOE (and Russell Vought, Director of the U.S. Office of Management and Budget) seemingly saw their opportunity to catch up. DOE proceeded swiftly to terminate a staggering volume of grants, totaling **$7.5 billion**. The terminated grants were only to awardees in Blue States. And the purpose of these terminations, made explicit by both Vought and Trump, was to punish their political opposition in Blue States, while leaving identical programs in Red States untouched, due solely to partisan animus.

Among the researchers bearing the brunt of Defendants' partisan terminations are proposed Class Representatives Drs. Plamen Atanassov and Louise Bedsworth. Also victimized were the scores of similarly situated UC researchers whose work suffered a debilitating blow from the October 2025 terminations.

Plaintiffs' DOE claims could not have been brought prior to October 2025, nor could they have been brought immediately afterward. DOE's grant terminations were substantial and complex. Developing an accurate factual record of what occurred, and identifying Plaintiffs willing to represent a class challenging DOE's illegal conduct, took substantial time and effort that included many conversations with multiple affected researchers. Plaintiffs worked tirelessly to achieve these ends, and then met and conferred with the government regarding their plan to amend the complaint and challenge the DOE terminations. With an agreed-upon briefing schedule that

1    was approved by this Court, Plaintiffs prepared the necessary papers and filed them.

2    Given this context, the government's claim of undue delay and prejudice is unavailing. The

3    Opposition ignores the factual record in the Polsky Declaration, while citing inapposite cases in

4    which leave was denied to parties pretextually amending to avoid summary judgment. Meanwhile,

5    the government claims to suffer prejudice due to an extended briefing schedule that it agreed to,

6    and which will remain in place regardless of whether leave is granted.

7    The Federal Rules of Civil Procedure provide this Court great freedom to grant leave

8    "when justice so requires," Fed. R. Civ. P. 15(a)(2), and amendment furthers the interests of

9    speediness, fairness, and judicial economy. *See* Fed. R. Civ. P. 1. While Plaintiffs could file the

10    claims against DOE in a separate lawsuit, proceeding by amendment, rather than via a new (and

11    related) case, is far more efficient for the Court and the parties. Plaintiffs therefore respectfully

12    request that the Court grant leave, as justice requires in this action.

13    **II.    ARGUMENT**

14    The government's primary bases for challenging Plaintiffs' Motion for Leave are

15    purported undue delay, prejudice, and futility. Opp. at 10-11. Neither the record nor the law

16    supports the government's arguments.

17    **A.    There Has Been No Undue Delay.**

18    As to delay, the government distorts the facts: Plaintiffs have worked diligently to assert

19    claims against DOE, as set forth in the Polsky Declaration. Before October 2025, the DOE grant

20    terminations were few and ill-suited for inclusion in this class action lawsuit. Polsky Decl. ¶ 2. But

21    the October 2025 wave of grant terminations, along with the contemporaneous statements by Mr.

22    Vought and President Trump admitting the unlawful purpose of the terminations, changed the

23    landscape. *Id*. ¶¶ 2; 8. Immediately after news of the grant terminations broke, Plaintiffs worked

24    diligently to gather complete and accurate information and to identify DOE grant recipients who

25    were willing and able to serve as representative plaintiffs in this lawsuit. *Id.* ¶¶ 2-8. This was no

26    small feat and required time.

27    And not a moment was wasted, as demonstrated by Plaintiffs' robust filing on November

28    24th—within two months of the grants being terminated—of not just the Motion for Leave and

1   supporting documents, but also the Motion for Preliminary Injunction and Provisional Class

2   Certification and its supporting documents.[1] The government neither grapples with nor responds to

3   the factual record set forth in the Polsky Declaration. It provides no explanation for why it

4   believes the time Plaintiffs spent investigating the facts and preparing to file this Motion for Leave

5   constitutes "undue delay," or "delay" at all.

6          Meanwhile, the cases it cites for the proposition that Plaintiffs engaged in undue delay are

7   inapposite: in every such cited case, the plaintiffs who attempted to amend did so to avoid

8   summary judgment against them. In *Sako v. Wells Fargo Bank, National Ass'n*, the court denied

9   leave to amend because the plaintiff "knew of the facts supporting the proposed new claims prior

10  to filing the lawsuit" and that "timing of [p]laintiff's motion for leave to amend [was] suspicious

11  since . . . there was a pending motion for summary judgment." No. 14CV1034-GPC JMA, 2015

12  WL 5022326, at *4 (S.D. Cal. Aug. 24, 2015). Similarly, in *Schwerdt v. Int'l Fid. Ins. Co.*, without

13  informing the court of its plans at a status conference, the plaintiff sought leave to amend after the

14  court had already granted summary judgment in favor of the defendant. 28 F. App'x 715, 719-20

15  (9th Cir. 2002). And finally, in *Experexchange, Inc. v. Doculex, Inc*., the "timing of the Motion to

16  Amend strongly suggest[ed] that it was brought simply to avoid summary judgment" that had been

17  fully briefed. No. C-08-03875 JCS, 2009 WL 3837275, at *29 (N.D. Cal. Nov. 16, 2009). Plaintiff

18  offered "no explanation" for its delay "after discovering its allegedly 'new' facts." *Id*. Here, the

19  time Plaintiffs spent between learning of the early October 2025 terminations and filing their

20  Motion for Leave was essential and reasonably spent preparing to assert these claims.

21          **B.      The Government Will Not Be Prejudiced If This Motion Is Granted.**

22          If Plaintiffs' Motion for Leave is granted, Defendants will not be prejudiced. The

23  government claims that it will suffer substantial prejudice because, "[i]f Plaintiffs are permitted a

24  third amendment now, summary judgment briefing will not conclude until mid-2026, nearly a year

25  after the preliminary injunction issued." Opp. at 11. But this purported harm is entirely

26

27  [1] In this timeframe, Plaintiffs conferred extensively with the government regarding Plaintiffs'
    proposed amendment and Motions, which resulted in the Parties' Stipulation for Modification of
28  Scheduling Order filed on November 19, 2025. *See* Dkt. No. 151.

1  disconnected from the outcome of Plaintiffs' Motion for Leave. The government stipulated to the

2  current schedule, *agreeing* to wait until June 2026 for a hearing on summary judgment *regardless*

3  of whether the Motion is granted or denied. *See* Dkt. Nos. 151 and 152. Thus, whatever prejudice

4  it suffers in waiting until no earlier than June for resolution arises from its own agreement on the

5  modified schedule, not the granting of Plaintiffs' Motion for Leave. And more fundamentally,

6  there can be no prejudice in being required to follow the Court's prior Orders, which the Court

7  entered based on its finding that Plaintiffs were likely to succeed on their claims that the

8  government's conduct was unlawful.

9       Meanwhile, the government argues incorrectly that Plaintiffs would face minimal prejudice

10 if leave were denied because they could file a new lawsuit and "allow[] this case to proceed on

11 schedule." Opp. at 11-12. Once again, "allowing this case to proceed on schedule" means the same

12 March-to-June 2026 summary judgment timeframe to which the government has stipulated,

13 regardless of whether Plaintiffs file a Third Amended Complaint or a separate lawsuit. There will

14 be no impact on the case schedule if Plaintiffs' motion is granted.

15      Nor is there any reason that Plaintiffs should be required to file a separate lawsuit, which

16 would be inefficient and a waste of judicial and party resources. Amendment here furthers the

17 ends of Federal Rule of Civil Procedure 1: it is speedy, fair, and conserves the court's and parties'

18 resources. This is especially true given that the alternative would require Plaintiffs to file a

19 separate complaint, which would be a related case that is consolidated with this action. As noted

20 above in distinguishing the government's inapposite cases, this is not a situation where the

21 plaintiff is using amendment to bring claims that could not otherwise be brought. If the ability to

22 pursue a separate, related lawsuit were a sufficient reason to deny leave to amend, it would turn

23 Rule 15 and its liberal policy in favor of amendment on its head, as well as impose unnecessary

24 inefficiencies on the courts and undue burdens on plaintiffs. *See* Fed. R. Civ. Proc. 15(a)(2) ("The

25 court should freely give leave when justice so requires."); *Sonoma Cnty. Ass'n of Retired Emps. v.*

26 *Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013) ("In general, a court should liberally allow a

27 party to amend its pleading.").

28      The government also argues that Plaintiffs do not face prejudice because the "alleged

4
46686\20779096.1

1  harms are monetary and therefore not irreparable." Opp. at 12. As explained in the separate

2  briefing related to Plaintiffs' Motion for Preliminary Injunction and Provisional Class Certification

3  (and as this Court has already held in prior Orders), the harms suffered by Drs. Atanassov and

4  Bedsworth are indeed irreparable. *See*, *e.g.*, *Thakur v. Trump*, 787 F. Supp. 3d 955, 996 (N.D. Cal.

5  2025) (holding that constitutional violations, as well as layoffs of team members, interruption of

6  graduate programs, and the potential complete loss of projects, all constitute irreparable harm).

7        **C.**      **The Amendment Is Not Futile.**

8        Finally, the government argues, in one sentence, that the proposed amendments are futile,

9  based on its arguments in the Opposition to Plaintiffs' Motion for Preliminary Injunction and

10  Provisional Class Certification. Opp. at 12. However, the proposed amendment is not futile,

11  because it asserts claims against DOE that are likely to succeed on the merits, as set forth in

12  Plaintiffs' separate briefing on that Motion.

13  **III.**      **CONCLUSION**

14        The circumstances here overwhelmingly warrant the granting of leave for Plaintiffs to file

15  their proposed Third Amended Complaint. Plaintiffs respectfully request the Court issue an Order

16  granting the Motion for Leave.

17

18

19

20

21

22

23

24

25

26

27

28

46686\20779096.1

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT
Case No. 3:25-cv-4737

Dated: December 12, 2025              By:      /s/ *Linda S. Gilleran*

Anthony P. Schoenberg (CA Bar No. 203714)
tschoenberg@fbm.com
Donald E. Sobelman (CA Bar No. 184028)
dsobelman@fbm.com
Dylan M. Silva (State Bar No. 306363)
dmsilva@fbm.com
Linda S. Gilleran (CA Bar No. 307107)
lgilleran@fbm.com
Kyle A. McLorg (CA Bar No. 332136)
kmclorg@fbm.com
Katherine T. Balkoski (CA Bar No. 353366)
kbalkoski@fbm.com
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, CA 94104
Telephone: 415. 954.4400

By:      /s/ *Claudia Polsky*
Erwin Chemerinsky (*pro hac vice)*
echemerinsky@law.berkeley.edu
Claudia Polsky (CA Bar No. 185505)
cpolsky@law.berkeley.edu
U.C. BERKELEY SCHOOL OF LAW
Law Building
Berkeley, CA 94720-7200
Telephone: 510.642.6483

Elizabeth J. Cabraser (CA Bar No. 83151)
ecabraser@lchb.com
Richard M. Heimann (CA Bar No. 63607)
rheimann@lchb.com
Kevin R. Budner (CA Bar No. 287271)
kbudner@lchb.com
Annie M. Wanless (CA Bar No. 339635)
awanless@lchb.com
Nabila M. Abdallah (CA Bar No. 347764)
nabdallah@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000

*Attorneys for Plaintiffs and the Proposed Classes*

46686\20779096.1

**FILER'S ATTESTATION**

Pursuant to Civil Local Rule 5.1, the undersigned attests that all parties have concurred in the filing of this PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT.

Dated: December 12, 2025                    By:  */s/ Linda S. Gilleran*

Anthony P. Schoenberg (State Bar No. 203714)
tschoenberg@fbm.com
Donald Sobelman (State Bar No. 184028)
dsobelman@fbm.com
Linda S. Gilleran (State Bar No. 307107)
lgilleran@fbm.com
Dylan M. Silva (State Bar No. 306363)
dmsilva@fbm.com
Kyle A. McLorg (State Bar No. 332136)
kmclorg@fbm.com
Katherine T. Balkoski (State Bar No. 353366)
kbalkoski@fbm.com
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 954-4400

Erwin Chemerinsky (*pro hac vice*)
echemerinsky@law.berkeley.edu
Claudia Polsky (State Bar No. 185505)
cpolsky@law.berkeley.edu
U.C. BERKELEY SCHOOL OF LAW
Law Building
Berkeley, CA 94720-7200
Telephone: (510) 642-6483

Elizabeth J. Cabraser (State Bar No.  83151)
ecabraser@lchb.com
Richard M. Heimann (State Bar No. 63607)
rheimann@lchb.com
Kevin R. Budner (State Bar No. 287271)
kbudner@lchb.com
Annie M. Wanless (State Bar No. 339635)
awanless@lchb.com
Nabila M. Abdallah (State Bar No. 347764)
nabdallah@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone: (415) 956-1000

*Attorneys for Plaintiffs and the Proposed Class*

46686\20779096.1

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT
Case No. 3:25-cv-4737