BRETT A. SHUMATE
Assistant Attorney General
Civil Division
ERIC J. HAMILTON
Deputy Assistant Attorney General
JOSEPH E. BORSON
Assistant Branch Director
KATHRYN BARRAGAN (D.C. Bar No. 90026294)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 598-7696
Email: kathryn.e.barragan@usdoj.gov

*Attorneys for United States*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| NEETA THAKUR, *et al.,* | Case No. 25-cv-4737-RFL |
| Plaintiffs, | **DECLARATION OF RICHARD BRUNDAGE REGARDING JUNE 23, 2025 ORDER** |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.,* | |
| Defendants. | |

BRUNDAGE DECLARATION
CASE NO. 25-CV-4737

I, Richard Brundage, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information known to me from official records reasonably relied upon by me in the course of my employment, hereby declare as follows relating to the above titled matter. Records attached to this declaration are true and accurate copies of records maintained in the ordinary course of business.

1. I am the Director of the Office of Grant Management ("OGM") for the National Endowment for the Humanities ("NEH").

2. I have served in this position since January 17, 2021. I make this declaration to inform the Court about an error NEH made when reinstating grants as required by this Court's June 23, 2025 Order. NEH regrets the error and this declaration is intended to explain the reason for the oversight and actions NEH has taken after it became aware of the oversight.

3. NEH terminated forty-nine grants to the University of California ("UC") and UC-affiliated individuals in April 2025. Those grants consisted of 1) twenty-nine grants NEH awarded directly to the Regents of UC or UC-specific campuses, 2) fifteen awards to individual UC researchers, 3) four awards to non-UC institutions with UC-affiliated individuals listed as project director or co-project director, and 4) one award to a non-profit state partner of NEH which had made a sub-award to UC.

4. Following the Court's June 23, 2025 Order granting a preliminary injunction which required NEH to reinstate the grants, OGM immediately took steps to review and comply with the order.

5. Within two weeks, OGM processed forty-seven of the reinstatements by notifying the respective grantees their grants were reinstated and working with each one to revise periods of performance, budgets, work plans, and other details, so the projects could successfully resume.

6. Due to an inadvertent oversight, OGM did not reinstate two awards to non-UC institutions with a UC-affiliated project director or co-project director that were later identified as subject to reinstatement because of the involvement of a UC subaward.

7. NEH was facing significant administrative challenges during this time period, involving reduced staff and decreased coverage. During June 2025, as OGM worked to reinstate the grants, NEH concluded a reduction-in-force that reduced the workforce of the agency by almost seventy percent. OGM

BRUNDAGE DECLARATION
CASE NO. 25-CV-4737

1

staff was reduced from seventeen to only six while simultaneously administering a grant portfolio of over 3,000 awards and carrying out termination and reinstatement actions outside of its normal workload.

8.    My assessment is that OGM failed to reinstate the two non-UC awards because its review process relied primarily on information available in NEH's grant management system, which identifies recipient institutions but does not provide a reliable method for identifying awards to non-UC organizations with a UC-affiliated subaward. As a result, OGM's review of the status of reinstatements focused on awards with UC as the recipient institution and where the project director or co-project director was UC-affiliated. Neither of the two awards at issue met those criteria, as both were awarded to non-UC institutions and were not identifiable through our standard system reviews. In addition, the two awards were assigned to grant portfolios managed by employees who were separated from the agency during the June 2025 reduction-in-force. Responsibility for those portfolios was redistributed among the remaining staff while OGM was simultaneously implementing the court-ordered reinstatements with a substantially reduced workforce. Under those circumstances, the omission was not identified through OGM's normal portfolio management and oversight processes and was inadvertently overlooked.

9.    On June 12, 2026, OGM became aware of the oversight and immediately reinstated the two awards that same day by sending the two recipients a notification through NEH's grant management system. **Copies of the June 12, 2026 notifications sent to the recipients are attached hereto as Exhibits A & B.** The notifications informed each recipient that NEH rescinded the April 2025 termination and lifted the payment restriction on the awards.  They also notified the recipients that they could resume approved activities on the awards, that the period of performance was extended, and that NEH would cover allowable costs the recipient incurred on the award during the period the awards were terminated.

10.    OGM had previously notified the two non-UC recipients that NEH would be reinstating their awards - on May 11 2026, and again on June 3, 2026 - in accordance with the district court's order in separate litigation: the consolidated cases *ACLS, et al., v. English, et al.*, Case No. 25 Civ. 3657 (S.D.N.Y.), and *Authors Guild, et al., v. NEH, et al.*, Case No. 25 Civ. 3923 (S.D.N.Y.), dated May 7, 2026.

BRUNDAGE DECLARATION
CASE NO. 25-CV-4737

2

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed this 17th day of June 2026.

RICHARD BRUNDAGE
Director, Office of Grant Management
National Endowment for the Humanities

BRUNDAGE DECLARATION
CASE NO. 25-CV-4737

3