Erwin Chemerinsky (*pro hac vice*)
echemerinsky@law.berkeley.edu
Claudia Polsky (CA Bar No. 185505)
cpolsky@law.berkeley.edu
U.C. BERKELEY SCHOOL OF LAW
Law Building
Berkeley, CA 94720-7200
Telephone: 510.642.6483

Elizabeth J. Cabraser (CA Bar No. 83151)
ecabraser@lchb.com
Richard M. Heimann (CA Bar No. 63607)
rheimann@lchb.com
Kevin R. Budner (CA Bar No. 287271)
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000

Anthony P. Schoenberg (CA Bar No. 203714)
tschoenberg@fbm.com
Linda S. Gilleran (CA Bar No. 307107)
lgilleran@fbm.com
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, CA 94104
Telephone: 415.954.4400

*Attorneys for Plaintiffs and the Proposed Classes*
[Additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NEETA THAKUR, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>Defendants. | Case No. 3:25-cv-4737<br><br>**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT BETWEEN PLAINTIFFS AND DEFENDANT ENVIRONMENTAL PROTECTION AGENCY AND DIRECTION OF NOTICE UNDER RULE 23(e)**<br><br>Hearing Date: October 20, 2026<br>Hearing Time: 2:30 p.m. |

# TABLE OF CONTENTS

Page

NOTICE OF MOTION & RELIEF SOUGHT ..... 1
MEMORANDUM OF POINTS AND AUTHORITIES ..... 2
INTRODUCTION ..... 2
BACKGROUND ..... 4
A. Summary of the Litigation and Procedural History ..... 4
B. Settlement Negotiations ..... 5
I. PROPOSED SETTLEMENT ..... 6
A. Proposed Class ..... 6
B. Settlement Consideration and Plan for Relief ..... 6
C. Release ..... 7
D. Class Notice Program ..... 8
E. No Attorneys' Fees ..... 10
II. ARGUMENT ..... 10
A. Legal Standard for Preliminary Approval ..... 10
B. The Court Will Be Able to Certify the Proposed Class for Settlement Purposes upon Final Approval. ..... 11
1. The Class Meets the Rule 23(a)(1)-(4) Requirements. ..... 11
a. Rule 23(a)(1): the Class Is Sufficiently Numerous. ..... 11
b. Rule 23(a)(2): the Class's Claims Present Common Questions of Law and Fact. ..... 12
c. Rule 23(a)(3): Settlement Class Representatives' Claims Are Typical of Other Class Members' Claims. ..... 13
d. Rule 23(a)(4): Class Representatives and Interim Class Counsel Have Protected and Will Protect the Class's Interests. ..... 13
2. The Settlement Class Satisfies Rule 23(b)(2). ..... 14
3. The Court Should Appoint Class Counsel Under Rule 23(g)(3). ..... 15
C. The Settlement Is Fair, Reasonable, and Adequate Under Rule 23(e)(2). ..... 15
1. Rule 23(e)(2)(A): Class Counsel and the Settlement Class Representatives Will Continue to Zealously Represent the Class. ..... 16
2. Rule 23(e)(2)(B): The Settlement Is the Product of Good Faith, Informed, Arm's-Length Negotiations Between the Parties. ..... 16
3. Rule 23(e)(2)(C): The Relief Provided to the Class Is More Than Adequate. ..... 17
a. The Settlement Mitigates the Risks, Expenses, and Delays the Class Members Would Bear with Continued Litigation. ..... 18
b. The Proposed Plan of Providing Relief to the Class Is Effective ..... 19

**TABLE OF CONTENTS**
**(continued)**

**Page**


c. There Is No Award of Attorneys' Fees. ....................................... 19

d. No Side Agreements Influenced This Settlement. ....................... 19

4. Rule 23(e)(2)(D): The Settlement Treats Class Members Equitably in Relation to One Another. ..................................................................... 19

D. The Class Notice and Notice Program Meet the Requirements of Rule 23(c). ........................................................................................................ 20

CONCLUSION ......................................................................................................... 21

## TABLE OF AUTHORITIES

**Page**

**Cases**

*A. B. v. Hawaii State Dep't of Educ.*,
30 F.4th 828 (9th Cir. 2022) ........ 11

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ........ 11

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ........ 15

*C.K. v. McDonald*,
816 F. Supp. 3d 284 (E.D.N.Y. 2026) ........ 19

*Chinitz v. Intero Real Est. Servs.*,
2020 WL 7391299 (N.D. Cal. July 22, 2020) ........ 12

*Civil Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr.*,
317 F.R.D. 91 (N.D. Cal. 2016), *aff'd*, 867 F.3d 1093 (9th Cir. 2017) ........ 12

*In re College Athlete NIL Litig.*,
803 F. Supp. 3d 959 (N.D. Cal. 2025) ........ 19

*Emami v. Mayorkas*,
725 F. Supp. 3d 1046 (N.D. Cal. 2024) ........ 14

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ........ 13

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ........ 13

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) (en banc) ........ 16

*Jackson v. Danbury*,
240 F.R.D. 145 (D. Del. 2007) ........ 12

*Jane Doe 1 v. Nielsen*,
357 F. Supp. 3d 972 (N.D. Cal. 2018) ........ 14

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950) ........ 9, 20

*Nat'l TPS All. v. Noem*,
830 F. Supp. 3d 939 (N.D. Cal. 2025) ........ 14

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ........ 11, 16, 18

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) ........ 14, 19

## TABLE OF AUTHORITIES
## (continued)

Page

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) .......... 10, 11

*Thakur v. Trump*,
176 F.4th 1187 (9th Cir. 2026) .......... 3, 4, 14

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... 8, 12, 19

**Statutes**

Fed. R. Civ. P. 23(a) .......... 11, 12, 13

Fed. R. Civ. P. 23(b) .......... 14

Fed. R. Civ. P. 23(c) .......... 8, 19

Fed. R. Civ. P. 23(e) .......... *passim*

Fed. R. Civ. P. 23(g) .......... 15

**Regulations**

2 C.F.R. §§ 200.308(g) and (h) .......... 3, 7, 10, 20

## NOTICE OF MOTION & RELIEF SOUGHT

**PLEASE TAKE NOTICE** that, on October 20, 2026, at 2:30 p.m., in the Courtroom of the Hon. Rita F. Lin, Courtroom 15, United States District Court, Northern District of California, 450 Golden Gate Avenue, 18th Floor, San Francisco, California, Plaintiffs will and hereby do move the Court for an Order granting preliminary approval of the settlement between Plaintiffs and Defendant Environmental Protection Agency and directing notice to the proposed Class, pursuant to Fed. R. Civ. P. 23(e).

Plaintiffs Neeta Thakur, Ken Alex, and Nell Green Nylen ("Plaintiffs" or "Class Representatives"), on behalf of themselves and the proposed Settlement Class they represent, respectfully move this Court to enter an Order:

- Preliminarily approving the proposed settlement with Defendant Environmental Protection Agency ("EPA"), which provides injunctive relief under Rule 23(b)(2)—specifically, EPA's agreement not to terminate, indefinitely suspend, or disallow costs for 24 Covered Grants, except where a grantee fails to comply with original or agreed-upon modified award terms—as likely to be found fair, reasonable, and adequate under Rule 23(e) of the Federal Rules of Civil Procedure, and making the requisite preliminary findings;
- Directing notice to be sent to potential Class Members in the form and manner set forth in the Settlement Agreement and herein;
- Setting deadlines for class notice to be sent and for the timing, form, and content of any objections;
- Appointing Neeta Thakur, Ken Alex, and Nell Green Nylen as Settlement Class Representatives;
- Appointing Elizabeth J. Cabraser and Kevin R. Budner of Lieff Cabraser Heimann & Bernstein, LLP; Erwin Chemerinsky and Claudia Polsky of UC Berkeley School of Law; and Anthony P. Schoenberg and Linda S. Gilleran of Farella Braun + Martel LLP as Class Counsel; and
- Setting a hearing date and schedule for final approval of the settlement and

certification of the Settlement Class.

Plaintiffs' [Proposed] Order Granting Plaintiffs' Motion for (1) Preliminary Approval of Class Action Settlement, and (2) Direction of Notice Under Federal Rule of Civil Procedure 23(e) ("Preliminary Approval Order") is separately submitted with this motion. Defendant EPA does not oppose entry of the Preliminary Approval Order.

This motion is supported by the following memorandum of points and authorities, the Declaration of Elizabeth J. Cabraser in Support of Preliminary Approval, and the Settlement Agreement between Plaintiffs and Defendant EPA ("Settlement Agreement" or "Agreement"), attached as Exhibit A thereto.

Defendant EPA consents to the relief requested in this motion. In doing so, EPA does not join in the motion, endorse the Plaintiffs' characterization of the facts, claims, or law, or adopt any statements, arguments, or citations contained therein.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

In early 2025, several federal agencies—including EPA—terminated thousands of grants previously awarded to researchers at the University of California. Plaintiffs challenged those terminations as unlawful. The Court granted a preliminary injunction and provisionally certified two classes within weeks of filing. Plaintiffs defended that relief in a Ninth Circuit appeal and subsequently reached a settlement resolving the EPA-related claims of those two provisionally certified classes. The Ninth Circuit affirmed the injunction as to the Equity Termination Class but partially reversed it as to the Form Termination Class on jurisdictional grounds. The Settlement Agreement addresses 24 Covered Grants. Under the Agreement, EPA agrees that it will not terminate, indefinitely suspend, or disallow costs for Covered Grants, except as provided in the Agreement for a grantee's failure to comply with original or agreed-upon modified award terms. The Rule 23(b)(2) settlement provides injunctive relief to the Settlement Class and avoids continued litigation concerning those grants. The Settlement is submitted for preliminary approval under Rule 23(e).

The key terms of the Settlement Agreement are as follows:

- **Protection of Covered Grants**: EPA will not terminate, indefinitely suspend, or disallow costs for 24 Covered Grants, except where a grantee fails to comply with original or agreed-upon modified award terms—and only then through individualized notice consistent with the Court's injunction.
- **No-Cost Extensions:** Covered Grants are eligible for a 12-month no-cost extension pursuant to 2 C.F.R. §§ 200.308(g) and (h). Grants that already received a no-cost extension before termination are eligible for an 8-month extension.
- **Grant Table Process:** EPA will provide a list of Covered Grants within 7 days of the Effective Date. Plaintiffs have 21 days to identify additional grants, and grants identified before January 1, 2027 may be added after meet and confer.
- **Dispute Resolution**: Disputes are resolved first through meet and confer, then submitted to the Court using the discovery letter briefing process in the Court's Civil Standing Order, unless the Court requests or the Parties otherwise agree to an alternate procedure.
- **Attorneys' Fees:** Each party bears its own attorneys' fees and costs as to the EPA portion of the litigation.

This settlement is the product of substantial litigation, including a preliminary injunction, provisional class certification, a Ninth Circuit appeal, and extensive negotiations. It ensures that UC researchers whose EPA grants were unlawfully terminated will have their research funding protected for the duration of their grants' period of performance, including any applicable no-cost extensions, while avoiding the risks and delays of further litigation—particularly in light of the Ninth Circuit's partial reversal of the preliminary injunction as to the Form Termination Class. *See Thakur v. Trump*, 176 F.4th 1187, 1206 (9th Cir. 2026). Despite that partial reversal, EPA is resolving terminations for both classes through this settlement because EPA understands its grant terminations to fall under both classes. That uncertainty is heightened by the government's petition for a writ of certiorari, filed by the Solicitor General in the Supreme Court of the United States on August 18, 2026, and placed on the docket August 19, 2026, as No. 26-210. Dkt. 225. The Court should grant preliminary approval of the settlement.

## BACKGROUND

### A. Summary of the Litigation and Procedural History

This class action arises from the Trump Administration's termination of federal research grants to University of California researchers pursuant to Presidential Executive Orders and/or other agency directives. Plaintiffs challenged those terminations as unlawful. Plaintiffs, who are UC faculty and researchers, challenge the termination of their EPA-funded research grants as violating the Administrative Procedure Act ("APA"), the Separation of Powers doctrine, the First Amendment, the Fifth Amendment, and the Impoundment Control Act.

Plaintiffs initiated this action on June 4, 2025. *See* Dkt. No. 1. The Complaint alleges that Defendants, including EPA, took illegal actions to terminate research grants to UC researchers pursuant to Executive Orders 14151 and 14173, which directed federal agencies to terminate grants related to diversity, equity, and inclusion programs, as well as other grants identified through DOGE-directed processes. *See* Third Amended Complaint, Dkt. No. 184.

On June 23, 2025, this Court granted Plaintiffs' Motion for Preliminary Injunction and provisionally certified two classes with respect to EPA pursuant to Federal Rule of Civil Procedure 65: (1) the Form Termination Class, consisting of UC researchers whose EPA grants were terminated through standardized form notices without grant-specific explanation; and (2) the Equity Termination Class, consisting of UC researchers whose EPA grants were terminated pursuant to Executive Orders 14151 or 14173. *See* Dkt. Nos. 54 & 55.

Following entry of the preliminary injunction, and after conducting a reasonable search for affected grants, Defendant EPA reinstated all previously terminated grant awards that were subject to the Court's preliminary injunction order. EPA also appealed the preliminary injunction to the Ninth Circuit. *See* Dkt. 64.

On May 25, 2026, the Ninth Circuit issued its opinion in *Thakur v. Trump*, 176 F.4th 1187 (9th Cir. 2026). The Ninth Circuit affirmed the preliminary injunction with respect to the Equity Termination Class but reversed the preliminary injunction with respect to the Form Termination Class, holding that this Court lacked jurisdiction over the Form Termination Class's APA claims. *Id.* at 1206.

On August 18, 2026, the Solicitor General filed the government's petition for a writ of certiorari in the Supreme Court of the United States. Dkt. 225. The petition for writ of certiorari was placed on the docket on August 19, 2026 as No. 26-210. *Id.* The Supreme Court has not yet acted on the petition.

Although the Ninth Circuit held that this Court lacked jurisdiction over the Form Termination Class, EPA understands that the Court's preliminary injunction originally enjoined EPA's grant terminations with respect to both classes. After reinstating the grants pursuant to that injunction, EPA has never re-terminated grants to either class, despite the Ninth Circuit's order. Significantly, EPA is resolving the terminations of grants for *both* classes through this Settlement Agreement—providing relief to the Form Termination Class that Plaintiffs may not have been able to secure through continued litigation in light of the Ninth Circuit's jurisdictional ruling.

**B. Settlement Negotiations**

In late April 2026, the parties began engaging in direct settlement discussions concerning the EPA portion of this action. The negotiations were conducted directly between the parties at arm's length. Before negotiating, the parties had litigated a contested motion for preliminary injunction, obtained provisional class certification, briefed and argued the Ninth Circuit appeal, and developed well-informed positions concerning the strengths and weaknesses of their respective claims and defenses. During the negotiations, the parties exchanged a term sheet, which was revised over multiple drafts, punctuated with telephone and video conference negotiations. After reaching agreement on the framework, the parties engaged in many additional rounds of drafting and revising the Settlement Agreement itself. The final Agreement reflects a negotiated compromise that resolves the EPA-related claims for both classes and provides protection for the full remaining duration of each Covered Grant's period of performance, including no-cost extensions, while preserving a practical process to address any qualifying grant identified during the agreed period.

# I. PROPOSED SETTLEMENT

## A. Proposed Class

The Settlement is conditioned upon the certification at final approval, for settlement purposes only, of the following Class (the "Settlement Class"):

> All University of California researchers, including faculty, staff, academic appointees, and employees across the University of California system who are named as principal researchers, investigators, or project leaders on the grant applications for previously awarded research grants by the EPA that are (1) terminated pursuant to Executive Orders 14151 or 14173, from and after January 20, 2025, or (2) terminated by means of a form termination notice that does not provide a grant-specific explanation for the termination that states the reason for the change to the original award decision and considers the reliance interests at stake, from and after January 20, 2025, as defined by the Court's Preliminary Injunction Order provisionally certifying the Equity Termination Class and Form Termination Class.

*See* ECF Nos. 54 & 55. The Class definition is subject to Court approval and settlement class certification under Rule 23(b) and 23(e). This is a Rule 23(b)(2) class certified for purposes of injunctive and declaratory relief. Agreement § II.2.

## B. Settlement Consideration and Plan for Relief

Unlike a traditional monetary class action settlement, the consideration here takes the form of permanent injunctive relief protecting the Class's research grants. Specifically, EPA agrees that it will not terminate, indefinitely suspend, or disallow costs for the 24 Covered Grants, except where a grantee fails to comply with original or agreed-upon modified award terms. *See* Agreement § IV.B.1.

EPA may terminate a Covered Grant only if it determines that the grantee has failed to comply with either the original terms and conditions of the award or any agreed-upon modified terms. Even then, EPA may do so only through (i) an individualized letter that provides a grant-specific explanation of the violation and reason for termination, and (ii) reasoning consistent with the Court's injunction and accompanying order. *See* Dkts. 54 & 55; Agreement § IV.B.1.

The settlement further provides that disputes regarding whether any EPA action violates the Agreement shall first be subject to a meet and confer between the parties. If the dispute cannot be resolved, the parties agree to submit the dispute to this Court for resolution using the discovery

letter briefing process in the Court's Civil Standing Order, unless the Court requests or the Parties otherwise agree to an alternate procedure. Agreement § IV.B.2.

**Grant Table Process**. EPA conducted a reasonable search for Covered Grants and will provide a list of Covered Grants in table format (the "Grant Table") to Plaintiffs no later than seven calendar days after the Effective Date. Plaintiffs then have 21 calendar days to identify any additional grants that meet the definition of Covered Grants but were not uncovered by EPA's search. Once the identification process is complete, the Grant Table will be final and will represent the full list of grants that EPA agrees not to terminate, indefinitely suspend, or disallow costs for in accordance with the Agreement's terms. Agreement § IV.A.

If a UC researcher with a Covered Grant is identified prior to January 1, 2027, the parties are obligated to meet and confer regarding adding that grant to the Grant Table. Any grants identified after January 1, 2027 cannot be included. Disputes are submitted to the Court via the discovery letter briefing process in the Court's Civil Standing Order. Agreement § IV.A.e.

**No-Cost Extensions.** The regulations at 2 C.F.R. §§ 200.308(g) and (h) authorize recipients for research awards a one-time extension of a grant for up to twelve months without prior EPA approval. EPA agrees that the Covered Grants are eligible for a no-cost extension of up to twelve months, consistent with 2 C.F.R. §§ 200.308(g) and (h). For grants that already received a no-cost extension before the grant was terminated in 2025, the recipient is eligible for a no-cost extension of up to eight months. Agreement § IV.B.3. EPA confirms that the terms and conditions of the Covered Grants do not prohibit these extensions and that the change in timeline is not a change in the approved scope of the projects. Agreement §§ IV.B.3.b-c.

**C. <u>Release</u>**

In consideration for EPA's promises, the parties agree that this Settlement Agreement fully resolves and extinguishes any and all claims, demands, rights, causes of action, and counts brought, or that could have been brought, related to the subject matter of this action, on behalf of the Class or any Class Member as to EPA, including any claims that could be brought in the Court of Federal Claims. Agreement § V.

Release of claims is effective upon Final Approval. Following approval, the Court shall retain continuing and exclusive jurisdiction over this action for purposes of the administration and enforcement of the settlement agreement. Agreement §§ V, IX.

This is a *partial* settlement of a class action as to EPA only. Claims against all other defendants continue.

The scope of the release is fair and reasonable for a non-opt-out Rule 23(b)(2) class. The release extinguishes claims related to the subject matter of this action, including potential claims in the Court of Federal Claims under the Tucker Act. This breadth is appropriate because the settlement provides the full injunctive relief the Class sought—reinstatement and ongoing protection of the Covered Grants—which is the only form of relief available in this action given the Rule 23(b)(2) framework. Moreover, because EPA has agreed not to terminate, suspend, or disallow costs for the Covered Grants going forward (except where a grantee fails to comply with award terms), the predicate for any Tucker Act damages claim—i.e., an unlawful taking or breach—has been eliminated. The release thus extinguishes only claims that the settlement's injunctive relief has rendered moot or for which no viable damages theory remains.

### D. <u>Class Notice Program</u>

Plaintiffs' Counsel have developed a Notice Plan, subject to review and approval by Defendant and approval by the Court, that comports with due process and Rule 23. Agreement § VII. Federal Rule of Civil Procedure 23(e) governs a district court's analysis of the appropriateness of a proposed class action settlement and creates a three-stage process for approval. First, a court must determine that it is likely to: (i) approve the proposed settlement as fair, reasonable, and adequate, after considering the factors outlined in Rule 23(e)(2); and (ii) certify the settlement class after the final approval hearing. *See* Fed. R. Civ. P. 23(e)(1)(B). Second, for classes certified under Rule 23(b)(3), a court must direct to the proposed settlement class a notice describing the terms of the proposed settlement and the definition of the proposed class in order to give class members an opportunity to comment on, or object to, the proposed settlement and opt out. *See* Fed. R. Civ. P. 23(c)(2), and (e)(1), (5). As relevant here, however, under Rule 23(b)(2), notice is discretionary, not mandatory. *Wal-Mart Stores, Inc. v. Dukes*, 564

U.S. 338, 362 (2011) (confirming that Rule 23(b)(2) does not obligate the district court to afford class members notice or provide an opportunity to opt out). Third, after a hearing, the Court may grant final approval of the proposed settlement by certifying the settlement class and finding that the settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). Although Rule 23(b)(2) does not require individualized notice, the proposed Notice Plan goes beyond the minimum requirements by providing individualized direct notice where practicable, supplemented by a case website and direct access to Class Counsel. Together, these methods are reasonably calculated to apprise Class Members of the pendency of the action and proposed settlement, consistent with due process under *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Notice Plan includes, where practicable, direct notice to Class Members via telephone, mail, and/or email. To facilitate that notice, Defendant EPA shall provide to Plaintiffs the names and reasonably available contact information of the Class Members associated with the Covered Grants no later than seven calendar days after all parties execute the Agreement. Where EPA's records do not identify individual researchers, Plaintiffs' Counsel will supplement those records with information available through public resources. This process is designed to provide individualized notice to each Class Member who can reasonably be identified. Agreement § VII.

The Notice Plan also includes the existing case website at https://ucresearchergrantterminations.com/EPA-Settlement. All settlement-related filings, schedules, and orders will be posted on the case website. The case website will feature the full Settlement Agreement, Motion for Preliminary Approval, the Court's Preliminary Approval Order, the Long Form Notice, important dates and deadlines, and frequently asked questions and answers. Class Members may also contact Class Counsel directly with questions about the Notice or the Settlement. *Id.*

The Long Form Notice will explain the lawsuit and its procedural history, including the Court's preliminary injunction and provisional certification of the Form Termination Class and Equity Termination Class, the Ninth Circuit's decision affirming the injunction as to the Equity Termination Class and reversing it as to the Form Termination Class on jurisdictional grounds,

and the government's August 2026 petition for a writ of certiorari. It will describe the settlement's relief, including EPA's agreement to protect Covered Grants from termination, indefinite suspension, or disallowance of costs, subject to the Agreement's individualized noncompliance procedure, and the availability of no-cost extensions of up to 12 months under 2 C.F.R. §§ 200.308(g) and (h), or up to 8 months for grants that already received an extension.

The Long Form Notice will also explain that this is not a monetary settlement and has no claims process; that, because the Settlement Class is certified under Rule 23(b)(2), Class Members have no right to opt out but may comment on, or object to, the settlement; that no action is required to receive the settlement benefits because the relief is self-executing, although a Class Member seeking a no-cost extension must follow the applicable regulatory procedures; that Class Members may, but are not required to, attend the final approval hearing, either in person or by Zoom; and that an objector need not appear at the hearing. The Notice will further describe the release of claims against EPA related to the subject matter of this action, including potential claims that could be brought in the United States Court of Federal Claims under the Tucker Act.

### E. <u>No Attorneys' Fees</u>

Each party will bear its own attorneys' fees and costs as to the EPA portion of the litigation. Agreement § VIII. Class Counsel are not seeking fees or costs from Defendants or from Plaintiffs or Class Members in connection with the settled claims.

## II. <u>ARGUMENT</u>

This partial settlement concerns a single Settlement Class as to EPA, defined below and encompassing UC researchers associated with grants in both provisionally certified classes.

### A. <u>Legal Standard for Preliminary Approval</u>

Under Rule 23(e)(1)(B), a court must determine that it will likely be able to (i) approve the proposed settlement as fair, reasonable, and adequate under Rule 23(e)(2), and (ii) certify the class for purposes of judgment on the proposal. The court's inquiry at the preliminary approval stage is whether the settlement falls within "the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Preliminary approval is appropriate where "the proposed settlement appears to be the product of serious, informed, non-collusive

negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Id.* (quoting Manual for Complex Litigation (Fourth) § 21.632). The court exercises broad discretion in making this determination. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

In preparing this motion and the Settlement Agreement, counsel consulted the Northern District of California's Class Action Settlement Guidance. To the extent applicable to this Rule 23(b)(2) settlement providing injunctive relief, the motion and settlement comply with that Guidance.

### B. The Court Will Be Able to Certify the Proposed Class for Settlement Purposes upon Final Approval.

Certification of a settlement class is a two-step process: First, the Court must find that the proposed settlement class satisfies the requirements of Rule 23(a), and second, the Court must find that a class action may be maintained under an appropriate provision of Rule 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997). Here, the proposed class readily satisfies the Rule 23(a)(1)-(4) requirements and is properly maintained under Rule 23(b)(2).

#### 1. The Class Meets the Rule 23(a)(1)-(4) Requirements.

Federal Rule of Civil Procedure 23(a) requires numerosity, commonality, typicality, and adequacy.

##### a. Rule 23(a)(1): the Class Is Sufficiently Numerous.

Numerosity requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Rule 23(a)(1) is "an impracticability-of-joinder rule, not a strict numerosity rule." Introduction to Rule 23(a)(1)—Impracticability of joinder, 1 Newberg and Rubenstein on Class Actions § 3:11 (6th ed. 2025). And while courts often use a rule-of-thumb threshold—typically between 20 and 40 class members—there is no "clear formula" or "magic number" to establish impracticability. *Id.* In injunctive and declaratory relief cases, "the practical value of joining each of the [] class members as a formal party is slim to non-existent and is plainly outweighed by the substantial logistical burdens that would entail." *A. B. v. Hawaii*

*State Dep't of Educ.*, 30 F.4th 828, 837 (9th Cir. 2022). Thus, for Rule 23(b)(2) classes, "the numerosity requirement is relaxed." *Chinitz v. Intero Real Est. Servs.*, 2020 WL 7391299, at *8 (N.D. Cal. July 22, 2020) (citing *Civil Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 317 F.R.D. 91, 100 (N.D. Cal. 2016), *aff'd*, 867 F.3d 1093 (9th Cir. 2017)); *Jackson v. Danbury*, 240 F.R.D. 145, 147-48 (D. Del. 2007) (numerosity met by class of 16 members in injunctive relief action).

Working together, the Parties have identified at least 35 UC researcher class members believed to be principal researchers, investigators, or project leaders named on the 24 Covered Grants. Cabraser Decl. ¶ 7. As confirmed by the authority above, with at least 35 class members, the class easily clears the impracticability of joinder threshold for Rule 23(b)(2), which would explain why Defendants did not contest numerosity for either EPA class when opposing provisional class certification at the preliminary injunction stage. The burdens of joining each class member in this injunctive relief case far outweigh any value of individual action. Rule 23(a)(1) is satisfied.

#### b. Rule 23(a)(2): the Class's Claims Present Common Questions of Law and Fact.

Commonality requires that class members share common questions of law or fact. Fed. R. Civ. P. 23(a)(2). This Court already found sufficient commonality when it provisionally certified the Form Termination and Equity Termination classes. *See* Dkt. Nos. 54 & 55. The same reasoning applies here. All Class Members' claims turn on the same common questions: whether EPA's mass termination of research grants pursuant to Executive Orders 14151 and 14173, or through form termination notices lacking grant-specific explanations, violated the APA, the Separation of Powers doctrine, the First Amendment, the Fifth Amendment, and the Impoundment Control Act. These questions can be resolved "in one stroke" for the entire class. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

**c. <u>Rule 23(a)(3): Settlement Class Representatives' Claims Are Typical of Other Class Members' Claims.</u>**

Typicality requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Here, the Class Representatives—Neeta Thakur, Ken Alex, and Nell Green Nylen—are UC researchers whose EPA grants were terminated pursuant to the same executive orders and agency directives that affected all Class Members. Their claims arise from the same course of conduct and are based on the same legal theories. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Typicality is satisfied.

**d. <u>Rule 23(a)(4): Class Representatives and Interim Class Counsel Have Protected and Will Protect the Class's Interests.</u>**

Adequacy requires "the representative parties [to] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Two questions are relevant: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

This Court already found the Class Representatives and Interim Class Counsel adequate when it provisionally certified both the Form Termination and Equity Termination classes. *See* Dkt. Nos. 54, 55. Nothing has changed to undermine that previous determination. The proposed Class Representatives have no interests antagonistic to other Class Members. They have actively participated in this litigation from its inception. Proposed Class Counsel are eminently qualified: Erwin Chemerinsky is the Dean of UC Berkeley School of Law and a preeminent constitutional law scholar; Claudia Polsky is a clinical professor of law and the founding Director of the Environmental Law Clinic at UC Berkeley School of Law; Elizabeth J. Cabraser and Kevin R. Budner of Lieff Cabraser Heimann & Bernstein, LLP are nationally recognized class action practitioners; and Anthony P. Schoenberg and Linda S. Gilleran of Farella Braun + Martel LLP bring additional expertise in complex civil litigation. Together, Class Counsel have vigorously prosecuted this action, securing preliminary injunctive relief and provisional class certification,

and successfully defending that relief on appeal before the Ninth Circuit. Rule 23(a)(4) is satisfied.

**2. <u>The Settlement Class Satisfies Rule 23(b)(2).</u>**

Rule 23(b)(2) permits class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). This is a paradigmatic Rule 23(b)(2) case. EPA terminated research grants across the UC system pursuant to generally applicable Executive Orders and agency directives using standardized form notices—conduct that applied uniformly to all Class Members. The relief sought is injunctive: an order requiring the EPA not to terminate, indefinitely suspend, or disallow costs for the Covered Grants, except where a grantee fails to comply with original or agreed-upon modified award terms. *See Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014).

This Court already provisionally certified the Form Termination and Equity Termination classes under Rule 23(b)(2) at the preliminary injunction stage. *See* Dkt. Nos. 54 & 55. The Ninth Circuit affirmed this Court's certification of the Equity Termination Class. *Thakur*, 176 F.4th at 1206. Courts readily certify Rule 23(b)(2) classes in cases with similar postures. *See, e.g.*, *Nat'l TPS All. v. Noem*, 830 F. Supp. 3d 939, 963 (N.D. Cal. 2025) (certifying plaintiffs' Rule 23(b)(2) class where government's "terminations impact the rights and benefits afforded to all [class members] uniformly" and "final injunctive relief would be appropriate to address the rights of the whole group"); *Emami v. Mayorkas*, 725 F. Supp. 3d 1046, 1058-59 (N.D. Cal. 2024) (granting plaintiffs' motion to certify a Rule 23(b)(2) class in an action challenging presidential proclamation); *Jane Doe 1 v. Nielsen*, 357 F. Supp. 3d 972, 987 (N.D. Cal. 2018) (granting plaintiffs' motion to certify a Rule 23(b)(2) class where agency "adopted a pattern of activity that is likely to be the same as to all members of the class"). The Settlement Class readily satisfies Rule 23(b)(2). *See also Parsons*, 754 F.3d at 688 ("[Rule 23(b)(2)] requirements are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole.").

Moreover, the relief here is indivisible. EPA's commitment not to terminate, indefinitely suspend, or disallow costs for the Covered Grants benefits all Class Members uniformly regardless of where they are in their respective grants' periods of performance. A researcher whose grant period extends several more years receives the same categorical protection as one nearing expiration. The no-cost extension provisions further ensure that all Class Members, including those whose grant timelines were disrupted by the unlawful terminations, can complete their funded research. There is no conflict among class members that would undermine cohesion under Rule 23(b)(2).

#### 3. The Court Should Appoint Class Counsel Under Rule 23(g)(3).

Under Rule 23(g)(1)(A), the Court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Class Counsel—Lieff Cabraser Heimann & Bernstein, LLP; Erwin Chemerinsky and Claudia Polsky in their individual capacities; and Farella Braun + Martel LLP—have prosecuted this action with vigor and expertise since its filing. They secured preliminary injunctive relief within weeks of filing, defended that relief on appeal, and negotiated this settlement. They will continue to actively devote their time to this matter. Class Counsel respectfully requests the Court re-affirm their appointment. *See* Dkt. 54 at 60 (appointing class counsel).

### C. The Settlement Is Fair, Reasonable, and Adequate Under Rule 23(e)(2).

A court may approve a proposed class settlement only "after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). *See also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

**1. Rule 23(e)(2)(A): Class Counsel and the Settlement Class Representatives Will Continue to Zealously Represent the Class.**

Proposed Class Counsel have prosecuted this action with exceptional vigor since filing in June 2025. Within weeks of filing, they obtained a preliminary injunction and provisional class certification—an extraordinary result that immediately halted EPA's grant terminations. They then successfully defended that injunction on appeal before the Ninth Circuit. Throughout, the Class Representatives have actively consulted with counsel and participated in decisions regarding litigation strategy and settlement. This factor is satisfied.

**2. Rule 23(e)(2)(B): The Settlement Is the Product of Good Faith, Informed, Arm's-Length Negotiations Between the Parties.**

The settlement is the product of good-faith, informed, arm's-length negotiations following extensive adversarial litigation. The parties contested Plaintiffs' motion for preliminary injunction, litigated provisional class certification, briefed and argued the Ninth Circuit appeal, and confronted the consequences of the Ninth Circuit's partial reversal. That record gave each side a well-informed understanding of the strengths and weaknesses of its positions, including the jurisdictional risk concerning the Form Termination Class and the continuing obligations affecting the Equity Termination Class. The parties' direct negotiations were therefore not collusive or premature. Each party bears its own attorneys' fees and costs as to the EPA portion of the litigation; there is no "clear sailing" provision, no fee request paid from or reducing class relief, and no reversion of consideration to EPA. These features, together with the contested litigation that preceded settlement, support a finding that the Agreement was negotiated at arm's length. See *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 569 (9th Cir. 2019) (en banc).

The settlement also satisfies the Ninth Circuit's traditional preliminary approval factors. *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). First, the strength of Plaintiffs' case, while substantial as to the Equity Termination Class, is tempered by the Ninth Circuit's jurisdictional reversal as to the Form Termination Class—making the settlement's resolution of both classes' claims especially valuable. Second, the risk of maintaining a class action through trial is significant given the novel constitutional questions and

the possibility of further appellate proceedings. Third, the amount offered—full injunctive protection for all Covered Grants plus no-cost extensions—represents the entirety of the equitable relief sought. Fourth, discovery was sufficient to evaluate the claims: the parties litigated a contested motion for preliminary injunction and provisional class certification, exchanged the administrative record, and completed a Ninth Circuit appeal, giving each side a well-informed understanding of the merits. These factors confirm that the settlement warrants preliminary approval.

### 3. Rule 23(e)(2)(C): The Relief Provided to the Class Is More Than Adequate.

The relief provided here is excellent for the class. All Plaintiffs sought in this litigation for EPA to reinstate their grants. This Settlement secures that relief for the entire Class, as well as the right to certain no-cost extensions and EPA's commitment not to terminate, suspend, or disallow costs for the grants in the future, except where a grantee fails to comply with original or agreed-upon modified award terms. Plaintiffs view this as an unequivocal win—particularly so when evaluated against the significant litigation risks Plaintiffs face. They include:

- **Ninth Circuit Partial Reversal**: The Ninth Circuit reversed the preliminary injunction for the Form Termination Class on jurisdictional grounds. Continued litigation would require Plaintiffs to overcome this barrier, with no guarantee of success. The settlement resolves both the Equity Termination Class and the Form Termination Class claims as to EPA despite this adverse ruling, because the Court's preliminary injunction originally enjoined EPA's grant terminations with respect to both the Form Termination Class and the Equity Termination Class.
- **Pending Certiorari Petition:** In August 2026, the Solicitor General filed the government's petition for a writ of certiorari in the Supreme Court of the United States, seeking review of the Ninth Circuit's decision affirming the preliminary injunction as to the Equity Termination Class on First Amendment grounds. Dkt. 225. The Supreme Court has not yet acted on the petition. If the Supreme Court were to grant certiorari and reverse the Ninth Circuit's First Amendment holding, that decision could undermine the legal

basis for the preliminary injunction protecting the Equity Termination Class and leave Class Members vulnerable to renewed grant terminations. This additional uncertainty makes early settlement especially prudent, without requiring the Court to resolve the merits of the petition.

- **Complexity and Duration:** Continued litigation would involve merits briefing on novel constitutional questions, APA claims, and potential further appeals—likely extending litigation for years.
- **Time-Sensitive Relief:** Research grants have defined periods of performance. Delay could result in further harm to Plaintiffs and the Class because the uncertainty of their grant funding complicates long-term planning and hiring for future grant activities. The settlement provides immediate certainty and includes no-cost extensions to account for time already lost.

Given these risks, the settlement is an especially strong and prudent resolution. *See Officers for Justice*, 688 F.2d at 625.

#### a. The Settlement Mitigates the Risks, Expenses, and Delays the Class Members Would Bear with Continued Litigation.

Although the preliminary injunction already resulted in EPA reinstating the terminated grants, restoring the status quo for all Class Members, the Ninth Circuit's partial reversal creates a real risk that grants held only by Form Termination Class members could be re-terminated before final judgment. Plaintiffs would also face many months of merits briefing and potential appeals on novel constitutional and statutory questions, with no assurance that the Court could provide effective relief before the grants' periods of performance expire. Because research grants are time-limited, delay could permanently impair or eliminate the research that the grants were designed to support. The Settlement avoids those risks while securing protection for the full remaining duration of each grant's period of performance, including no-cost extensions to account for time already lost.

**b. The Proposed Plan of Providing Relief to the Class Is Effective**

Because this is a Rule 23(b)(2) settlement providing injunctive relief, there is no claims process or distribution mechanism for Class Members to navigate. The relief is self-executing: EPA simply must refrain from terminating, indefinitely suspending, or disallowing costs for the Covered Grants, subject only to the Agreement's individualized noncompliance procedure. This is the most effective form of relief possible because it automatically protects each Covered Grant without requiring any action by a Class Member. Moreover, as courts have recognized, "the effectiveness of any proposed method of distributing relief to the class need not be considered in a class action seeking only equitable relief where relief will be effectuated by the settlement terms alone." *C.K. v. McDonald*, 816 F. Supp. 3d 284, 310 (E.D.N.Y. 2026); *accord In re College Athlete NIL Litig.*, 803 F. Supp. 3d 959, 989 (N.D. Cal. 2025) (considering Rule 23(e)(2)(C)(iii)'s effectiveness requirement only as it pertained to the damages settlement class, not injunctive relief settlement class).

**c. There Is No Award of Attorneys' Fees.**

Each party bears its own attorneys' fees and costs as to the EPA portion of the litigation. Agreement § VIII. There is no common fund, fee-sharing arrangement, or fee award that could diminish the Class's recovery; the Settlement's relief is entirely injunctive. This factor therefore weighs in favor of preliminary approval.

**d. No Side Agreements Influenced This Settlement.**

There are no side agreements required to be disclosed under Rule 23(e)(3). The Settlement Agreement contains the complete terms of the parties' resolution with EPA, and no separate agreement influenced the relief provided to the Settlement Class. This factor supports approval.

**4. Rule 23(e)(2)(D): The Settlement Treats Class Members Equitably in Relation to One Another.**

All Class Members receive the same injunctive protection. EPA's commitment not to terminate, indefinitely suspend, or disallow costs for the 24 Covered Grants applies uniformly to all UC researchers associated with those grants. No Class Member receives preferential treatment, and no subgroup is disadvantaged relative to another. This uniform treatment is a hallmark of

Rule 23(b)(2) class actions. *See Parsons*, 754 F.3d at 688. The equitable treatment factor is satisfied.

**D. <u>The Class Notice and Notice Program Meet the Requirements of Rule 23(c).</u>**

Under Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal." For a Rule 23(b)(2) class, there is no mandatory individual notice requirement—the court need only direct "appropriate notice." Fed. R. Civ. P. 23(c)(2)(A); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) (confirming that Rule 23(b)(2) does not obligate the district court to afford class members notice or provide an opportunity to opt out). Nevertheless, due process requires notice reasonably calculated to apprise class members of the pendency of the action. *See Mullane*, 339 U.S. at 314.

The proposed Notice Plan includes: (i) direct notice to Class Members via telephone, mail, and/or email, where practicable; (ii) the existing case website at https://ucresearchergrantterminations.com/EPA-Settlement, on which all settlement-related filings, schedules, and orders will be posted and which will feature the full Settlement Agreement, the Motion for Preliminary Approval, the Court's Preliminary Approval Order, the Long Form Notice, important dates and deadlines, and FAQs; and (iii) the ability of Class Members to contact Class Counsel directly. Agreement § VI. To implement direct notice, the EPA will provide the names and reasonably available contact information of Class Members associated with the Covered Grants within seven days after all parties execute the Agreement. Where EPA's records do not identify individual researchers, Plaintiffs' Counsel will supplement those records through public resources.

The Long Form Notice will inform Class Members about the lawsuit and its procedural history, including the preliminary injunction, provisional class certification, the Ninth Circuit's affirmance as to the Equity Termination Class and reversal as to the Form Termination Class, and the government's pending petition for a writ of certiorari. It will describe the settlement's protection of Covered Grants, the availability of no-cost extensions of up to 12 months under 2 C.F.R. §§ 200.308(g) and (h), or 8 months for grants that already received an extension, and the relief's self-executing nature. It will explain that Class Members need take no action to receive

the settlement benefits, subject to the applicable procedures if a Class Member seeks a no-cost extension; that Class Members may comment on, or object to, the settlement but have no right to opt out of this Rule 23(b)(2) settlement; that Class Members may, but are not required to, attend the final approval hearing, either in person or by Zoom; that an objector need not appear at the hearing; and that the release extends to claims against EPA related to the subject matter of this action, including potential claims in the United States Court of Federal Claims under the Tucker Act. These methods constitute the best practicable notice under the circumstances.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request the Court grant preliminary approval, direct notice to the Class, and issue other orders necessary to grant Plaintiffs' requested relief.

Dated: September 23, 2026 By: /s/ *Elizabeth J. Cabraser*

Elizabeth J. Cabraser (CA Bar No. 83151)
ecabraser@lchb.com
Richard M. Heimann (CA Bar No. 63607)
rheimann@lchb.com
Kevin R. Budner (CA Bar No. 287271)
kbudner@lchb.com
Annie M. Wanless (CA Bar No. 339635)
awanless@lchb.com
Clare D. Perez (CA Bar No. 363027)
cdperez@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000

Erwin Chemerinsky (*pro hac vice)*
echemerinsky@law.berkeley.edu
Claudia Polsky (CA Bar No. 185505)
cpolsky@law.berkeley.edu
U.C. BERKELEY SCHOOL OF LAW
Law Building
Berkeley, CA 94720-7200
Telephone: 510.642.6483

Anthony P. Schoenberg (CA Bar No. 203714)
tschoenberg@fbm.com
Donald E. Sobelman (CA Bar No. 184028)
dsobelman@fbm.com
Dylan M. Silva (State Bar No. 306363)
dmsilva@fbm.com
Linda S. Gilleran (CA Bar No. 307107)
lgilleran@fbm.com
Kyle A. McLorg (CA Bar No. 332136)
kmclorg@fbm.com
Katherine T. Balkoski (CA Bar No. 353366)
kbalkoski@fbm.com
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, CA 94104
Telephone: 415. 954.4400

*Attorneys for Plaintiffs and the Proposed Classes*

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that September 23, 2026, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to registered parties.

Executed September 23, 2026 at San Francisco, California.

*/s/ ELIZABETH J. CABRASER*
ELIZABETH J. CABRASER