# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| NEETA THAKUR, *et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>Defendants. | Case No. 25-cv-4737<br><br>Settlement Agreement |

This Settlement Agreement ("Settlement Agreement" or "Agreement") contains the agreement reached by the Plaintiffs ("Plaintiffs" or "the Plaintiff Class") and Defendant Environmental Protection Agency ("EPA") to settle and resolve all remaining claims in the above-captioned action pertaining to Defendant EPA. This Agreement reflects a partial settlement of a Rule 23(b)(2) class action as to EPA.

# SETTLEMENT AGREEMENT

## I. INTRODUCTION

WHEREAS Plaintiffs initiated this class action (the "Action") on June 4, 2025, *see* Dkt. No. 1;

WHEREAS, in this class action, the Plaintiff Class makes various claims under the Administrative Procedure Act ("APA"), as well as claims alleging a Violation of Separation of Powers, the First Amendment, the Fifth Amendment, and the Impoundment Control Act. *See* Third Amended Complaint dated February 2, 2026 (hereinafter, the "Complaint"), ECF No. 184. Plaintiffs allege that Defendants, including Defendant EPA, took illegal actions to terminate research grants to the University of California ("UC") pursuant to Presidential and executive branch directives, *see id.*;

WHEREAS, Defendants reject the allegations in Plaintiffs' Complaint and maintain that EPA's termination of grants was lawful;

WHEREAS, on June 23, 2025, this Court granted Plaintiffs' Motion for Preliminary Injunction and provisionally certified the Form Termination and Equity Termination classes with respect to EPA pursuant to Federal Rule of Civil Procedure 65, *see* Dkt. Nos. 54 & 55;

WHEREAS, as defined by the Court, the Form Termination class included UC Researchers associated with certain EPA grants terminated through standardized form notices, while the Equity Termination class included UC Researchers associated with certain EPA grants terminated

pursuant to Executive Orders 14151 or 14173. Accordingly, EPA understands that the Court's Preliminary Injunction enjoined EPA's grant terminations with respect to both provisionally certified classes;

WHEREAS, following a reasonable search for grants, Defendant EPA has reinstated all previously terminated grant awards that were subject to the Court's preliminary injunction order;

WHEREAS, by Opinion issued on May 25, 2026 (*Thakur v. Trump*, 176 F.4th 1187, 1206 (9th Cir. 2026)), the Ninth Circuit affirmed the Preliminary Injunction with respect to the Equity Termination Class and reversed the Preliminary Injunction with respect to the Form Termination Class, holding that the Court lacked jurisdiction over the Form Termination Class's APA claims, and remanded this action to the district court for further proceedings;

WHEREAS, although the Ninth Circuit has held that the Court lacked jurisdiction over the claim brought by the Form Termination Class under the Administrative Procedure Act, EPA understands that the Court's preliminary injunction originally enjoined EPA's grant terminations with respect to both the Form Termination Class and the Equity Termination Class, and EPA is resolving the terminations of these grants through this Settlement Agreement;

WHEREAS, the Parties now wish to avoid the expense, delay, risk, and inconvenience of further litigation over the claims against Defendant EPA in this action;

NOW, THEREFORE, in reliance upon the representations, mutual promises, covenants, releases, and obligations set out in this Agreement, and for good and valuable consideration also set out below, the Plaintiff Class and Defendant EPA in this action, by and through their respective counsel, now hereby stipulate and agree to finally settle and resolve all remaining claims against EPA in this action.

## II. DEFINITIONS

The following terms, as they are used in the Settlement Agreement, shall have the meanings

stated below:

**A. <u>Parties</u>**

1. The "Named Plaintiffs" mean, for the purpose of this Agreement, Neeta Thakur, Ken Alex, and Nell Green Nylen, the named Plaintiffs representing UC Researchers whose grants were terminated by Defendant EPA.

2. The "Class" means All University of California researchers, including faculty, staff, academic appointees, and employees across the University of California system who are named as principal researchers, investigators, or project leaders on the grant applications for previously awarded research grants by the EPA that are (1) terminated pursuant to Executive Orders 14151 or 14173, from and after January 20, 2025, or (2) terminated by means of a form termination notice that does not provide a grant-specific explanation for the termination that states the reason for the change to the original award decision and considers the reliance interests at stake, from and after January 20, 2025, as defined by the Court's Preliminary Injunction Order provisionally certifying the Equity Termination Class and Form Termination Class, *see* ECF Nos. 54 & 55. The Class definition is subject to Court approval and settlement class certification under Rule 23(b) and 23(e).

3. "Plaintiffs" means the Named Plaintiffs and all Class Members.

4. "Plaintiffs' Counsel" or "Class Counsel" means counsel of record for the Named Plaintiffs in this Action.

5. "Defendant EPA" or "EPA" means Lee Zeldin, in his official capacity as Administrator of the Environmental Protection Agency and his successors, and the Environmental Protection Agency.

**B. <u>Other Definitions</u>**

1. The "Court" means the Honorable Rita F. Lin, U.S. District Judge of the Northern District of California.

2. "Covered Grants" means any previously awarded EPA research grant on which a UC researcher, including faculty, staff, academic appointees, and employees, is named as principal researcher, investigator, or project leader on grant application materials. "Covered Grants" also only include previously awarded EPA research grants with a period of performance beginning on June 30, 2025, or before that date. Additionally, any grant identified after January 1, 2027 cannot qualify as a "Covered Grant," as explained in Section IV.A. below.

3. "Effective Date" means the day this Settlement Agreement is signed by counsel for both Parties and takes effect. In the event of a final Court order disapproving this Agreement (and absent an appellate ruling vacating or reversing that disapproval), this Agreement shall be null and void.

4. "Final Settlement Agreement" or "Agreement" means this Agreement.

5. "Final Approval" is the entry of the Final Approval Order and Judgment by the Court approving this Agreement after notice and hearing.

6. "Grant Table" means a table produced by EPA listing the 24 Covered Grants that EPA identified after a reasonable search, as well as any additional grants or subgrants that Plaintiffs identify within three weeks (21 calendar days) from the date of EPA's production of the Grant Table that should be added to the table because they are Covered Grants that meet the definition above but were not uncovered by EPA's search or EPA's prior efforts to identify grants. The "Grant Table" process is outlined *infra*, Part IV.A.

## III. <u>NO ADMISSION OF LIABILITY</u>

EPA expressly denies any liability or wrongdoing. This Agreement represents the

compromise of disputed claims. It reflects the Parties' recognition that litigation of these claims would burden all concerned and require a major commitment of time and resources. The Agreement does not constitute and will not under any circumstances be deemed to constitute, an admission by either Party as to the merits, validity, or accuracy, or lack thereof, of any of the claims or defenses in this case. The terms of this Agreement; the negotiations leading up to this Agreement; the data, documents, filings, statements made in connection herewith; and the information exchanged between the Parties in the course of those negotiations, may not be offered, taken, construed, or introduced as evidence of liability or as an admission or statement of wrongdoing by the Defendant EPA; nor shall any fact not otherwise appearing in the record and exchanged exclusively in these settlement negotiations be used in any manner or for any purpose, in any subsequent proceedings in this action or in any other action, whether judicial or administrative, except that the documents and information may be presented to the Court by the Parties to this Agreement solely to obtain the Court's final approval of this Agreement.

## IV. COVERED GRANTS TABLE AND IDENTIFICATION PROCESS

### A. Covered Grants Table

1. EPA conducted a reasonable search for "Covered Grants." Plaintiffs agree and acknowledge that prime recipients are not required to report to EPA subawards with a total awarded amount that is less than $30,000. Additionally, Plaintiffs agree and acknowledge that "principal researcher," "investigator," and "project leader" are not data elements required to be reported to EPA for subawards.

2. EPA will provide a list of Covered Grants (in table format) ("Grant Table") to Plaintiffs no later than one week (7 calendar days) after the Effective Date of this Agreement.

3. Plaintiffs have three weeks (21 calendar days) from the date of EPA's production of the Grant Table to identify any additional grants or subgrants that should be added to the table

because they are Covered Grants that meet the definition above but were not uncovered by EPA's search or EPA's prior efforts to identify grants.

4. EPA will include in the Grant Table any additional grants or subgrants awarded as of June 30, 2025, identified by Plaintiffs during the 21-day period discussed above, which were not uncovered by EPA's search, only if those grants or subgrants are Covered Grants as defined above.

5. Once the above-noted process is complete, the Grant Table will be final and will represent the list of grants that EPA agrees not to terminate or suspend indefinitely in accordance with the terms of this Agreement, *see, e.g.*, Paragraph IV.B.1.

6. If a UC researcher with a Covered Grant who would qualify for inclusion in the Grant Table, based on the definition of a Covered Grant above, is identified prior to January 1, 2027, the Parties are obliged to meet and confer to discuss adding the researcher's grant to the table only if the grant constitutes a Covered Grant. Any grants or subgrants identified after January 1, 2027 cannot be included in the Grants Table.

7. If, after a meet and confer and reasonable period to resolve any dispute, the Parties are still unable to resolve the dispute, the Parties agree to submit to the Court the dispute over whether the grant meets the criteria for inclusion in the table using the discovery letter briefing process in the Court's Civil Standing Order.

**B. <u>EPA's Obligations</u>**

1. EPA agrees that it will not terminate, indefinitely suspend, or disallow costs for a Covered Grant, except, EPA may do so if it determines that any grantee for such a grant has failed to comply with either the original terms and conditions of the award or any agreed-upon modified terms. In the event EPA determines that the grantee has failed to comply with the terms and conditions of the award or any agreed-upon modified terms, EPA may terminate the grant

only through (i) an individualized letter that provides a grant-specific explanation of the violation and reason for termination, and (ii) that reasoning is consistent with the Court's injunction and accompanying order, *see* Dkts. 54 & 55.

2. The Parties agree that any dispute as to whether a termination, indefinite suspension, or cost disallowance by EPA for a Covered Grant violates this agreement shall first be subject to a meet and confer between the Parties to resolve the dispute. If, after a meet and confer and reasonable period to resolve the dispute, the Parties are still unable to resolve the dispute, the Parties agree to submit the dispute over whether the termination or indefinite suspension complies with the agreement to the Court for resolution. The procedure to present the dispute for Court resolution shall be the discovery letter briefing process in the Court's Civil Standing Order unless the Court requests or the Parties otherwise agree to an alternate procedure as the dispute arises.

3. The regulations at 2 C.F.R. §§ 200.308(g) and (h) authorize recipients for research awards a one-time extension of a grant for up to twelve months without prior EPA approval unless (i) the terms and conditions of the award prohibit the extension; (ii) the extension requires additional Federal funds; or (iii) the extension involves any change in the approved scope of the project. EPA agrees that the Covered Grants are eligible for a no-cost extension of up to twelve months, consistent with 2 C.F.R. §§ 200.308(g) and (h), except as to those grants described in subparagraph (i) below:

a. If the recipient of a Covered Grant received a no-cost extension pursuant to 2 C.F.R. §§ 200.308(g) and (h) before the Covered Grant was terminated in 2025, the recipient is eligible for a no-cost extension of only up to eight months without prior agency approval for that grant.

b. EPA agrees that the terms and conditions of the Covered Grants do not prohibit the no-cost extensions described in paragraph IV.B. of this agreement and the extensions are consistent with 2 C.F.R. § 200.308(g) and (h).

c. EPA agrees that the change in the timeline of Covered Grants due to the no-cost extensions described in paragraph IV.B. of this agreement are not changes in the approved scope of the projects and the extensions are consistent with 2 C.F.R. § 200.308(g) and (h).

## V. <u>SETTLED CLAIMS</u>

In consideration for EPA's promises as set forth herein, the Parties agree that this Settlement Agreement fully resolves and extinguishes any and all claims, demands, rights, causes of action, and counts brought, or that could have been brought, related to the subject matter of this action, on behalf of the Class or any Class Member as to EPA, including any claims that could be brought in the Court of Federal Claims. Additionally, this Settlement Agreement releases any and all claims, causes of action, and/or requests for relief held by Plaintiffs that would be barred by the doctrine of *res judicata* were final judgment on the merits entered on all claims asserted in the Action by the Plaintiffs.

Plaintiffs agree to accept the consideration described *supra* in full settlement of all past or present claims which their heirs, executors, or assigns may have against the EPA and its successors, the United States of America, and any officers, employees, agents, successors, or assigns of such department, agency, or establishment, arising from the events that gave rise to the claims in this Action up to including the date of this Agreement, including any claim against EPA to damages, attorneys' fees, costs, or litigation expenses arising from the same. Plaintiffs further agree that, subject to Court approval, the Court will dismiss with prejudice all claims brought by the Class against EPA.

Release of the above-described claims, counterclaims, demands, rights, causes of action and counts is effective upon Final Approval.

This partial settlement of a class action is subject to court approval under Federal Rule of Civil Procedure Rule 23(e). Following approval, the Court shall retain continuing and exclusive jurisdiction over this action only to the extent necessary for purposes of the administration and enforcement of this settlement agreement.

## VI. PROCEDURES GOVERNING SETTLEMENT APPROVAL

The Parties agree that upon execution of this Agreement, the Parties shall jointly and promptly file this Agreement and request that the Court enter an Order Granting Preliminary Approval of the Agreement, Directing Notice to the Class, and Setting a Date for the Fairness Hearing.

## VII. NOTICE PLAN

Plaintiffs' Counsel will develop a Notice Plan, subject to review and approval by Defendant and approval by the Court, that comports with Due Process and Rule 23. The Notice Plan will include, where practicable, direct notice to Class Members via telephone, mail, and/or email. It will also include a Settlement Website that features, among other things, important settlement and litigation documents; frequently asked questions and answers; and an overview of important dates and deadlines. To facilitate notice to the Class, Defendant shall provide to Plaintiffs the names and reasonably available contact information of the Class Members associated with the Covered Grants no later than one week (seven calendar days) after the execution of this Agreement by all Parties.

## VIII. FEES AND COSTS

Each Party will bear its own attorney's fees and costs as to the EPA portion of the litigation.

## IX. RIGHT TO CHALLENGE BREACHES OF THIS AGREEMENT

Before seeking adjudication of any allegation or complaint that any Party has failed to comply with any provision of this Agreement, counsel for the Party alleging noncompliance shall serve a written notice upon the Party alleged to be in non-compliance. Such notice shall specify which term(s) of this Agreement allegedly has (have) been violated, shall describe all the facts and circumstances then known supporting the claim of a violation, and shall state that the moving Party intends to seek an Order from the Court to enforce compliance with this Agreement. A notice regarding alleged noncompliance by Defendant EPA shall be served via email on the Director of the Federal Programs Branch, Civil Division, United States Department of Justice, and the Associate General Counsel of the Civil Rights and Finance Law Office, Office of General Counsel, EPA. The relevant email addresses will be provided to Plaintiffs' Counsel upon execution of this Agreement. Notice regarding alleged noncompliance by Plaintiffs shall be served on Plaintiffs' Counsel.

The Party receiving the notice described in the paragraph above shall have a period of thirty (30) calendar days after receipt of the notice to take appropriate action to resolve any claims of noncompliance. If such claims are not resolved after consultation within that thirty-day period, or if, prior to the expiration of such thirty-day period, the receiving Party notifies the moving Party that no further action will be taken, then, at that time, the moving Party may apply to the Court for an Order compelling compliance with this Agreement.

## X. COURT JURISDICTION TO ENFORCE THE AGREEMENT

The Parties hereby stipulate and agree to entry of a Final Judgment dismissing Plaintiffs' claims with respect to EPA in this action with prejudice, except that the Court shall retain ongoing and exclusive jurisdiction for the sole purpose of enforcing compliance with the terms and conditions of this Agreement. Applications for Orders seeking to enforce this Agreement may be

brought by Class Counsel, Defendant EPA's counsel or by any Class Member.

**XI. INTERPRETATION**

Nothing in this Agreement shall be deemed to be an approval or adoption by any Party of Any Party's rationale or justification for entering into this Agreement. This Agreement shall be deemed to have been drafted jointly by the Parties, and no alleged ambiguity shall be construed against any party as the Drafter.

**XII. PARTIES BOUND BY THIS AGREEMENT**

This binds Defendant EPA as above. This Agreement also binds the Class, including each of the Named Plaintiffs and each and every Class Member. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective officers, directors, servants, employees, predecessors, successors, agents, and assigns.

**XIII. ENTIRE AGREEMENT**

This Settlement Agreement constitutes the entire agreement of the Parties in this case. All prior conversations, meetings, discussions, drafts and writings of any kind are specifically superseded by this Settlement Agreement. No modification to this Settlement Agreement shall be valid unless written and agreed to and executed by all Parties.

If any term, condition or provision of this Settlement Agreement, or the application thereof to any person or circumstance, shall to any extent be held by a court of competent jurisdiction or rendered by the adoption of a statute by the United States invalid, void, or unenforceable, the remainder of the terms, covenants, conditions, or provisions of this Settlement Agreement, or the application thereof to any person or circumstance, shall remain in full force and effect and shall in no way be affected, impaired, or invalidated thereby.

**XIV. APPLICABLE LAW**

This Settlement Agreement shall be governed by and construed under the laws of the

United States.

Agreed by:

By: ______________________________ Dated: September 15, 2026

Erwin Chemerinsky
Claudia Polsky
UC BERKELEY SCHOOL OF LAW
*Counsel for Plaintiffs*

By: ______________________________ Dated: September 15, 2026

Elizabeth Cabraser
Richard Heimann
Kevin Budner
Annie Wanless
Clare Perez
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
*Counsel for Plaintiffs*

By: ______________________________ Dated: September 15, 2026

Anthony P. Schoenberg
Linda S. Gilleran
Kyle A. McLorg
FARELLA BRAUN + MARTEL LLP
*Counsel for Plaintiffs*

By: */s/ Kathryn Barragan* Dated: September 10, 2026

Kathryn Barragan
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
*Counsel for Defendants*