BRETT A. SHUMATE
Assistant Attorney General
Civil Division
ERIC J. HAMILTON
Deputy Assistant Attorney General
JOSEPH E. BORSON
Assistant Branch Director
KATHRYN BARRAGAN (D.C. Bar No. 90026294)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 598-7696
Email: kathryn.e.barragan@usdoj.gov

*Attorneys for United States*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| NEETA THAKUR, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>Defendants. | Case No. 25-cv-4737-RFL<br><br>DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT<br><br>Hearing Date: November 17, 2026<br>Time: 1:30 PM<br>Judge: Hon. Rita F. Lin<br>Place: San Francisco Courthouse<br>Courtroom 4 – 17th Floor |

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................................1

ARGUMENT .........................................................................................................................2

I. Plaintiffs' Untimely, Unpleaded Request to Add a New Named Plaintiff Fails. ...........................2

II. Threshold Issues Require Granting Summary Judgment for Defendants......................................4

A. Proposed Class Members Not Named as Principal Researchers, Investigators or Project Leaders on Grants Lack Standing. ........................................................4

B. Remaining Threshold Issues Require Granting Summary Judgment for Defendants. ..........................................................................................................7

III. Summary Judgment Should Be Granted to Defendants on Plaintiffs' Fifth Amendment Equal Protection Claims...................................................................................8

IV. Class Certification Should Be Denied. ......................................................................13

A. Plaintiffs' Motion Fails to Serve the Purposes of the Class Action.................................13

B. The Department of Energy Class Fails to Conform to Rule 23. .......................................13

CONCLUSION......................................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Allen v. Wright*,
468 U.S. 737 (1984) .......... 7

*Am. Bus Ass'n v. Rogoff*,
649 F.3d 734 (D.C. Cir. 2011) .......... 11

*Am. Sch. of Magnetic Healing v. McAnnulty*,
187 U.S. 94 (1902) .......... 8

*Am. Towers, Inc. v. Williams*,
146 F. Supp. 2d 27 (D.D.C. 2001),
*aff'd*, 50 F. App'x 448 (D.C. Cir. 2002) .......... 12

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
568 U.S. 455 (2013) .......... 13

*Brazil-Breashears v. Bilandic*,
53 F.3d 789 (7th Cir. 1995) .......... 9

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) .......... 13

*California v. Texas*,
593 U.S. 659 (2021) .......... 7

*California v. Wright*,
No. 26-CV-01417-RFL, 2026 WL 1915590 (N.D. Cal. July 2, 2026) .......... 8

*Contratto v. Ethicon, Inc.*,
227 F.R.D. 304 (N.D. Cal. 2005) .......... 5

*Dep't of Agriculture v. Moreno*,
413 U.S. 528 (1973) .......... 12

*E. V. v. Robinson*,
906 F.3d 1082 (9th Cir. 2018) .......... 8

*FCC v. Beach Commc'ns, Inc.*,
508 U.S. 307 (1993) .......... 12

*Gray v. First Winthrop Corp.*,
989 F.2d 1564 (9th Cir. 1993) .......... 1, 9, 10

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) .......... 14

*Jackson v. Danbury*,
240 F.R.D. 145 (D. Del. 2007) .......... 15

*Joint Anti-Fascist Refugee Comm. v. McGrath*,
341 U.S. 123 (1951) .......... 8

*Lincoln v. Vigil*,
508 U.S. 182 (1993) .......... 11

*Lyng v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW*,
485 U.S. 360 (1988) .......... 11

*Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psychology*,
228 F.3d 1043 (9th Cir. 2000) .......... 10

*New York City Transit Auth. v. Beazer*,
440 U.S. 568 (1979) .......... 9

*O'Connor v. Boeing North American, Inc.*,
184 F.R.D. 311 (C.D. Cal. 1998) .......... 14

*Olson v. California*,
104 F.4th 66 (9th Cir.),
*cert. denied*, 145 S. Ct. 382 (2024) .......... 12

*Probe v. State Teachers' Ret. Sys.*,
780 F.2d 776 (9th Cir. 1986) .......... 13, 15

*Rannis v. Recchia*,
380 F. App'x. 646 (9th Cir. 2010) .......... 4, 15

*Refuerzo v. Sw. Airlines Co.*,
No. 22-cv-00868-JSC, 2024 WL 4177936 (N.D. Cal. Sep. 12, 2024) .......... 15

*Ries v. Ariz. Beverages USA LLC*,
287 F.R.D. 523 (N.D. Cal. 2012) .......... 15

*Romano v. SCI Direct, Inc.*,
No. 17-CV-03537-ODW-JEM, 2018 WL 1441147 (C.D. Cal. Mar. 21, 2018) .......... 13

*Romer v. Evans*,
517 U.S. 620 (1996) .......... 12

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*,
559 U.S. 393 (2010) .......... 13

*Shoemaker v. Handel*,
795 F.2d 1136 (3d Cir. 1986) .......... 9

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ........................................................ 7

*Thakur v. Trump*,
787 F. Supp. 3d 955 (N.D. Cal. 2025),
*aff'd in part, rev'd in part and remanded*, 176 F.4th 1187 (9th Cir. 2026) .......... 7

*Thakur v. Trump*,
823 F. Supp. 3d 974 (N.D. Cal. 2026) ........................................ 9, 12

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........................................................ 5

*Trump v. Hawaii*,
585 U.S. 667 (2018) ........................................................ 12

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ........................................................ 5

*United States v. Am. Libr. Ass'n, Inc.*,
539 U.S. 194 (2003) ........................................................ 11

*Vasquez Perdomo v. Mullin*,
No. 2:25-CV-05605-MEMF-SP, 2026 WL 2752137 (C.D. Cal. Sep. 2, 2026) ......... 14

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ........................................................ 13, 14

*Williamson v. Lee Optical of Okla., Inc.*,
348 U.S. 483 (1955) ........................................................ 1, 9, 10

*Wright v. Incline Vill. Gen. Improvement Dist.*,
665 F.3d 1128 (9th Cir. 2011) ............................................... 12

*XP Vehicles, Inc. v. Department of Energy*,
118 F. Supp. 3d 38 (D.D.C. 2015) ........................................... 10, 11, 12

**RULES**

Federal Rule of Civil Procedure 23.1 ........................................ 8

**REGULATIONS**

2 C.F.R. § 200.340(a)(4) .................................................... 8

**OTHER AUTHORITIES**

1 Newberg and Rubenstein on Class Actions § 1:9 (6th ed. 2025) ................ 13

## INTRODUCTION

Plaintiffs' motion has several threshold defects. First, their belated request—raised for the first time at summary judgment—to add a third Department of Energy ("DOE") class representative absent from the complaint should be denied. Plaintiffs have been on notice of that individual since 2025. Other threshold issues require granting summary judgment for Defendants. The proposed DOE class improperly includes individuals who merely intended to work, or briefly worked, on grants as graduate students or post-doctoral researchers, none of whom demonstrates the requisite "personal stake" in the research grants required for Article III standing. And even assuming standing, Plaintiffs—who are not themselves grantees—lack a free-standing ultra vires cause of action to bring their constitutional claim because they assert not their own equal protection rights, but the rights of the grantees, i.e., the universities.

Even if the Court reaches the merits, Plaintiffs' equal protection claims fail. DOE's termination of 283 grants located in so-called "Blue States"—a subset of 624 grants that were reviewed and selected for termination based on a failure to align with agency priorities—readily satisfies rational basis review. Plaintiffs' contrary arguments rest on an overreading of the Parties' stipulations. DOE stipulated that "<u>DOE accepts that the inclusion of grants in the October notice tranche</u> was based solely on the political identity of the grant recipient's state, i.e., whether the recipient's location and/or place of performance was in a Blue State or a non-Blue State." Declaration of Kyle McLorg, ECF No. 211 ("McLorg Decl."), ¶ 9, Ex. F at 5, Stip. No. 9 (emphasis added). That stipulation concerns the reason certain grants were placed into the termination tranche in October 2025. DOE did not stipulate, as Plaintiffs repeatedly assert, that the reasons for termination were based solely on political identity.

Moreover, DOE's decision to discontinue a subset of grants deemed inconsistent with agency priorities is permissible because rational basis review allows the government to implement policy "one step at a time[.]" *Gray v. First Winthrop Corp.*, 989 F.2d 1564, 1573 (9th Cir. 1993) (quoting *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955)). Precedent further confirms that political considerations can supply a rational basis for discretionary funding decisions. Plaintiffs' arguments to the contrary do not withstand scrutiny, and summary judgment should be entered for Defendants.

In all events, this Court should not certify Plaintiffs' proposed DOE class. It is overbroad and vaguely defined because it sweeps in all University of California ("UC") researchers who "worked or were hired to work" on a relevant grant with no standard for determining meaningful involvement. As a result, the proposed class is indefinite, and lacks commonality and typicality under Rule 23. Rule 23 requires class members and their representatives to have the same injury, but that is not the case here. The alleged harms to graduate students and post-doctoral researchers—such as dissertation adjustments, extended timelines, or shifts to industry careers—do not establish standing and are not shared by the class representatives, all of whom held leadership roles on the terminated grants. The proposed class therefore fails Rule 23 and should not be certified.

For these reasons, Plaintiffs' motion for summary judgment on their Equal Protection Claim (Count III), and Plaintiffs' Motion for Class Certification as to the DOE Class should be denied, and Defendants' cross-motion for summary judgment should be granted.[1]

## ARGUMENT

### I. Plaintiffs' Untimely, Unpleaded Request to Add a New Named Plaintiff Fails.

Plaintiffs' belated request to add a third DOE class representative who is absent from the Complaint should be denied. Pls.' Reply at 17–20. Specifically, Plaintiffs seek to add as a class representative Shannon Boettcher, who, like the other two DOE class representatives, was a principal investigator on a grant terminated in October 2025. As Defendants have explained, Rule 16(b)'s good-cause standard applies because the Court's deadline to amend the complaint passed on February 6, 2026. *See* Defs.' Cross Mot. for Summ. J. and Opp'n to Pls.' Mot. for Summ. J. and for Class Certification, ECF No. 226 ("Defs.' Mot."), at 14 (citing Scheduling Order, ECF No. 183). Plaintiffs cannot meet that standard, because they knew of Boettcher and the award with which he was associated no later than 2025 because his name and affiliated grant are listed in Defendants' filing from December 2025. Decl. of Janella

[1] After both Parties filed their opening briefs in support of their cross-motions for summary judgment, the Court entered the Parties' stipulation to stay summary judgment and class certification proceedings on all claims except Count III of Plaintiffs' Complaint, and arguments relevant to that claim. *See* Stipulation and Order dated September 1, 2026, ECF No. 228. For these reasons, Defendants' reply brief only addresses the arguments relevant to Plaintiffs' equal protection claims.

Davis ("Davis Decl."), ECF No. 165-1, ¶ 13(f). However, Plaintiffs did not seek to add Boettcher as a representative until filing their July 2026 summary judgment motion.

Plaintiffs' attempts to justify their delay are unpersuasive. They first argue that Defendants' December 2025 filing was "incomplete and provisional" because it stated DOE was still reviewing six additional awards. Pls.' Combined Reply in Supp. of Mot. for Summ. J. and Class Certification; Opp'n to Defs.' Cross-Mot., ECF No. 233 ("Pls.' Reply"), at 17–18. But Defendants' December 2025 filing already identified Boettcher, the terminated award, and the relevant award title and number, which was more than sufficient to provide notice. *See* Davis Decl. at ¶ 13(f); Defs.' Combined Opp'n to Pls.' Mot. for Leave to File Third Am. Compl. and Mot. for Third Prelim. Inj., ECF No. 165 at 15–18. And Plaintiffs fail to mention that DOE completed its review of the six additional awards (none of which involved Boettcher) in the period between their filing and the preliminary injunction hearing and provided detailed explanations of those awards at the hearing. *See* Transcript of Proceedings on December 18, 2025, at 42:9–45:3. Defendants also offered to share grant application materials with Plaintiffs at the hearing. *See id.* at 42:1–7. Yet Plaintiffs never requested them. Plaintiffs' claim that "DOE waited . . . many months" to provide requested data is inaccurate, because Plaintiffs never indicated they believed additional DOE information remained outstanding. Pls.' Reply at 18.

Equally flawed is Plaintiffs' contention that they could not seek to add Boettcher until DOE produced "grant-specific data" under the Parties' stipulations. Pls.' Reply at 18. The Parties expressly agreed that the spreadsheet would *exclude* October 2025 "Blue State" grant terminations relevant to Plaintiffs' equal protection claims, because those grants had already been listed in exhibits to the Parties' stipulations. *See* McLorg Decl., ¶ 9, Ex. F at 4 (stating the DOE spreadsheet will "exclude[e] those grants terminated or indefinitely suspended through the PRP process discussed in the stipulations"); *see also id.* at 13 (spreadsheet); *see also id.* at 28–34 (list of terminated awards in October 2025). Thus, the additional spreadsheet data could not be relevant to Plaintiffs' equal protection claims regarding the October 2025 grant terminations. *See id.* at 4. It is illogical to suggest Plaintiffs lacked notice until receiving a spreadsheet that, by the Parties' own specifications, would not contain any information relevant to the

equal protection claims. Plaintiffs unduly delayed without good cause and their late request to add a class representative should be denied.

Plaintiffs' argument that DOE will not be prejudiced because it does not affect the schedule in this case overlooks Defendants' previously asserted arguments concerning prejudice. *See* Defs.' Mot. at 17–18. Namely, allowing Plaintiffs' maneuver forces Defendants to confront final judgment on new facts without the opportunity to build any record to rebut them, because Defendants are precluded from seeking discovery at this stage. That is prejudicial and Plaintiffs' request should be denied.

## II. Threshold Issues Require Granting Summary Judgment for Defendants.

### A. Proposed Class Members Not Named as Principal Researchers, Investigators or Project Leaders on Grants Lack Standing.

Plaintiffs' proposed DOE class would encompass any individual who performed research on a terminated grant in any capacity. This proposed class is broader than any class described in Plaintiffs' operative Complaint. *See* Third Am. Compl., ECF No. 184 ("Compl."), Prayer for Relief. It is also broader than any previously certified class in this case, which have always been limited to UC personnel "named as principal researchers, investigators, or project leaders" on applications for research grants that were terminated. *See* Preliminary Injunction, ECF No. 55; Preliminary Injunction, ECF No. 134. Plaintiffs have only identified 16 individuals who would fall into this Court's previous class definitions as to DOE grants relevant to their equal protection claims, *see* Pls.' Reply at 16, but "courts find the numerosity requirements satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 F. App'x. 646, 651 (9th Cir. 2010). Thus, Plaintiffs seek a broader class here because otherwise, the class does not meet Rule 23's numerosity requirement.

While the previously certified classes in this case were limited to UC researchers with leadership roles in the grant projects that were terminated, Plaintiffs now seek to certify a class that would include "[a]ll University of California researchers, including faculty, staff, academic appointees, and employees across the University of California system, who worked or were hired to work on a research grant or sub-award[.]" Pls.' Notice of Mot. and Combined Mot. for Summ. J. and Class Certification, ECF No. 210 ("Pls.' Mot.") at 44. But graduate students and other research team members who lack leadership roles

cannot demonstrate standing. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C. J., concurring)).

As a preliminary evidentiary matter, Plaintiffs previously submitted an attorney declaration attaching emails summarizing interviews with principal investigators on terminated grants. *See* Decl. of Claudia Polsky in Supp. of Pls.' Mot., ECF No. 212 ("Polsky Decl."), ¶ 5, Exs. A–C. When Defendants noted that the emails were inadmissible hearsay at summary judgment, on reply Plaintiffs submitted these emails as declarations and asserted in a footnote that the hearsay issue is "mooted." Pls.' Reply at 10 n.10. Attaching new evidence on reply to support a motion for summary judgment is improper. *See Contratto v. Ethicon, Inc.*, 227 F.R.D. 304, 308 n.5 (N.D. Cal. 2005). Even if the Court exercises its discretion to consider the new declarations, they show that individuals lacking leadership roles in the grant projects do not meet standing requirements.

Plaintiffs' evidence has not shown each proposed class member suffered an injury-in-fact. As this Court previously explained, standing requires a plaintiff to demonstrate their "personal stake" in the claims at issue, which this Court found to exist for lead researchers on terminated grants because of their substantial investment of time in preparing grant applications, their lengthy careers of federal grant-supported research, and the fact that their research constituted their livelihoods. Order Granting Mot. for Prelim. Inj. and Provisional Class Certification, ECF No. 54, at 42. Plaintiffs assert that standing should not be limited to individuals named on grant applications, and at other times assert that research team members are named on applications, but this misses the point. Pls.' Reply at 10, 16. By referencing the leadership roles identified in grant application materials, the Court applied a uniform method to identify project leaders and concluded that those individuals had a significant stake in the research project.

By contrast, Plaintiffs have not established that team members who are graduate students or post-doctoral researchers have the same personal stake. Plaintiffs have not shown that all individuals included in their proposed class had significant roles in the grant projects. Some proposed class members were merely hired to work on grants and never actually worked on them at all. *See, e.g.,* Decl. of Jeffrey Long in Supp. of Pls.' Mot., ECF No. 234 ("Long Decl.") ¶ 5(b). Other individuals were not working on the grants at the time of termination. *See* Decl. of Shannon Boettcher in Supp. of Pls.' Mot., ECF No. 217

("Boettcher Decl.") ¶ 23; Long Decl. ¶ 5(d). Even among those working on the grants in some capacity, Plaintiffs do not clarify how much time they invested. For example, one declaration states only that certain team members were "partially supported" by the relevant grant. Boettcher Decl. ¶ 22. Another declaration states that three researchers were "involved" in unspecified ways. Decl. of Vinod Narayahan in Supp. of Pls.' Mot., ECF No. 235 ("Narayahan Decl."), ¶5(b)–(c). While some researchers' involvement is described as "critical," others are merely described as "supported by this project." Decl. of Iryna Zenyuk in Supp. of Pls.' Mot., ECF No. 236 ("Zenyuk Decl."), ¶ 5. As to individuals Plaintiffs seek to include based on alleged involvement in the ARCHES grant—more than a third of the proposed class members—Plaintiffs provide nothing beyond names and titles. *See* Polsky Decl., ¶ 9 Ex. D, at 2 (citing Decl. of Claudia Polsky in Supp. of Prelim. Inj., ECF No. 160, ¶ 6, Ex. B; McLorg. Decl., ¶ 9, Ex. F at 6–7).

A spreadsheet that Plaintiffs previously submitted in support of their preliminary injunction motion challenging the same DOE terminations revealed that many individuals working on the grants devoted but a fraction of their overall time to the relevant grant project, including listing some individuals' involvement as low as "0.04" and "0.138" "full time equivalent" hours. *See* Polsky Decl. ¶¶ 2–3, Ex. A, at 5. Thus, Plaintiffs' own submissions suggest that many proposed class members lack the degree of involvement necessary to show a "personal stake" in the research sufficient for standing under this Court's previous reasoning.

Nor have Plaintiffs demonstrated the alleged harms to team members were concrete and particularized injuries. Many individuals kept their employment, obtained their degrees, or even secured professorships following the grant terminations. *See, e.g.,* Long Decl. ¶ 5(b), (d); Boettcher Decl. ¶¶ 22–23; Narayanan Decl. ¶ 5; Zenyuk Decl. ¶¶ 5(b)-(d), 6(a)-(c). At least one grant was reinstated through another lawsuit. *See* Zenyuk Decl. ¶ 6(b). Indeed, one declaration appears to expressly acknowledge these differences among researchers, noting that a grant's termination "affected the PhD candidates and postdoctoral scholars differently depending on their role and funding status[.]" Boettcher Decl. ¶ 33.

Other claimed harms are insufficient to show standing. Plaintiffs' claims that individuals' reputations and careers were damaged by the terminations are undermined by their status as graduate students or post-doctoral students beginning their professional careers, whose positions are temporary and

who do not lead federally funded research projects. This stands in contrast to principal investigators, whose "lengthy research careers of federal grant-supported research" were central to the Court's earlier standing analysis. *Thakur v. Trump*, 787 F. Supp. 3d 955, 992 (N.D. Cal. 2025), *aff'd in part, rev'd in part and remanded*, 176 F.4th 1187 (9th Cir. 2026).

Plaintiffs' remaining alleged harms are speculative and inconsistent with the Supreme Court's statement that "psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998). Thus, assertions that a graduate student's dissertation is "less impactful" or that students were "unable to realize" certain research results are speculative and insufficient to show injury in fact. *See, e.g.,* Zenyuk Decl. ¶ 6(a); Long Decl. ¶ 5(b).

Finally, Plaintiffs do not respond at all to Defendants' argument that redressability is not shown because many of the team members were students who have since graduated, moved on to other research, or gotten other jobs. Defs.' Mot. at 22–23. Even with a favorable ruling ordering reinstatement of the grants at issue, these individuals will not return to these projects, and the "judicial relief requested" by Plaintiffs would not provide a remedy. *California v. Texas*, 593 U.S. 659, 671 (2021) (quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)).

**B. Remaining Threshold Issues Require Granting Summary Judgment for Defendants.**

To the extent that the Court needs clarity with respect to which arguments Defendants are asserting given the partial stay of summary judgment briefing, Defendants respectfully incorporate by reference the following arguments in their opening brief, i.e., that Plaintiffs lack standing because they are not parties to the grants at issue, and that the Tucker Act requires Plaintiffs' equal protection claim to be brought in the Court of Federal Claims. *See* Defs.' Mot. at 19–20, 24–26.

Additionally, Defendants incorporate their argument that Plaintiffs' ultra vires claims are not cognizable. *See id.* at 32–33; *contra* Pls.' Reply at 3 n.8. Plaintiffs' equal protection claims as to DOE depend on this Court's inherent equitable powers to provide a cause of action, remedying what Plaintiffs view as ultra vires conduct. But ultra vires claims are only cognizable when the defendant officials act so far outside the bounds of their authority that the suit is effectively "not [a] suit[] against the sovereign."

Defs.' Mot. at 32 (citing *E. V. v. Robinson*, 906 F.3d 1082, 1090 (9th Cir. 2018)). That is not the case here, where DOE terminated awards it had legal authority to terminate. 2 C.F.R. § 200.340(a)(4) (allowing termination "if an award no longer effectuates the program goals or agency priorities"). In a footnote, Plaintiffs contend that such an argument was rejected in *California v. Wright*, No. 26-CV-01417-RFL, 2026 WL 1915590, at *7–11 (N.D. Cal. July 2, 2026). Defendants respectfully submit that *California v. Wright* is distinguishable from the present case. One of the limits of ultra vires review is that it is only available to parties who are the direct objects of the allegedly unlawful governmental action. *See Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 152–54 (1951) (Frankfurter, J., concurring) ("[T]he injury must be 'a wrong which directly results in the violation of a legal right.'"). Ultra vires relief developed as an equitable remedy to prevent the government from unlawfully acting upon a person—i.e., to prevent a certain restriction or enforcement action from taking place. *See, e.g., Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110–11 (1902). That is particularly important here, where Plaintiffs, who are not parties to the grants at issue, attempt to assert a claim that the grantees' (not Plaintiffs') legal rights were violated because the *grantees* were treated disparately based on geographic location. *See* Pls.' Mot. at 31. Plaintiffs lack standing to bring such an *ultra vires* claim on behalf of non-parties. By contrast, *California v. Wright* involves the same equal protection claims pled as a derivative action under Federal Rule of Civil Procedure 23.1, on behalf of a grantee whose legal rights were allegedly violated.

## III. Summary Judgment Should Be Granted to Defendants on Plaintiffs' Fifth Amendment Equal Protection Claims.

Summary judgment should be entered for Defendants on Plaintiffs' equal protection claims. As Defendants have explained, DOE's termination of 283 grants located in so-called "Blue States"—a subset of 624 grants that were reviewed and selected for termination based on a failure to align with agency priorities—readily satisfies rational basis review.

Plaintiffs' primary argument rests on an overreading of the Parties' stipulations. DOE stipulated only that "<u>DOE accepts that the inclusion of grants in the October notice tranche</u> was based solely on the political identity of the grant recipient's state, i.e., whether the recipient's location and/or place of performance was in a Blue State or a non-Blue State." McLorg Decl., ¶ 9, Ex. F at 5, Stip No. 9 (emphasis added). That stipulation concerns the reason certain grants were placed into the termination tranche in

October 2025. DOE did not stipulate, as Plaintiffs repeatedly assert, that the reasons for termination were based solely on political identity. *See, e.g.,* Pls.' Reply at 3, 8. To the contrary, DOE conducted individualized reviews and concluded each award was not consistent with the Administration's goals, policies, and priorities, or otherwise does not effectuate the Department's priorities, as reflected in the award termination letters. *See, e.g.*, *Thakur v. Trump*, 823 F. Supp. 3d 974, 981 (N.D. Cal. 2026) (citing Decl. of Plamen Atanassov in Supp. of Prelim. Inj., ECF No. 158-5, ¶ 13, Ex. E (terminating award because it "does not effectuate the Department of Energy's priorities of ensuring affordable, reliable, and abundant energy to meet growing demand and/or addresses the national emergency declared pursuant to Executive Order 14156")); *see also* McLorg Decl., ¶ 9, Ex. F at 4 (Stip. Nos. 1–3).

Plaintiffs contend that even if DOE had rational grounds to terminate all 624 grants, terminating only a subset violates equal protection. *See* Pls.' Reply at 4. They further challenge Defendants' reliance on the principle that the government may "reform . . . one step at a time, addressing itself to the phase of the problem which seems the most acute" without violating equal protection. *Gray*, 989 F.2d at 1573 (quoting *Lee Optical*, 348 U.S. at 489). Plaintiffs contend this principle applies only in a "legislative" context, Pls.' Reply at 6, but they cite no authority finding such a limitation.

By contrast, rational basis review regularly permits such line drawing outside of a legislative setting. For instance, the Third Circuit upheld drug-testing regulations applied to jockeys but not other racetrack employees implemented by the New Jersey Racing Commission, an executive entity located within the New Jersey Office of Attorney General. *Shoemaker v. Handel*, 795 F.2d 1136, 1144 (3d Cir. 1986). The Seventh Circuit upheld the Illinois Supreme Court's implementing political-activity restrictions for judicial employees but exempting judges, "regardless of the probability that the government will ever address the rest of the problem." *Brazil-Breashears v. Bilandic*, 53 F.3d 789, 793 (7th Cir. 1995). And the United States Supreme Court upheld the New York City Transit Authority's categorical denial of employment to anyone who had taken a certain drug, finding that "exclusionary line," while "probably unwise," "represents a policy choice . . . made by that branch of Government vested with the power to make such choices." *New York City Transit Auth. v. Beazer*, 440 U.S. 568, 592 (1979).

Plaintiffs contend that the government must explain why its piecemeal action addresses "the most acute" aspect of the perceived problem. Pls.' Reply at 5 (quoting *Gray* 989 F.2d at 1573 (quoting *Lee Optical*, 348 U.S. at 489)). But *Lee Optical* itself clarifies that the government need not tailor its actions perfectly to the problem and "may select one phase of one field and apply a remedy there, neglecting the others." 348 U.S. at 489 (citations omitted). That principle applies here. Even if DOE's stated objective meant it could have terminated all 624 grants, terminating only a subset is constitutionally permissible. *See* Pls.' Reply at 4–5; *see also Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1053 (9th Cir. 2000) ("The question is . . . whether it was rational for the California Legislature to implement different licensing schemes for psychologists, and for social workers and family counselors. It is not irrational for the Legislature to progress one step, or one profession, at a time.").

Plaintiffs next assert that political considerations cannot constitute a rational basis for selecting among equally deficient grants. Pls.' Reply at 6–7. But they overlook then-Judge Kentanji Brown-Jackson's decision in *XP Vehicles, Inc. v. Department of Energy*, 118 F. Supp. 3d 38 (D.D.C. 2015). *See* Defs.' Mot. at 50. In that case, applicants alleged that DOE denied their "equally as meritorious" loan requests while instead awarding loans to "politically connected" donors, citing DOE statements "indicating that the DOE was under political pressure to approve particular loan applications." *XP Vehicles*, 118 F. Supp. at 50–53. Because the case was at the motion-to-dismiss stage, then-Judge Jackson assumed for purposes of equal protection analysis that the denied application was "similarly situated" and "equally as meritorious" as the successful ones. *Id.* at 76. The court reasoned that:

> [E]ven if Plaintiffs are correct that the real impetus behind the DOE's decision to reject [Plaintiff's] application was Defendants' desire to 'preserve [loan] funds for government-favored companies and/or to protect those companies from competition,' this motivation does not implicate a suspect classification or demonstrate intentional discriminatory animus towards [loan] applicants that lacked political connections, and it therefore does not overcome the rationality of the explanation the government has provided for the purposes of the court's equal protection analysis.

*Id.* at 78 (quotations omitted).

Therefore, even accepting political influence as true, the court held that plaintiffs failed to show DOE lacked a rational basis for denying one application while approving others. *Id.* The same reasoning

applies here. Even if DOE concluded that all 624 grants failed to align with agency priorities, selecting some grants over others for termination does not violate rational basis review.

Political considerations are routine in federal spending decisions. *See, e.g.*, *United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194, 211 (2003). It has long been established practice that in making discretionary funding decisions, Congress and the executive branch may earmark certain funds or engage in "pork barrel" spending that benefits entities residing in one geographical location over another, and that such decisions may take political interests into account. If Plaintiffs' equal protection challenge had merit, then every entity that lost out on such an appropriation or an earmark when arguably similar groups received funds would have an equal protection claim. But that is not the law. *See, e.g.*, *Am. Bus Ass'n v. Rogoff*, 649 F.3d 734, 741–42 (D.C. Cir. 2011).

Plaintiffs attempt to distinguish Congressional earmarks from grant terminations on the ground that earmarks involve awarding, rather than withdrawing, federal benefits. *See* Pls.' Reply at 6–7. But discretionary funding decisions are always zero-sum because they require "allocations from a finite pool of resources." *Lyng v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW*, 485 U.S. 360, 373 (1988); *cf. Lincoln v. Vigil*, 508 U.S. 182, 193 (1993) (an agency's allocation of funds from a lump-sum appropriation requires "a complicated balancing of a number of factors which are peculiarly within its expertise": whether its "resources are best spent" on one program or another; whether a particular program "best fits the agency's overall policies"; and, "indeed, whether the agency has enough resources" to fund a program "at all." (quotations omitted)). DOE's competitive grants at issue here operate under the same resource constraints.

Defendants' cited cases underscore that political considerations in choosing to fund one entity over another satisfy rational basis review. In *American Bus Association v. Rogoff*, Congress's decision to provide only Seattle with funds for a special charter bus service to baseball games meant that other municipalities were deprived of this benefit or other benefits the funds could have been used for. 649 F.3d at 742–43. Similarly, the court in *XP Vehicles, Inc. v. Department of Energy*, found a rational basis despite alleged political preferences in choosing to award one "equally as meritorious" grant application over another. 118 F. Supp. 3d at 76.

Plaintiffs argue that Defendants' supposed political motive to use grant terminations "as leverage to end a government shutdown" is merely "attorney argument" not supported by evidence. *See* Pls.' Reply at 8–9. This is surprising, since Plaintiffs themselves previously alleged that the DOE terminations announced on the first day of the lapse in appropriations, "made good on [a] threat" to pressure "congressional Democrats . . . should they not agree to fund the government on the President's terms." Compl., ¶¶ 612–613. In any event, the government "has no obligation to present any evidence to sustain the rationality of its decision." *Am. Towers, Inc. v. Williams*, 146 F. Supp. 2d 27, 30–31 (D.D.C. 2001), *aff'd*, 50 F. App'x 448 (D.C. Cir. 2002). The challenged action need not "actually advance its stated purposes[]"; it is enough that "the government could have had a legitimate reason for acting as it did." *Wright v. Incline Vill. Gen. Improvement Dist.*, 665 F.3d 1128, 1141 (9th Cir. 2011) (quotation omitted); *see also Olson v. California*, 104 F.4th 66, 78 (9th Cir.), *cert. denied*, 145 S. Ct. 382 (2024) (The government is not required to "proffer its actual rationale motivating the legislation—or any rationale, for that matter."). Nor must the government support its decision "by 'evidence or empirical data.'" *Olson*, 104 F.4th at 78 (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)); *see also XP Vehicles*, 118 F. Supp. 3d at 77 ("In traditional equal protection contexts, the subjective motivations of the government actor are not considered.").

Finally, Plaintiffs' suggestion that the terminations reflect unconstitutional "animus" is unfounded. Pls.' Reply at 8–9. Plaintiffs must establish that the government's decision "lack[s] any purpose other than a 'bare . . . desire to harm a politically unpopular group.'" *Trump v. Hawaii*, 585 U.S. 667, 705 (2018) (quoting *Dep't of Agriculture v. Moreno*, 413 U.S. 528, 534 (1973). There is no such group here. As this Court previously explained, "Plaintiffs have not identified a persistently 'politically unpopular group' being targeted in this action." *Thakur*, 823 F. Supp. 3d at 985. "Rather, they have identified voters of a party that won 48.32% of the popular vote in the 2024 presidential election." *Id.* Indeed, the cases that Plaintiffs rely on involve the litigation of individuals' rights. *See, e.g., Moreno*, 413 U.S. at 534 (individuals who live in housing with people to whom they are not related); *Romer v. Evans*, 517 U.S. 620, 625 (1996) (individuals classified based on sexuality). Summary judgment should be granted to Defendants on Plaintiffs' equal protection claims because the terminations satisfy rational basis review.

**IV. Class Certification Should Be Denied.**

Plaintiffs seek certification of the proposed DOE Class, which is absent from the complaint and broader than all classes previously certified in this case because it includes all UC researchers who "worked or were hired to work" on any grant located in a "Blue State" and terminated by DOE in October 2025. Pls.' Reply at 9. Certification of this class should be denied because the class fails to serve the purposes of the class action and fails to satisfy the requirements of Rule 23(a).

**A. Plaintiffs' Motion Fails to Serve the Purposes of the Class Action.**

Defendants respectfully preserve their position that Plaintiffs' motion for class certification fails to serve the purposes of a class action, which is "designed to further procedural fairness and efficiency," *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393, 402 (2010), including "by preventing inconsistent adjudications," 1 Newberg and Rubenstein on Class Actions § 1:9 (6th ed. 2025). This suit does not serve those interests because Plaintiffs are not parties to the challenged grant agreements. As a result, because the proposed class does not exclusively cover all parties with legal interests in the challenged contracts, this class action cannot prevent inconsistent adjudications. For this reason alone, class certification is inappropriate.

**B. The Department of Energy Class Fails to Conform to Rule 23.**

As a rule, a class must be "sufficiently definite to conform to Rule 23." *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986). Plaintiffs contend the Ninth Circuit has no ascertainability requirement. *See* Pls.' Reply at 13 (citing *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123–27 n.7 (9th Cir. 2017). However, courts in this Circuit interpret *Briseno* to "address[] the necessity for a class to be readily ascertainable through analysis of Rule 23's enumerated requirements." *Romano v. SCI Direct, Inc.*, No. 17-CV-03537-ODW-JEM, 2018 WL 1441147, at *9 (C.D. Cal. Mar. 21, 2018) (citing *Briseno*, 844 F.3d at 1125 n.4). In other words, a proposed class must not be vaguely defined and must be "sufficiently definite to conform to Rule 23." *State Teachers' Ret. Sys.*, 780 F.2d at 780. Moreover, "a court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits.'" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465–66 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–51 (2011).

The absence of a uniform standard to determine when a UC employee who works on a grant becomes part of the class does not conform with Rule 23's requirements. As explained above, Plaintiffs' declarations do not show that each proposed class member was sufficiently involved in the grants at issue to demonstrate standing. Defendants' cited cases are not inconsistent. *See* Pls.' Reply at 14. Plaintiffs argue that the court in *O'Connor v. Boeing North American, Inc.* certified a class that included individuals who "worked" in a specific geographic boundary. 184 F.R.D. 311, 319 (C.D. Cal. 1998). However, that location was contaminated with radioactive waste, and therefore any exposure was allegedly hazardous. *Id.* at 320. Thus, the *O'Connor* class definition does not raise the same vagueness concerns.

Contrary to Plaintiffs' assertion that standing related arguments are not properly raised at the class certification phase, the injury-in-fact analysis and the class certification analysis overlap. The Supreme Court has held that "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury[.]'" *Dukes*, 564 U.S. at 349–50. That finding "does not mean merely that they have all suffered a violation of the same provision of law." *Id.* at 350. Similarly, "[t]he test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct, which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Vasquez Perdomo v. Mullin*, No. 2:25-CV-05605-MEMF-SP, 2026 WL 2752137, at *5 (C.D. Cal. Sep. 2, 2026) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

The vague and overbroad nature of Plaintiffs' proposed DOE class raises commonality and typicality concerns. Most of the asserted injuries described in Plaintiffs' declarations are not common to all class members or typical of the proposed class representatives, who are all lead researchers on the grants at issue. For instance, some proposed class members' contended harms include that their dissertations are "less impactful" without the grant funding. *See, e.g.,* Zenyuk Decl. ¶ 6(a); Long Decl. ¶ 5(b). Others state they have to spend more time in their graduate programs, *see, e.g.,* Zenyuk Decl. ¶ 8(c), or that the termination impacted their job placement. Zenyuk Decl. ¶ 8(b). But not all of the proposed class members have suffered these alleged harms. Moreover, the class representatives do not appear to have suffered these injuries, because they are not students working on research projects on a temporary basis.

Indeed, one declaration acknowledges the lack of commonality, stating that a grant's termination "affected the PhD candidates and postdoctoral scholars differently depending on their role and funding status[.]" Boettcher Decl. ¶ 33. Because the proposed class definition raises these Rule 23 concerns, it is vaguely defined and not "sufficiently definite to conform to Rule 23." *State Teachers' Ret. Sys.*, 780 F.2d at 780. The proposed class definition should not be certified for lack of commonality and typicality.

Defendants do not dispute that 76 members would generally be sufficient to satisfy Rule 23's numerosity requirements. *See* Pls.' Reply at 14. However, Defendants dispute Plaintiffs' claim that a class of 16 members would satisfy numerosity, as the only case Plaintiffs cite in support of that contention is a district court decision outside of the Ninth Circuit. *See id.* at 16 (citing *Jackson v. Danberg*, 240 F.R.D. 145, 147-48 (D. Del. 2007). Moreover, *Danberg* involved a class action brought by individuals who had received death sentences, and the Court reasoned that numerosity was met "especially" because the class had the potential to increase and change. *Id.* That is not the case here.

As the Court noted previously, "courts find the numerosity requirement satisfied when a class includes at least 40 members." *Rannis*, 380 F. App'x. at 651 (unpublished); Order Granting Mot. for Prelim. Inj. and Provisional Class Certification, ECF No. 54 at 54 (quoting and citing the same). After all, 40 members would generally make joinder an impracticable mechanism for continuing litigation. On the other hand, even in the (b)(2) context, "[w]hile there is no fixed number that satisfies the numerosity requirement, as a general matter, . . . one less than twenty-one does not." *Refuerzo v. Sw. Airlines Co.*, No. 22-cv-00868-JSC, 2024 WL 4177936, at *4 (N.D. Cal. Sep. 12, 2024) (quoting *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012)). Numerosity is not met as to the class members who meet Rule 23's requirements.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion and grant Defendants' cross-motion by (1) entering judgment for Defendants on Count III of Plaintiffs' Complaint; (2) denying certification of the proposed DOE class; and (3) denying joinder of the new named Plaintiff.

DATED: October 9, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

JOSEPH E. BORSON
Assistant Branch Director

*<u>/s/ Kathryn Barragan</u>*

KATHRYN BARRAGAN (D.C. Bar No. 90026294)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 598-7696
Email: kathryn.e.barragan@usdoj.gov

*Attorneys for the United States*