BRETT A. SHUMATE
Assistant Attorney General
Civil Division
JOSEPH E. BORSON
Assistant Branch Director
KATHRYN BARRAGAN (D.C. Bar No. 90026294)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 598-7696
Email: kathryn.e.barragan@usdoj.gov

*Attorneys for United States*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | | |
|---|---|---|
| NEETA THAKUR, *et al.*, | ) | Case No. 25-cv-4737-RFL |
| | ) | |
| Plaintiffs, | ) | **DEFENDANTS' REPLY TO THEIR SUPPLEMENTAL BRIEF** |
| v. | ) | |
| | ) | Hearing Date: November 17, 2026 |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, | ) | Time: 1:30 PM<br>Judge: Hon. Rita F. Lin |
| | ) | Place: San Francisco Courthouse |
| Defendants. | ) | Courtroom 4 – 17th Floor |

## INTRODUCTION

Plaintiffs' theory of the case appears to be that even if there is a conceivable, rational basis, grounded in the statute, supporting the agency's termination decisions, if the proximate cause of the specific termination was political considerations, that decision does not comport with the Constitution. This theory cannot be squared with rational basis review.

At the outset, Plaintiffs conflate arbitrary-and-capricious review under the APA with rational basis review under the Constitution. *See* Pls.' Resp. Br. at 9-11. But these standards are meaningfully distinct. While the APA may not permit an agency to "rel[y] on factors which Congress has not intended it to consider," Pls.' Resp. Br. at 9, rational basis review requires only consideration of whether the action *could* be supported by *any* legitimate government purpose. Because of this distinction, the fact that the relevant statutory authorities do not specially address "'political leveraging' as a basis for grant termination," *id.* at 6, is not relevant. Just the opposite is true: political considerations are acceptable under rational basis review, as the Supreme Court and others have repeatedly recognized. *Contra* Pls.' Resp. Br. at 9-11. And rational basis review need not be supported by evidence of the government's actual motivations. *Contra id.* at 8-9. Rather, Plaintiffs bear the burden of negating every *conceivable* rationale.

Moreover, Plaintiffs' argument ignores the fact that the challenged grant terminations were a multi-step process. Plaintiffs do not dispute that the "Blue State" and "non Blue-State" grants were similarly situated, *id.* at 12, and they do not dispute that DOE independently determined that every terminated grant "was no longer consistent with the Administration's goals, policies, or priorities or otherwise failed to advance current Departmental priorities." Defs.' Resp. Br. at 2, 9. Nor do they dispute that is a rational basis for that determination. To be sure, as Defendants have stipulated, political identity of the grant recipient's state played a role in which grants were included in the October tranche of terminations. But that is not a constitutional problem—rational government policies are often proximately politically motivated. Rather, that is the nature of the political process—and to constitutionalize that process, as Plaintiffs attempt here, is unsupported and improper.

## ARGUMENT

### I. Plaintiffs conflate arbitrary-and-capricious review with rational basis review, and under rational basis review, political considerations are appropriate.

Plaintiffs conflate the standards for arbitrary and capricious review under the APA with rational basis review under the Fifth Amendment by arguing that acting outside explicit statutory authority violates the Constitution's guarantee of equal protection. *See* Pls.' Resp. Br. at 10 ("there can be no rational relationship between an agency action and a legitimate government interest if the agency invokes a criterion or invents a classification unrelated to congressionally enumerated decision criteria."). But none of the cases Plaintiffs cite for this proposition are applicable to *rational basis* review under the Constitution. *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co* ("*State Farm*")., 463 U.S. 29, 43 (1983) (APA arbitrary and capricious review); *Hampton v. Mow Sun Wong*, 426 U.S. 88, 116 (1976) (procedural due process); *D.C. Fed. of Civic Ass'ns v. Volpe*, 459 F.2d 1231, 1249 (D.C. Cir. 1971) (record review case). Rational basis and arbitrary and capricious review are meaningfully different; with rational basis being far more deferential. Defs.' Resp. Br. at 7. Moreover, to the extent that Plaintiffs assert that under Ninth Circuit law the standards are the same, *see* Pls.' Resp. Br. at 10-11, such authority is inconsistent with the Supreme Court's recent holdings. *See Trump v. Hawaii*, 585 U.S. 667, 705-06 (2018) ("Given the standard of review, it should come as no surprise that the Court hardly ever strikes down a policy as illegitimate under rational basis scrutiny," i.e. where it was "impossible to discern a relationship to legitimate state interests") (citation omitted)). Plaintiffs did not move for summary judgment on these terminations as an arbitrary and capricious claim—correctly recognizing that such claims are precluded by the Tucker Act. They cannot re-plead them by another name.

To this end, Plaintiffs' statutory theories miss the mark. Their argument is that Congress has not explicitly authorized consideration of politics in making grant funding determinations. *See* Pls.' Resp. Br. at 6-9. But that is a question of statutory authorization, or perhaps arbitrary and capricious review under *State Farm*. *See id.* at 9. It is not a rational basis inquiry, which is whether "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Comm'ns, Inc.*, 508 U.S. 307, 313 (1993) (describing the rational basis standard as "a paradigm of judicial restraint"). Under rational basis review, political favoritism is routinely affirmed. *See, e.g.*, *Desoto Cab Co., Inc. v. Picker*, 228 F. Supp. 3d 950, 959 (N.D. Cal. 2017) ("political favoritism is a frequent aspect of legislative action" (quoting *Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 654 (7th Cir. 2013)),

*aff'd*, 714 F. App'x 783 (9th Cir. 2018); *Sensational Smiles, LLC v. Mullen*, 793 F.3d 281, 286-87 (2d Cir. 2015) ("The. . . Supreme Court has long permitted state economic favoritism of all sorts, so long as that favoritism does not violate specific constitutional provisions or federal statutes. . . . We call this politics.").

Indeed, Plaintiffs' theory—that political considerations are invalid unless specifically authorized by Congress—fails under its own terms. Political considerations abound in agency actions. That is not improper, it is a reflection of the democratic process. *See, e.g.*, *State Farm*, 463 U.S. at 59 (Rehnquist, J., concurring in part and dissenting in part) ("[a] change in administration brought about by the people casting their votes is a perfectly reasonable basis for an executive agency's reappraisal of the costs and benefits of its programs and regulations"). The President, including via the agencies, routinely takes actions in service of political goals, including making campaign promises, or even the horse-trading that is the hallmark of modern (and not-so-modern politics).[1] The suggestion that Congress somehow needed to *authorize* that political consideration through explicit identification in statutory factors is inconsistent with historical practical or rational basis more generally.

To be sure, there are situations where Congress can expressly limit considerations of politics in agency action—at least for purposes of APA review. That is the teaching of *Earth Island Institute v. Hogarth*, 494 F.3d 757 (9th Cir. 2007), upon which Plaintiffs chiefly rely, Pls.' Resp. Br. at 11-12. There, the Ninth Circuit concluded that Congress has prohibited the agency from "taking foreign policy considerations in account" in making certain fishery determinations. *Earth Island Inst.*, 494 F.3d 763-65. But that is not the situation here. Rather, Plaintiffs identify no statutes that *prohibit* the consideration of politics here—and as stated, the relevant statutes are broad. Defs.' Resp. Br. at 3-6.

## II. DOE did not violate equal protection by terminating only a subset of those grants identified by OMB for inclusion in a tranche of termination notices, even if such inclusion was based on the political identity of the recipient's state.

The notification of termination of the 284 grants at issue occurred only after DOE had decided, through a months-long Portfolio Review Process, that it did not wish to continue with those grants because

---

[1] *See, e.g.*, Art Pine, *Capitol Horse-Trading Seen as Politics, American Style: Government: Dealing is as old as Foggy Bottom itself. But presidents like L.B.J. turned it into an art form.* Los Angeles Times (Nov. 22, 1993) (collecting examples), https://www.latimes.com/archives/la-xpm-1993-11-22-mn-59654-story.html.

these grants "were no longer consistent with the Administration's goals, policies, and priorities or otherwise failed to advance current Departmental priorities." Defs.' Resp. Br. at 2. DOE did *not* in that review process consider the political identity of the recipient's state. Decl. of Kyle McLorg ("McLorg Decl."), ¶ 9, Ex. F at 6, Stip. No. 11. Plaintiffs have not contested these bases were rational. Nor have they even claimed that they are not within DOE's statutory authorities. *See* Pls.' Resp. Br. at 6-7. That political factors were later considered by OMB in determining which termination decisions should be included in the October 2025 tranche notice does not render the decisions unconstitutional, regardless of whether the decision is analyzed holistically or whether only the specific termination decision is considered.

Turn first to the entire context: it is undisputed that grants were selected for termination based on programmatic factors, and grants in both Blue States and non-Blue States were so identified. *See* Pls.' Resp. Br. at 12. In other words, there was a rational basis for terminating the terminated grants—a failure to promote current programmatic priorities. That is enough for rational basis review. *See Beach Comm'n*, 508 U.S. at 314 (action survives rational basis review "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification"). To be sure, politics influenced, perhaps even dictated, the grants selected from the longer termination list for inclusion in the October notice—but that is no different than how, for example, a President may choose between two different, otherwise reasonable infrastructure projects, based on which is in a congressional district of a key Representative whose vote is needed for a separate funding bill. These examples date back to the Compromise of 1790 that determined the location of Washington, D.C., and "long settled and established practice is a consideration of great weight in a proper interpretation of constitutional provisions." *NLRB v. Noel Canning*, 573 U.S. 513, 524 (2014) (quoting *The Pocket Veto Case*, 279 U.S. 655, 689 (1929)) (citation omitted).

The result is the same looking exclusively at the decision to terminate only Blue State grants rather than the otherwise comparable set of non-Blue State grants. Under rational basis, even after having "identif[ied] a similarly situated class that is treated disparately . . . ., [plaintiffs] must also negate every conceivable basis which might support such disparate treatment." *Olson v. California.*, 104 F.4th 66, 77 (9th Cir. 2024) (en banc) (citation omitted). Both sides agree that the two sets of grant classes are similarly situated, *see* Pls.' Resp. Br. at 12; Defs.' Resp. Br. at 9. But there is a "conceivable basis" for the

differential treatment—the use of political leverage as part of negotiations over the end of a government shutdown—a possibility acknowledged by Plaintiffs *in their complaint*. *See* Am. Compl, ¶¶ 612-13 (alleging President Trump mentioned "cutting programs that they like" should Congressional Democrats "not agree to fund the government," and that Director Vought "made good on that threat the very first day of the shutdown"), ECF No. 184. There is a long history of governmental action being taken for political reasons—and no suggestion that this history, which dates to George Washington, Thomas Jefferson, and Alexander Hamilton, is unconstitutional. "Rational basis review is highly deferential to the government, allowing any conceivable rational basis to suffice." *Borja v. Nago*, 115 F.4th 971, 983 (9th Cir. 2024) (citation omitted). Plaintiffs do not contest that such political leveraging is a "conceivable" reason, rather they argue that is not a reason "grounded in congressionally permitted criteria." Pls.' Resp. Br. at 14. But that is moving the goal-posts, and putting in place a new requirement ungrounded in rational basis review.

Plaintiffs' remaining objections lack foundation. They repeatedly claim that "DOE needs to support [the political leverage] theory with actual evidence." Pls.' Resp. Br. at 8-9, 12-13. This is wrong. Rather, the Supreme Court has made clear that rational basis review "is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Comm'ns*, 508 U.S. at 315. Indeed, this is why the rationally articulated reason need not even be the true reason. *See id.* ("[I]t is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually to have motivated the legislature."). Plaintiffs similarly claim that DOE did not terminate "non-Blue State grants" in October 2025 and now has no intention to do so. Pls.' Resp. Br. at 12-13. Plaintiffs offer no caselaw that a rational basis is defined by conduct that occurred *after* the challenged action—and it is their burden to show an action is not rational. *See Borja*, 115 F.4th at 983. Nor do they negate the claim that DOE was proceeding one step at a time and intended in October 2025 to terminate a second set of grants at a later time.

***

Plaintiffs attempt to impose a different standard of review, based on different types of legal claims, cannot support what they have actually brought: a rational basis claim under the U.S. Constitution. The Government's decisions satisfy that highly deferential standard.

DATED: November 3, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JOSEPH E. BORSON
Assistant Branch Director

*/s/ Kathryn Barragan*

KATHRYN BARRAGAN (D.C. Bar No. 90026294)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 598-7696
Email: kathryn.e.barragan@usdoj.gov

*Attorneys for the United States*